# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (Boston Division)

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | Civil Action No. 05 -10983 (NMG) |
| Plaintiff, | ) | |
| v. | ) ) | |
| STEVEN E. NOTHERN, | ) ) | |
| Defendant. | ) ) | |

## U.S. SECURITIES AND EXHANGE COMMISSION'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANT STEVEN E. NOTHERN'S AFFIRMATIVE DEFENSE OF ESTOPPEL

The Securities and Exchange Commission (the "SEC" or "Commission") submits this reply brief in support of its Motion to Strike Defendant Steven E. Nothern's Affirmative Defense of Estoppel. In his Opposition to the Commission's Motion ("Opposition Brief"), Nothern characterizes as "strained" the Commission's theory of liability for his insider trading in the 30-year bond while in possession of, and based on, material nonpublic information that he knew was embargoed. Opp. Brief at 19. Indeed the only thing that is "strained" in this case is Nothern's attempt to assert an estoppel defense for actions taken, and statements made, by the United States Department of Treasury ("Treasury") – which is not a party to this action – when he was not subject to the actions, and did not hear the statements. As the Commission's Motion and Nothern's Opposition make clear, Nothern cannot establish *any* set of facts to support his estoppel defense because he fails to even allege the basic requirements necessary for asserting

such a defense.    Accordingly, the Commission's Motion to Strike Nothern's estoppel defense should be granted.

> **I.        No Set Of Facts Are Sufficient To Support Nothern's Estoppel Defense.**

The First Circuit has held that "[i]f estoppel against the government posses any viability . . . the phenomenon occurs only in the most extreme circumstances." *Dantran, Inc. v. United States Dept. of Labor*, 171 F.3d 58, 66 (1st Cir. 1999).  Additionally, the First Circuit made clear that "however heavy the burden might be when an estoppel defense is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." *Mimiya Hospital, Inc. SNF v. United States Dept. of Health and Human Services*, 331 F.3d 178, 183 (1st Cir. 2003) (citing and quoting *Heckler v. Community Health Services*, 467 U.S. 51, 61 (1984) ("*Heckler*")) (internal quotations omitted).  Supreme Court precedent provides that a party seeking to assert estoppel must demonstrate that: "(1) the party seeking to be estopped made a 'definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it'; (2) 'reliance [was] reasonable in that he party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.'"  *Id*. at 183 (citing and quoting *Heckler*, 467 U.S. at 59).

Nothern fails to satisfy the requirements to assert an estoppel defense, because he does not allege, and cannot show, that the Commission, or Treasury, made any misrepresentations of fact to him with the belief that he would rely on the misrepresentations.  Nor can Nothern show that he relied, to his detriment, on any misrepresentations of fact by the Commission, or Treasury.  Nothern admits that his

estoppel defense is based on his unfounded theory that Treasury somehow acted inappropriately by allowing Nothern's tipper, Peter Davis, to have access to material nonpublic information provided at Treasury's October 31, 2001 press conference regarding Treasury's decision to suspend the 30-year bond. Opp. Brief at 11.[1] Essentially, Nothern's claim is that Treasury allegedly engaged in a series of mistakes with regard to its embargo policy and that, but for this conduct, Davis would not have gained access to the material nonpublic information regarding the suspension of the 30-year bond, and would not have been able to tip Nothern. Whether or not Davis should have been given access to the material nonpublic information that he received from Treasury and provided to Nothern regarding the suspension of the 30-year bond does not shield Nothern from liability for trading on the information when he knew, or was reckless in not knowing, that the information was confidential.[2]

Even assuming that Treasury engaged in misconduct by allowing Davis to attend its October 31 press conference - which it did not – Nothern does not claim that he relied on any misrepresentations of fact made to him by Treasury when he illegally purchased the 30-year bonds at issue in this case. Indeed, Nothern does not dispute the Commission's claim that he could not have relied on representations made by Treasury

[1] In his Opposition Brief, Nothern also claims that Treasury behaved inappropriately by releasing information regarding the suspension of the 30-year bond on its website before the end of the embargo. Even if this claim were true, it still fails to support Nothern's estoppel defense because it does not constitute affirmative misrepresentations of fact made to Nothern that he relied on to his detriment. Notably, Nothern does not contend that he reviewed or relied on information posted by Treasury on its website when he made the illegal trades at issue.

[2] Notably, Davis pleaded guilty to criminal charges of insider trading for his involvement in the insider trading scheme alleged in the Commission's Complaint. On March 18, 2005, Judge Shirah Scheindlin of the United States District Court for the Southern District of New York sentenced Davis to two years probation, and ordered to pay a $30,000 criminal fine and a $300 special assessment. On September 4, 2003, Davis consented to a settlement with the SEC for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j (b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder and agreed to disgorge $29,598 and pay a civil monetary penalty of $120,000.

at its October 31 press conference regarding the suspension of the 30-year bond or the related embargo because *he did not attend the October 31 conference*. Nothern's claim that he can assert an estoppel defense against the Commission based on representations made by another government agency to a third party, when he did not hear the representations made by that agency to the third party, and did not directly rely on those representations when he engaged in the illegal trading at issue is contrary to the law and should be rejected.

Given that Nothern's theory of estoppel is inherently flawed, because he cannot prove that the Commission or Treasury made any factual misstatements to him, or that he personally relied on any misstatements made by either Treasury or the Commission to his detriment, his request that he Court allow him to conduct discovery on his baseless defense theory should be denied. As stated in the Commission's initial brief, Rule 11 specifies that the allegations and factual contentions in a pleading must have evidentiary support or, at a minimum, be likely to have evidentiary support. Here, Nothern's estoppel claim cannot meet that standard.

Moreover, the cases that Nothern cites to support his claim that he should be allowed to conduct discovery on his baseless estoppel defense are inapplicable here. *See* Opposition Brief at 10. For example, Nothern cites *FDIC v. Gladstone*, 44 F. Supp. 2d 81, 90 (D. Mass. 1999) for the proposition that the "[d]efendants' ability to make use of an estoppel defense is a fact intensive question." The Court, however, also noted that the "[g]overnment may not be estopped on the same terms as any other litigant." *Id*. Even under the lower standard applicable to non-government litigants, the estoppel defense

asserted by Nothern could not succeed under any set of facts. Here, under stricter standard applicable to the government, Nothern's estoppel defense clearly fails.

Likewise, *SEC v. CS First Boston Corp.*, No. SA CV 96-1253 GLT (EEx), slip op. at 2 (C.D. Cal. Feb. 24, 1997), *SEC v. Downe*, 1994 WL 67826, *2 (S.D.N.Y. Mar. 2, 1994) and *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995), which are also cited by Nothern are distinguishable from this case because they all involved allegations that the Commission made representations that the defendants allegedly relied on to their detriment. *See* Opp. Brief at 10. Here, Nothern has not alleged any misrepresentations on the part of the Commission, and the misconduct that he alleges Treasury engaged in can in no way support his claim for estoppel.

Additionally, the Court should give no merit to Nothern's assertion that he should be entitled to use his estoppel defense to examine whether there have been any violations of Regulation FD. Regulation FD generally provides that whenever an issuer, or any person acting on his behalf, discloses any material non-public information regarding that issuer or its securities to certain defined persons, the issuer shall make public disclosure of that information. *See* Final Rule: Selective Disclosure and Insider Trading, Release Nos. 33-7881, 34-43154, IC-24599, File No. S7-31-99, August 15, 2000, *www.sec.gov/rules/final/33-7881.htm.* This case involves insider trading by Nothern. The Commission does not allege any violation of Regulation FD by any party. Whether Nothern can establish that Regulation FD applied to the information disclosed by Treasury – which he admits he cannot since he concedes that the Regulation does not establish liability for government issuers – has nothing to do with whether Nothern engaged in insider trading in violation of Section 10(b) of the Exchange Act or Rule 10b-

5 thereunder.  Further, the presence or absence of any facts relevant to an analysis of a

Regulation FD violation does not establish facts for the purposes of insider trading

liability under Section 10(b) and Rule 10b-5.  The provisions are independent and cover

distinct areas of the securities field.  To underscore this point, Regulation FD makes

explicit that "[n]o failure to make a public disclosure required solely by § 243.100 shall

be deemed to be a violation of Rule 10b-5 (17 CFR 240.10b-5) under the Securities

Exchange Act."  17 C.F.R. § 243.102.   Accordingly, the Court should reject Nothern's

arguments that he should be allowed to pursue his meritless estoppel defense in order to

examine theories regarding Regulation FD that are irrelevant to any issues in this case.

## II.     Nothern Cannot Satisfy The Requirements For Asserting An Estoppel Defense Against the Government.

Contrary to the assertions made in Nothern's Opposition Brief, the Commission

did not assert that an estoppel defense can "never" be asserted against the federal

government, rather it stated that such a defense can only be asserted in egregious

circumstances. [3]  Commission's Motion at 3-4.  *See also Frillz, Inc. v. Lader*, 104 F.3d

515, 518 (1st Cir. 1997) (citations omitted) (finding that the doctrine of equitable

estoppel generally does not apply against the federal government); *U.S. v. Ven-Fuel, Inc.*,

758 F.2d 741, 761 (1st Cir. 1985) (finding that the "traditional doctrine of equitable

estoppel does not apply fully in cases against the government."). *See also SEC v.*

---

[3] While Nothern insists that he is allowed to assert an equitable estoppel defense against the government, he does not dispute that "the government may not be estopped on the same terms as other litigants", *see* Opp. Brief at 14 (quoting *Heckler*, 467 U.S. at 60), nor does he dispute that the Supreme Court suggested in *Office of Personnel Management v. Richmond*, 496 U. S. 414 , 422 (1990) that estoppel may never be available against the government.  ("In sum, Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed.").  *See also United States v. Pretty Products, Inc.*, 780 F. Supp 1488, 1500-1501 (S. D. Ohio 1991) (finding that defendant cannot assert equitable defenses against

*Electronics Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988), *aff'd sub nom*, *SEC v. Calvo*, 891 F.2d 457 (2d Cir. 1989), *cert. denied*, 496 U.S. 942 (1990) ("[w]here courts have permitted equitable defenses to be raised against the government, they have required that the agency's conduct be egregious and the resulting prejudice to the defendant rise to a constitutional level").[4]  Because, as demonstrated above, Nothern cannot meet even the minimum standards for asserting a valid estoppel defense against a private litigant, he clearly fails to satisfy the more stringent standard of egregiousness required to assert the defense against the government.

Moreover, Nothern has failed to present any persuasive authority to support his unprecedented estoppel defense against the Commission in this case.  Nothern cites *United States v. Rexach*, 558 F.2d 37 (1st Cir. 1977), a case from 1977, to support his contention that actions taken by Treasury – which were not directed at him – could give rise to an estoppel claim against the Commission.  *Rexach*, however, is factually and legally distinguishable from this case.  First, the First Circuit, in *Akbarin v. INS*, 669 F.2d 839, 842 (1st Cir. 1982), made clear that the portion of the *Rexach* case cited by Nothern is merely "dictum", which has no binding effect.  Moreover, contrary to the suggestion

---

the government when it acts in its sovereign capacity to protect the public health and safety); *United States v. Stringfellow,* 661 F. Supp 1053 (C. D. Cal. 1987) (same).

[4]  In explaining the rationale for not allowing the application of equitable estoppel defenses against the government, the First Circuit has found that "as an aspect of sovereign immunity, it has been recognized that in order to protect the resources essential to maintain the government for all the people, it may be necessary in some instances to deny compensation to individuals harmed by government misconduct." *Falcone v. Pierce*, 864 F.2d 226, 229 (1st Cir. 1988).  Further, the First Circuit has noted that "*[t][he Supreme Court . . . . has consistently refused to apply the equitable estoppel doctrine against the government no matter how compelling the circumstances.* Justification for this refusal rests primarily upon considerations of sovereign immunity and constitutional grounds – the potential for interference with the separation of governmental powers . . . . In a complex government with thousands of agencies and departments and innumerable employees, there is a very real need to protect the Government against binding commitments by improper conduct of its agents. . . . " *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 17 (1st Cir. 1986) (emphasis added).

made by Nothern in his Opposition Brief, in *Rexach*, the First Circuit did not apply estoppel against the government, rather it found that in that case "estoppel *would have been proper against the United States*" because "*[a]lthough estoppel is rarely a proper defense against the governmen*t, there are instances where it would be unconscionable to allow the government to reverse an earlier position." (emphasis added)  Here, Nothern has not alleged any facts to support his estoppel defense that suggests that either the Commission or the Treasury acted unconscionably towards him.

Second, *Rexach* is distinguishable from this case because *Rexach* was a criminal matter brought by the United States Department of Justice.  Unlike the civil cases handled by the Commission, which are brought on behalf of the Commission, and are limited to one substantive legal area, the federal securities laws, criminal cases brought by the Department of Justice are brought on behalf of the United States, often involve different substantive areas of the law, and routinely require involvement, or assistance from other government agencies that are charged with the responsibility of enforcing the related civil laws in those areas.[5]

Based on the key differences between *Rexach* and this case, the Court should find that the First Circuit's findings in *Rexach* are inapplicable here.

### III.     The Commission Is Suffering and Will Continue to Suffer Prejudice If Its Motion To Strike Nothern's Estoppel Defense Is Not Granted.

Nothern's argument that the Commission cannot point to any prejudicial harm that will result from his assertion of a baseless estoppel defense must be rejected.

---

[5] Additionally, Nothern's claim that actions by Treasury could give rise to an estoppel defense against the SEC should be rejected for the following reasons. Unlike Treasury, the SEC is an independent government agency that does not report directly to the President of the United States.  Civil enforcement actions filed by attorneys for the SEC are filed on behalf of the SEC not the United States.

Ironically, the day after filing his Opposition Brief, Nothern served the Commission with Requests for Production of Documents that requires the Commission to respond to 66 requests, several of which relate to his estoppel defense. *See* Exh. A, Defendant Steven E. Nothern's First Request For Production of Documents to the Securities and Exchange Commission (Request Nos. 1-8, 37). Moreover, Nothern has improperly requested that the Commission obtain documents from Treasury and "any other agency or department of the United States government" and produce those documents to Nothern as part of its discovery responses. Exh. A at 2. If Nothern's estoppel defense is permitted to stand, the Commission is likely to be prejudiced by expending time and financial resources responding to these and other needless discovery requests propounded by Nothern related to a defense that is immaterial to this case.

Because there are no set of facts that will allow it to succeed, Nothern's estoppel defense is exactly the type of "legally insufficient" defense that the court in *Mastrocchio v. Unnamed Supervisor Special Invest. Unit*, 152 F.R.D. 439, 441 (D.R.I. 1993), found should be weeded out at an early stage of a law suit. *See also*, *SEC v. Sarivola,* No. 95 Civ. 9270 (RPP), 1996 U.S. Dist. LEXIS 7720, *1 (S. D. N.Y. 1996) ("Courts must not be oblivious to the caseload pressures and budgetary restrictions on government enforcement agencies, nor should they be unmindful that the discovery process can be unduly and unnecessarily delayed by counsel seeking to establish [meritless affirmative defenses]"). Granting the Commission's Motion to Strike will help to streamline the issues in this case and will prevent the Commission from having to expend government resources unnecessarily.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, the Commission respectfully requests that the Court enter an order:  (1) pursuant to Fed. R. Civ. P. 12(f), striking Nothern's affirmative defense of estoppel; and (2) granting such other and further relief as this Court may deem just and proper, such as sanctions.

Respectfully Submitted,

__/s/ Erica Y. Williams_____
Erica Y. Williams
John J. Rossetti, Jr.
U.S. Securities and Exchange Commissions
100 F Street, N.E.
Washington, D.C. 20549-4010
Phone:   (202) 551-4450
Fax:      (202) 772-9245
williamse@sec.gov

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

STEVEN E. NOTHERN,

Defendant.

CIVIL ACTION No. 05-10983 (NMG)

## DEFENDANT STEVEN E. NOTHERN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO THE SECURITIES AND EXCHANGE COMMISSION

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Steven E. Nothern ("Nothern") requests that the Securities and Exchange Commission ("SEC") produce the documents described in Section III hereof pursuant to, and in accordance with, the Instructions and Definitions set forth in Sections I and II below within thirty days from the date hereof.

### I. INSTRUCTIONS

1.      Except where otherwise stated, or where the context requires otherwise, each document specification refers to the time period commencing at the beginning of time and continuing to the date of production pursuant to this request.

2.      This request is a continuing request for supplemental responses and/or production pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

3.      Where any copy or copies of any document whose production is sought, whether a draft or final version, is/are not identical to any other copy thereof, by reason of alterations,



notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, produce all such non-identical copies.

4.      In producing documents, leave all documents that are physically attached to each other in files so attached.  Leave all documents that are segregated or separated from other documents, whether by inclusion in binders, files, or subfiles, or by use of dividers, tabs, or any other method, so segregated or separated.  Retain documents in such order as they are maintained.

5.      If a document is in the possession, custody or control of any department or agency of the United States government, it is deemed to be in the possession, custody or control of the SEC for purposes of this Request.

6.      If any document was, but no longer is, in the possession, custody or control of the SEC, state the circumstances under which the document ceased to be in the possession, custody, or control of the SEC and the location, if known, of the document.  If the document was destroyed, state the circumstances under which it was destroyed, including the names and addresses, if known, of the persons involved in its destruction.

7.      Words used in the present tense include the future as well as the present; words used in the masculine gender include the feminine and neuter; the singular number includes the plural and the plural includes the singular; the words "and" and "or" are to be considered both conjunctively and disjunctively; the word "all" also includes "each," and vice versa.

8.      As to each document requested herein but withheld on a claim of privilege, state the following:

        (1)      the title of the document;

        (2)      the type of document (letter, note, memorandum, etc.);

-2-

(3)     the date of the document;

(4)     names and positions of all persons who authored the document, or assisted
        in its preparation, or in whose names the document was prepared;

(5)     names and positions of all persons to whom the document was addressed,
        or to whom it was sent or who received, have seen, have had possession or
        custody of, or have had disclosed to them the contents of, the document or
        any copies thereof;

(6)     names and positions of all persons from whom the document was
        received;

(7)     the present location of the document and all copies thereof;

(8)     names and positions of all persons having possession, custody, or control
        of the document and all copies thereof;

(9)     a description of the subject matter of the document; and

(10)    the nature of the privilege or other basis for non-production.

## II. DEFINITIONS

1.      The definitions contained in LR 26.5 are incorporated by reference into all
discovery requests.

2.      "Answer" shall mean Nothern's Amended Answer and Jury Demand filed in this
action dated August 22, 2005.

3.      "Complaint" shall mean the Complaint filed in this action on or about May 12,
2005.

4.      "Goldman Sachs" shall mean Goldman, Sachs & Company, as well as any
division, unit, subsidiary, affiliate, general or limited partner, or parent corporation thereof or
predecessor, successor, assignor, or assignee thereto, and any present or former officer, director,
counsel, attorney, advisor, consultant, subcontractor, agent, employee, representative, or any
other person acting for or on behalf of Goldman, Sachs & Company.

5.    "Hathaway" shall mean William M. Hathaway, a member of the SEC staff, and any of his servants, agents, and employees, past or present, or any other person acting on behalf of William M. Hathaway.

6.    "Investigation" shall mean the SEC investigation of the matters, facts, and circumstances in In the Matter of: Trading in Certain Treasury Issues, SEC file number HO-9353, whether before or after issuance of a formal order of investigation.

7.    "Johnson" shall mean Treazure R. Johnson, a member of the SEC staff, and any of his servants, agents, and employees, past or present, or any other person acting on behalf of Treazure R. Johnson.

8.    "Massachusetts Financial Services Company," "MFS," or "the Company" shall mean Massachusetts Financial Services Company, as well as any division, unit, subsidiary, affiliate, general or limited partner, or parent corporation thereof or predecessor, successor, assignor, or assignee thereto, and any present or former officer, director, counsel, attorney, advisor, consultant, subcontractor, agent, employee, representative, or any other person acting for or on behalf of Massachusetts Financial Services Company.

9.    "Merrill Lynch" shall mean Merrill Lynch & Company, as well as any division, unit, subsidiary, affiliate, general or limited partner, or parent corporation thereof or predecessor, successor, assignor, or assignee thereto, and any present or former officer, director, counsel, attorney, advisor, consultant, subcontractor, agent, employee, representative, or any other person acting for or on behalf of Merrill Lynch & Company.

10.    "Rosetti" shall mean John J. Rosetti, Jr., a member of the SEC staff, and any of his servants, agents, and employees, past or present, or any other person acting on behalf of John J. Rosetti.

-4-

11.     "SEC" shall mean the United States Securities and Exchange Commission and any agents, and employees, past or present, or any other person acting on behalf of the Securities and Exchange Commission.

12.     "Sporkin" shall mean Andrew Sporkin, a member of the SEC staff, and any of his servants, agents, and employees, past or present, or any other person acting on behalf of Andrew Sporkin.

13.     "30-year Bond" or "Long Bond" shall mean the Treasury issued bond defined in the Complaint at paragraphs 16 and 17.

14.     "Treasury" shall mean the Department of the Treasury, an Executive Department of the United States Government and any agents, and employees, past or present, or any other person acting on behalf of the Department of the Treasury.

15.     "U. S. Attorneys' Investigation" shall mean the investigations conducted by the United States Attorneys' Offices, Department of Justice and Grand Juries leading up to and resulting in the Indictments handed down in the criminal actions captioned as, United States of America v. Peter Davis, Criminal Action No. 03-1054 (S.D.N.Y.) and United States of America v. John Youngdahl, Criminal Action No. 03-0991 (S.D.N.Y.).

16.     "You" and/or "Your" shall mean the SEC.

### III. REQUESTS FOR PRODUCTION

1.     All documents obtained or received by the SEC, by subpoena or otherwise, in connection with the Investigation, including, without limitation, any trade tickets and confirmations, transaction requests, account statements, tax information summaries, correspondence, wires and checks, notes, notes of meetings, notes of telephone conversations,

audiotapes of telephone conversations, transcripts of meetings or telephone conversations, and telephone records.

2.      All subpoenas, document requests or other written information requests issued or made by the SEC in connection with the Investigation.

3.      All documents identifying all persons interviewed, deposed or otherwise questioned by the SEC or any other agency or department of the United States government in connection with the Investigation or the U.S. Attorneys' Investigation.

4.      All notes, audiotapes, videotapes, transcripts or other documentation of interviews, depositions or questioning by the SEC or any other agency or department of United States government in connection with the Investigation or the U.S. Attorneys' Investigation.

5.      All communications concerning the subject matter of this Investigation and/or this action, including, without limitation, all communications concerning the Investigation with any other investigative or regulatory agency of the federal government of the United States of America.

6.      All documents concerning Treasury's Office of Inspector General's Investigation, entitled, Unknown Treasury employee(s), case number 2002-0104, including without limitation the final report of investigation.

7.      All documents concerning Treasury's Office of Inspector General's Investigation, entitled, Unknown Treasury employee(s), case number 2001-0104, including without limitation the final report of investigation.

8.      All documents produced or otherwise provided to the SEC by Treasury in connection with the Investigation or the U.S. Attorneys' Investigation.

9.    All documents concerning any analysis of MFS' phone system or phone records in connection with the Investigation or the U.S. Attorneys' Investigation.

10.    All documents concerning the SEC's decisions to initiate and continue the Investigation and to file civil lawsuits against Nothern, including, but not limited to, SEC action memos, the SEC's formal order of investigation, and the SEC's formal orders authorizing civil suits.

11.    All documents concerning the Investigation, including, without limitation, all memoranda, reports, and summaries by SEC personnel.

12.    All documents concerning the Investigation or the U.S. Attorneys' Investigation relating to MFS, including, without limitation, all financial statements, balance sheets, documents indicating MFS' compliance function, trading policies and/or procedures, and all communications with MFS and/or counsel for MFS.

13.    All documents concerning MFS trades in the 30-year bond on October 31, 2001, including, without limitation, all financial statements, balance sheets, trade tickets. Documents indicating MFS's compliance function, trading policies and/or procedures, and all communications with the SEC concerning such trades.

14.    All documents concerning MFS's bond trading relationship with Merrill Lynch during 2001.

15.    All documents concerning all communications with Merrill Lynch regarding the Investigation or subject matter of the Investigation and/or MFS trades in the 30-year bond.

16.    All documents concerning communications of Merrill Lynch regarding bond transactions on October 31, 2001 including without limitation documents concerning allegations of insider trading.

17.    All documents concerning MFS's records of trades made through Merrill Lynch on October 31, 2001.

18.    All documents concerning the Investigation or the U.S. Attorneys' Investigation relating to Merrill Lynch, including, without limitation, all financial statements, balance sheets, documents indicating Merrill Lynch's compliance function, trading policies and/or procedures, and all communications with Merrill Lynch and/or counsel for Merrill Lynch.

19.    All documents produced by Merrill Lynch in connection with the Investigation or the U.S. Attorneys' Investigation.

20.    All documents concerning the Investigation or the U.S. Attorneys' Investigation relating to Goldman Sachs, including, without limitation, all financial statements, balance sheets, documents indicating Goldman Sachs' compliance function, trading policies and/or procedures, and all communications with Goldman Sachs and/or counsel for Goldman Sachs.

21.    All documents concerning any internal investigation by MFS of allegations of insider trading by Nothern.

22.    All communications with all witnesses and/or counsel for witnesses in connection with the Investigation, including, without limitation, all "Wells Submissions" and any proposed or final agreements, consents, contracts, or undertakings between or among the SEC and any or all of such witnesses or counsel.

23.    All documents concerning Nothern's communications with the SEC, including, without limitation, all notes, transcripts, and recordings of all purported conversations between the SEC staff, including without limitation Sporkin, Hathaway, Treazure, or Rosetti, and Nothern.

24.     All documents concerning Nothern's communications with MFS supervisors, management, and/or counsel including, without limitation, all notes, transcripts, and recordings of all purported conversations between the MFS supervisors, management, and/or counsel and Nothern.

25.     All documents concerning the SEC's claim of gain or profit earned by Nothern as a result of his trading in 30-year bonds.

26.     All documents concerning the SEC's claim of gain or profit earned by MFS as a result of its trading in 30-year bonds.

27.     All documents concerning MFS's code of conduct or code of ethics and/or compliance function, including without limitation MFS's statement of policy on "personal Securities Transactions" MFS's "Statement of Guidelines," and MFS's insider trading policies for the years 1986 to the present.

28.     All documents concerning allegations of insider trading in or manipulation of the 30-year bond by the following persons, or any of them:

    John Cadagan

    Peter J. Davis, Jr.

    Peter Fisher

    David S. Kennedy

    Geoffrey Lee Kurinsky

    Steven E. Nothern

    D. Richard Smith, III

    Joan Batchelder

    Robin Slehnach

Rob Manning

Don Myeranz

Mike Roberge

29.     All documents produced in connection with the Investigation or the U.S.

Attorneys' Investigation concerning the following persons, or any of them:

David D. Aufhauser

Joan Batchelder

Steven Bryant

Eric Burns

John Cadogan

James Calmas

Mayi Canales

Steven Cavan

Laura Coyn

Cathy Grahm

Richard Hawkins

Michele A. Davis

Peter J. Davis, Jr.

Peter Fisher

David S. Kennedy

Francine Kerner

Geoffrey Lee Kurinsky

Paul Malvey

Robert Manning

Donald Myeranz

Les Nanberg

Steven E. Nothern

William Paine

Michael Roberge

Brian Roseboro

Matthew Ryan

Lee Sachs

D. Richard Smith, III

Robin Stelmach

James Swanson

Peter Vaream

30.     All computer hard drives, backup tapes or any media containing voice-mails to the following persons, or any of them on October 31, 2001 produced in connection with the Investigation or the U.S. Attorneys' Investigation:

Joan Batchelder

Steven Bryant

Eric Burns

John Cadogan

James Calmas

Steven Cavan

Laura Coyn

-11-

Cathy Grahm

Richard Hawkins

David Kennedy

Geoff Kurinsky

Robert Manning

Donald Myeranz

Les Nanberg

Steven E. Nothern

Michael Roberge

Matthew Ryan

D. Richard Smith

Robin Stelmach

James Swanson

Peter Vaream

31.    All documents concerning a summary of line reporting in effect at MFS in October 2001, including without limitation all organization charts.

32.    All documents concerning trading in the 30-year bond on October 31, 2001.

33.    All documents concerning rumors of suspensions of issuance of the 30-year bond in 2001.

34.    All video tapes of the MFS trading room on October 31, 2001, including any time stamp information.

35.    All floor plans of the 23rd floor of the MFS offices located at 500 Boylston St., Boston, Massachusetts 02116-3740 during October 2001.

-12-

36.    All documents regarding bond trading by or at the direction of Nothern from January 1, 2001 to October 31, 2001.

37.    All documents regarding policies on press or information embargoes.

38.    All records concerning Nothern's employment by MFS.

39.    All documents concerning your document retention policies from August 1, 2001 to present.

40.    All documents concerning the FITS trading system time stamps of bond transactions on October 31, 2001.

41.    All documents concerning the training of MFS employees regarding insider trading.

42.    All documents concerning any purchase or sale of short-term Treasury bonds by or at the direction of Nothern on October 31, 2001.

43.    All documents concerning MFS's retention of the professional services of Peter J. Davis, Jr., Davis Capital Ideas, or any other entity owned by or affiliated with Peter J. Davis, Jr., including without limitation any advertising or promotional literature provided by them.

44.    All reports, newsletters, emails or other communications from Peter J. Davis, Jr., Davis Capital Ideas, or any other entity owned by or affiliated with Peter J. Davis, Jr.

45.    All documents analyzing the prospective or possible suspension of issuance of the 30-year bond in 2001.

46.    All documents obtained or received by the SEC, by subpoena or otherwise, concerning the investigation and/or lawsuit relating to the SEC Administrative Proceeding entitled In the Matter of Massachusetts Financial Services Company, File No. 3-11241.

47.     All subpoenas, document requests or other written information requests issued or made by the SEC in connection with the SEC Administrative Proceeding entitled In the Matter of Massachusetts Financial Services Company, File No. 3-11241.

48.     All documents concerning payment to Merrill Lynch pursuant to the settlement of the Administration Proceeding entitled In the Matter of Massachusetts Financial Services Company, File No. 3-11241.

49.     All documents obtained or received by the SEC, by subpoena or otherwise, concerning the investigation and/or lawsuit relating to the SEC Administrative Proceeding entitled In the Matter of Goldman, Sachs & Co., File No. 3-11240.

50.     All subpoenas, document requests or other written information requests issued or made by the SEC in connection with the SEC Administrative Proceeding entitled In the Matter of Goldman, Sachs & Co., File No. 3-11240.

51.     All documents obtained or received by the SEC, by subpoena or otherwise, concerning the investigation and/or lawsuit relating to the SEC Administrative Proceeding entitled In the Matter of John M. Youngdahl, File No. 3-11349.

52.     All subpoenas, document requests or other written information requests issued or made by the SEC in connection with the SEC Administrative Proceeding entitled In the Matter of John M. Youngdahl, File No. 3-11349.

53.     All documents obtained or received by the SEC, by subpoena or otherwise, concerning the investigation and/or lawsuit relating to the civil action captioned as, United States Securities and Exchange Commission v. Peter J. Davis, Jr. et al., Civil Action No. 03-6672 (S.D.N.Y.).

-14-

54.    All subpoenas, document requests or other written information requests issued or made by the SEC in connection with the investigation and/or lawsuit relating to the civil action captioned as, <u>United States Securities and Exchange Commission v. Peter J. Davis, Jr. et al.</u>, Civil Action No. 03-6672 (S.D.N.Y.).

55.    All documents obtained or received by the SEC, by subpoena or otherwise, concerning the investigation and/or lawsuit relating to the criminal action captioned as, <u>United States of America v. Peter Davis</u>, Criminal Action No. 03-1054 (S.D.N.Y.).

56.    All subpoenas, document requests or other written information requests issued or made by the SEC in connection with the investigation and/or lawsuit relating to the criminal action captioned as, <u>United States of America v. Peter Davis</u>, Criminal Action No. 03-1054 (S.D.N.Y.).

57.    All documents concerning the lawsuit relating to the civil action captioned as, <u>Premium Plus Partners, L.P. v. Peter J. Davis, Jr. et al.</u>, Civil Action No. 04-1851 (N.D. ILL).

58.    All documents produced pursuant to subpoena or otherwise, concerning the lawsuit relating to the civil action captioned as, <u>Premium Plus Partners, L.P. v. Peter J. Davis, Jr. etal.</u>, Civil Action No. 04-1851 (N.D. ILL.).

59.    All subpoenas, document requests or other written information requests issued or made by any party in connection with the lawsuit relating to the civil action captioned as <u>Premium Plus Partners, L.P. v. Peter J. Davis, Jr. etal.</u>, Civil Action No. 04-1851 (N.D. ILL.).

60.    All communications between the SEC and the Department of Justice or the United States Attorney's Office for the Southern District of New York or any other district concerning the Investigation.

61.    All documents identified in the Complaint.

-15-

62.    All documents consulted or referred to by the SEC in drafting the Complaint.

63.    All documents referred to, relied upon, consulted by, or provided by the SEC to any expert retained or consulted by the SEC, including, without limitation, all experts who may testify at trial.

64.    All documents supporting or contradicting the allegations of the Complaint.

65.    All documents the SEC seeks to introduce into evidence at trial or at any stage of the proceedings in this case.

66.    To the extent not included in the foregoing requests, all documents relevant to the subject matter of the Investigation and/or any claims and/or defenses set forth in the Complaint and Answer.

STEVEN E. NOTHERN,
By his attorneys,

Nicholas C. Theodorou (BBO # 495730)
John A. Shope (BBO # 562056)
Kevin B. Currid (BBO # 644413)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Blvd
Boston, MA  02210
Phone: (617) 832-1000
Fax: (617) 832-7000

Dated:  September 27, 2005