United States District Court
District of Massachusetts

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. ) 05-10983-NMG |
| v. | ) ) |
| STEVEN E. NOTHERN, | ) ) |
| Defendant. | ) ) |

MEMORANDUM & ORDER

GORTON, J.

In this case, the United States Securities and Exchange Commission ("SEC") alleges that the defendant, Steven E. Nothern ("Nothern"), obtained material, nonpublic information from consultant Peter J. Davis ("Davis") and used that information for profit, commonly described as insider trading, in violation of 15 U.S.C. §§ 78j(b) (Section 10b of the Securities Exchange Act of 1934) and 17 C.F.R. § 240.10b-5 (Rule 10b-5). The SEC now moves pursuant to Fed. R. Civ. P. 12(f) to strike Nothern's affirmative defense of estoppel. Having considered the memoranda in support and opposition of this pending motion, the Court now resolves the motion as follows.

I. **Factual Background**

According to the Complaint, Nothern was a Senior Vice

-1-

President at Massachusetts Financial Services Company ("MFS"), a Massachusetts-based investment management company adviser. His duties included management of seven fixed-income mutual funds, which had a combined net asset value at the relevant time of approximately $4 billion. Peter Davis, an economist by training, operated his business, Davis Capital Investment Ideas, through the sale of his oral and written analyses of Washington D.C. political and financial events to broker-dealers, financial analysts and investors. MFS retained Davis as a consultant sometime between 1995 and 1997 for approximately $12,000 per year and Nothern was Davis's primary contact at MFS.

At 9:00 a.m. on October 31, 2001, the United States Department of the Treasury ("Treasury") conducted a press conference where the Treasury announced its intent to suspend the issuance of 30-year bonds, an announcement which normally would have been expected to drive up the price of outstanding bonds with that maturity because traders would anticipate a shortage. Accordingly, all attendees of the press conference were instructed by Treasury officials to turn off their cell phones and pagers and to maintain strict confidentiality for one hour on all information disclosed in the meeting until the expiration of the embargo on the information at 10:00 a.m. that same day.

The SEC claims that Davis attended the press conference and was expected to comply with the aforementioned conditions.

However, between the time Davis left the press conference and 9:43 a.m., the time the information was inadvertently posted on the Treasury Department's website, Davis made at least nine cellular phone calls to eight of his clients, one of whom was Nothern. Upon receipt of Davis's message, Nothern told three other MFS portfolio managers of the plan to suspend the 30-year bond. These managers, in turn, respectively purchased $25 million, $10 million, and $5 million in par value 30-year bonds prior to 9:43 a.m., the time at which the public was notified of the suspension. Nothern himself made a $14.25 million purchase of bonds for the portfolios he managed at 9:51 a.m., also prior to the expiration of the embargo. Later the same day, supervisors at MFS were alerted of the possibility of illegal trading in the 30-year bond. Nothern initially denied that Davis had informed him that the information was embargoed until 10 a.m. but he subsequently admitted that he had been so informed by a voicemail message from Davis.

The SEC alleges that Nothern knew, recklessly disregarded or should have known that Davis tipped him in breach of a duty owed to the Treasury, thereby violating Exchange Act § 10(b) and Rule 10b-5, and thus has asked the court 1) to permanently restrain and enjoin Nothern from further violation of the Exchange Act, 2) to order Nothern to disgorge approximately $3.1 million, representing trading profits realized by the MFS portfolios

managed by Nothern and the three other managers Nothern tipped, plus prejudgment interest and 3) to order Nothern to pay a civil penalty pursuant to § 21A(a) of the Exchange Act.

Nothern has denied all material charges with respect to this claim and has provided six affirmative defenses in his amended answer of August 22, 2005, including: 1) the Complaint fails to state a claim upon which relief can be granted, 2) some or all of the SEC's claims are barred by the doctrine of laches, 3) SEC's claims are barred because of the doctrine of estoppel, 4) SEC's claims are barred because Treasury's embargo violates the First Amendment, 5) the relief the SEC seeks exceeds its authority or is otherwise not authorized by law and 6) the Complaint fails to plead fraud with particularity.  Nothern has requested a jury trial.

With respect to his affirmative defense of estoppel, Nothern argues that Treasury acted improperly by 1) allowing Nothern's consultant, Davis, access to material, nonpublic information at the subject press conference, 2) failing adequately to enforce the press embargo until 10:00 a.m. and 3) posting information regarding its decision to suspend the issuance of 30-year bonds on its website before 10:00 a.m.  The SEC has filed a Motion to Strike Defendant's Affirmative Defense of Estoppel.  Nothern, in turn, has filed an opposition to the motion to which the SEC replied by leave of Court.  A scheduling conference was held in

this case on October 14, 2005, at which time the Court heard brief oral arguments on the pending motion.

## II. Legal Analysis

### A. Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike under Rule 12(f) are generally disfavored, and this Court has previously stated that they "should be granted only when it is beyond cavil that the defendant[] could not prevail on them." Honeywell Consumer Prods., Inc. v. Windmere Corp., 993 F. Supp. 22, 24 (D. Mass. 1998)(Gorton, J.)(citations omitted). A plaintiff may prevail on a Rule 12(f) motion where "it clearly appears that the plaintiff would succeed despite any state of facts which could be proved in support of defense." FDIC v. Gladstone, 44 F. Supp. 2d 81, 85 (D. Mass. 1999)(citation omitted).

A noted treatise on federal practice and procedure states, with respect to Rule 12(f) motions:

> Motions to strike a defense as insufficient are not favored by the federal courts because of their somewhat dilatory and often harassing character. Thus, even when technically appropriate and well-founded, Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party.

5A Charles Alan Wright & Arthur R. Miller, Federal Practice &

Procedure § 1381, at 421-22 (3d ed. 2004). Moreover, "a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." Id.

### B. Defendant's Affirmative Defense of Estoppel

#### 1. Conditions Under Which Estoppel May Be Asserted Against the Government

Before this Court turns to the legal question of whether the SEC's motion should be allowed, it must first determine under what circumstances an estoppel defense can be raised against the United States or a litigating agency thereof. Defendant Nothern argues that he is within his rights to impose such a defense on the facts of this case, while the SEC counters that case law strictly limits when and how that defense can be raised against the government and that this case does not fall within those limited exceptions.

The doctrine of equitable estoppel in its traditional incarnation does not apply against the federal government. Frillz, Inc. v. Lader, 104 F.3d 515, 518 (1st Cir. 1997)(citations omitted). See also United States v. Ven-Fuel, Inc., 758 F.2d 741, 761 (1st Cir. 1985)(stating that the traditional doctrine of equitable estoppel does not apply fully in cases against the government)(quoting Akbarin v. INS, 669 F.2d 839, 842 (1st Cir. 1982)). Justice Stevens stated the general rule in Heckler v. Community Health Services, 467 U.S. 51 (1984):

-6-

>    When then the Government is unable to enforce the law
>    because the conduct of its agents has given rise to an
>    estoppel, the interest of the citizenry as a whole in
>    obedience to the rule of law is undermined.  It is for this
>    reason that it is well settled that the Government may not
>    be estopped on the same terms as any other litigant.

Id. at 60.  In Community Health Services, the Supreme Court stopped short of declaring a blanket rule barring estoppel claims against the government, but it certainly left little doubt that it saw few circumstances in which it would be appropriate. Moreover, a few years later in Office of Personnel Management v. Richmond, 496 U.S. 414 (1990), the Supreme Court concluded:

>    In sum, Courts of Appeals have taken our statements as an
>    invitation to search for an appropriate case in which to
>    apply estoppel against the Government, yet we have reversed
>    every finding of estoppel that we have reviewed.

Id. at 422.  The First Circuit has held that "[i]f estoppel against the government poses any viability...the phenomenon occurs only in the most extreme circumstances." Dantram Inc. v. United States Dept. of Labor, 171 F.3d 58, 66 (1st Cir. 1999).

   2.   **Elements of Defendant's Estoppel Defense**

Parties have had a very difficult time asserting estoppel against the government due to the very high bar the Supreme Court has set for them.  The Supreme Court has held that a party asserting estoppel against the government must demonstrate 1) the traditional elements of estoppel and 2) some form of "affirmative misconduct" on the part of the government.

As to the first element, namely demonstrating the

traditional elements of estoppel, the Supreme Court laid out the test in Community Health Services. Quoting the Restatement (Second) of Torts, the Court presented the principles of estoppel as follows:

> If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act...the first person is not entitled...to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired.

Community Health Services, 467 U.S. at 59. Justice Stevens, speaking for the Court, then summarized:

> Thus, the party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.

Id. (citations omitted).

The second element that a party must demonstrate when asserting estoppel against the government is more amorphous. The Supreme Court has repeatedly held that the party must begin by satisfying the traditional estoppel criteria but then proceed one step farther. The Court has not been particularly clear as to what a party must demonstrate in going beyond the traditional estoppel criteria except to affirm that it must demonstrate "affirmative misconduct" on the part of the government. See Office of Personnel Management, 496 U.S. at 421; INS v. Hibi, 414

U.S. 5, 8 (1973). Even the meaning of that particular term remains elusive. See Schweiker v. Hansen, 450 U.S. 785 (1981)(Marshall, J., dissenting)("The apparent message of today's decision – that we will know an estoppel when we see one – provides inadequate guidance to the lower courts in an area of the law that, contrary to the majority's view, is far from settled."). Courts of Appeals have groped in the dark trying to determine which cases qualify as one of the exceptional circumstances envisioned in Community Health Services, yet the Supreme Court has consistently reversed every finding of estoppel it has reviewed.

The First Circuit has cautiously taken up the challenge when it stated: "At a minimum, the party raising the defense [of estoppel] must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign." Ven-Fuel, 758 F.2d at 761. Neither carelessness nor a reluctance to be of assistance are tantamount to affirmative misbehavior. Id.

### 3. Application to Defendant's Case

After reviewing the case law from both the Supreme Court and the First Circuit, the SEC argues that Nothern not only cannot demonstrate that the government engaged in affirmative misconduct towards him, it cannot even make out a colorable argument on traditional principles of estoppel. The SEC contends that Nothern does not allege, nor can he show, that the SEC or the

Treasury Department made any misrepresentation of fact to him upon which he could have reasonably relied.

Specifically, the SEC points out that Nothern does not claim that he was personally involved in any affirmative conduct taken by Treasury with respect to its October 31, 2001 press conference or that he relied directly upon any representation made by Treasury at that conference because he did not attend it. Instead, Nothern relied on material, nonpublic information provided to him by his consultant, Davis, when he purchased the 30-year bonds at issue. As the SEC contends, whether Davis should have been given access to the subject information does not shield Nothern from liability for trading on it when he knew, or should have known, that it was embargoed, nor does it create an estoppel defense for Nothern.

The arguments of the SEC are well taken. First, Nothern does not meet the requirements of the threshold question for estoppel. He was not at the October 31, 2001 press conference at Treasury and, therefore, cannot have relied to his detriment on any misrepresentation of fact by Treasury. Nothern's estoppel defense is based on the theory that Treasury acted improperly by allowing his consultant access to material, nonpublic information at the subject press conference. But that contention lacks merit because even if Nothern's factual assertions about Treasury's affirmative misconduct are believed, he has no estoppel defense

-10-

because he, personally, did not rely on it.

Moreover, Nothern cannot make the alternative argument that the Treasury Department behaved inappropriately by releasing information regarding the suspension of 30-year bonds on its website before the end of the short embargo period. Even if that were true, Nothern does not contend that he reviewed or relied on the information posted on Treasury's website when he made the illegal purchases at issue. Without detrimental reliance on the part of the party asserting estoppel, there can be no valid estoppel defense.

Even if this Court were satisfied that Nothern had made out a convincing case that his defense meets the traditional estoppel requirements, he has not begun to cross the higher threshold set by the Supreme Court and First Circuit for asserting estoppel against the government. Nothern's estoppel defense does not evoke the kind of affirmative misconduct on the part of the government envisioned by the Supreme Court. Moreover, as the First Circuit stated clearly in <u>Ven Fuel</u>, government carelessness is not tantamount to affirmative misbehavior. 758 F.2d at 761. Mindful of that fact and cognizant that estoppel against the government arises in only "the most extreme circumstances," <u>Dantram</u>, 171 F.3d at 66, this Court concludes that Nothern's estoppel defense is insufficient.

### C. Prejudice to the SEC

Nevertheless, as noted above, motions pursuant to Fed. R. Civ. P. 12(f) are viewed by federal courts with healthy skepticism. Motions to strike are often considered to be dilatory, irksome or simply a device to accomplish unessential cosmetic surgery to the pleadings. For those reasons, even when technically appropriate and well-founded, Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party. 5A Wright & Miller § 1381, at 421-22.

The SEC argues that legally insufficient defenses should be weeded out at an early stage of the lawsuit. It asserts that it does not have the time or resources to litigate meritless issues and that by striking Nothern's estoppel defense the case will be simplified and time and resources will be saved.

The SEC has done little to point out specific instances where Nothern's estoppel defense would actually cause it to expend inordinate amounts of time and money but the fact remains that his affirmative defense is ill-begotten and appropriately stricken. In this matter, the uncontroverted facts are that Nothern did not attend the October 31, 2001 press conference at Treasury nor view the Treasury Department website before the 10:00 a.m. embargo was lifted. Further discovery will not change the fact that Nothern cannot meet the standard requirements of an estoppel defense much less one asserted against the government.

Under the circumstances of the case, the motion will be allowed.

### ORDER

In accordance with the foregoing, the SEC's Motion to Strike Defendant's Affirmative Defense of Estoppel (Docket No. 16) is **ALLOWED**. The SEC's request for such other and further relief as this Court may deem just and proper, such as sanctions, is **DENIED** as moot.

**So ordered.**

                                          /s/ Nathaniel M. Gorton
                                          Nathaniel M. Gorton
                                          United States District Judge

Dated November 4, 2005