UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | Civil Action No. 05-CV-10983 (NMG) |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| STEVEN E. NOTHERN, | ) ) |  |
| Defendant. | ) |  |

**U.S. SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO
DEFENDANT STEVEN E. NOTHERN'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Despite the fact that the plaintiff U.S. Securities and Exchange Commission (the "SEC") has provided defendant Steven E. Nothern ("Nothern") with a copy of *all* of the non-privileged documents contained in its investigative file related to this case, Nothern has moved this Court to compel the SEC to produce documents from every department and agency of the United States government that are responsive to his 66 overly broad requests for production of documents even though those documents are not within the SEC's possession, custody or control. Nothern's Motion to Compel rests on the unfounded assumption that the federal government, including its hundreds of agencies, each with their own specific missions and particular jurisdictions, ought to be considered one entity under the Federal Rules of Civil Procedure (the "Federal Rules"). Nothern's Motion lacks legal merit, is filled with factual inaccuracies, and should be denied.[1]

---

[1] All references to Nothern's Amended Memorandum Filed In Support of His Motion to Compel Production Of Documents will be referred to herein as ("Nothern's Motion" or "Motion").

## I.  FACTS

### A.  Nothern's Insider Trading In The 30-Year Bond.

The SEC brought this enforcement action on May 12, 2005, alleging that on October 31, 2001, Nothern, a former mutual fund portfolio manager at Massachusetts Financial Services Company ("MFS"), violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j (b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] by engaging in illegal securities trading based on material nonpublic information he received that the United States Department of Treasury ("Treasury") was going to suspend issuance of the 30-year bond. The SEC's complaint is based on the following facts.

On October 31, 2001, Peter J. Davis Jr., a Washington, D.C.-based consultant, hired by MFS, attended a refunding press conference at Treasury. Treasury subjected the information released at this conference, and prior refunding conferences, to an embargo until a specified time. "[A]t the beginning of the press conference, before the question and answer period, and at the conclusion" of the October 31 press conference, a Treasury Public Affairs Specialist announced that the information provided at the conference would be embargoed until 10 a.m.[2] *See* Exh. A to Declaration of John J. Rossetti Jr. In Support of U.S. Securities and Exchange Commission's Opposition to Defendant Steven E. Nothern's Motion to Compel Production of Documents ("Rossetti Decl.") at 2. During the October 31 conference, Under Secretary for Domestic Finance, Peter R. Fisher, announced, in part, that Treasury would be canceling future issuance of the 30-year bond. The refunding conference ended at approximately 9:25 a.m. *See* Exh. B to Rossetti Decl. at 1. The doors to the conference room remained closed during the conference.[3]

---

[2] On October 30, 2001, Treasury issued a press release stating Peter R. Fisher, Under Secretary for Domestic Finance, would announce the next day the government's quarterly refunding needs at a 9 a.m. news conference, and that the information there announced would be embargoed until 10 a.m. *See* Exh. B to Currid Decl.

[3] In his Motion, Nothern is either disingenuously attempting to misstate the record or carelessly doing so by citing Jill Ousley's testimony for support of his contention that the doors to the conference room were open during the October 31 refunding conference. Ousley, a former Director of Treasury's Office of Market Finance, resigned from Treasury in December 1999 and was not present at the October 31 refunding conference. Rather than citing observations of someone who was actually present at that

2

At the end of the conference, Davis left the Treasury building, and once outside used his cell phone to call a number of clients, including Nothern. *See* Exh. D to Rossetti Decl. at 21.

On September 3, 2003, Davis pleaded guilty to criminal charges resulting from his actions in this case,[4] and admitted that he attended Treasury refunding conferences, including the October 31, 2001 refunding conference, "pursuant to an agreement that he had with the Treasury Department that he would abide by the embargo and keep all information disseminated there confidential until the embargo expired." *Id.* at 19. Davis knew that "the information disseminated in the press conference was embargoed by Treasury officials, such that it could not be published or divulged before a specific time shortly after the press conference concluded." *Id.* at 21. Davis also admitted that he violated his duty to Treasury to keep the information that he heard at Treasury's refunding press conferences confidential until the embargo expired by calling clients that he thought might have an interest in the information so that they could "make significant moves in advance of the market responding to the official public release." *Id.* Nothern was one of these clients.[5]

---

refunding conference, the defendant cites Ousley's testimony in which she described the doors being open during refunding conferences she attended when she was at Treasury. However, the Treasury OIG report, which the defendant cites liberally in his Motion, discusses and attaches as an exhibit the interview of Frances Anderson who explained she was outside the room where the October 31 refunding conference room was being held and that the doors were closed. *See* Exh. C to Rossetti Decl. at 2.

[4] Davis pleaded guilty in the U.S. District Court for the Southern District of New York to a three-count criminal information charging him with: (1) Conspiracy to Defraud the United States, Convert Property of the United States, Commit Fraud in Connection with the Sale of Securities, and Wire Fraud; (2) Conversion of Property of the United States; and (3) Securities Fraud. *See* Exh. D to Rossetti Decl. at 22-24. On March 18, 2005, the Court sentenced Davis to two years probation and a $30,000 fine. *See* Exh. E to Rossetti Decl. at 14.

[5] Nothern's claim that documents related to another reporter's possible violation of his duty to comply with Treasury's embargo are relevant to this case is false. Motion at 3, 8. Davis has admitted that he violated his duty to Treasury by tipping clients, including Nothern, who then used the information to trade. Moreover, the bond cancellation information did not become public until after Nothern traded, when the information was fully impounded into the market. *See U.S. v. Libera*, 989 F.2d 596 (S.D.N.Y. 1993); *SEC v. Texas Gulf Sulfur*, 401 F.2d 833 (S.D.N.Y. 1968).

The facts that the SEC has gathered from the documents in this case show that Davis called Nothern at approximately 9:38 a.m. on October 31 and left a voice-mail message. *See* Exh. F to Rossetti Decl. Nothern immediately retrieved and listened to Davis's message. During his pre-lawsuit investigative testimony, Nothern admitted that in the voicemail message Davis informed him that "Peter Fisher had indicated to Pete Davis that they'd be canceling the long bond and that there would be a press release because it was embargoed until 10 o'clock." *See* Exh. G to Rossetti Decl. at 111-112. Nothern understood that Peter Fisher was a Treasury official in the debt finance area who would have had access to market-sensitive information, such as Treasury's decision to suspend or cancel the 30-year bond. *Id*. at 116-117. Moreover, Nothern testified that it was "general knowledge" that the term "embargo" as it relates to another government department involves a process by which the department released what it deemed as market-sensitive information to reporters so that the reporters could digest the information and write stories before the information was released to the public. *Id*. at 99-100.

Immediately after retrieving this voicemail, Nothern relayed the material nonpublic information that he had received from Davis regarding Treasury's cancellation of the 30-year bond to three other MFS portfolio managers. *Id*. at 125-130. Nothern also told these three portfolio managers that he was going to purchase $25 million in par value of the 30-year bond for the portfolios that he managed. *Id*. at 125. Based on the information that they received from Nothern, the three other portfolio managers also placed orders to purchase 30-year bonds for the portfolios they managed. *See* Exhs. H, I, and J to Rossetti Decl. at 135-136; 76-77 and 79-82, respectively. In total, the amount of bonds purchased by Nothern and the three other portfolio managers equaled $65 million in par value. *See* Exh. G to Rossetti Decl. at 128. Records from Merrill Lynch, the broker executing the trade, indicate that Nothern and the three other portfolio managers authorized an MFS trader to place the order for the $65 million in bonds, and that the trader verbally placed the telephone order for the bonds with Merrill Lynch no later than 9:42 a.m. *See* Exh. K to Rossetti Decl. At 9:43 a.m., Treasury inadvertently posted a press release on its website announcing that it was canceling issuance of the 30-year bond. *See* Exh. L to

Declaration of Kevin B. Currid filed in support of Nothern's Motion ("Currid Decl."). Although the information about Treasury's cancellation of the 30-year bond was available on Treasury's website at 9:43, the information was not impounded into the market until much closer to 10 a.m., when the market price of the bond skyrocketed. *See* Exh. K to Currid Decl.

    **B.**    **The SEC's Independent Pre-lawsuit Investigation Into Nothern's Illegal Insider Trading And The SEC's Production Of All Non-Privileged Documents Contained In Its Investigative File.**

In early November 2001, based on media reports and communications with Treasury, the Staff of the SEC's Enforcement Division (the "Staff") initiated its pre-lawsuit investigation of possible illegal insider trading in the 30-year bond to determine if there were any violations of the federal securities laws.[6] The Staff conducted its investigation of this matter independent of any limited investigation being conducted by the Treasury's Office of Inspector General ("OIG"), or any other office in the Treasury. *See* Rossetti Decl. ¶ 2. The Staff determined which Treasury employees it wanted to interview and what topics would be covered in those interviews, which were scheduled with the assistance of Treasury's Office of General Counsel, who also represented the employees during the interviews. *See* Exh. L to Rossetti Decl. The Staff did not interview Treasury employees "summoned under the authority of the Treasury's Inspector General," as Nothern erroneously claims. Motion at 17.[7]

---

[6] On November 6, 2001, David D. Aufhauser, Treasury's General Counsel, also sent a written referral of this matter to Harvey Pitt, Chairman of the SEC. Exh. Q to Currid Decl. Although Mr. Aufhauser asked Chairman Pitt to keep him advised, the SEC did not provide any substantive updates of its investigation to Treasury. Rather, the SEC, as a courtesy, merely notified Treasury of events related to the SEC's investigation, such as the fact that the SEC was filing its September 3, 2003 complaint. *See* Rossetti Decl. ¶ 2.

[7] From November 7, 2001 through October 30, 2002, the Staff conducted twelve interviews of eleven then present and former Treasury employees. The Staff also took the investigative testimony of one of the eleven employees. Contrary to Nothern's baseless allegation that the SEC "participated in interviews of Treasury employees conducted by Treasury's Office of Inspector General," Motion at 5, the Staff only conducted interviews of employees which it scheduled. Furthermore, the OIG did not attend four of the witness interviews scheduled by the SEC, three of which were conducted after the OIG issued its January 2, 2002 Report of Investigation. *See* Rossetti Decl. ¶ 3; and Exh. G to Currid Decl.

The OIG conducted its own limited investigation in this matter, apparently to determine if there was "any evidence of unauthorized disclosure of market sensitive information by Treasury employees." *See* Exh. G to Currid Decl. at 1. The Staff did not attend the witness interviews scheduled and conducted by the OIG. *See* Exhs. M-O to Rossetti Decl. Upon information and belief, the OIG's two-month investigation lasted from early November 2001 until January 2, 2002 when it issued its report, which stated in part that:

> As of the date of this report, the SEC has not identified any additional Treasury employees to be interviewed. The SEC has declined to disclose to the OIG the identities of any non-Treasury employees they have interviewed or intend to interview, nor have they discussed with the OIG the future direction of their inquiry.

*Id.* at 11-12.[8] Other than the information contained in the OIG's report, the SEC is unaware of the extent of the OIG's investigation.[9]

On or about October 6, 2005, pursuant to Rule 26(a) of the Federal Rules, the SEC served Nothern with its initial disclosures and made available all of the non-privileged documents collected by the SEC during its pre-lawsuit investigation. To date, the SEC has produced to Nothern in electronic form approximately 52 boxes consisting of over 136,400 pages of documents, including *all* of the documents that the SEC received from Treasury and *all* non-privileged documents provided to the SEC by the United States Attorney's Office for the Southern District of New York.

Although the SEC had notified Nothern's counsel that it would make its entire non-privileged investigative file available to Nothern, on September 27, 2005, Nothern's counsel

---

[8] In his Motion, Nothern makes the unsubstantiated claim that the OIG supplied drafts of its report to the SEC; it did not do so. Motion at 5. Rather, the OIG faxed a copy of the narrative section of the report to the Staff on January 15, 2002, twelve days *after* it issued the report, a point that counsel for the SEC explained to defense counsel in a conference call on December 13, 2005. See Exh. P to Rossetti Decl.

[9] The United States Attorney's Office for the Southern District of New York ("USAO") conducted a criminal investigation of this matter. The USAO filed an access request with the SEC on November 9, 2001 and the SEC granted the request on November 14, 2001. *See* Exh. Q to Rossetti Decl. During the course of this parallel investigation the SEC shared information with the USAO. The USAO also shared information with the SEC that was not gathered through the use of a grand jury.

served the SEC with 66 document requests, pursuant to Rule 34 of the Federal Rules ("Rule 34"). In these requests, Nothern demanded that the SEC produce any and all responsive documents held by the hundreds of other agencies and departments of the federal government. In the "Instructions" section of his requests, Nothern essentially defined the plaintiff in this case as not only including the SEC, but the entire United States government. *See* Exh. T to Currid Decl at 2. Many of Nothern's 66 document requests are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. *See* Exh. U to Currid Decl. (containing the SEC's objections and responses to Nothern's requests).[10] In its response to Nothern's document requests, the SEC asserted various objections, including, but not limited to, an objection to producing documents from other government agencies that were outside of the SEC's possession, custody and control.

### C. The SEC's Efforts To Resolve This Discovery Dispute.

The SEC has made every effort to resolve this discovery dispute without Court intervention. On December 13, 2005, counsel for the SEC conducted an hour-long telephone call with Nothern's counsel in which they offered to undertake reasonable efforts to assist Nothern in obtaining documents from other government agencies, even though the SEC had no legal obligation to undertake such efforts. Under the SEC's proposal, Nothern would provide a list of documents that he sought from other federal departments and agencies.[11] The SEC would submit the request to the other agencies with a cover letter, drafted with Nothern's counsel's input, stating that the case was in litigation, and asking that the agencies produce documents contained

---

[10] For example, in Request No. 37 Nothern seeks to have the SEC produce all documents from all agencies and departments of the federal government regarding policies on press or information embargoes. And, in Request No. 39 Nothern seeks to have the SEC produce all documents concerning the document retention policies from August 1, 2001 to the present of all agencies and departments of the federal government.

[11] Counsel for the SEC also repeatedly explained to defense counsel that while they suggested that the defense narrow their 66 overly broad requests for documents in order to increase the likelihood of the other agencies producing the documents, the SEC was not requiring that the defense narrow its requests, and was willing to submit all 66 requests to the government agencies identified by the defense.

7

in their files that were responsive to Nothern's requests for the benefit of the SEC and Nothern. The SEC's offer consisted of only two conditions: (1) that Nothern specify the agencies to whom he wanted the requests sent; and (2) that Nothern agree not to file a motion to compel against the SEC if the other agencies, which the SEC did not control, failed to comply with the requests, failed to produce a privilege log, or were deficient in their document production. *See* Exh. V to Currid Decl. The SEC's counsel explained that these conditions were necessary because, as an independent agency of the federal government, the SEC has no authority or power to compel other federal departments or agencies to produce documents. Accordingly, the SEC did not want to be held responsible for other agencies' refusal or failure to produce documents. Nothern informed the SEC that he did not wish to obtain the documents in this fashion because he wanted to be able to hold the SEC responsible if the other departments and agencies refused to comply with the SEC's voluntary request. *See* Exh. V to Currid Decl.

Nothern's refusal to accept the SEC's offer to assist him in obtaining documents from other government agencies that are responsive to his document requests, – assuming such documents even exist – indicates that his primary interest in filing this Motion is not to obtain information, but to set the SEC up to fail by putting it in a situation where it is held responsible for the production of documents that it does not have in its possession or custody, and which it does not control. Nothern's motion should be denied.

## II. ARGUMENT

### A. The Law Does Not Require The SEC To Obtain And Produce Documents From Other Government Departments And Agencies In Response To Nothern's Document Requests.

#### 1. The Plaintiff In This Case Is The SEC, Not All Agencies And Departments Of The Government.

Nothern is asking this Court to find that because this case was filed by the SEC, an independent agency of the United States government, the entire government, including all of its departments and agencies in all three branches, should be considered party plaintiffs to this

action for purposes of Rule 34, when responding to his 66 overly broad and unduly burdensome discovery requests. *See* Exh. T to Currid Decl. Nothern's position is not supported by either the facts, or the law, and should be rejected.

This case was filed on behalf of the SEC, not the entire United States government. The SEC is comprised of five Commissioners who are: (1) appointed by the President, with the advice and consent of the Senate, for fixed terms of five years that do not all lapse at the same time; (2) representative of both political parties; and (3) not subject to removal or discipline by the President.[12] 15 U.S.C. § 78d. Unlike Executive Branch departments, like the Department of Justice ("Justice"), or Treasury, the SEC is an independent regulatory agency of the government, and is essentially free from the control of the government's Executive Branch. *See U.S. v. AT&T*, 461 F. Supp. 1314, 1335-1336 (D.D.C. 1978) ("*AT&T*"). As an independent agency, the SEC was "intentionally created to be somewhat apart from the government, in general, and from the White House in particular." *Id.* at 1335.

In *AT&T*, one of the few decisions that addresses the issue of whether all of the departments and agencies of the government should be considered to be party plaintiffs for purposes of Rule 34 of the Federal Rules when a lawsuit is instituted by one government agency or department, the United States District Court for the District of Columbia summarily rejected the very legal argument that Nothern asserts in his Motion.[13] *AT&T* was filed by Justice on behalf of the United States. Although the United States was listed as the plaintiff in the action, the court found that the plaintiff did not include all agencies of the United States government,

---

[12] The fact that the Commissioners are appointed by the President does not make the SEC a part of the Executive Branch. Although the Exchange Act of 1934 is "silent regarding the removal of Commissioners, members of independent agencies such as the SEC are generally removable by Congress only for impeachable offenses." *SEC v. Warner*, 652 F. Supp. 647, 649 (S.D. Fla. 1987). Accordingly, the SEC is not controlled by the President, or any other Executive Branch departments or agencies.

[13] In *AT&T* the court noted that "there is a paucity of authority on this issue in the area of civil litigation, and there certainly has been no instance of discovery being sought or required on as broad a scale, involving as many departments of government as in this case." 461 F. Supp. at 1333. Here Nothern is seeking discovery that is arguably broader than the discovery sought in *AT&T*.

9

and denied the defendants' motion to compel Justice to produce document contained in the files of the Federal Communications Commission ("FCC") and other independent regulatory agencies.

Specifically, the court held that "there is no basis for holding that a quasi-legislative agency, which the law necessarily regards as an independent body created to execute independent responsibilities, becomes a 'plaintiff' when the Department of Justice chooses to file a lawsuit on behalf of the United States." *Id*. at 1335. The court noted that while Justice and other the departments of the Executive Branch could be considered to be plaintiffs because of the "peculiar facts" of the case "which involve[d] many departments and their evidence," documents of independent regulatory agencies could not. *Id*. at 1334-1335. The court also found that "the plain fact is that a party cannot produce that which it does not have . . . [and] in a very real, practical sense, [an independent regulatory agency's] documents are not in the control of either the Department of Justice or the Executive Branch." *Id*. at 1335. Moreover, the court concluded that to hold an independent regulatory agency of the government to be a plaintiff in the case for purposes of Rule 34 "would not only contradict over forty years of legal history, but would effectively leave the conduct of this lawsuit, and perhaps of other actions brought by the government vulnerable to a virtual veto by one or more independent regulatory agencies." *Id*. at 1336.

The decision in *AT&T* is directly applicable to this case. Nothern attempts, unsuccessfully, to distinguish *AT&T* on the grounds that it involved defendants' efforts to compel Executive Branch agencies to produce documents held by independent government agencies, while this case involves a request to compel an independent government agency to produce documents held by Executive Branch agencies and all other agencies and departments of all branches of the government. This is a distinction without a difference. Although the roles of the agencies in this case are reversed from the roles of the agencies in *AT&T*, the premise upon which the court based its decision in *AT&T* – that independent regulatory agencies of the government and departments of the Executive Branch, like Treasury and Justice, are separate and distinct entities that do not possess or control one another, or one another's documents –

nonetheless applies. The SEC, like other independent regulatory agencies, is not part of the Executive Branch, or any other branch of the government, does not control documents held by any other government departments or agencies, and should not be compelled to produce documents from other government departments or agencies that are not within its possession.

The holding in *U.S. v. Davis*, 140 F.R.D. 261, 263 (D.R.I. 1992) further supports the SEC's argument that other government departments and agencies should not be considered plaintiffs in this case. In *U.S. v. Davis*, the United States District Court for the District of Rhode Island declined to accept a defendant's claim that other non-Executive Branch agencies become plaintiffs for purposes of Rule 34 when an action is filed by one agency of the government. Specifically the court rejected the defendant's argument that Justice, which initiated the action on behalf of the United States, was required to obtain and produce a log of documents from a subcommittee of the House of Representatives. The court found that the three branches of government function as "separate and distinct" entities, and that the United States Congress did not automatically become a plaintiff to an action filed on behalf of the United States. *Id.*

*In re Air Crash at Dallas/Forth Worth Airport*, 117 F.R.D. 392, 393 (N.D. Texas 1987), also supports the SEC's argument that Nothern's Motion should be denied. In *In re Air Crash*, the court denied a motion to compel the United States to produce documents contained in the files of the National Transportation Safety Board ("NTSB") in response to a document request by Delta Airlines, Inc.[14] The court found that the NTSB functioned as "an entirely autonomous entity, not subject to any other executive agency" and concluded that "the NTSB has sole and exclusive control over the analysis reports etc." at issue. *Id.*

### 2.   Documents Held By Agencies And Departments Of The United States Government Other Than The SEC Are Not Within The SEC's Possession Custody Or Control.

The SEC should also not be required to obtain and produce documents from other agencies of the government in response to Nothern's 66 overly broad document requests not only

---

[14] Like the SEC, the NTSB is an independent establishment of the United States Government, composed of five members appointed by the President. 49 U.S.C. § 1101.

because it is the only party plaintiff involved in this action, but also because Rule 34 limits a party's discovery responses to those documents "which are in the possession, custody or control of the party." This Court has determined that documents are considered to be under a party's "control" when that party has the "right, authority or ability to obtain those documents *upon demand.*" *Green v. Fulton*, 157 F.R.D. 136, 142 (D. Me. 1994) (citing *Haseotes v. Abacab Int'l Computers, Inc.*, 120 F.R.D. 12, 15 (D. Mass. 1988)) (other citations omitted) (emphasis added). The party seeking production has the burden of proving control. *SEC v. Credit Bancorp, LTD.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000). Nothern has not, and indeed cannot, satisfy this burden.

As stated above, the SEC has produced *all* of the non-privileged documents that it obtained during its pre-lawsuit investigation, which consisted of more than 136,400 pages. This production included all of the non-privileged documents related to this case contained in the SEC's files that the SEC had obtained from Treasury, Justice, the CFTC, and any other agency of the government. The SEC has no right, authority or ability to demand that any other government agencies produce documents in response to Nothern's document requests. The Chairman of the SEC has no authority over any other agencies of the government, and therefore cannot force any other agencies to produce documents to the SEC in response to its requests. Indeed, there is no entity or person that has control over all of the agencies and departments of every branch of the government. Compelling the SEC to produce responsive documents from all other government departments and agencies, which it does not control, and holding the SEC responsible if those other government departments and agencies refuse to allow the SEC access to some or all of their responsive documents, would provide those other departments and agencies with the power to effect the conduct and future of this lawsuit, which could jeopardize the SEC's ability to successfully enforce the federal securities laws in this case. *See AT&T,* 461 F. Supp. at 1336.

   3.  **The Cases That Nothern Relies On In Support Of His Motion To Compel Are Factually And Legally Distinguishable From This Case.**

The three cases that Nothern relies on in support of his Motion, *Ghana Supply Commission v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979)("*Ghana Supply*"),

12

*Harvey Aluminum v. NLRB,* 335 F.2d 749 (9th Cir. 1964)("*Harvey Aluminum*"), *and U.S. v. National Broadcasting Co, Inc.,* 65 F.R.D. 415 (C.D. Cal. 1974)("*NBC*"), fail to support his claim that the SEC is obligated to obtain and produce documents from all other government departments and agencies in response to his discovery requests. All three cases involved factual and legal issues that distinguish them from this case.

This Court's decision in *Ghana Supply*, is inapplicable here because it did not address, let alone decide, whether an independent regulatory agency of the government has an obligation under Rule 34 to obtain and produce documents from other agencies of the government in response to a defendant's discovery requests. The Court in *Ghana Supply* concluded that in a case filed by one government agency on behalf of the government as whole, the government may not refuse to produce documents from other governmental agencies *on the basis of governmental privilege.* 83 F.R.D. at 593-595. Applying Massachusetts state law, the Court found that the Ghana Supply Commission ("GSC") was acting as an agent of the Republic of Ghana when it instituted the lawsuit and determined that the Republic of Ghana was a party-plaintiff to the lawsuit. *Id.* at 592. The Court then found that the Republic of Ghana had waived its right to claim governmental privilege, except to documents that contained "military or diplomatic secrets" when it filed suit. *Id.* at 593. Accordingly, the Court held that the Republic of Ghana was required to make available to the defendants all information relevant to the defense that was in the possession, custody and control of the Ghanaian government, and could not allow particular agencies of the government to withhold documents on the basis of privilege. *Id.* at 595. The Court specifically limited its order compelling GSC to produce documents relevant to the defense that GSC had refused to produce "solely on the claims of intragovernmental or executive privilege." *Id.*

Unlike in *Ghana Supply,* this action has been brought by solely on behalf of the SEC, an independent regulatory agency of the government, not the entire government. Moreover, the SEC's objection to producing the documents sought by Nothern's requests has nothing to do with claims of governmental privilege, but relates solely to the fact that the SEC does not have the

13

documents in its possession custody or control. *See AT&T*, 461 F. Supp at 1335-1336. Accordingly, the Court should find that *Ghana Supply* is inapplicable here.

The Ninth Circuit's decision in *Harvey Aluminum* also has no bearing on this case. *Harvey Aluminum* involved the NLRB's obligations under 18 U.S.C.A. § 3500 ("the Jencks Act") to produce statements made by witnesses to the Departments of Labor ("Labor") and Justice. 335 F.2d at 752-754. The Ninth Circuit, noted that the language of the Jencks Act requires the production of statements "in the possession of the United States." *Id*. at 754. The court also found that the Jencks Act and the opinion in *U.S. v. Jencks*, 353 U.S. 657 (1957) were based on the rationale that "when the government relies upon a witness's testimony in support of the government's claim, it cannot in simple justice deny access to prior statements of the witness which may impeach that testimony." *Id*. Based on the language and rationale of the Jencks Act and the Jencks opinion, the Ninth Circuit concluded that because the NLRB, Justice and Labor were all "parts of the government of the United States," the government was required to produce any witness statements relating to the witness's testimony held within those agencies to the defendant. *Id*. The court explained that the Jencks Act applies "with equal vigor whether the statements are in the possession of the agency conducting the hearing or of another agency of the government." *Id*.

In stark contrast to the facts of *Harvey Aluminum*, in this case Nothern is not seeking production of Jencks Act statements, or statements held within one branch of the government, but is seeking to compel the SEC, to obtain and produce documents responsive to his civil discovery requests from every agency, in every branch of the government. In *AT&T*, the United States District Court for the District of Columbia distinguished *Harvey Aluminum* on this very basis. The court found that in *Harvey Aluminum* the Ninth Circuit "was essentially concerned with Jencks Act statements in the possession of executive departments." *AT&T*, 461 F. Supp. at 1336, n.63.

The United States District Court for the Central District of California's holding in *NBC* also fails to support Nothern's Motion. *NBC* was an antitrust suit in which the court dismissed

14

the action because one department of the Executive Branch, Justice, refused to produce documents located in another office of the Executive Branch, the Executive Office of the President in response to the court's discovery order. 65 F.R.D. at 419-421. Nothern's attempt to apply the holding in *NBC* to this case is misplaced. In fact, in *AT&T* the court found that neither the decision in *NBC*, nor the principles underlying the decision, "provide the slightest support for the proposition that an independent regulatory commission . . . as distinguished from an Executive Branch agency is to be considered a party plaintiff in an antitrust suit" brought on behalf of the government of the United States. *AT&T*, 461 F. Supp. at 1336, n.64. Similarly, *NBC* does not support Nothern's argument that for purposes of responding to his Rule 34 document requests, Executive Branch agencies, like Justice and Treasury, should be considered to be party plaintiffs in this action brought by the SEC.

> B. **Nothern's Claim That Other Government Departments And Agencies Have Relevant Documents That He Cannot Obtain Through Any Other Means Is False And Should Be Rejected.**
>
> > 1. **Nothern's Assertion That Other Government Agencies Have Responsive Documents That Have Not Already Been Produced By The SEC Is Based On Pure Speculation.**

Contrary to the broad, unfounded allegations made in his Motion, Nothern does not have any personal knowledge that any agency of the government has any documents responsive to his 66 document requests that have not already been produced by the SEC. While Nothern alleges that he is seeking relevant documents from other government agencies, which the SEC did not produce, he has no proof that any such documents actually exist.[15] Accordingly, Nothern's claim that "other government departments likely have more" documents, Motion at 8, is based purely on speculation. Even if agencies or departments of the government, other than the SEC, have documents in their files that are responsive to Nothern's requests, as stated above, those

---

[15] In its response to Nothern's November 11, 2005 FOIA request, Justice warned Nothern that he "must not assume that records" responsive to his request existed. Exh. Y to Currid Decl.

15

documents are not within the possession, custody or control of the SEC, and the SEC has no obligation to obtain and produce them.

### 2. Nothern Has Failed To Exhaust The Valid Means Available To Him To Obtain The Documents Sought In His Overly Broad Requests.

Not surprisingly, Nothern cannot justify why he has taken little to no action to obtain documents directly from Treasury, Justice, the CFTC or any other departments or agencies of the government, except for the SEC.

Although Nothern maintains that he cannot get documents directly from other government agencies, he admits that he has not even attempted to seek any documents by complying with the "housekeeping" regulations adopted by those agencies based on the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (hereinafter these regulations will be referred to as "*Touhy* regulations"). Pursuant to the federal housekeeping statute, 5 U.S.C. § 301, most government agencies have adopted *Touhy* regulations to govern the disclosure of their official records and information. Nothern argues that he should not be required to comply with the *Touhy* regulations because he does not believe that he has a "realistic opportunity" to obtain documents by requesting them directly from other government agencies because the agencies have "limitless discretion" to deny his requests. Motion at 13 (citing 31 C.F.R. §1.11 et seq. (Treasury regulations); 28 C.F.R. § 16.21 et seq. (Justice regulations)). Nothern makes a gross overstatement when he suggests that federal agencies' *Touhy* regulations allow them to deny requests for any reason whatsoever. While the *Touhy* regulations provide factors that agency counsel should consider when responding to requests for information, these factors are far from "limitless." *See, e.g.*, 31 C.F.R. 1.11 (e) (factors Treasury's counsel considers). Furthermore, because Nothern has not even tried to seek documents pursuant to the *Touhy* regulations, his claim that he will not be able to obtain documents directly from agencies through compliance with these regulations is purely speculative and should be rejected.

The Court should also reject Nothern's assertion that the SEC has the authority to request documents directly from other agencies on his behalf without ever having to comply with the

*Touhy* regulations. Although some government agencies provide a mechanism for other government agencies or government officers acting in their official capacity to gain access to information without complying with all of the *Touhy* regulations, in this case, where the SEC is being asked to act as go-between, and request documents on behalf of a defendant in a litigation, it is likely that other government agencies will find that the SEC is not seeking the information in its official capacity for official SEC business and will require the SEC to comply with the *Touhy* regulations.

Like the excuses that Nothern makes in an attempt to rationalize his complete failure to seek documents through compliance with the *Touhy* regulations, Nothern's explanation as to why he cannot obtain the documents he seeks by submitting requests to other government departments and agencies under the Freedom of Information Act ("FOIA") is also unpersuasive. Nothern notes that FOIA contains exemptions, but neglects to mention that the purpose of FOIA is allow "full agency disclosure" and that any exemptions "must be narrowly construed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-152 (1989) (citations and internal quotations omitted). There is no reason to believe that other agencies and departments of the government will not, in keeping with the purpose of FOIA, produce documents in response to Nothern's requests. Although Nothern claims that he submitted FOIA requests to Treasury and Justice,[16] he did not provide either department with an opportunity to fully respond to his requests before filing this Motion seeking to compel the SEC to produce documents from Treasury, Justice and other agencies that it does not possess or control.[17]

---

[16] In his Motion, Nothern makes much of the fact that during the parties Rule 31.1 conference the SEC's Staff merely suggested that he narrow his 66 document requests before the SEC submitted the requests to other government agencies, Motion at 7. The SEC, however, notes that Nothern had no problem narrowing his requests from 66 to 36 in his FOIA application to Justice. Exh. X to Currid Decl.

[17] Nothern claims that "so far" he has not received much information from Treasury. Motion at 13. This statement indicates that Treasury is still responding to Nothern's requests. Additionally, Nothern's reference to the fact that in response to a FOIA request that he submitted before official discovery began in this case, the Treasury department provided him with a redacted version of its OIG report lends no support to his argument that he should not be required to obtain documents via the FOIA process. Upon information and belief, Nothern took no steps to challenge whether Treasury's production of a redacted

Additionally, Nothern's reference to an initial letter that he received from Justice regarding his FOIA request, that informed him that under the Privacy Act, 5 U.S.C. § 552a, he would have to provide Justice with a consent before it could legally produce documents that impacted a third party's personal privacy, does not support his claim that "FOIA is inadequate," nor does it justify his failure to exhaust the means available to him under FOIA. Exh. Y to Currid Decl. Nothern admits that he has not yet provided Justice with the third party consent, and therefore has not taken the necessary steps to legally obtain all of the documents that Justice is willing to produce under FOIA. At this stage in the FOIA process, it is too early to tell whether the results of Nothern's FOIA requests to other government departments and agencies will allow him to obtain the documents at issue in his Motion. If, however, Nothern's FOIA requests are denied, he is not without recourse. Nothern is free to appeal a denial of his FOIA requests to the responding agencies or departments at issue, and/or to challenge a denial by filing a FOIA lawsuit in United States District Court.

Nothern should at least be required to exhaust the means available to him under such provisions as FOIA and the *Touhy* regulations to obtain the documents that he is seeking directly from the federal departments and agencies that possess and control the documents. He should not be allowed to burden the SEC by forcing it to conduct his discovery for him.

C.   **Nothern's Due Process Argument Should Be Rejected.**

Contrary to Nothern's assertions, the three factors established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) ("*Mathews*") that determine what process is due in a particular situation only support denial of Nothern's Motion. The first *Mathews* factor, which is central to the Court's analysis of the process due in this case, is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Here the SEC has an interest in: (1) not being put into a position where it is forced to produce documents that it does not possess or control, (2) not

---

report was proper. Additionally, Nothern neglected to mention that he subsequently obtained an unredacted version of Treasury's OIG report, which he filed with this Court on October 14, 2005.

being held responsible for other government departments' or agencies' refusal or failure to provide the SEC with their records, (3) not being forced to produce a privilege log for documents other government agencies decide to withhold from production, and (4) not having the future of its enforcement suits rest in the hands of other government agencies. If the Court imposes the additional "procedural safeguard" that Nothern requests – "an order directing the SEC to request, obtain and produce to Nothern all relevant documents held by [all] federal agencies," Motion at 19-20 – the SEC will be put into a dangerous position where it will risk dismissal of this lawsuit if another agency of the government, that the SEC cannot control, refuses or neglects to produce all of the responsive documents in its files, (assuming any such documents exist), refuses or neglects to create a privilege log, or creates a privilege log that is deficient.

Furthermore, in order to impose Nothern's additional safeguard, this Court will necessarily have to find that other agencies and departments of the government either are, or should be treated as, party plaintiffs to this action for purposes of Rule 34. That finding will undoubtedly challenge the true independent status of not only the SEC, but all independent regulatory agencies of the federal government, and will also raise serious separation-of-powers problems. *See AT&T*, 461 F. Supp. at 1335, n.62 (finding that independent regulatory agencies were created to "somewhat apart from the rest of the government" and noting that in view of the quasi-legislative status of independent agencies, a requirement that those agencies be considered a party in an action filed by the Executive Branch "might well raise serious constitutional separation-of-powers problems"). The SEC and the United States government as a whole have a great interest in avoiding the negative consequences that are likely to result if the SEC is held to be in control of the documents contained in the files of all government agencies and departments. This government interest far outweighs any interests that Nothern has in obtaining an order that allows him to avoid the FOIA process and the *Touhy* regulations.

The remaining two *Mathews* factors: (1) the private interests that will be affected, and (2) Nothern's risk of erroneous deprivation of a private interest, also support denial of Nothern's Motion. 424 U.S. at 335. Nothern's private interests will not be affected if the SEC is not

compelled to produce documents from other government agencies that are outside of its possession, custody and control. As stated above, the SEC has produced all non-privileged documents in its files related to this case, whether exculpatory or not. Nothern's claim that the SEC has only obtained documents from other agencies that are favorable to its case while refusing to obtain other unfavorable evidence is baseless and false.[18] Moreover, Nothern has the ability to obtain any additional documents that he needs from other government departments and agencies through FOIA and by complying with each agency's *Touhy* regulations. Unless and until Nothern exhausts the means available to him to collect documents directly from other agencies, he cannot represent to this Court that his interests have, or will be, effected. Finally, because Nothern has valid alternative means available to him to obtain the documents that he seeks, he faces little to no risk of erroneous deprivations of his interests.

### III. CONCLUSION

For all of the foregoing reasons, the SEC respectfully requests that the Court deny Nothern's Motion to Compel.

Dated: March 3, 2006                          Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Erica Y. Williams
　　　　　　　　　　　　　　　　　　　　　　　　　　　Erica Y. Williams
　　　　　　　　　　　　　　　　　　　　　　　　　　　John J. Rossetti, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. Securities and Exchange Commissions
　　　　　　　　　　　　　　　　　　　　　　　　　　　100 F Street, N.E.
　　　　　　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20549-4010
　　　　　　　　　　　　　　　　　　　　　　　　　　　Phone:  (202) 551-4450
　　　　　　　　　　　　　　　　　　　　　　　　　　　Fax:      (202) 772-9245
　　　　　　　　　　　　　　　　　　　　　　　　　　　williamse@sec.gov

---

[18] It appears from Nothern's Motion, and the voluminous documents attached to the Currid Declaration filed in support of Nothern's Motion, that the SEC has in fact produced numerous documents that Nothern believes are favorable to his case. *See* Currid Decl. Exhs. A-W. Notably, many of these documents relate to Treasury's conduct during and around its announcement of the suspension of the 30-year bond. This Court has already ruled that any misconduct on behalf of Treasury does not create a valid defense to the SEC's insider trading claims in this case. *See* Memorandum and Order filed November 4, 2005.