UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | Civil Action No. 05-CV-10983 (NMG) |
| Plaintiff, | ) | |
| v. | ) ) | |
| STEVEN E. NOTHERN, | ) ) | |
| Defendant. | ) | |

U.S. SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO
DEFENDANT STEVEN E. NOTHERN'S RENEWED
MOTION TO COMPEL PRODUCTION OF DOCUMENTS

# TABLE OF CONTENTS

I. BACKGROUND ...................................................................................................2

II. ARGUMENT ......................................................................................................5

      A. The Law Does Not Require The SEC To Obtain And Produce
         Documents From Other Government Departments And Agencies In
         Response To Nothern's Document Requests......................................................6

      B. Nothern Should Be Required To Utilize The Procedures Afforded Him
         By Rule 45 Of The Federal Rules Of Civil Procedure, The *Touhy*
         Regulations Or FOIA To Obtain Documents From Treasury And Justice...........9

      C. Nothern's Request That Court Compel The SEC To Produce Privileged
         Documents From Its Files and The Files Of The Department of Justice
         Should Be Denied .........................................................................................11

         1. Documents Shared Between The SEC and Justice That Appear On
            The SEC's Privilege Log Are Protected From Disclosure Pursuant
            To The Attorney Work-Product Doctrine.....................................................12

         2. Nothern Cannot Meet The Heavy Burden Necessary To Overcome
            The Work-Product Privilege ......................................................................16

         3. Documents Shared Between The SEC And Justice That Appear On
            The SEC's Privilege Log Are Protected From Disclosure By The
            Governmental Deliberative Process Privilege .............................................17

III. CONCLUSION...................................................................................................19

## TABLE OF AUTHORITIES

FEDERAL CASES

*Carter v. Cornell University*, 173 F.R.D. 92 (S.D. N.Y. 1997)..........................................15

*Colonial Gas Co. v. Aetna Casualty & Surety Co.*, 139 F.R.D. 269
    (D. Mass. 1991). .............................................................................................16

*Connelly v. Dun & Bradstreet, Inc.*, 96 F.R.D. 339 (D. Mass. 1982)................................16

*Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, et al.*, 124 F.3d
    1304 (D.C. Cir. 1997) ....................................................................................16

*General Electric Co. v. United States EPA*, 18 F. Supp .2d 138 (D. Mass. 1998). .........17

*Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49
    (S.D.N.Y. 1999) ............................................................................................15

*Hickman v. Taylor*, 329 U.S. 495 (1947)........................................................................12

*In Re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141
    (D. Mass. 1988).......................................................................................13, 14

*In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir. 1979) ........................................16

*In re Raytheon Securities Litigation*, 218 F.R.D. 354 (D. Mass. 2003) ............................16

*In re Subpoenas in SEC v. Selden*, No. 05-0476, 2006 WL 2374796 (D.D.C. Aug.
    16, 2006) .................................................................................................1, 10

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89 (D. Mass. 2002) ................14

*New York Public Interest Research Group v. U.S. EPA*, 249 F.Supp.2d 327
    (S.D.N.Y. 2003) .............................................................................................18

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)......................................................17

*SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1994 WL 23141 (S.D.N.Y. Jan. 27
    1994) ..........................................................................................................13

*Strang v. Collyer*, 710 F. Supp. 9, *aff'd mem.* 899 F.2d 1258 (D.D.C. 1989) ...............18

*Texas Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867
(1st Cir. 1995). ............................................................................................17

*Tigue v. U.S. Department of Justice*, 312 F.3d 70 (2d. Cir. 2002) ....................................17

*Touhy v. Ragen*, 340 U.S. 462 (1951) ..............................................................................3

*United States v. Aldman*, 134 F.3d 1194 (2d Cir 1998). ...............................................12

*United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ......................................13

*United States v. AT&T*, 461 F. Supp. 1314, 1335 (D.D.C. 1978) ....................................9

*United States v. Nobles*, 422 U.S. 225 (1975) ..........................................................12, 15

*United States v. Under Seal*, 902 F.2d 244 (4th Cir. 1990) ...............................................14

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ...........................................................16

*Williams v. City of Boston*, 213 F.R.D. 99 (D. Mass. 2003) ............................................17

*Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006) ..................... ..................................1, 9

## FEDERAL STATUTES

31 C.F.R. § 1.11(A) ............................................................................................................9

The Securities and Exchange Commission ("SEC" or the "Commission") files this opposition to Defendant Steven E. Nothern's Renewed Motion to Compel Production of Documents.[1]  In an obvious effort to hide the fact that his motion is not supported by law, Nothern spends more than half of his Renewed Motion setting forth his version of the facts of this insider trading case, which he twists into an almost unrecognizable form.  This Court need not get mired in the facts of the case to decide Nothern's motion to compel because the motion presents a legal, not a factual, issue.  Nothern's motion asks this Court to find, for purposes of Rule 34 of the Federal Rules of Civil Procedure, that other agencies and departments of the United States government, specifically, two executive branch agencies, the Department of Treasury ("Treasury") and the Department of Justice ("Justice") should be considered to be party plaintiffs to action filed by the SEC, an independent regulatory agency.

In its initial opposition brief, the SEC explained why the Nothern's legal position is untenable.  Since the SEC filed its initial opposition, courts have issued opinions that lend further support to the SEC's position.  On June 16, 2006, the D.C. Circuit reversed several lower court decisions on which Nothern's motion relies, and held that litigants seeking to obtain documents from third-party government agencies may do so by issuing subpoenas to the agencies under Rule 45 of the Federal Rules of Civil Procedure.  *Yousuf v. Samantar*, 451 F.3d 248, 256 (D.C. Cir. 2006).  Applying the D.C. Circuit's opinion in *Yousuf*, the U.S. District Court for the District of Columbia recently compelled the U.S. Food and Drug Administration to comply with a third-party subpoena issued by a defendant in an SEC action in the U.S. District Court of Massachusetts.  *In re Subpoenas in SEC v. Selden*, No. 05-0476, 2006 WL 2374796, at *4 (D.D.C. Aug. 16, 2006).  This line of cases makes clear that rather than stretching the definition of "plaintiff" in this SEC enforcement action beyond its reasonable meaning to incorporate Executive Branch agencies, which will undoubtedly have serious policy and separation of powers

---

[1] All references to Nothern's Memorandum In Support of His Renewed Motion to Compel Production of Documents will be referred to herein as ("Renewed Motion" or "Nothern's Renewed Motion").

implications, Nothern should be required to utilize the process available to him to obtain documents from Treasury and Justice through the use of Rule 45 subpoenas or other procedures.

For the reasons set forth below, the SEC respectfully requests that the Court deny Nothern's renewed motion to compel in its entirety.

## I. **BACKGROUND**

For nearly a year Nothern has been attempting to force the SEC to produce documents from other agencies and departments of the government, which are outside of the SEC's possession, custody and control. It is undisputed, that the SEC produced its entire non-privileged investigative file to Nothern with its initial disclosures. Although the SEC willingly produced all responsive non-privileged documents that it had in its possession, on September 27, 2005, Nothern served the SEC with 66 overly broad and unduly burdensome requests, in which he erroneously defined the plaintiff in this action as not only including the SEC, but the entire United States government, and sought to have the SEC conduct a search of the files hundreds of government agencies, in every branch of government. In response, the SEC asserted numerous objections, including but not limited to, an objection to producing documents from other government agencies that were outside of the SEC's possession, custody and control. Nothern's counsel responded by threatening to file the pending motion to compel.

The SEC has made serious attempts to resolve this motion without Court intervention. In December 2005, counsel for the SEC first offered to submit Nothern's document requests to government agencies that Nothern identified accompanied by a letter requesting that the agencies voluntarily produce documents to both parties in this action. The SEC's offer consisted of only two conditions: (1) that Nothern specify the agencies that he wanted the SEC to submit his requests to; and (2) that Nothern agree not to file a motion to compel against the SEC if the other agencies, which the SEC did not control, failed to comply with the requests, failed to produce a privilege log, or were deficient in their document production. *See* Declaration of Kevin B. Currid filed in Support of Defendant Steven E. Nothern's Motion to Compel Production of Documents ("Currid Decl.") (Docket # 30) (Letter from Williams to Shope dated Dec. 20,

2005).  Although the SEC's offer of compromise left open the opportunity for Nothern to use alternative means to obtain the documents that he sought from other government agencies, through the use of Rule 45 subpoenas, FOIA and the regulations approved by the United States Supreme Court in *Touhy v. Ragen*, 340 U.S. 462 (1951) ("*Touhy*"), Nothern summarily rejected the SEC's offer.  *Id.*  On February 17, 2006, Nothern filed the motion to compel the SEC to produce documents from other government agencies that he now seeks to renew.

On June 14, 2006, the parties participated in a hearing before this Court.  During this hearing, for the very first time, Nothern's counsel agreed to narrow Nothern's requests, and informed the SEC that Nothern only sought to collect documents from three government agencies:  Treasury, Justice, (specifically the United States Attorney's Office for the Southern District of New York ("USAO")), and the Commodity Futures Trading Commission ("CFTC").  The SEC, in turn, agreed to submit Nothern's narrowed document requests to Treasury, Justice and the CFTC with a cover letter asking the agencies to:  (1) voluntarily produce documents to both parties to this litigation that were responsive to the requests; and (2) voluntarily produce privilege logs identifying responsive documents that the agencies were withholding on the basis of privilege.

As discussed in detail below, from approximately June 30, 2006 through the current date, Treasury, Justice and the CFTC have expended time and resources voluntarily responding to the SEC's June 30 letter, and voluntarily collecting and producing hundreds of pages of documents that are responsive to Nothern's requests. *See* Exh. C to the Status Report of the SEC filed July 31, 2006 (Docket # 39), (Letter from Coad to Williams dated July 27, 2006), Exh. A to the Declaration of John J. Rossetti, Jr., filed herewith ("Rossetti Decl.") (Letter from McGivern to Shope dated November 2, 2006), Exh. B to Rossetti Decl. (Email from Rosenberg to Toone dated August 24, 2006).

### Production from the CFTC

The CFTC completed its production on or about August 24, 2006.  Nothern does not seek any additional documents from the CFTC.  *See* Nothern's Renewed Motion at 2, 3.

**Production from Justice**

By letter, dated July 27, 2006, Assistant United States Attorney, Brian Coad, informed counsel for the SEC that all of the non-privileged responsive documents maintained in the files of the USAO were either provided to the USAO by the SEC in response to an access request, or were created by the USAO pursuant to a grand jury subpoena, and were protected from production by Rule 6(e) of the Federal Rules of Criminal Procedure. *See* Exh. C to the Status Report of the SEC filed July 31, 2006 (Docket # 39) (Letter from Coad to Williams dated July 27, 2006). The SEC produced all of the non-privileged documents contained in its files, including the documents that it shared with the USAO during its pre-lawsuit investigation, in its initial disclosures to Nothern. The SEC has also produced a privilege log identifying all privileged documents shared between counsel for Justice and counsel for the SEC, and the basis for the SEC's privilege claims. The privileges that the SEC asserted over the documents that it shared with the USAO included, but were not limited to, the attorney work-product privilege and the government deliberative process privilege.

**Production from Treasury**

In July 2006, Treasury counsel, Thomas McGivern, informed the parties that Treasury was in the process of gathering and producing documents in response to Nothern's requests. Mr. McGivern also indicated that Treasury would produce a privilege log supporting its privilege claims after it produced all responsive documents. In addition, Mr. McGivern advised counsel for the SEC that Treasury had encountered technical difficulties obtaining and producing electronic documents, which would delay and complicate its production. The SEC notified Nothern's counsel and the Court of the difficulties that Treasury anticipated with its document production in the status report it filed on July 31, 2006. *See* Status Report of the SEC filed July 31, 2006 (Docket # 39).

For months, Treasury counsel has spent hundreds of hours, and hundreds of thousands of dollars, *inter alia*, gathering, reviewing and producing documents responsive to Nothern's requests. *See* Exh. A to Rossetti Decl. (Letter from McGivern to Shope dated Nov. 2, 2006). In

a letter, dated October 19, 2006, Mr. McGivern, informed the parties that Treasury expected to complete its voluntary production by November 30, 2006. Exh. C to Rossetti Decl. (Letter from McGivern to Williams dated Oct. 19, 2006).

Despite Treasury's efforts to comply with Nothern's requests, Nothern's counsel has peppered Treasury counsel with letters criticizing the pace and substance of Treasury's voluntary production and demanding that Treasury provide the defense with justification of its privilege claims on a piece-meal basis. *See* Exhs. D, E, F to Rossetti Decl. (Letters from Nothern's Counsel to McGivern dated Sept. 19, 2006, Sept. 29, 2006, Oct. 16, 2006). Upon information and belief, Nothern focused his letter writing campaign on Treasury and did not send similar correspondence to counsel for Justice or the CFTC.

Although Treasury counsel represented that Treasury would likely finish producing documents by November 30, Nothern refused to provide Treasury any additional time to complete its voluntary production and produce a privilege log. Instead, on October 30, 2006, Nothern moved to renew his motion to compel the SEC to produce documents of other government agencies alleging that Treasury's document production, which is ongoing, is insufficient and unfairly impugning Treasury's motives in this action. Nothern's Renewed Motion should be denied.

## I. ARGUMENT

**A.    The Law Does Not Require The SEC To Obtain And Produce Documents From Other Government Departments And Agencies In Response To Nothern's Document Requests.**

The SEC incorporates and renews the arguments set forth in its Opposition to Nothern's Motion To Compel filed March 3, 2006. (Docket # 32) (hereinafter "Opposition Brief").

Since filing his original motion to compel Nothern has not set forth any new legal arguments to support his claim that the SEC should be compelled to produce documents from other government agencies in response to his Rule 34 document requests. Nothern spends the majority of his Renewed Motion criticizing the voluntary document productions of Treasury and

Justice, asserting groundless allegations that Treasury and Justice have improperly withheld responsive documents that are critical to his case, and attacking Treasury based on unfounded conspiracy theories regarding Treasury's motives and incentives not to cooperate. Nothern asserts that his belief in the inadequacy of the voluntary responses that Treasury and Justice provided to the SEC's June 30 letter somehow supports his legal argument that those agencies should be considered party plaintiffs to this case for purposes of Rule 34. It does not.

Contrary to Nothern's assertions, the pace, substance and completeness of the voluntary document productions by Treasury and Justice have no bearing whatsoever on Nothern's legal claim that the SEC has the ability to control Executive Branch agencies or their documents, nor does it support his claim that Executive Branch agencies should be considered to be plaintiffs in this case. If anything, the fact that Treasury and Justice denied the SEC access to certain documents and privileged materials in their voluntary responses, supports the SEC's arguments that it does not control Executive Branch agencies, and should not be compelled to produce documents from those agencies' files.

Nothern's bases the arguments made in his Renewed Motion on the misguided assumption that Treasury, Justice and the CFTC were *required* to respond to the SEC's June 30 letter. Indeed, these agencies were under no obligation to voluntarily produce any documents or privilege logs to the parties in this case. The responses the three agencies chose to provide were not governed by any timetable. As a result of the voluntary efforts of these agencies, the parties received a complete production from the CFTC, hundreds of pages of documents from Treasury, and confirmation that the USAO was not in possession of any non-privileged documents responsive to Nothern's requests that were not already produced by the SEC in its initial disclosures.

Relying purely on speculation, and his absurd assertion that Treasury has an incentive not to cooperate in discovery in this matter,[2] Nothern claims Treasury and Justice have non-

---

[2] The decision to bring this action, and all other SEC actions, that resulted from the SEC's investigation into trading in the 30-year bond rested solely on the SEC. Nothern's claim that the

privileged documents responsive to his requests that they are refusing to produce.[3]  This claim is

baseless and should be rejected.  Nothern does not have any personal knowledge that either

Treasury or Justice have any non-privileged documents responsive to his requests that have not

already been produced, or that Treasury does not plan to produce.  While Nothern requested that

Treasury and Justice produce certain categories of documents, he has no proof that any such

documents actually exist, and no basis to challenge the representations of counsel for Treasury

and Justice regarding contents of their agencies' files.[4]

By arguing that the Court should grant his motion to compel because he is dissatisfied

with the voluntary productions of Treasury and Justice, Nothern is essentially asking the Court to

ignore case law that establishes that Rule 34 only applies to parties to an action and only requires

those parties to produce documents in their possession, custody and control.  The facts of this

case do not warrant a departure from established law.  This is a basic insider trading case.  The

---

SEC brought this action for any reason other than to enforce the federal securities laws,
especially his ridiculous claim that this action was filed to "deflect critical attention" away from
Treasury, should not be credited.  Renewed Motion at 13.

[3] Nothern contends that Treasury acted improperly by applying its *Touhy* regulations to the
requests submitted in the SEC's June 30 letter because, under his interpretation, Treasury's
*Touhy* regulations do not apply to the SEC.  Renewed Motion at 3.  As explained in the SEC's
Opposition Brief, Nothern's interpretation is wrong.  Although Treasury's *Touhy* regulations
provide a mechanism for other government agencies or government officers acting in their
"official capacity" to gain access to information without complying with all of the *Touhy*
regulations, in this case, where the SEC requested documents to share with a defendant in a
litigation, it is reasonable for Treasury to find that the SEC is not seeking the information in its
"official capacity" for official SEC business.  Moreover counsel for Nothern has made it clear to
Treasury that the requests contained in the SEC's June 30 letter were actually his requests, not
the requests of the SEC.  *See* Exhs. D, E, F to Rossetti Decl. (pressuring Treasury to respond to
his requests, claiming that the information sought by the requests was "highly relevant" to his
defense, demanding that Treasury identify the basis of its privilege assertions).

[4] For example, Nothern contends that Treasury has failed to produce documents related to written
confidentiality agreements between Peter Davis and Treasury.  Renewed Motion at 8-9.  In his
November 2, 2006 letter, counsel for Treasury reminded Nothern that during depositions
Treasury witnesses did not recall ever seeing a written confidentiality agreement between Davis
and Treasury.  Counsel for Treasury further explained that searches of Treasury's files have failed
to "reveal evidence of any such agreements " Exh. A to Rossetti Decl.

SEC brought this enforcement action against Mr. Nothern because he knowingly or recklessly traded in the 30-year bond for his own benefit based on material, nonpublic information that he obtained from Peter Davis, a known Washington insider, who he knew, or was reckless in not knowing, had passed on the information in breach of his duty to Treasury to keep the information confidential during the embargo period. Mr. Davis has admitted: (1) that he had a duty to Treasury; (2) that he had entered into an agreement to maintain embargoed information; (3) that he heard a Treasury official announce the embargo at the October 31, 2001 refunding conference; and (4) that he knowingly and willingly violated his duty to Treasury when he provided this information to his clients (including Nothern) during the embargo period. *See* Exh. D to Declaration of John J. Rossetti Jr. filed in Support of U.S. Securities and Exchange Commission's Opposition to Defendant Steven E. Nothern's Motion to Compel Production of Documents ("March 2006 Rossetti Decl.") (Docket # 33) at 19.

Nothern had admitted that he received a voicemail from Davis on the morning of October 31, 2001 notifying him that Treasury was suspending issuance of the 30-year bond. *See* Exh. G. to March 2006 Rossetti Decl., at 111-112 (Nothern Investigative Testimony). Nothern has also admitted that he was aware of the meaning of the term embargo as it applied to information from government agencies when he received Davis' voicemail. Exh. A  In addition, Nothern has admitted that he knew the information that he received from Davis on October 31, which he used to trade in the 30-year bond, came from Peter Fisher, a high ranking Treasury employee, and that the information was subject to a 10 a.m. embargo. *Id.* The price and volume data on the 30-year bond from October 31, 2001, testimony from numerous witnesses, and many of the documents produced in this litigation, show that the information that Nothern used to trade was nonpublic at the time of the trading at issue, and did not become public until sometime close to 10 am. Exh. K to Currid Decl.

As a result of Nothern's Renewed Motion, the SEC finds itself back in the same position that it faced in February – with Nothern claiming that the SEC, an independent regulatory agency of the government, should be held responsible for the production of documents from Executive

Branch agencies. If Nothern's claim is accepted, the SEC will be put into a dangerous position of risking dismissal of this lawsuit based on the actions of Executive Branch agencies that the SEC does not control. In addition, a finding that Treasury and Justice are party plaintiffs to this action will challenge the independent status of the SEC and will raise serious separation-of-powers problems. *See U.S v. AT&T*, 461 F. Supp. 1314, 1335, n.62 (D.D.C. 1978) (finding that independent regulatory agencies were created to "somewhat apart from the rest of the government" and noting that in view of the quasi-legislative status of independent agencies, a requirement that those agencies be considered a party in an action filed by the Executive Branch "might well raise serious constitutional separation-of-powers problems"). Denying Nothern's motion to compel will allow the SEC to promptly proceed with this action to enforce the federal securities laws without raising separation-of-powers concerns, and without impairing Nothern's due process rights, or his ability to obtain the documents that he seeks from Treasury and Justice directly.

> **B.     Nothern Should Be Required To Utilize The Procedures Afforded Him By Rule 45 Of The Federal Rules Of Civil Procedure, The *Touhy* Regulations Or FOIA To Obtain Documents From Treasury And Justice.**

As stated above, on July 16, 2006, the United States Court of Appeals for the District of Columbia Circuit held that "the Government is a 'person' subject to subpoena under Rule 45 regardless whether it is a party to the underlying litigation." *Yousuf* at 257. This decision reversed numerous lower court decisions cited by Nothern in his original motion to compel in support of his baseless claim that Rule 34 discovery was the only procedural method that he could use to obtain document discovery from Treasury and Justice.

Now, in addition to the procedures provided by FOIA and the *Touhy* regulations, which the SEC discussed in detail in its Opposition Brief, Nothern has yet a third procedural

mechanism, Rule 45 subpoenas, which he is refusing to take advantage of.[5] *See* Opposition Brief at 16-17 (Docket #32). Nothern's attempts to justify his failure to pursue discovery through Rule 45 are unpersuasive. Nothern claims that he should not be required to subpoena documents under Rule 45 because it involves too many "logistical problems" and may be a "greater expense to the party seeking production." Renewed Motion at 15, n.5. However, any logistical problems Nothern faces in trying to compel Executive Branch agencies to produce documents, the SEC also faces. The SEC does not control any other government agency or its documents, has no access to their buildings or files, and cannot, contrary to Nothern's naïve and unsupported contention, simply demand and receive documents from these agencies. In the face of another agency's refusal to produce requested documents, the SEC would have to seek court redress as well.

Additionally, while Nothern complains about expense, the costs he has incurred trying to compel the SEC to produce documents that it does not possess or control are surely no less than those he would have had to incur, or will incur, if he purses discovery through the use of Rule 45 subpoenas. Moreover, due to the SEC's willingness to seek voluntary discovery from Treasury, Justice and the CFTC, Nothern has already received, or soon will receive, most, if not all, of the non-privileged documents in the possession of those agencies that are responsive to his requests.

The fact that the discovery deadline in this case is rapidly approaching should have no bearing on the issue of whether Nothern should be required to seek discovery from Treasury and Justice directly. Nothern has wasted nearly a year pursuing the documents of third-party government agencies from the SEC, instead of trying to obtain them from the agencies through valid procedural methods. The D.C. Circuit's decision in *Yousuf* removed any legal hurdles that

---

[5] Even if Nothern eventually issues subpoenas under Rule 45, his requests will likely be subject to Treasury and Justice's *Touhy* regulations. Under Treasury's rules, it must treat *subpoenas duces tecum* as requests for documents pursuant to its *Touhy* regulations. 31 C.F.R. § 1.11 (A). *Cf. In re Subpoenas in SEC v. Selden*, 2006 WL 2374796, at *2 (D.D.C. Aug. 16, 2006) (finding that the FDA was required to respond to Rule 45 subpoenas in accordance with its *Touhy* regulations).

Nothern might have faced in issuing subpoenas to federal government agencies. Yet, Nothern has failed during the five months since the *Yousuf* decision was issued to avail himself of the opportunities provided to him by Rule 45. Having wasted significant time, Nothern cannot complain that he should not be required to issue Rule 45 subpoenas for the documents that he seeks from Treasury and Justice because doing so may further prolong this action.

C.    **Nothern's Request That Court Compel The SEC To Produce Privileged Documents From Its Files And The Files Of The Department of Justice Should Be Denied.**

Although he did not attempt to meet and confer with counsel for the SEC, as required by Local Rule 7.1, Nothern has inserted a challenge to the SEC's privilege claims into his Renewed Motion to compel. Nothern raises this new issue under the guise of challenging Justice's assertion of privilege under Rule 6(e) of the Criminal Rules of Civil Procedure. It is clear, however, that Nothern's request is aimed at privileged materials contained in the files of the SEC, and that his challenge to the SEC and Justice's privilege assertions have nothing to do with the legal issues raised in his original motion to compel the SEC to produce documents from other government agencies. Indeed, Nothern admits that he is not specifically seeking materials generated by a grand jury, but materials shared between the SEC and Justice that appear on the SEC's privilege log. Renewed Motion at 18-19. Nothern's attempt to insert a challenge to the SEC's privilege claims into his "renewed" motion to compel, which he did not raise in his original motion, or discuss with counsel for the SEC as required by Local Rule 7.1, is procedurally improper and should not be allowed. If allowed, Nothern's request that the SEC be compelled to produce privileged documents created by Justice investigators or shared between counsel for the SEC and counsel for Justice during the SEC's investigation should be denied.

In drafting this opposition the SEC is relying on the representation of Assistant United States Attorney Brian Coad, that the only materials that the United States Attorneys Office for the Southern District of New York had responsive to the requests that Nothern drafted, which were not also maintained in the SEC's files, "were obtained pursuant to federal grand jury

subpoenas and in the course of a criminal investigation" and that "any disclosure by [the USAO] . . . is prohibited by Rule 6(e) of the Federal Rules of Criminal Procedure." Exh. B to the Status Report of the SEC filed July 31, 2006 (Docket # 39), (Letter from Coad to Williams dated July 27, 2006). Because they do not have access to Justice's files, neither counsel for Nothern, nor counsel for the SEC, are in a position to challenge the truthfulness of the Mr. Coad's representations. Based purely on unfounded speculation, Nothern asserts that Justice possesses, and has refused to produce, non-privileged documents. The only documents Nothern references in support of his bald assertion are privileged interview notes and documents from the SEC's files that were provided to Justice by the SEC in response to Justice's access request. Nothern is not entitled to the production of these privileged materials.

> **1.    Documents Shared Between The SEC and Justice That Appear On The SEC's Privilege Log Are Protected From Disclosure Pursuant To The Attorney Work-Product Doctrine.**

Rule 26(b)(3) of the Federal Rules of Civil Procedure protects from discovery, among other things, documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." The rule embodies the work-product doctrine, which "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation' free from unnecessary intrusion by his adversaries." *United States v. Aldman*, 134 F.3d 1194, 1196 (2d Cir 1998). "The work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, n.11 (1975). " It is not designed to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's work" from the discovery attempt of an opponent. *In Re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145 (D. Mass. 1988).

The documents withheld by the SEC as privileged at issue in Nothern's motion to compel, are opinion work product. *See Hickman v. Taylor*, 329 U.S. 495, 509-12 (1947). These

documents include memoranda, logs, investigative plans, draft Action Memoranda to the Commission, draft pleadings, draft administrative orders and draft press releases that were created by attorneys for the SEC during the SEC's investigation that reflect the attorneys' legal theories, mental impressions, research and analysis. Rossetti Decl., ¶¶ 17-18. The SEC shared work product with attorneys for Justice, pursuant to a November 9, 2001 request for access to the investigative and non-public files of the SEC, made by Justice in connection with a related criminal investigation. *See* Exh. Q to the March 2006 Rossetti Decl. Nothern also seeks to compel the production of interview notes taken by counsel for the SEC and an investigator for Justice who was specifically assigned to keep the notes of witness interviews conducted jointly by attorneys for the SEC and/or Justice during the agencies' related investigations into trading in the 30-year bond. Rossetti Decl., ¶¶ 5-10. All of the documents that the SEC has withheld as privileged that are at issue in Nothern's motion to compel are protected work-product.[6]

Nothern claims that the SEC waived the work-product protection of documents contained on its privilege log when it shared the documents with attorneys for Justice. Renewed Motion at 20.[7] This claim is not supported by law. It is well-established in this jurisdiction that a party does not automatically waive work-product protection by disclosing information to another person. "A disclosure made in the pursuit of such trial preparation and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege." *In Re Atlantic Financial Management Securities Litigation*, 121 F.R.D. at 145 (citing and quoting *U.S.*

---

[6] Nothern does not dispute, nor could he, that the documents at issue were created "in anticipation of litigation or trial." At the time of the documents were created, the Commission had already had issued a Formal Order of Investigation of trading in the 30-year bond on October 31, 2001. Rossetti Decl., ¶¶ 5, 7, 10 - 11. The fact that a Commission investigation into trading in the 30-year bond by the Commission's Division of Enforcement had commenced when the documents were created is itself "strong circumstantial evidence" that they were made in anticipation of litigation. *See SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1994 WL 23141 at *2 (S.D.N.Y. Jan. 27, 1994).

[7] Documents shared between attorneys for the SEC and attorneys for Justice in response to Justice's access request are detailed in the Rossetti Decl., ¶¶ 17-18.

*v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).  The existence and extent of waiver depends on the following factors: (1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege."  *Id*.  When applied to this case, these factors weigh strongly in favor of the Court finding that the work-product protection of these documents has not been waived.

The SEC has not sought to use the work-product privilege in a way that is inconsistent with its purpose.  On the contrary, as stated above, the SEC shared work product with attorneys for Justice, pursuant to a November 9, 2001 access request.  *See* Exh. Q to the March 2006 Rossetti Decl.  In its access request, Justice represented that it would "establish and maintain such safeguards as are necessary and appropriate to protect the confidentiality of files to which access is granted and information derived therefrom."  Justice further represented that it "would make no public use of [the files produced by the SEC in response to the access request] without prior approval of the [SEC] staff" and would "not grant any demand or request for the files or information [except legally enforceable demands] without prior notice to and objection by [SEC] staff."  *Id*.

Moreover, Justice's access request makes clear that the SEC did not waive work-product protection by sharing its non-public files with Justice, even though Justice is not a party to this action.  The likelihood that Justice would share the SEC's work product with Nothern or any of the SEC's other opponents was virtually non-existent.  There is no evidence that Justice has waived the privileged nature of the documents in question by sharing them with any other third parties.  Moreover, because the SEC and Justice both faced the likelihood of litigation against the same or similar adversaries on the same or similar issues, they were permitted to exchange work product without waiving any privilege.  *See Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93-95 (D. Mass. 2002) (recognizing the common interest doctrine applies where, as here, parties sharing information establish that they agree to keep the shared information

14

confidential).  *See also United States v. Under Seal*, 902 F.2d 244, 249 (4th Cir. 1990) (extending the common interest privilege to plaintiffs).  Nothern's claim that the SEC waived the privileged nature of the documents at issue by sharing them with Justice must be rejected.

Nothern also argues that the witness interview notes taken by a Justice Department investigator on behalf of the attorneys for Justice and the SEC are not privileged work product. This claim is also contrary to law.  Justice's investigators were specifically assigned to be the central note takers for the attorney's present at the joint witness interviews conducted by Justice and the SEC, as well as the witness interviews conducted by Justice without the assistance of the SEC.  Rossetti Decl. ¶ 7, 10.[8]  It is well settled that the work-product privilege extends to witness interview notes created by an agent for an attorney as well as to notes made directly by the attorney.  *See United States v. Nobles*, 422 U.S. at 238-39 ("the doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself"); *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 52 (S.D.N.Y. 1999) ("The [work-product] doctrine extends to notes, memoranda, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney").[9]  Indeed, Rule 26(b)(3) explicitly provides that the protection extends to documents created by a party's representative or agent. Justice and the SEC shared a common litigation interest, faced common adversaries on similar issues, and did not waive work-product protection by sharing materials.  Consequently, the interview notes taken by the Justice's investigators for attorneys for the SEC and/or Justice are

---

[8] As discussed in detail in the Rossetti Decl., filed herewith, attorneys for the SEC and Justice jointly participated in witness interviews of Peter Davis, William Dudley, Irene Tse and Timothy Bitsberger.  Rossetti Decl. ¶¶ 7-9.  Attorneys for Justice and/or Justice's investigator working at the direction of attorneys for Justice, participated in witness interviews of Roger Anderson, and William Dudley without the participation of the SEC.  Rossetti Decl. ¶ 10. Additionally, attorneys for the SEC independently conducted interviews of Roger Anderson. Rossetti Decl. ¶¶ 5-6.  The SEC has withheld notes of all of the aforementioned interviews as privileged work product.  Rossetti Decl. ¶¶ 5-10.

[9] *See also Carter v. Cornell University*, 173 F.R.D. 92, 95 (S.D. N.Y. 1997) (work-product extends to document reflecting information gathered by client's employee from interviews of other employees conducted at counsel's request).

no less deserving of work-product protection than other attorney notes created in anticipation of litigation or trial.

>2.    **Nothern Cannot Meet The Heavy Burden Necessary To Overcome The Work-Product Privilege.**

In order to overcome the work-product privilege, Rule 26(e)(3) provides that the party seeking discovery must demonstrate both substantial need of the materials in the preparation of his case *and* that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *Connelly v. Dun & Bradstreet, Inc.*, 96 F.R.D. 339, 343 (D. Mass. 1982) (emphasis added). Documents, such as legal memoranda and drafts that reveal attorney mental impressions, conclusions, opinions or legal theories, receive almost absolute protection under the rule. *See In re Raytheon Securities Litigation*, 218 F.R.D. 354, 357 (D. Mass. 2003) (citations omitted). In the specific case of attorney interview notes, Rule 26(e)(3) places a heavy burden on the party seeking to invade the privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 401 (1981) (attorney notes and memoranda of witnesses' oral statements protected by work-product privilege) ("To the extent that [the notes] do not reveal communications, they reveal the attorneys' mental processes in evaluating the communications. As Rule 26 and Hickman make clear, such work-product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.") Nothern cannot demonstrate a substantial need for production of the SEC's work product or an inability to obtain the information he seeks from other, non-privileged, sources without undue hardship.[10]

---

[10] While Nothern may argue that he has a substantial need to obtain the SEC's protected interview notes, this argument should be rejected. Courts in this district have held that "[d]iscovery of work product will . . . be denied where the party seeking discovery can obtain the information by taking the deposition of witnesses . . . . Neither inconvenience, nor expense, constitute sufficient cause to find undue hardship." *Colonial Gas Co. v. Aetna Casualty & Surety Co.*, 139 F.R.D. 269, 275 (D. Mass. 1991) (citations omitted). The possibility (or even the likelihood) that prior witness statements may contain inconsistencies with later testimony does not permit invasion of the work-product privilege, particularly where that information is available through depositions of the witness. *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979), *see also Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, et al.*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) (finding that appellant's "need" to find corroborative

3.    **Documents Shared Between The SEC And Justice That Appear On The SEC's Privilege Log Are Protected From Disclosure By The Governmental Deliberative Process Privilege.**

The deliberative process privilege was designed to help preserve the vigor and creativity of the process by which government agencies formulate important public policies." *Williams v. City of Boston*, 213 F.R.D. 99, 100-101 (D. Mass. 2003). The privilege protects the government's decision-making process to "prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). It is grounded on the proposition "that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl" *Gen. Elec. Co. v. United States EPA*, 18 F. Supp. 2d 138, 140 (D. Mass. 1998) (citations and internal quotations omitted). The privilege applies to documents which contain mental impressions or reflect the position of an agency prior to its final decision. It protects materials that are both "predecisional" and "deliberative." *Texas Puerto Rico, Inc. v. Dept. of Consumer Affairs*,60 F.3d 867, 884 (1st Cir. 1995). A document can be said to be "predecisional" when it is "antecedent to the adoption of agency policy." *Id.* (citations and internal quotations omitted). A document can be said to be "deliberative" if it is "related to the process by which polices are formulated." *Id.* The deliberative process privilege applies to both intra-agency and inter-agency communications. *Tigue v. U.S. Dept. of Justice*, 312 F.3d 70, 77 (2d. Cir. 2002).

The Commission has formally asserted the deliberative process privilege with regard to certain communications from Commission staff to staff of the USAO forwarding draft memoranda, draft complaints and draft administrative orders in response to the USAO's

_____

evidence is not a substantial need that overcomes the work-product privilege). Nothern has already taken the deposition of Peter Davis and Roger Anderson, the only individuals who participated in the joint interviews conducted by attorneys for the SEC and Justice that are relevant to the claims and defenses in this case. He has not sought to take the depositions of the other individuals who participated in joint interviews with the SEC and Justice.

November 9, 2001 access request. *See Declaration of Nancy M. Morris* ("Morris Decl.")filed herewith.[11]

The SEC has withheld these documents as privileged because they are both "predecisional" and "deliberative" as those terms are used in applying the deliberative process privilege. The documents were created by staff of the SEC's Division of Enforcement during the SEC pre-lawsuit investigation. They are "deliberative" and "predecisional" in nature because they were used by the SEC's staff to assist it in making recommendations to the Commission to assist the Commission in making determinations whether (and against whom) to proceed with enforcement litigation in connection with its investigation of trading in the 30-year bond. Rossetti Decl., ¶ 17-18. In addition, the documents evidence advice, evaluations, deliberations and opinions of the Commission's staff and relate to the process used by the Commission in its decision making. Morris Decl., ¶ 9.

Courts have repeatedly recognized the deliberative process privilege in a variety of instances involving notes or reports containing facts gathered for an agency decision maker in anticipation of a decision facing that agency. *See New York Public Interest Research Group v. U.S. EPA*, 249 F. Supp. 2d 327 (S.D.N.Y. 2003) (holding handwritten notes of an EPA official made in connection with the agency's proposed plan to dredge the Hudson River were protected from discovery by the deliberative process privilege). *Cf. Strang v. Collyer*, 710 F. Supp. 9, 12 (D.D.C. 1989) (notes of meetings subject to deliberative process privilege as they "reflect the agency's group thinking in the process of working out its policy"), *aff'd mem.* 899 F.2d 1268 (1990).

In sum, the documents withheld by the Commission that Nothern seeks to compel are both "predecisional" and "deliberative" for the purpose of the deliberative process privilege. The Commission has formally asserted the deliberative process privilege with regard to these

---

[11] Specifically, the SEC asserts the deliberative process privilege over the following documents at issue in Nothern's Renewed Motion to Compel: SECNOTH 140948-140963, 141022-141348.

documents, and the evidence submitted amply demonstrates that the documents are the type of material protected by the privilege, reflecting the deliberative processes of the staff in formulating its recommendations to the Commission.   Nothern's motion to compel production of these documents should be denied.

### III. CONCLUSION

For all of the foregoing reasons as well as those contained in its Opposition Brief, the SEC respectfully requests that the Court deny Nothern's Motion to Compel.

Dated:  November 17, 2006                          Respectfully Submitted,


   /s/ Erica Y. Williams
Erica Y. Williams
John J. Rossetti, Jr.
U.S. Securities and Exchange Commissions
100 F Street, N.E.
Washington, D.C. 20549-4010
Phone:  (202) 551-4450
Fax:     (202) 772-9245
williamse@sec.gov