# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (Boston Division)

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND | ) | |
| EXCHANGE COMMISSION, | ) | Civil Action No. 05-CV-10983 (NMG) |
|  | ) | |
| Plaintiff, | ) | |
| v. | ) | |
|  | ) | |
| STEVEN E. NOTHERN, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

## DECLARATION OF JOHN J. ROSSETTI JR. FILED IN SUPPORT OF U.S. SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT STEVEN E. NOTHERN'S RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS

John J. Rossetti Jr., pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury as follows:

1.  I am a Senior Counsel for the Securities and Exchange Commission in the above-captioned matter.  I am a member of good standing of the New York, Maryland, and District of Columbia bars.  Except where otherwise indicated, I make this declaration based upon my own personal knowledge and information and belief, the documents thus far produced during discovery, and other documents concerning this action.

2.  I was one of the attorneys assigned to work on the 30-year bond investigation.  The purpose of the 30-year bond investigation was to determine the facts underlying the alleged conduct and to determine the appropriate course of action to recommend to the Commission in light of the findings of the investigation.  If the investigation revealed facts substantiating the

allegations, the Enforcement Division of the Commission likely would have recommended that the Commission institute litigation to enforce the federal securities laws.

3.   The United States Attorneys Office for the Southern District of New York ("USAO") conducted a criminal investigation of this matter.  The USAO filed an access request with the Commission on November 9, 2001 and the SEC granted the request on November 14, 2001. Pursuant to this access request and during the course of this parallel investigation the SEC shared certain information with the USAO.  The USAO also shared certain information with the SEC that was not gathered through the use of a grand jury.  In some instances, attorneys for the Commission and the USAO conducted joint witness interviews.

4.   Defendant Steven E. Nothern's Renewed Motion to Compel Production of Documents. ("Nothern's Renewed Motion to Compel") seeks, in part, the production of certain documents over which the Plaintiff ("SEC" or "Commission") has asserted privileges.  These privileged documents fall into four categories: (1) handwritten notes of a telephone witness interview that SEC counsel conducted, but did not share with the USAO; (2) handwritten notes of joint witness interviews that attorneys for the SEC and the USAO conducted; (3) handwritten notes of witness interviews that attorneys for the USAO conducted during the course of their parallel criminal investigation in this matter and shared with the SEC; and (4) certain additional legal memoranda and documents that the SEC shared with the USAO pursuant to the USAO's approved access request.

### Witness Interview That SEC Counsel Conducted

5.   On October 30, 2002, undersigned counsel and Andrew Sporkin ("Sporkin"), the Branch Chief assigned to this investigation, interviewed Roger Anderson ("Anderson"), a former Treasury Department Official, via telephone, and prepared handwritten notes.  These

handwritten notes (Bates Nos. SECNOTH 137286-296[1]) are, in part, at issue in Nothern's Renewed Motion to Compel.

6.    This interview was conducted in a question-and-answer format, with SEC cousel posing questions to Anderson.  I am familiar with the handwritten notes that counsel for the Commission prepared during this interview and these notes do not constitute a verbatim or substantially verbatim rendering of the Anderson's responses to questions posed during this interview.  These notes, which are summary in nature, reflect counsels' mental impressions, conclusions, opinions, and legal theories that counsel was developing during the 30-year bond investigation.  Commission staff did not share these notes with the USAO or any other person.

**Joint Witness Interviews That SEC and USAO Counsel Conducted**

7.    Counsel for the SEC and Assistant United States Attorneys Brian Coad ("AUSA Coad") and Robert Hotz ("AUSA Hotz") conducted a limited number of joint witness interviews.  The joint interviews included: (1) Peter Davis ("Davis") of Davis Capital Investment Ideas on October 11, 2002 and February 3, 2004 (Bates Nos. SECNOTH 136630-648[2]; 136650-654; 136667-671 – multiple copies of the same notes); William Dudley ("Dudley") of Goldman Sachs & Co. on January 12, 2004 (Bates Nos. SECNOTH 136655-658; 136672-675; 136779-782 – multiple copies of the same notes)[3]; Irene Tse ("Tse") of Goldman Sachs & Co. on January 12, 2004 (Bates Nos. SECNOTH 136661-666; 136678-683 - multiple copies of the same notes); and Timothy Bitsberger ("Bitsberger"), a former Treasury

---

[1] Documents Bates Nos. SECNOTH 137297-299 are attorney telephone call logs.

[2] Document Bates No. SECNOTH 136649 that appears on the SEC privilege log is typewritten interview outline, containing handwritten notes, that SEC counsel prepared.

[3] The SEC inadvertently withheld as privileged two pages of William Dudley's calendar. Multiple copies of this two-page calendar appeared on the SEC privilege log as Bates Nos. SECNOTH 136659-660, 136676-677 and 136783-784.  The SEC has removed these copies of the calendar from its privilege log and has produced them to Nothern.

official, on August 1, 2002 (Bates Nos. SECNOTH 137300-310); During these joint witness interviews SEC counsel and AUSAs Coad and Hotz assigned USAO Investigator Robert Manchak ("Investigator Manchak") the note-taking responsibility. Counsel agreed that the one set of notes resulting from these interview sessions would be available for use by attorneys for the Commission and by the USAO.

8.    Undersigned counsel attended the January 12, 2004 interviews of Dudley and Tse, held at the offices of the USAO, and the February 4, 2004 Davis interview held at the Commission's offices. Four other Commission attorneys also attended the following interviews: Sporkin attended both of the Davis interviews; Treazure Johnson, a Trial Attorney for the SEC, attended the February 4, 2004 Davis interview; and Mark Kreitman, a Trial Attorney for the SEC, and Rosemary Filou, Senior Counsel for the SEC, attended the Bitsberger interview, which was conducted at the Treasury Department and also attended by an investigator from the Treasury's Office of Inspector General. AUSA Brian Coad and/or AUSA Robert Hotz were also present during these interviews, except for Davis' February 3, 2004 interview, which Investigator Manchak attended via telephone at the request of AUSAs Coad and Hotz. All of the witnesses attended the interviews with their attorneys, except for Bitsberger, who was not represented by counsel. No other individuals were present during these interviews. Investigator Manchak was assigned the task of keeping the notes of these interviews for the future use of the attorneys involved in the investigation for the SEC and the USAO. Only Investigator Manchak took notes for both SEC and USAO counsel during the interviews.

9.    These interviews were conducted in a question-and-answer format, with SEC and USAO counsel posing questions to the witnesses. I have reviewed Investigator Manchak's

handwritten notes of these interviews and they do not constitute a verbatim or substantially

verbatim rendering of the questions asked or the witnesses' responses. These notes reflect the

Commission staff's mental impressions and legal theories that the Commission staff was

developing during the 30-year bond investigation. Investigator Manchak's handwritten notes

are summary in nature, containing few complete sentences.

## Witness Interview That the USAO Conducted

10. On October 21, 2002, Investigator Manchak, at the request of AUSAs Coad Hotz,

interviewed Anderson at his residence. On September 13, 2003, AUSAs Coad and Hotz

interviewed Dudley at their office and they designated AUSA Investigator James Otten

("Investigator Otten") to take the interview notes. The USAO's office provided copies of the

Anderson and Dudley interview notes to Commission staff, who understood that these notes

were privileged and produced and with the expectation that they would remain confidential.

(Bates Nos. SECNOTH 137276-285 and 136765-778, respectively).

## The SEC's Use Of Witness Interview Notes

11. One of the Commission's principal functions is to bring actions in federal court to

enforce the antifraud and other provisions of the federal securities laws through the

Commission's Division of Enforcement. Since September 10, 2000, I have been an attorney in

the Commission's Division of Enforcement. On November 7, 2001, at the request of the

Division of Enforcement, the Commission issued a Formal Order of Investigation into

allegations of illegal trading in the 30-year Treasury bond on October 31, 2001 ("30-year bond

investigation"). The Formal Order of Investigation authorized the staff of the Commission to

undertake an investigation into trading in the 30-year bond, which if substantiated, would

constitute violations of the anti-fraud and other provisions of the federal securities laws, and

consequently would form the basis for a federal court action by the Commission to enforce the federal securities laws.

12.   Commission staff conducted witness interviews to gather the information necessary to allow the Commission to make a determination whether (and against whom) to proceed with enforcement litigation in connection with the 30-year bond investigation.  Consequently, the Commission staff posed questions that were generally intended to elicit information to determine whether, in light of the Commission's understanding and legal theories about the case, sufficient evidence existed to recommend the institution of enforcement litigations by the Commission.  The staff of the Commission intended to incorporate any relevant observations, impressions, and information learned during the proffer sessions into any memorandum from the staff to the Commission regarding whether to authorize such action.

13. During the course of the investigation, Commission staff determined that Davis, a consultant who attended the October 31, 2001 Treasury Quarterly Refunding Conference, had likely violated the antifraud provisions of the federal securities laws by providing material non-public information regarding Treasury's decision to suspend issuance of the 30-year bond to his clients, in violation of his duty to Treasury to keep the information confidential during a specified embargo period.  Commission staff also learned that Davis tipped some of his clients who then traded in the 30-year bond while in possession of and based on the information that he provided.  In addition to the litigated enforcement action against Davis, as the investigation proceeded, it became apparent from the information learned during the investigation that other enforcement actions against Davis' clients would likely be filed.  Commission staff anticipated that the notes created during the joint witness interviews of Davis, Dudley, Tse, and Bitsberger would be used in the preparation of any such litigated enforcement actions.

14. The staff of the Commission used Investigator Manchak's joint interview notes in determining the advice to provide to the Commission concerning the appropriate action it should take regarding its investigation of trading in the 30-year bond. The Division of Enforcement typically presents its advice in such matters to the Commission in the form of an "Action Memorandum." An Action Memorandum is an advice memorandum drafted by the staff and presented to the Commission. So that the Commission may make a fully informed decision, an Action Memorandum contains a statement of the relevant facts as determined through the staff's investigation, a legal analysis of the applicable law, and an evaluation by the Commission staff as to the potential claims, and may also include an evaluation of defenses which might be asserted in and the possible litigation risks of a litigated enforcement action. Should the Commission authorize litigation, the Division of Enforcement will prepare and file the complaint in the appropriate forum.

15. As a result of the Commission's investigation into trading in the 30-year bond, five separate Action Memoranda were presented to the Commission by the staff, regarding whether to institute litigation to enforce the federal securities laws against responsible individuals. The Commission filed enforcement proceedings against Davis, John Youngdahl of Goldman Sachs & Co. and Defendant Nothern. The staff requested copies of Investigator Manchak's notes of the Davis, Dudley, Tse, and Bitsberger joint interviews for the express purpose of using the notes as one of the bases to determine whether the federal securities laws had been violated, to identify the individuals involved in the violations and determine their respective culpability, and to determine whether to recommend that the Commission initiate litigation based on these determinations. The notes were also requested with the specific intention that the staff may use the information in the notes once such litigation had been authorized and filed.

16. Investigator Manchak's handwritten notes have been consistently treated as confidential by the Commission staff. The Commission has not made them available to persons other than Commission staff working on this matter. The Commission has not shown or disclosed the notes to other persons, including the defendant or any non-party witnesses.

### Various Other Privileged Documents Nothern Seeks

17. During the course of the SEC's and USAO's parallel criminal investigation in this case, the SEC shared with the USAO a number of other documents that are in issue in Nothern's Renewed Motion to Compel (Bates Nos. SECNOTH140948-141931), in response to the USAO's November 9, 2001 access request. These documents include legal memoranda, witness and document production logs, draft complaints, administrative orders and press releases prepared by SEC counsel.

18. I am familiar with the documents that the SEC provided to attorneys for the USAO pursuant to its November 9, 2001 access request. These documents reflect the impressions, conclusions and legal theories of the Commission's staff and were developed in the course of the Commission's investigation of trading in the 30-year bond. The Commission's staff prepared these documents in preparation of litigation to assist it in making recommendations to the Commission to assist the Commission in making determines whether (and against whom) to proceed with enforcement litigation.

19. A true and correct copy of the November 2, 2006 letter from Thomas McGivern, Esq. to John Shope, Esq. is attached hereto as Exhibit A.

20. A true and correct copy of the August 24, 2006 email from Bella Rosenberg, Esq. to Robert Toone, Esq. is attached hereto as Exhibit B.

21. A true and correct copy of the October 19, 2006 letter from Thomas McGivern, Esq. to Erica Y. Williams, Esq. is attached hereto as Exhibit C.

22. A true and correct copy of the September 19, 2006 letter from John Shope, Esq. to Thomas McGivern, Esq. is attached hereto as Exhibit D.

23. A true and correct copy of the September 29, 2006 letter from Robert Toone, Esq. to Thomas McGivern, Esq. is attached hereto as Exhibit E.

24. A true and correct copy of the October 16, 2006 letter from Robert Toone, Esq. to Thomas McGivern, Esq. is attached hereto as Exhibit F.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on November 17, 2006.

John J. Rossetti Jr.

**EXHIBIT A**

**November 2, 2006 Letter from Thomas McGivern, Esq. to
John Shope, Esq.**



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

November 2, 2006

**BY E-MAIL AND FAX**

John A. Shope, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600

> Subject:  Request for the deposition testimony of Treasury Department employee Elnora
> Bowser in *Securities and Exchange Commission v. Steven E. Nothern* (D. Mass.,
> Case No. 05-10983)

Dear Mr. Shope:

The Department of the Treasury is in receipt of your August 16, 2006 letter that requests the deposition testimony of Treasury employee Elnora Bowser, among others. The August 16 letter was submitted pursuant to Treasury Department regulations found at 31 C.F.R. §§ 1.8-1.12 (commonly known as Touhy regulations, *see also United States ex rel. Touhy v. Ragan*, 340 U.S. 462 (1951)).

We have carefully reviewed and considered your letter pursuant to Treasury's Touhy regulations. Following this review and consideration, we deny your request to depose Ms. Bowser. As explained below, we found that the letter you submitted to Treasury fails to demonstrate, among other things, that Ms. Bowser's deposition testimony is genuinely necessary to the proceeding, is unavailable from other sources, and is not unduly burdensome.

- *The letter fails to demonstrate that the information requested is genuinely necessary to the proceeding.* Your letter does not demonstrate that Ms. Bowser is likely to possess information necessary to prove or disprove the allegations in this case. All of the topics for which you seek to depose Ms. Bowser have been addressed in Treasury's document production and in deposition testimony by a number of other current and former Treasury employees. Ms. Bowser's role was extremely limited. For example, a document produced by Treasury indicates that Ms. Bowser only cleared Peter Davis into the Treasury building one time, while Lula Tyler cleared Davis into the Treasury building a number of times. The deposition testimony of Paul Malvey (page 132) and Lula Tyler (page 30) demonstrates that this was not normally Ms. Bowser's responsibility. Instead, she performed this function only once when Ms. Tyler was not available. Since you have already deposed Ms. Tyler, it is unnecessary to also depose Ms. Bowser.

- *The letter fails to demonstrate that the information you seek from Ms. Bowser is unavailable from other sources.* Not only is the information you seek from Ms. Bowser available from

2

other sources, such as documents we provided in response to the SEC's Touhy request that also were sent to you, you also already have received such information from current and former Treasury employees in deposition testimony. Receiving the same information yet again simply adds to the excessive burden Treasury already has bore in responding to this case. For example:

- Information on Treasury's policies and procedures on "embargoes" can be found in the deposition transcripts of Tony Fratto (pages 37-64), Elizabeth Holahan (pages 44, 46-50, 60-61, 63), Peter Fisher (pages 101-107), Roger Anderson (pages 38-42, 47-49, 54), Brian Roseboro (pages 28-29, 31-35), Frances Anderson (pages 59-61, 90-91), Lula Tyler (pages 57-59) and Paul Malvey (pages 40, 99-102).
- Information on Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information can be found in the deposition transcripts of Tony Fratto (pages 38-41, 85), Brian Roseboro (page 85), Paul Malvey (pages 255-256), Roger Anderson (pages 38-40), Jill Ousley (pages 77-80), and Elizabeth Holahan (pages 33-34, 44-46, 61).
- Information on the policies and procedures that specifically were followed on October 31, 2001 can be found in the deposition transcripts of Tony Fratto (pages 48, 94, 128-129, 156-171), Paul Malvey (pages 60-61, 79-85), Peter Fisher (pages 99-100, 114-122), Brian Roseboro (pages 80, 84-85), Elizabeth Holahan (pages 53-54, 101, 106-111, 113-116), Frances Anderson (pages 56, 58, 68-70, 79-100), and Lula Tyler (pages 98-100, 102).
- There is no information from any current or former Treasury employee to indicate that there was any written confidentiality agreement between Peter Davis and the Treasury Department. In fact, all these witnesses have denied that any such agreement existed, and searches of Treasury documents have failed to reveal evidence of any such agreement. This topic has been covered numerous times with current and former Treasury employees, all with the same conclusion that no such document existed. See the deposition transcripts of Roger Anderson (pages 100-101), Tony Fratto (pages 176-177), Jill Ousley (page 49), Elizabeth Holahan (page 141), and Paul Malvey (page 114).
- Information on Peter Davis's authority to attend Treasury conferences generally can be found in deposition transcripts of Elizabeth Holahan (pages 115-116, 137-138), Lula Tyler (pages 48-50, 54-57, 59), Roger Anderson (pages 53-64), Paul Malvey (pages 43, 90-92, 98-99), and Tony Fratto (pages 171-177, 180, 183-184).
- Information on how Davis was specifically able to attend the conference on October 31, 2001 can be found in the deposition transcripts of Elizabeth Holahan (pages 115-116, 137-138), Lula Tyler (pages 99-105), Paul Malvey (page 146), and Tony Fratto (pages 172-177).

- *The request to depose Ms. Bowser is unduly burdensome.* Treasury staff have dedicated hundreds of hours and hundreds of thousands of dollars to matters pertaining to this case in which the Treasury Department is not a party, including, among other things:
  - searching for hard- and soft-copy records, including restoring former employees e-mails, protecting privileged material, and producing documents;
  - considering your Touhy request for the deposition of current and former Treasury employees;
  - helping you to locate some of these former Treasury employees and coordinating with all parties to arrange mutually convenient times for their deposition; and

3

- attending the depositions of eight current and former Treasury employees, including Treasury's Assistant Secretary for Public Affairs, and traveling to New York (twice), New Jersey, and Florida for these depositions.

You have shown no restraint in requesting testimony on the same topics again and again from current and former Treasury employees. Deposing another current Treasury employee on these topics – many of which are not in dispute and already have been addressed numerous times in documents provided by Treasury and in the deposition testimony of current and former Treasury officials – imposes an undue burden on the Department.

To reiterate, Ms. Bowser is not authorized under applicable Treasury Department regulations to provide the requested testimony, and may not be compelled to testify. *See Bobreski v. EPA*, 284 F. Supp.2d 67, 73-74 (D.D.C. 2003) (agency employee cannot be forced to testify if an agency with valid Touhy regulations considers requests for testimony using relevant data and provides a rational basis for its decision).

The foregoing objections are not exclusive, and we reserve the right to assert further objections as appropriate.

If you have further questions, please contact me at 202-622-2317.

Sincerely yours,

*Thomas M. McGivern*

Thomas M. McGivern

cc: Erica Williams, Esq.
John Rosetti, Esq.
U.S. Securities and Exchange Commission

Nicholas Theodorou, Esq.
Robert Toone, Esq.
Foley Hoag LLP

**EXHIBIT B**

**August 24, 2006 Email from Bella Rosenberg, Esq. to
Robert Toone, Esq.**

## Williams, Erica Y.

**From:** Rozenberg, Bella [brozenberg@CFTC.gov]
**Sent:** Tuesday, September 05, 2006 4:22 PM
**To:** Williams, Erica Y.
**Subject:** FW: FOIA Request No. 06-0202 (time and sales reports fro 10/31/01)

---

**From:** Rozenberg, Bella
**Sent:** Thursday, August 24, 2006 12:58 PM
**To:** 'rtoone@foleyhoag.com'
**Cc:** Mays, Glynn L.; Donovan, Eileen A.
**Subject:** FOIA Request No. 06-0202 (time and sales reports fro 10/31/01)

Dear Mr. Toone-

This is to confirm that you made a formal request for time and sales reports concerning trading in Treasury futures and options on October 31, 2001, including trades in the 30-year bond.

To comply with your request, we have assigned a FOIA number listed above. We have compiled the requested data in the electronic format. By separate e-mails, we will be sending this data to you later this afternoon. Thank you. Bella Rozenberg.

11/14/2006

# EXHIBIT C

## October 19, 2006 Letter from Thomas McGivern, Esq. to Erica Y. Williams, Esq.



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

October 19, 2006

**BY E-MAIL AND FAX**

Erica Y. Williams
Assistant Chief Litigation Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

Re: Request for documents in *Securities and Exchange Commission v. Steven E. Nothern,*
Case No. 05-10983

Dear Ms. Williams:

This is the sixth in a series of responses to your letter dated June 30, 2006. Your letter requests documents related to the Treasury Department's quarterly refunding announcement for U.S. government securities on October 31, 2001. This production is Treasury's response to requests for documents in paragraphs (a), (c), (d), (e), (f) and (o) of Attachment A to your letter.

A document we are producing in response to paragraphs (a) and (c) of Attachment A to your letter addresses Peter Davis' admission to the Treasury Department's headquarters building at 1500 Pennsylvania Avenue, NW, Washington, DC, for quarterly refunding conferences and/or meeting with officials from the Treasury Department's Office of Domestic Finance. We were able to locate information from May 1998 to October 2001. Attachment A, paragraph (c) of your June 30 letter sought documents related to meetings with <u>any</u> official or employee at Treasury, and was not limited to Office of Domestic Finance officials. We have carefully considered your request under paragraphs (a) and (c) pursuant to Treasury's regulations found at 31 C.F.R. §§ 1.8-1.12, commonly known as Touhy regulations. *See also United States ex rel. Touhy v. Ragan,* 340 U.S. 462 (1951). Based on what we have learned about this case through the hundreds of hours we have spent on depositions, documents searches, documents reviews, and document productions, we are limiting Treasury's production of documents pursuant to paragraphs (a) and (c) of your request to the information in this production that relates to admission to the Treasury Department building of Mr. Davis for quarterly refunding conferences and/or meetings with officials from the Treasury Department's Office of Domestic Finance. To the extent that your request exceeds that scope, your request is denied because it fails to demonstrate that any information beyond this scope of documents is relevant and material to the case. Furthermore, the expenditure of additional Treasury resources for continued searching and production would constitute an undue burden. Therefore, we have completed our production with regard to paragraph (c).

2

We have not found, and do not anticipate finding, any documents responsive to paragraphs (d) and (e) of Attachment A to your June 30, 2006 letter. Therefore, we have completed our production with regard to paragraphs (d) and (e).

Paragraph (f) of Attachment A to your letter sought standard agreements, forms, or other documents concerning the confidentiality of information used by Treasury and was not limited to the Office of Domestic Finance or the Office of Public Affairs. This production includes documents responsive to paragraph (f) from the Office of Domestic Finance. We found no responsive documents from the Office of Public Affairs. We have carefully considered your request under paragraph (f) pursuant to Treasury's Touhy regulations. Based on what we have learned about this case through the hundreds of hours we have spent on depositions, documents searches, documents reviews, and document productions, we are limiting Treasury's response under paragraph (f) of your request to documents from the Office of Domestic Finance and the Office of Public Affairs. To the extent that your request exceeds that scope of documents, your request is denied because it fails to demonstrate that any information beyond this scope is relevant and material to the case. Furthermore, the expenditure of additional Treasury resources for continued searching and production would constitute an undue burden. Therefore, we have completed our production with regard to paragraph (f).

Unless we face additional, unexpected challenges in searching for potentially responsive documents, we plan to complete our production related to your June 30 request by November 30, 2006.

Please do not hesitate to contact me (202-622-2317) or Christian Furey (202-622-5441) if you have any questions.

Sincerely,

Thomas M. McGivern

Thomas M. McGivern

cc: John Rossetti, Esq. (By e-mail)
    U.S. Securities and Exchange Commission

    John A. Shope, Esq. (By e-mail)
    Nicholas Theodorou, Esq. (By e-mail)
    Robert Toone, Esq. (By e-mail)
    Foley Hoag LLP

**EXHIBIT D**

**September 19, 2006 Letter from John Shope, Esq.
To Thomas McGivern, Esq.**



# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

September 19, 2006

### BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, D. C.  20220

  Re: ***United States Securities and Exchange Commission v. Nothern,***
    ***Civil Action No. 05-10983 (NMG) (D. Mass.)***

Dear Tom:

   As you know, on June 14, 2006, the Court decided that it would withhold ruling on my client's motion to compel based on the parties' agreement to submit the relevant document requests to the Treasury Department and other government agencies. Accordingly, the SEC submitted a list of document requests to Treasury on June 30, 2006.  On July 28, 2006, you notified counsel for the SEC that Treasury would produce documents on a "rolling basis."  You produced 72 pages of documents on August 3rd; 89 pages on August 31st; 28 pages on September 6th; and 23 pages on September 8th. In your last production, you informed Ms. Williams that "[w]e anticipate producing documents next week as well," but we did not receive any documents last week.

   The Court has repeatedly directed the parties to report on the progress of Treasury's production.  It directed the SEC to file a status report on July 31, 2006, advising it of the responses it had received.  It again directed the parties to file a joint status report on September 8th, and thereafter directed the parties to file by October 2nd "a joint report either requesting the court to resolve the motion to compel or requesting additional time for the voluntary productions."

   In the parties' most recent submission to the Court before the latest order, we jointly reported that "Treasury's counsel has declined to estimate when Treasury's production will be complete, but has represented to the parties that locating and producing responsive document, especially emails, has been difficult and time consuming."  It is clear, however, that the Court wants a more specific and certain report as to when and how fully Treasury intends to respond to the SEC's requests.  The Court

Seaport World Trade Center West / 155 Seaport Blvd. / Boston, MA 02210-2600 / TEL: 617.832.1000 / FAX: 617.832.7000

Foley Hoag LLP    BOSTON    WASHINGTON, DC    www.foleyhoag.com

Thomas McGivern, Esquire
September 19, 2006
Page 2

also wants an assessment as to what effect Treasury's response will have on my client's motion to compel.

While I appreciate the efforts that you and your colleagues at Treasury have made to date, the delay we have experienced in obtaining these documents has delayed the resolution of other issues in the case. It has already forced the parties to seek a three-month extension of the discovery deadline in this case. I would therefore appreciate detailed information regarding your plans for future productions, including a date certain by which you believe your production will be completed. Please provide me with this information by September 26, 2006 in order that we may file a timely report to the Court.

In addition, we are concerned that none of the documents you have produced so far are responsive to a number of critical requests made by the SEC. Specifically, Treasury has not yet produced any documents concerning:

- Treasury's admission of Peter Davis to quarterly refunding conferences from January 1, 1994 through October 31, 2001.

- Correspondence, including e-mails and letters, between Peter Davis and any Treasury employee, concerning attendance at Treasury refunding conferences and/or any rule of confidentiality or "embargo" pertaining thereto.

- Appointment logs, daily calendars, or other documents showing meetings between Peter Davis and any Treasury employee.

- Any agreement or other document signed by Peter Davis concerning confidentiality of information received from Treasury or compliance with press embargoes.

- Any agreement involving the confidentiality of information, embargoes, or access to Treasury meetings and conferences that were used, signed, or approved by Roger Anderson.

- Standard agreements, forms, or other documents concerning the confidentiality of information used by Treasury from January 1, 1994 to December 31, 2001. I note that multiple Treasury witnesses have testified that Treasury used confidentiality agreements with members of the Borrowing Advisory Committee and Ms. Tyler testified that they were maintained in a special file.

- Documents concerning the use of press embargoes at Treasury from January 1, 1994 to present.

Thomas McGivern, Esquire
September 19, 2006
Page 3

- Documents concerning changes to Treasury's policies, procedures, or practices relating to the release of information subject to embargo that were made prior to the quarterly refunding press conference on October 31, 2001.

- Documents concerning the accuracy of the clock on Treasury's computer system and web server during October 2001.

- Documents concerning violations of embargoes at Treasury from 1990 to the present, including any disciplinary, administrative, or legal actions taken in response to such violations.

- Documents concerning the assertedly premature posting of remarks by Deputy Treasury Secretary Kenneth Dam on Treasury's web site on October 22, 2001, and any subsequent investigations conducted or actions taken at Treasury in response.

- Documents concerning any reports, investigations, or responses by Treasury to the disclosure by Brian Collins of information concerning the suspension of the 30-year note to the Federal National Mortgage Association on October 31, 2001.

- Documents sufficient to disclose Treasury's document retention policies, procedures, or practices from January 1, 1994 to the present.

- Communications before 10:00 a.m. on October 31, 2001 between Treasury and other federal agencies or departments concerning the proposed decision to suspend issuance of the 30-year bond.

- Communications with other federal agencies concerning the disclosure on October 31, 2001 of the suspension of issuance of the 30-year bond.

Please inform us if, with respect to any category of documents listed in the SEC's letter, Treasury has determined that no such documents have ever existed and, if so, what steps Treasury took to search for them.

Furthermore, I was very troubled by the testimony of Frances Anderson that, while she had saved on a disc electronic data that might be critical in ascertaining exactly when the announcement of suspension of issuance of the 30-year bond was posted to the Treasury website on October 31, 2001, that disc inexplicably disappeared from a filing cabinet and she deleted the original data on her desktop computer. Please advise as to your efforts to locate the disc as to which Ms. Anderson testified.

In addition, in your most recent production, on September 8, 2006, your cover letter stated that "[w]here appropriate, redactions have been made to protect privileged

Thomas McGivern, Esquire
September 19, 2006
Page 4

information." I would appreciate an explanation of the Treasury's assertion of privilege. Many of the redactions you made are in e-mail messages to or from staff members in the Office of Public Affairs Treasury — none of whom are attorneys — and appear to involve matters that are highly relevant to this case. It is not evident how such communications are privileged. While I understand that Treasury intends to produce a privilege log "when all privileged documents have been produced," I would like to inform the Court of any issue that may arise regarding claims of privilege in our October 2, 2006 status report.

Finally, I repeat my earlier requests for proposed dates for the depositions of David Aufhauser and Jill Cetina, and for proposed dates and Treasury's clearance for the depositions of Elnora Bowser, Michele Davis, and Steve Berardi.

Thank you for your attention to these matters. I look forward to hearing from you soon.

Sincerely,

John A. Shope

cc:    Christian Furey, Esquire
       John J. Rossetti Jr., Esquire
       Erica Y. Williams, Esquire
       Nicholas C. Theodorou, Esquire
       Robert E. Toone, Esquire

**EXHIBIT E**

**September 29, 2006 Letter from Robert Toone, Esq.
to Thomas McGivern, Esq.**



**FOLEY HOAG LLP**
ATTORNEYS AT LAW

Robert E. Toone
Boston Office
617.832.1233
rtoone@foleyhoag.com

September 29, 2006

**BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL**

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, DC 20220

Re: *United States Securities and Exchange Commission v. Nothern,*
*Civil Action No. 05-10983 (NMG) (D. Mass.)*

Dear Mr. McGivern:

On September 19, 2006, John Shope sent a letter informing you that the U.S. District Court in this action has directed the parties to file a joint status report by October 2, 2006, on the progress of the Treasury Department's production in response to the list of document requests submitted by the SEC on June 30, 2006. He noted that in the parties' previous status report, we stated that "Treasury's counsel has declined to estimate when Treasury's production will be complete, but has represented to the parties that locating and producing responsive document, especially emails, has been difficult and time consuming." He then stated that the Court clearly wants a more specific and certain report as to when and how fully Treasury intends to respond to the SEC's requests and what effect Treasury's response will have on my client's motion to compel.

Mr. Shope asked you to provide "detailed information regarding your plans for future productions, including a date certain by which you believe your production will be completed." He asked you whether Treasury has determined that no documents exist with respect to certain categories of documents listed in the SEC's letter and, if so, what steps Treasury took to search for them. He asked about your efforts to locate the computer disc on which Treasury employee Frances Anderson saved electronic data that may reveal exactly when the announcement of suspension of issuance of the 30-year bond was posted to the Treasury website on October 31, 2001. He asked you to explain Treasury's assertion of privilege in redacting large portions of what appear to be relevant communications to or from Treasury employees. Finally, he asked you for proposed dates for the depositions of David Aufhauser, Jill Cetina, Elnora Bowser, Michele Davis, and Steve Berardi.

Thomas McGivern, Esquire
September 29, 2006
Page 2

Mr. Shope asked you to provide this information by September 26, 2006, so that we could file a complete and timely report to the Court by October 2, 2006. As of this morning, we have not received a response from you regarding these matters. Yesterday, you produced to the SEC 48 additional pages of e-mails between various Treasury employees, and nearly every pertinent communication was redacted. Your cover letter again states that redactions were "made to privileged information," but does not explain what privilege Treasury is claiming.

Please respond as soon as possible to the matters raised in Mr. Shope's letter of September 19, 2006, so that we may make a full and accurate report to the Court.

We look forward to hearing from you.

Sincerely,

Robert E. Toone

cc:     Christian Furey, Esquire
        John J. Rossetti Jr., Esquire
        Erica Y. Williams, Esquire
        Nicholas C. Theodorou, Esquire
        John A. Shope, Esquire

# EXHIBIT F

## October 16, 2006 Letter from Robert Toone, Esq. to Thomas McGivern, Esq.

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

Robert E. Toone
Boston Office
617.832.1233
rtoone@foleyhoag.com

October 16, 2006

**BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL**

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, DC  20220

   Re: *United States Securities and Exchange Commission v. Nothern,*
     **Civil Action No. 05-10983 (NMG) (D. Mass.)**

Dear Mr. McGivern:

   I am writing to inform you that the U.S. District Court in the referenced action has directed the parties to file a final joint report by next Monday, October 23, 2006, on the status of the Treasury Department's production in response to the list of document requests submitted by the SEC on June 30, 2006.

   The last production we received from you was on September 28, 2004.  In a letter dated October 2, 2006, you stated that Treasury continues "to work to ensure that all responsive Treasury documents are located" and continues "to discuss with the United States Secret Service and others whether other potentially responsive documents may exist."

   As we have explained in previous correspondence, it is critical that we provide the Court with a full and accurate report regarding this matter, including:  information regarding your plans for future productions, including a date certain by which you believe your production will be completed; whether Treasury has determined that no documents exist with respect to any category of documents listed in the SEC's letter and, if so, what steps Treasury took to search for them; Treasury's efforts to locate the computer disc on which Treasury employee Frances Anderson saved electronic data concerning the time at which the announcement of suspension of issuance of the 30-year bond was posted to the Treasury website on October 31, 2001; and the basis for Treasury's assertion of privilege in redacting what appear to be relevant communications to or from Treasury employees.

Seaport World Trade Center West / 155 Seaport Blvd. / Boston, MA 02210-2600 / TEL: 617.832.1000 / FAX: 617.832.7000

Foley Hoag LLP    BOSTON    WASHINGTON, DC    www.foleyhoag.com

Thomas McGivern, Esquire
October 16, 2006
Page 2


     Because we must make a final status report to the Court in one week, we would appreciate a response regarding these matters by Thursday, October 20, 2006. We also look forward to a response to the deposition scheduling issues discussed in John Shope's letter of October 3, 2006.

     Thank you for your attention to these matters.

                     Sincerely,

                     Robert E. Toone

cc:    Christian Furey, Esquire
       John J. Rossetti Jr., Esquire
       Erica Y. Williams, Esquire
       Nicholas C. Theodorou, Esquire
       John A. Shope, Esquire