UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : |
| STEVEN E. NOTHERN, | : |
| Defendant. | : |

Civil Action No. 05-10983 (NMG)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION
FOR AN ORDER DIRECTING THE GOVERNMENT TO SHOW CAUSE**

Nicholas C. Theodorou, BB0 #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO # 663249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

## Table of Contents

                                                                                    **Page**

Background ...................................................................................................... 1

    A.    Treasury Depositions Conducted To Date ............................................... 1

    B.    Refusal to Allow Deposition of Elnora Bowser ........................................ 3

    C.    Refusal to Allow Depositions of Jill Cetina ............................................. 4

    D.    Refusal to Respond to Requests for Depositions of Michele Davis and Steve Berardi ....................................................................................................... 6

    E.    Withdrawal of Prior Authorization for Deposition of David Aufhauser ................ 7

    F.    The Parties' Rule 37.1 Conference ......................................................... 9

Argument .................................................................................................... 10

    A.    The SEC Must Produce Relevant Information Held by the Federal Government, Including Testimony by Current and Former Employees ................ 10

    B.    The Government's Refusal to Allow the Depositions Violates the Federal Rules of Civil Procedure. ....................................................................... 10

    C.    D.C. Circuit Law Prohibits Nothern from Compelling These Witnesses' Testimony. ........................................................................................... 13

    D.    The Government's Non-Compliance Warrants an Order to Show Cause and Dismissal. ............................................................................................ 16

Conclusion .................................................................................................. 19

## Table of Authorities

## CASES

*Barreto v. Citibank, N.A.*, 907 F.2d 15 (1st Cir. 1990)......................................................17

*Cabana v. Forcier*, 200 F.R.D. 9 (D. Mass. 2001) ...........................................................10

*Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979) ........................................................................................................................14

*Harvey Aluminum, Inc. v. NLRB*, 335 F.2d 749 (9th Cir. 1964).......................................18

*Ho v. United States*, 374 F. Supp. 2d 82 (D.D.C. 2005)....................................................15

*Houston Business Journal, Inc. v. Office of the Comptroller*, 86 F.3d 1208 (D.C. Cir. 1996)...................................................................................................................14

*Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998) ...........................................................10

*Longtin v. U.S. Dep't of Justice*, No. 06-1302 (JMF), 2006 WL. 2223999 (D.D.C. Aug. 3, 2006) ............................................................................................................15

*Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130 (S.D.N.Y. 1997)...........................10

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) .........16

*New York Times Co. v. United States*, 403 U.S. 713 (1971)................................................7

*Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) .........................................................10

*Santini v. Herman*, No. 06-MS-179 (RMC), 2006 WL. 2956173 (D.D.C. Oct. 17, 2006) ...................................................................................................................15

*Tower Ventures, Inc. v. City of Westfeld*, 296 F.3d 43 (1st Cir. 2002) ..............................17

*Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987)........ 10-11

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ................................................2

*United States v. Liberia*, 989 F.2d 596 (2d Cir. 1993).........................................................3

*Young v. Gordon*, 330 F.3d 76 (1st Cir. 2003) .................................................................16

*Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006)........................................................14

**RULES**

Federal Rule of Civil Procedure 26 ........................................................................... 10-11

Federal Rule of Civil Procedure 37 ...................................................................................16

Federal Rule of Civil Procedure 41 ...................................................................................16

Federal Rule of Civil Procedure 45 ........................................................................... 14-15

Defendant Steven E. Nothern respectfully submits this memorandum in support of his motion for an order directing the government to show cause why its action should not be dismissed due to its refusal to allow depositions of Department of Treasury employees with information critical to the claims and defenses therein.

## Background

### A.    Treasury Depositions Conducted To Date

This is an unusual insider trading case in that the securities in question were issued by the government and the alleged "inside information" on which Nothern acted was announced, and possibly previously leaked, by the government itself before the trading in question. Specifically, the SEC alleges that on October 31, 2001 Nothern directed trades in the 30-year bond for portfolios he managed after receiving a voicemail message from a consultant who had learned of the suspension of the 30-year bond at a press conference conducted by Undersecretary of the Treasury Peter Fisher that day. The government thus seeks to transfer blame for the uneven distribution of the fact of the decision from itself to a private party. Many of the witnesses deposed so far in this case have, unsurprisingly, been current or former government employees. Sharply contested issues in the case include (i) whether the information announced at the press conference was actually confidential, (ii) whether the Treasury could, consistent with the First Amendment, impose an "embargo" on the announcement after it was issued at the press conference, (iii) whether the consultant, Peter Davis, had any fiduciary duty to the Treasury not to disclose what he had learned at the press conference, (iv) whether, even assuming such a duty, Nothern knew of it, and (v) whether Nothern's trades actually preceded the Treasury's posting of the information on the Internet, not to mention widespread reports in the market and upward trading as much as fifteen minutes before Nothern traded.

Until recently, the SEC and Nothern have been able to depose Treasury witnesses after

submitting "*Touhy* requests" to its Office of General Counsel.[1] For example, for the first

deposition in this case, the SEC informed Treasury on March 21, 2006, that it wanted to depose

Steve Vagle, a former Senior Counsel for Technology Policy at Treasury, on the ground that

"documents obtained by the SEC from Treasury during the SEC's pre-lawsuit investigation of

this matter suggest that Vagle has knowledge regarding the events surrounding Treasury's

publication on its website of information concerning its cancellation of the 30-year bond on or

about October 31, 2001." Treasury authorized the requested deposition two days later, stating

that it met "the requirements of 31 C.F.R. §§ 1.8-1.12, which governs requests for the testimony

of current and former Treasury Department employees."

Nothern has also deposed some Treasury employees after submitting *Touhy* requests,

albeit "without conceding that Nothern must do so under the Federal Rules of Civil Procedure or

consistently with constitutional due process." *See* Exhibit A to the Declaration of Robert E.

Toone filed herewith ("Toone Decl.") at 1.[2] In the last two months, however, Treasury has

apparently decided no longer to cooperate with Nothern's discovery efforts. Thus, in addition to

its inadequate and dilatory production of documents (see Docket Doc. # 45, pages 3-14),

Treasury has also expressly denied his requests to depose employees Elnora Bowser, Jill Cetina,

and David Aufhauser, and has by inaction effectively denied his requests to depose former

Assistant Secretary Michele Davis and employee Steve Berardi.

---

[1] "*Touhy*" refers to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951), in which the Supreme Court upheld a Justice Department order requiring a centralized determination as to whether it should comply with a subpoena *duces tecum*.

[2] All cited letters exchanged by counsel for Nothern, counsel for Treasury, and counsel for the SEC regarding Nothern's requests to depose Treasury employees Jill Cetina, Elnora Bowser, Michele Davis, Steve Berardi, and David Aufhauser are attached as exhibits to the Declaration of Robert E. Toone filed herewith ("Toone Decl.").

B.    **Refusal to Allow Deposition of Elnora Bowser**

Elnora Bowser is the Treasury employee who admitted the alleged "tipper," Peter Davis, to the quarterly refunding press conference on October 31, 2001. She alone can testify about her reasons for admitting Davis, whether she was directed to do so by someone else at Treasury, and her understanding of any agreement or duty that Davis may have had to Treasury with regard to information to be announced at the conference.

Ms. Bowser's testimony relates directly to contested elements of the SEC's insider trading claim. Under the misappropriation theory of insider trading, the SEC must establish: "(i) a breach by the tipper of a duty owed to the owner of the nonpublic information; and (ii) the tippee's knowledge that the tipper had breached the duty." *United States v. Liberia*, 989 F.2d 596, 600 (2d Cir. 1993). Accordingly, the SEC must here prove that Peter Davis had a fiduciary duty to Treasury.

In ¶ 27 of the Complaint, the SEC alleges that Treasury permitted Davis to attend the press conference on October 31, 2001 "only by reason" of an "explicit agreement" he reached with a "senior adviser" at Treasury. It is this alleged agreement, the SEC claims, that established Davis's fiduciary duty to Treasury. Clearly, Nothern is entitled to inquire whether Davis was actually admitted to the press conference pursuant to such an agreement, and who else at Treasury knew about it or Davis's duty.

Nothern requested Treasury's authorization to take Bowser's deposition on August 16, 2006. Ex. E to Toone Decl. at 2. In a letter dated November 2, 2006, Treasury denied Nothern's request "pursuant to Treasury's *Touhy* regulations." Ex. J to Toone Decl. at 1. It stated that Ms. Bowser's testimony is not "genuinely necessary to the proceeding" because she "only cleared Peter Davis into the Treasury building one time" (*i.e.*, on October 31, 2001). *Id.* It stated that the information Nothern seeks is available from other sources. *Id.* at 1-2. Finally, it asserted that

the request to depose Ms. Bowser is "unduly burdensome" because Treasury has purportedly already expended "hundreds of hours and hundreds of thousands of dollars" to the case. *Id.* at 2-3.

### C.    Refusal to Allow Depositions of Jill Cetina

Treasury has also denied Nothern's request to depose Jill Cetina, an economist at Treasury. Treasury documents make clear that she has information that bears directly on the claims and defenses in this case: in particular, whether Treasury had already disclosed its plan to suspend issuance of the 30-year bond before any trades by Nothern and whether the bond market already reflected that disclosure. On October 31, 2001 itself, Ms. Cetina observed price increases on the long bond at about 9:35 a.m., before Nothern's trade, which the SEC asserts took place at 9:42 a.m., and before expiration of the supposed 10:00 a.m. "embargo" and the SEC's own posting of the announcement on the Internet at 9:40 a.m. Soon after October 31, Ms. Cetina informed Treasury's Office of General Counsel that during the prior week "she had a conversation with a member of Lehman Brothers . . . in which she was asked whether Treasury would be suspending issuance of the 30-year bond." Ms. Cetina

> volunteered that the members of Lehman Brothers had just come from a meeting with [Office of Market Finance Director] Paul Malvey. Reflecting upon the value of advance information, Cetina said that she had spoken with a colleague about how easy it would be to make money by using the information to position oneself in the financial markets. She also volunteered that the SF 450s (confidential financial disclosure reports) did not require a filer to list holdings in government securities.

Ms. Cetina was clearly encouraging the Office of General Counsel to investigate whether any of Treasury's employees — and Paul Malvey, the Director of the Office of Market Finance, in particular — used confidential information "to position [themselves] in the financial markets." Because employees in Malvey's office (like Elnora Bowser) were apparently responsible for admitting Peter Davis into the press conference on October 31, 2001, this is a matter into which

Nothern wishes to inquire.

In fact, the SEC, in conjunction with Treasury's Office of Inspector General, conducted a formal interview of Ms. Cetina on November 7, 2001, in which she provided substantial information about the extent to which market participants had advance knowledge of Treasury's decision to suspend the bond, including through reported disclosures by a European central bank, and the extent to which the market was acting on such knowledge prior to Treasury's announcement.[3] Clearly, the SEC and Treasury believed that Ms. Cetina had information that warranted their attention and investigation in the weeks immediately following Treasury's announcement. Nothern is entitled to ask her about these issues now.

Nothern requested Treasury's authorization to take Cetina's deposition on May 18, 2006. Ex. A to Toone Decl. at 4-5. In a letter dated June 9, 2006, Treasury stated that Ms. Cetina, a current employee, was dealing with "medical issues" and "will not be able to participate in a deposition any time soon." Ex. B to Toone Decl. at 1. Treasury did not state that it had permanently denied Nothern's request or cite any supporting *Touhy* regulation. On July 10, 2006, Nothern requested an update about Cetina's current medical condition and "the conditions under which we may safely conduct her deposition before the discovery deadline." Ex. C to Toone Decl. at 1. In a subsequent conversation, counsel for Treasury assured defense counsel

---

[3] During this SEC-Treasury interview, Ms. Cetina stated that "a week or two prior to the announcement, she spoke with Drew Matus, a market strategist for Lehman Brothers Inc. in New York. She said that Matus predicted that Treasury would eliminate the 30-year bond. She thought he was 'going out on a limb with that type of speculation.'" Ms. Cetina further observed that on the morning of October 31, 2001, she observed an increase in the price of the 30-year bond as early as 9:35 a.m. She herself "became aware" — it is not clear how — "of the decision to suspend sales of the 30-year bond approximately 30 minutes prior to the official announcement." Ms. Cetina also spoke with several primary bond dealers who heard advance reports about Treasury's decision. According to e-mails that the Office of Inspector General included as an exhibit in its report, one dealer told Ms. Cetina that "they received a call from John Jacobs from IDEA yesterday about a rumor that Treasury would eliminate the long bond. The same dealer reports that the long bond was trading special on repo yesterday." Another dealer in London told Ms. Cetina that "he heard rumor that the long bond would be eliminated yesterday from a European Central Bank."

that Treasury would seek to arrange the deposition.  Then, in a letter dated October 2, 2006,

contrary to its prior written and oral representations, Treasury stated that it had permanently

denied Nothern's request to depose Cetina "under Treasury's *Touhy* regulations."  Ex. H to

Toone Decl. at 1.  On October 3, 2006, Nothern urged Treasury to reconsider its denial.  Ex. I to

Toone Decl.  Treasury has not responded.

> **D.    Refusal to Respond to Requests for Depositions of Michele Davis and Steve Berardi**

Treasury has failed to respond to Nothern's requests — made on August 16, 2006, and

reiterated on September 19 and 29, 2006, *see* Exs. E, F, & G to Toone Decl. — to depose two

additional witnesses:  former Assistant Secretary for Public Affairs Michele Davis and Treasury

employee Steve Berardi.  Both witnesses are likely to provide information that is relevant to the

claims and defenses in this case and not available from other sources.

Michele Davis was Assistant Secretary at the time of the October 31, 2001 press

conference.  At his deposition, former Under Secretary Fisher testified (pages 101-02) that he

had a conversation with Ms. Davis in which he expressed his opposition to the use of an embargo

for the quarterly refunding press conference on the ground that "the risk of a leak or some

malfunction, some procedural malfunction was too high" and argued for the "direct release" of

the information.  In response, Ms. Davis told Fisher (page 103) that she "felt strongly that

changing procedures at that moment was not a good idea."

Nothern seeks to ask Ms. Davis about Treasury's decision to reject Fisher's advice and

institute a fixed embargo time, as well as her understanding of Treasury's policies on

maintaining the confidentiality of market-sensitive information, the use of embargoes and any

sanctions for "violations," and the admission of persons without press credentials, such as Peter

Davis, to quarterly refunding press conferences.  These questions are central to the issues of

whether Treasury meaningfully preserved confidentiality once its press conference had begun and whether Treasury met the "heavy burden of showing justification" imposed by the First Amendment for a prior restraint on speech, given the apparent lack of necessity for an embargo on October 31, 2001.  (Indeed, Treasury has since stopped using embargoes at the conferences.) *See New York Times Co. v. United States*, 403 U.S. 713, 714 (1971).

Another issue in the case is whether the information announced at the press conference can be deemed confidential when, as a practical matter, anyone in the Treasury building could have entered or exited the conference at any time.  This point relates to Steve Berardi, who in 2001 was a financial economist on Paul Malvey's staff.  At his deposition Malvey testified (pages 191-94) that on October 31, 2001, Berardi may have stood at the door to the quarterly refunding press conference "to make sure no one leaves" — a suggestion that other Treasury witnesses have disputed.[4]

Berardi has other evidence to suggest that the information was handled in a way that foreclosed confidentiality or otherwise was "out" before Nothern traded.  Following the October 31, 2001 press conference, Berardi told Treasury's Office of General Counsel that "he was 'amazed' Treasury's decision to suspend issuance of the 30-year bond had not leaked earlier.  He noted that two sets of calendars had been sent to the printer weeks in advance.  One set showed the Treasury continuing issuance of the 30-year bond.  The other didn't.  For that reason alone, he was surprised the decision had not become public earlier."  Nothern seeks to ask Berardi about these and related issues, but Treasury has failed to respond to his repeated requests.

### E.    Withdrawal of Prior Authorization for Deposition of David Aufhauser

Most recently, Treasury has withdrawn its prior authorization for the deposition of David

---

[4] For example, Jill Ouseley (pages 61-62) and Tony Fratto (page 161) testified that there was no guard and that attendees were free to leave at will.

Aufhauser. It did so in a letter sent two business days before his scheduled deposition date.

Aufhauser was General Counsel for Treasury on October 31, 2001, and following the botched announcement on the 30-year bond, he initiated an investigation into what went wrong. Members of his staff subsequently reported to him a number of findings, including findings on the timing of the release on Treasury's web site in advance of the stated embargo, an assessment by Paul Malvey that one or more parties had traded on the basis of advance information, Jill Cetina's report on the suspicious conversation she had with the member of Lehman Brothers who had just meet with Malvey, and a report on the lack of "written standards in Market Finance for determining who is able to attend these press conferences." On November 5, 2001, Aufhauser received a telephone call from Ward McCarthy, a bond analyst who was apparently the first person to receive a call from Davis following Treasury's announcement. McCarthy told Aufhauser that "he assumed that Treasury had given Davis its tacit approval to release the information."

On November 6, 2001, Aufhauser referred the matter for investigation by the SEC. On September 4, 2003, following the SEC's initiation of an enforcement action against Nothern, Aufhauser made the following comment to the *Wall Street Journal*:

> "I couldn't be happier that this concluded with punishing action against those responsible for violating our rules and I equally couldn't be happier with the finding that no one within the Treasury building did anything inappropriate and indeed that all of the people who participated in the investigation in this building have been found to have behaved above board, honorably in the service of their department and country."

Nothern requested Treasury's authorization to take Aufhauser's deposition on May 18, 2006. Ex. A to Toone Decl. at 5-6. Treasury approved this request on June 9, 2006, and stated that it would inform Aufhauser of its approval. Ex. B to Toone Decl. at 1-2.

During the summer of 2006, counsel for Treasury informed defense counsel in person of

Aufhauser's preference to be deposed in Washington, D.C. (where his family resides) rather than in New York City (where he now works). Counsel for Nothern responded that this preference was acceptable and requested proposed dates. Counsel subsequently made written requests for deposition dates for Aufhauser in letters dated July 10, August 16, September 19, September 29, and October 3, 2006. *See* Exs. C, E, F, G, & I to Toone Decl. Treasury did not respond to any of these five written requests. In addition, counsel for Nothern contacted Aufhauser directly by telephone on May 26, and by e-mail on July 14, 2006, on both occasions requesting that Aufhauser propose convenient dates for his deposition. *See* Ex. D to Toone Decl. Aufhauser did not respond to either request. *See generally* Ex. O to Toone Decl. at 1-3.

Faced with the impending discovery deadline of December 15, 2006, on November 2 Nothern served a subpoena *duces tecum* for a deposition to take place in Washington on Monday, November 20, 2006. Then, on Wednesday, November 15, 2006, at 6:19 p.m., counsel for Treasury sent a letter announcing that it had decided, "pursuant to Treasury *Touhy* regulations, to deny your request to depose Aufhauser and to require him to produce documents." Ex. N to Toone Decl. at 1. He wrote, "Although my June 9, 2006 letter to you initially authorized Aufhauser's deposition subject to certain limitations, we have now concluded that deposing Aufhauser on topics that have already been addressed numerous times in documents and in deposition testimony imposes an undue burden on the Department." *Id.* at 3.

### F.     The Parties' Rule 37.1 Conference

Following an exchange of correspondence on the government's refusal to permit depositions, the parties held a telephone conference on November 8, 2006. In an effort to resolve the dispute, counsel for Nothern proposed that the SEC make a written request asking Treasury asking to (1) reconsider its decision denying him authorization to proceed with the depositions of Jill Cetina and Elnora Bowser, and (2) issue a prompt and favorable response to

9

our request to depose Michele Davis and Steve Berardi. *See* Ex. M to Toone Decl. at 1. Under

this proposal, the parties would reserve their positions on the merits of any motion pending

Treasury's response. *Id.* The SEC rejected Nothern's proposal and stated that there is no way to

resolve the dispute other than by motion to this Court. *Id.*

## Argument

### A.    The SEC Must Produce Relevant Information Held by the Federal Government, Including Testimony by Current and Former Employees.

Because the principles of fundamental fairness and due process that underlie his motion

to compel documents held by other government agencies apply with equal force here, Nothern

incorporates the argument set forth in his earlier supporting memoranda (Docket Doc. ## 31, 36,

& 45).

### B.    The Government's Refusal to Allow the Depositions Violates the Federal Rules of Civil Procedure.

The scope of discovery under the Federal Rules of Civil Procedure is "very broad."

*Cabana v. Forcier*, 200 F.R.D. 9, 17 (D. Mass. 2001) (Gorton, J.). Rule 26(b)(1) authorizes a

party to take discovery of any matter "reasonably calculated to lead to the discovery of

admissible evidence." The "plain language of this Rule 26(b)(1) contemplates wide-ranging

discovery to the fullest possible extent." *Klonoski v. Mahlab*, 156 F.3d 255, 267 (1st Cir. 1998).

Courts are particularly reluctant to bar litigants from taking depositions. *See, e.g., Salter

v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the

taking of a deposition altogether and absent extraordinary circumstances, such an order would

likely be in error."); *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997)

("it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of

a deposition"). In *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass.

1987), the Court rejected an automobile manufacturer's effort to block depositions of four high-

level executives.  Citing Rule 26(b)(1), it reasoned that "[p]laintiff's counsel has a factual basis

for wanting to depose the four executives, and, in these circumstances, the Court defers to

counsel's judgment."  *Id.* at 146.  Recognizing their need for extensive discovery in this case in

particular, the parties stipulated in their Joint Statement Pursuant to Local Rule 16.1(D) (Docket

Doc. # 21) that each side may take twenty (20) fact depositions, instead of the presumptive limit

of ten (10) depositions set forth in Local Rule 26.1(c).

Here, the government has expressly denied Nothern's request to depose Elnora Bowser,

Jill Cetina and David Aufhauser and effectively denied his requests to depose Michele Davis and

Steve Berardi.  As discussed above, Treasury has argued that Bowser's and Aufhauser's

testimony is not "genuinely necessary to the proceeding," available from other sources, and

unduly burdensome.  *See* Ex. J & N to Toone Decl.  It stated that Nothern seeks to depose

Treasury employees on topics that "are not in dispute" and have been previously addressed in

other depositions.  Similarly, the SEC has argued that the depositions of Bowser, Cetina, Davis,

and Berardi are "unlikely to lead to the discovery of admissible evidence" and "would be a waste

of time and resources."  *Id.* at 3.

These arguments are completely without merit:

- No witness has addressed the specific reason for Treasury's admission of Peter Davis
  to the quarterly refunding press conference on October 31, 2001 — the decision that
  led to all the other events alleged in the SEC's Complaint.  No witness has addressed
  whether Elnora Bowser, the employee who admitted Davis, was aware of any
  agreement or fiduciary duty owed by Davis to Treasury.  Only Bowser herself can
  testify to these points.

- No witness has discussed the suggested "tip" made to Lehman Brothers to Treasury
  employee Malvey during the week prior to the announcement on the 30-year bond.
  No witness has discussed "how easy it would be" for Treasury employees "to make
  money by using the information to position [themselves] in the financial markets."
  No witness has discussed reports by primary bond dealers regarding their advance
  knowledge of Treasury's decision to suspend the 30-year bond, whether the
  information was leaked by a European central bank, and how the market responded to

such advance reports. Only Jill Cetina can testify to these points.

- No witness other than Assistant Secretary Michele Davis can explain why she decided to reject the request of Under Secretary Fisher to release the information on the 30-year bond directly, not through the use of an "embargo."

- No witness can authoritatively confirm or deny Paul Malvey's suggestion that Steve Berardi guarded the doors to the press conference room on October 31, 2001 other than Berardi himself. And no one other than Berardi can explain his amazement that Treasury's announcement did not leak earlier, based on its disclosure of the suspension in a set of calendars sent to the printer "weeks in advance."

- No witness other than Aufhauser can testify as to the findings and conclusions reached by him as a result of his investigation into Treasury's announcement in the weeks following October 31, 2001, or explain why he referred the matter to the SEC. No other witness can verify the statement of bond analyst Ward McCarthy that he "assumed that Treasury had given Davis its tacit approval to release the information" and no one else can explain Aufhauser's remarkable statement to the *Wall Street Journal* that "no one within the Treasury building did anything inappropriate and indeed that all of the people . . . in this building have been found to have behaved above board, honorably in the service of their department and country."

All of these issues relate to contested elements in the case, including whether the information announced by Treasury was actually confidential and whether Peter Davis actually had a fiduciary duty to Treasury.

In its letter of November 2, 2006, Treasury cited a number of deposition excerpts in support of its assertion that "[a]ll the topics for which you seek to depose Ms. Bowser have been addressed in Treasury's document production and in deposition testimony by a number of other current and former employees." Ex. J to Toone Decl. at 1; *see also* Ex. N to Toone Decl. at 2 (letter withdrawing Aufhauser deposition approval). But the cited deposition excerpts are incomplete, inconsistent with other testimony, or otherwise unreliable. For example, Treasury maintains that a number of witnesses have already explained the basis for Peter Davis's authority to attend Treasury conferences. However, the cited excerpt for Paul Malvey (pages 90-92) — stating that Jill Ouseley told him to admit Davis — is contradicted by Ouseley's testimony

(pages 27-28), who denied knowing Davis or speaking with anyone else at Treasury about him.
The cited excerpts for Elizabeth Holahan (pages 115-16, 137-38) make clear that she does not
know how Davis gained admission or who Lula Tyler or Bowser (the two employees who
arranged for his admission) are. And no employee at Treasury appears to have had any
knowledge of a confidentiality agreement entered into by Davis.

Indeed, Treasury asserted in its letter that the Bowser deposition is unnecessary because
"[t]here is no information from any current or former Treasury employee to indicate that there
was any written confidentiality agreement between Peter Davis and the Treasury Department."
Ex. J to Toone Decl. at 2. The SEC, however, relies on the existence of such an agreement as the
basis for its contention that Davis had a duty to Treasury on October 31, 2001.[5] How can
Nothern disprove the SEC's contention unless he asks the Treasury employee responsible for
admitting Davis whether she knew about it?

Nothern clearly has a good-faith, factual basis for wanting to depose Bowser, Cetina,
Michele Davis, Berardi, and Aufhauser. The government may not pick and choose those
witnesses whom it thinks may be the most helpful to its case and then deny access to other
evidence.

### C.    D.C. Circuit Law Prohibits Nothern from Compelling These Witnesses' Testimony.

As there is no alternative source for the information Nothern seeks from witnesses
Bowser, Cetina, Davis, Berardi, and Aufhauser, there is no alternative procedure by which he

---

[5] In its response to Nothern's Interrogatory No. 3, the SEC states: "As Davis testified during his deposition, sometime in 1994-95 he entered into a written agreement with Treasury in which he was granted permission to attend Treasury's quarterly refunding press conferences in return for his agreeing to abide by Treasury's embargo procedures and keep all information released at the press conferences confidential until after the expiration of the stated embargo time. According to Davis, Roger Anderson, then Treasury's Deputy Assistant Secretary for Federal Finance, entered into this agreement on Treasury's behalf. Davis further testified that this agreement was in effect on October 31, 2005 [*sic*]."

may obtain their testimony in this litigation.

In its letter of November 8, 2006, the SEC argued that the D.C. Circuit's ruling in *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006), held that litigants are now free to depose agency employees "by issuing subpoenas to the agencies under Rule 45 of the Federal Rules of Civil Procedure." Ex. L to Toone Decl. at 2. *Yousuf*, however, involved a subpoena *duces tecum*, not a deposition subpoena.[6] In fact, while *Yousuf* resolved the meaning of "person" under Rule 45, another line of precedent in the D.C. Circuit prohibits the enforcement of subpoenas *ad testificandum* (including deposition subpoenas) against employees of federal agencies that have enacted housekeeping regulations. This line of cases, which relies on the principle of sovereign immunity, distinguishes between document subpoenas and testimony subpoenas and allows only the former to be enforced directly under Rule 45.

In *Houston Business Journal, Inc. v. Office of the Comptroller*, 86 F.3d 1208 (D.C. Cir. 1996), the court affirmed the denial of a motion to compel the federal Comptroller of Currency to produce certain documents relevant to a libel case in Texas. Although the underlying litigation was in state court, the D.C. Circuit also stated rules for federal-court litigants, drawing a distinction between testimony subpoenas and document subpoenas. Under *Touhy* no litigant may obtain a subpoena *ad testificandum* "against an employee of a federal agency that has enacted a *Touhy* regulation." *Id.* at 1212 n.4 (citation omitted). "In that situation, the litigant must proceed under the [Administrative Procedure Act], and the federal court will review the

---

[6] Contrary to the SEC's suggestion, *Yousuf* did not discuss whether an agency that initiates a lawsuit has a duty to disclose all documents in the government's possession, "not just those materials in the immediate possession of the particular agency-plaintiff." *See Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979). The underlying litigation in *Yousuf* was between private parties, not a federal agency. Nothern discusses the relevance of *Yousuf* to his requests for documents held by Treasury and the Department of Justice at page 15, footnote 5 of his Memorandum in Support of His Renewed Motion to Compel Production of Documents (Docket Doc. # 45).

agency's decision not to permit its employee to testify under an 'arbitrary and capricious'

standard." *Id.* (citations omitted).[7]

That position was reaffirmed in *Ho v. United States*, 374 F. Supp. 2d 82 (D.D.C. 2005),

*Id.* at 83-84. "[W]here an agency has enacted valid *Touhy* regulations, a federal court litigant

may not obtain a subpoena *ad testificandum* against an employee of a federal agency, but 'the

litigant must proceed under the APA and the federal court will review the agency's decision not

to permit its employee to testify under an 'arbitrary and capricious' standard." *Id.* at 83 (citations

omitted). More recently, in *Longtin v. U.S. Dep't of Justice*, No. 06-1302 (JMF), 2006 WL

2223999 (D.D.C. Aug. 3, 2006) — a case decided <u>after</u> the D.C. Circuit's ruling in *Yousuf* — the

court upheld the Justice Department's refusal to authorize a deposition of an Assistant United

States Attorney. The "only way to overturn the Department of Justice's denial of plaintiff's

*Touhy* request is to file a civil complaint under the Administrative Procedure Act and to establish

that the decision made by the Department of Justice was arbitrary, capricious, and unreasonable."

2006 WL 2223999, at *3 (citing *Houston Business Journal*). *See also Santini v. Herman*, No.

06-MS-179 (RMC), 2006 WL 2956173, at *1 (D.D.C. Oct. 17, 2006) ("Whether a plaintiff seeks

testimony or the production of documents from an agency, she must comply with the agency's

*Touhy* regulations.").

These cases make clear that, contrary to the SEC's suggestion, Nothern does <u>not</u> have the

power to file a Rule 45 subpoena and compel the depositions of Bowser, Cetina, Davis, and

Berardi. To the contrary, under the precedent discussed above, such a subpoena would be

thrown out of court. Nothern's only recourse in the D.C. Circuit is to file an independent lawsuit

---

[7] By contrast, the court found that the federal government has waived its sovereign immunity
with respect to the production of documents, "and neither the Federal Housekeeping Statute nor
the *Touhy* decision authorizes a federal agency to withhold documents from a federal court."
*Houston Business Journal*, 86 F.3d at 1212 (citations omitted).

under the Administrative Procedure Act challenging Treasury's denial of his deposition requests under the highly deferential "arbitrary and capricious" standard. Such collateral litigation could last two years or more. The period of fact discovery in this case is currently scheduled to expire on December 15, 2006, and trial is currently scheduled for next June.

Thus, the SEC's proposed alternative for enforcing Nothern's right to discovery and due process is no alternative at all. Even if he managed to prove that Treasury's actions were arbitrary and capricious, he would clearly not receive any relief by the current discovery deadline — or even by the scheduled date for trial. Unless this Court orders the government to show cause, Treasury's refusal of Nothern's requests will constitute an irrevocable denial of his rights.

### D.    The Government's Non-Compliance Warrants an Order to Show Cause and Dismissal.

It is well established that the "sanction of dismissal is an important part of the armamentarium that the law makes available to trial courts" to establish orderly processes and manage their own affairs. *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003) (citations omitted). Federal Rule of Civil Procedure 37(b)(2)(C) authorizes an order "dismissing the action or proceedings or any part thereof" as a remedy for a party's failure to obey an order to provide or permit discovery, and Rule 41(b) allows a defendant to move for dismissal for "failure of the plaintiff to prosecute or to comply with these rules or any order of court." Moreover, "in the federal system the Civil Rules reinforce and augment the inherent power of district courts to dismiss cases for disregard of judicial orders." *Young*, 330 F.3d at 81.

In *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640-43 (1976), the Supreme Court held that the district court did not abuse its discretion in dismissing an antitrust action where the plaintiffs failed to answer "crucial interrogatories." In *Young*, the First Circuit upheld the dismissal of an action based on the plaintiff's failure to appear for his

deposition within seven days; in so doing, the court noted that "a finding of bad faith is not a condition precedent to imposing a sanction of dismissal." 330 F.3d at 81-82. In *Barreto v. Citibank, N.A.*, 907 F.2d 15, 15-16 (1st Cir. 1990), the court affirmed a dismissal based on the plaintiff's failure to answer interrogatories and appear at a scheduling conference. And in *Tower Ventures, Inc. v. City of Westfeld*, 296 F.3d 43, 45 (1st Cir. 2002), the district court entered a show-cause order and then dismissed the action based on the plaintiff's failure to serve its expert witness disclosure and responses to discovery, in violation of the deadlines set forth in the court's scheduling order. On appeal, the First Circuit affirmed, noting that "the absence of a legitimate reason, coupled with the fact that the court previously had granted [the plaintiff] an extension, made dismissal an appropriate sanction." *Id.* at 47.

Here, it has been clear from the start of this litigation that Treasury documents and testimony by Treasury employees would be critical. The Court entered its Scheduling Order (Docket # 26) on November 16, 2005 — a full year ago — directing the parties to complete all fact depositions and discovery by September 15, 2006. On August 9, 2006, citing Treasury's delay in producing documents, the parties jointly moved for an extension of this deadline until December 15, 2006 (Docket # 40).

Since then, and notwithstanding the deadlines set forth in the court's scheduling order, Treasury has relied on its *Touhy* regulations to limit and heavily redact the documents it has produced in response to the SEC's request — even though Treasury's regulations expressly do not apply to "official requests of other governmental agencies." 31 C.F.R. § 1.12. It has refused to identify the claim of privilege on which it bases its redactions. Treasury has also relied on its *Touhy* regulations to deny Nothern the ability to depose Elnora Bowser and Jill Cetina; to withdraw its earlier approval of his request to depose David Aufhauser; and, by failing to

17

respond for three months, to effectively deny his requests to depose Michele Davis and Steve Berardi. The SEC has contributed to the impasse by refusing to ask Treasury to reconsider. Ex. L to Toone Decl. at 3.

Thus, the two agencies that coordinated so closely in investigating Treasury's botched release of information on the 30-year bond are now acting in tandem to deny Nothern documents and testimony critical to his defense. Their actions violate the fundamental principles underlying the federal discovery rules and the Due Process Clause of the Fifth Amendment. *See Harvey Aluminum, Inc. v. NLRB*, 335 F.2d 749, 753 (9th Cir. 1964) ("[T]he laws under which these agencies operate prescribe the fundamentals of fair play. Their proceedings must satisfy the pertinent demands of due process."). They have limited Nothern's ability to obtain evidence that could exculpate him from liability and increased the likelihood that an erroneous determination will result in this proceeding. As discussed in Nothern's initial Memorandum in Support of His Motion to Compel Production of Documents (Docket Doc. # 31, pages 11-12, 20), the government may not pursue an enforcement action while denying the defendant information and documents that are relevant to his defense.

Accordingly, this Court should exercise its authority to direct the government to show cause why this action should not be dismissed in light of its deliberate and persistent failure to provide discovery. Unless good cause is shown for that failure, the action against Nothern should be dismissed with prejudice.

## Conclusion

For the foregoing reasons, the Court should enter an order directing the government to show cause why its action should not be dismissed for refusing to provide discovery.

STEVEN E. NOTHERN

By his attorneys,

/s/ John A. Shope
Nicholas C. Theodorou, BB0 #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO # 663249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
jshope@foleyhoag.com

Dated:  November 17, 2006

19