## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | **Civil Action No. 05-10983 (NMG)** |
| STEVEN E. NOTHERN, ) ) ) | |
| Defendant. ) ) | |

## DECLARATION OF ROBERT E. TOONE FILED IN SUPPORT OF DEFENDANT'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO SHOW CAUSE

Robert E. Toone, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.     I am an attorney for Steven E. Nothern in the above-referenced matter.  I am a member of the Massachusetts bar and the bar of this Court.  Except where otherwise indicated, I make this declaration based upon my own personal knowledge, upon public records, and upon the documents related to this action.

2.     A true and correct copy of a letter from John A. Shope at Foley Hoag LLP to Thomas McGivern at the Department of the Treasury, dated May 18, 2006, is attached hereto as Exhibit A.

3.     A true and correct copy of a letter from Thomas McGivern at the Department of the Treasury to John A. Shope at Foley Hoag LLP, dated June 9, 2006, is attached hereto as Exhibit B.

4.    A true and correct copy of a letter from John A. Shope at Foley Hoag LLP to Thomas McGivern at the Department of the Treasury, dated July 10, 2006, is attached hereto as Exhibit C.

5.    A true and correct copy of an e-mail sent by Robert E. Toone at Foley Hoag LLP to David Aufhauser at UBS Investment Bank, dated July 14, 2006, is attached hereto as Exhibit D.

6.    A true and correct copy of a letter from John A. Shope at Foley Hoag LLP to Thomas McGivern at the Department of the Treasury, dated August 16, 2006, is attached hereto as Exhibit E.

7.    A true and correct copy of a letter from John A. Shope at Foley Hoag LLP to Thomas McGivern at the Department of the Treasury, dated September 19, 2006, is attached hereto as Exhibit F.

8.    A true and correct copy of a letter from Robert E. Toone at Foley Hoag LLP to Thomas McGivern at the Department of the Treasury, dated September 29, 2006, is attached hereto as Exhibit G.

9.    A true and correct copy of a letter from Thomas McGivern at the Department of the Treasury to John A. Shope and Robert E. Toone at Foley Hoag LLP, dated October 2, 2006, is attached hereto as Exhibit H.

10.    A true and correct copy of a letter from John A. Shope at Foley Hoag LLP to Thomas McGivern at the Department of the Treasury, dated October 3, 2006, is attached hereto as Exhibit I.

11.     A true and correct copy of a letter from Thomas McGivern at the Department of the Treasury to John A. Shope at Foley Hoag LLP, dated November 2, 2006, is attached hereto as Exhibit J.

12.     A true and correct copy of a letter from John A. Shope at Foley Hoag LLP to Erica Y. Williams and John J. Rossetti Jr. at the Securities and Exchange Commission, dated November 7, 2006, is attached hereto as Exhibit K.

13.     A true and correct copy of a letter from Erica Y. Williams at the Securities and Exchange Commission to John A. Shope at Foley Hoag LLP, dated November 8, 2006, is attached hereto as Exhibit L.

14.     A true and correct copy of a letter from John A. Shope at Foley Hoag LLP to Erica Y. Williams at the Securities and Exchange Commission, dated November 8, 2006, is attached hereto as Exhibit M.

15.     A true and correct copy of a letter from Thomas McGivern at the Department of the Treasury to John A. Shope at Foley Hoag LLP, dated November 15, 2006, is attached hereto as Exhibit N.

16.     A true and correct copy of a letter from John A. Shope at Foley Hoag LLP to Thomas McGivern at the Department of the Treasury, dated November 16, 2006, is attached hereto as Exhibit O.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 17, 2006.

_____
Robert E. Toone

# Exhibit A



# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jjs@foleyhoag.com

May 18, 2006

**BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL**

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, D. C.  20220

     Re:    ***United States Securities and Exchange Commission v. Nothern,***
             **Civil Action No. 05-10983 (NMG) (D. Mass.)**

Dear Mr. McGivern:

     I write for two reasons.  First, when we spoke during a break in the deposition of Steven Vagle on March 24, 2006, you stated that you would act to expedite the Treasury Department's response to the requests made by my client, Steven Nothern, pursuant to the Freedom of Information Act, 5 U.S.C. § 552.  We made those requests on behalf of Mr. Nothern on November 11, 2005, but have since received no substantive information, other than a single document provided in response to our supplemental request made on March 10, 2006.

     Second, and without conceding that Mr. Nothern must do so under the Federal Rules of Civil Procedure or consistently with constitutional due process, pursuant to 31 C.F.R. §§ 1.8-1.12 we seek authority to take the depositions of the following current and former Treasury employees:  Elizabeth Holahan, Frances Anderson, Brian Roseboro, Lula Tyler, Paul Malvey, Jill Cetina, Jill Ouseley, David Aufhauser, Roger Anderson, and Peter Fisher.  We respectfully request your approval of these depositions by May 25, 2006, so that the parties can make all necessary arrangements.

     We intend to begin taking these depositions in June.  We intend to depose Ms. Ouseley in Sarasota, Florida; Mr. Anderson in Newark, New Jersey, and Mr. Aufhauser and Mr. Fisher in New York City.  The remaining depositions will occur at the offices of Foley Hoag LLP, 1875 K Street, N.W., Suite 800, Washington, D.C.  We are willing to accommodate the witnesses', the SEC's, and your schedules in arranging the exact time and location of each deposition.

Thomas McGivern, Esquire
May 18, 2006
Page 2

The information that we seek to discover from these witnesses is material to the claims and defenses in the referenced case and not available from other sources. As Erica Y. Williams explained in her letters to you dated March 16 and 21, 2006, the U.S. Securities and Exchange Commission brought this civil enforcement action alleging that on October 31, 2001 Mr. Nothern violated the federal securities laws by engaging in insider trading based on information released at Treasury's quarterly refunding press conference that day. Specifically, the SEC alleges that Peter J. Davis, a consultant, attended Treasury's press conference, listened to Under Secretary Fisher's announcement that Treasury was going to suspend issuance of the 30-year bond, walked out of the Treasury building, and made at least nine telephone calls to clients, including Nothern. The SEC alleges that Davis was allowed to attend refunding press conferences pursuant to an agreement he reached with an unspecified senior adviser in Treasury's Office of Federal Finance.

Under Secretary Fisher's press conference reportedly lasted from approximately 9:00 to 9:25 a.m. The SEC alleges that Davis called Nothern at approximately 9:38 a.m. The time of Nothern's alleged trade has not been conclusively established. According to an investigation by Treasury's Office of Inspector General ("OIG"), even though a Treasury spokesperson announced a press "embargo" time of 10:00 a.m., officials distributed copies of Fisher's statement containing the caption "FOR IMMEDIATE RELEASE" to attendees at the conference. The statement was reportedly posted on the staging server of Treasury's web site at 9:40 a.m. and accessible to the public at 9:43 a.m., as recorded by the Treasury computer system.

We intend to ask the witnesses about the following issues:

**Elizabeth Holahan**

During the OIG investigation, Ms. Holahan, a public affairs specialist in Treasury's Office of Public Affairs, stated that she helped to coordinate the October 31, 2001 press conference. She stated that she announced at the conference that the information presented by Under Secretary Fisher was subject to an "embargo"; that the reporters present were governed by the "honor system" not to release the information prior to the "embargo" time; and that she first noticed that the final version of Fisher's statement contained the caption "FOR IMMEDIATE RELEASE" at approximately 10:15 a.m. The SEC has also produced documents indicating that Ms. Holahan e-mailed copies of Fisher's statement to various media outlets, including CNBC, the New York Times, and the Wall Street Journal, substantially before the announced "embargo" time. During Ms. Holahan's deposition, we will ask her about Treasury's policies and procedures on establishing and enforcing "embargoes"; Treasury's pre-embargo release of information on its web site on October 22, 2001; the policies and procedures that were specifically followed on October 31, 2001; her understanding of the "honor system" that she stated governed attendees at the press conference; any enforcement of that "system"; the manner in which Fisher's announcement was released at the press

Thomas McGivern, Esquire
May 18, 2006
Page 3

conference, on the Treasury's web site, and through other means; and how Davis was allowed to attend the press conference.

**Frances Anderson**

During the OIG investigation, Ms. Anderson, an employee in Treasury's Office of Public Affairs, stated that she passed out copies of Treasury's press release (containing Fisher's announcement of the suspension of the 30-year bond) prior to the October 31, 2001 press conference; that she was unaware of the 10:00 a.m. "embargo"; and that at the conclusion of the conference she sent out the press release on Treasury's web site. Ms. Anderson suggested that problems formatting the press release with the proper Treasury letterhead may have resulted in the 10:00 a.m. embargo time being replaced with the caption "FOR IMMEDIATE RELEASE." Ms. Anderson further stated that she worked with officials at the Secret Service to clear persons into Treasury's press conferences. During Ms. Anderson's deposition, we will ask her about Treasury's policies and procedures on establishing and enforcing "embargoes"; Treasury's pre-embargo release of information on its web site on October 22, 2001; the policies and procedures that were specifically followed on October 31, 2001; the manner in which the press release containing Fisher's announcement was distributed at the press conference, posted on the Treasury's web site, and released through other means; and how Davis was allowed to attend the press conference.

**Brian Roseboro**

During the OIG investigation, Assistant Secretary Roseboro stated that "he had the authority to make the decision concerning suspending the sales of the 30-year bond," and "it was a deliberate decision within Treasury involving the Director of Market Finance, the Under Secretary of Domestic Finance and the Secretary's staff. [They] received White House concurrence on October 26, 2001." He also stated his belief that Davis had been "grand-fathered in" to attend quarterly refunding conferences. During Mr. Roseboro's deposition, we will ask him about the timing of Treasury's decision to suspend the 30-year bond; the time and manner in which that decision was reached and relayed to the public; Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information; Treasury's policies and procedures on establishing and enforcing "embargoes"; Treasury's pre-embargo release of information on its web site on October 22, 2001; the policies and procedures that were specifically followed on October 31, 2001; how the 10:00 a.m. embargo time was selected; and how Peter Davis was allowed to attend the press conference.

**Lula Tyler**

Ms. Tyler worked as a secretary for both Jill Ouseley and Paul Malvey in the Office of Market Finance at Treasury. During the OIG investigation in 2001, Tyler stated that she first cleared Davis for a Treasury appointment approximately eight or nine years earlier at the instruction of then-Director Jill Ouseley, and that Davis

Thomas McGivern, Esquire
May 18, 2006
Page 4

subsequently called her to request clearance to attend quarterly refunding conferences at Treasury. During Ms. Tyler's deposition, we will ask her about her relationship and conversations with Davis, Ouseley, Malvey, and Anderson; her knowledge of any agreement of confidentiality that Davis may have had with Treasury; her understanding of Davis's authority to attend Treasury press conferences generally; her knowledge of Treasury's decision to suspend the 30-year bond; Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information; Treasury's policies and procedures on establishing and enforcing "embargoes," including its treatment of persons who violated Treasury rules, policies, or procedures; the manner in which Fisher's announcement was released at the October 31, 2001 press conference, on the Treasury's web site, and through other means; and how Davis was allowed to attend that press conference.

### Paul Malvey

During the OIG investigation, Mr. Malvey, the Director of the Office of Market Finance at Treasury, stated that he had admitted Davis to a quarterly funding press conference in 1996, after then-Director Jill Ouseley told Malvey that "he was OK, that's fine." Malvey stated that he later found out that Davis had called Ouseley's secretary (and later Malvey's secretary) Lula Tyler on a regular basis to be admitted to the quarterly funding meeting press conferences. Malvey had observed Davis at earlier press conferences and sat next to him at the October 31, 2001 press conference. Malvey stated that he did not know until afterwards that Treasury press conferences were only for "credentialed press." In addition, in a memorandum to Treasury General Counsel David Aufhauser, Treasury analyst Jill Cetina reported that during the week prior to the October 31, 2001 announcement, a member of Lehman Brothers Inc. who had just attended a meeting with Malvey asked her whether Treasury would be suspending issuance of the 30-year bond. During Mr. Malvey's deposition, we will ask him about his relationship and conversations with Davis, Ouseley, Tyler, and Anderson; his knowledge of any agreement of confidentiality that Davis may have had with Treasury; his understanding of Davis's authority to attend Treasury press conferences generally; his knowledge and discussion of Treasury's decision to suspend the 30-year bond; any dissemination of that decision in advance of the press conference; Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information; Treasury's policies and procedures on establishing and enforcing "embargoes," including its treatment of persons who violated Treasury rules, policies, or procedures; Treasury's pre-embargo release of information on its web site on October 22, 2001; the manner in which Fisher's announcement was released at the October 31, 2001 press conference, on the Treasury's web site, and through other means; and how Davis was allowed to attend that press conference.

### Jill Cetina

Ms. Cetina worked as an international economist and analyst at Treasury. As stated above, she reported to Treasury General Counsel David Aufhauser that during the

Thomas McGivern, Esquire
May 18, 2006
Page 5

week prior to the October 31, 2001 announcement, a member of Lehman Brothers Inc.
who had just attended a meeting with Malvey asked her whether Treasury would be
suspending issuance of the 30-year bond.  During the OIG investigation, Cetina stated
that Drew Matus, a market strategist for Lehman Brothers, had predicted to her that
Treasury would eliminate the 30-year bond; she thought at the time he was "going out
on a limb with type of speculation."  On the morning of October 31, Cetina spoke with
several primary dealers who had heard advance reports about Treasury's decision.  She
stated that she personally became aware of the decision to suspend the 30-year bond
"approximately 30 minutes prior to the official announcement," and that she had noticed
a price increase in the 30-year bond as early as 9:35 a.m.  During Ms. Cetina's
deposition, we will ask her about her relationship and conversations with Davis,
Ouseley, Malvey, Tyler, and Anderson; her knowledge and discussion of Treasury's
decision to suspend the 30-year bond; the manner in which Treasury's decision was
released to employees, outside analysts, the media, and the public; Treasury's policies
and procedures on maintaining the confidentiality of market-sensitive information; and
changes in the price of the 30-year bond on October 31, 2001.

### Jill Ouseley

As stated above, Paul Malvey told OIG investigators that Ms. Ouseley, an earlier
Director of the Office of Market Finance at Treasury and Malvey's former supervisor,
approved Davis's attendance at a quarterly funding press conference in 1996.  Malvey
stated that he later found out that Davis had been calling secretary Lula Tyler on a
regular basis to be admitted to the quarterly funding press conferences.  During her
interview by OIG investigators, Ms. Ouseley stated that she did not know Davis nor
recall admitting him to a press conference, but added that it is "not impossible that I
admitted him."  Ms. Ouseley further stated it is possible that after she admitted Davis
once, he may have continued to call Tyler to gain access to subsequent conferences.
During Ms. Ouseley's deposition, we will ask her about her relationship and
conversations with Davis, Malvey, Tyler, and Anderson; her knowledge of any
agreement of confidentiality that Davis may have had with Treasury; her understanding
of Davis's authority to attend Treasury press conferences generally; Treasury's policies
and procedures on maintaining the confidentiality of market-sensitive information; and
Treasury's policies and procedures on establishing and enforcing "embargoes,"
including its treatment of persons who violated Treasury rules, policies, or procedures.

### David Aufhauser

Following reports that the announcement of the suspension of the 30-year bond
had been improperly released, Mr. Aufhauser, the former General Counsel for Treasury,
requested information from a variety of sources on these events.  For example, in an
undated memorandum Deputy Assistant General Counsel Francine J. Kerner reported to
Aufhauser a number of findings, including findings relating to the timing of the release
on Treasury's web site; an initial assessment by Malvey that one or more parties had

Thomas McGivern, Esquire
May 18, 2006
Page 6

traded on the basis of advance information; analyst Jill Cetina's report that during the week prior to October 31, 2001, a member of Lehman brothers who had just attended a meeting with Malvey asked her whether Treasury would be suspending issuance of the 30-year bond; and Treasury economist Steve Berardi's observation that he was "amazed" that Treasury's decision to suspend the 30-year bond "had not leaked earlier." In a memorandum dated November 6, 2001, you reported additional findings to Mr. Aufhauser, including the finding that there did not "appear to be written standards in Market Finance for determining who is able to attend these press conferences." On that same day, Mr. Aufhauser referred this matter for investigation by the SEC in a letter to its Chairman Harvey L. Pitt. During Mr. Aufhauser's deposition, we will ask him about the investigation conducted by him and his staff into the release of information on Treasury's suspension of the 30-year bond; Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information; Treasury's policies and procedures on establishing and enforcing "embargoes"; Treasury's pre-embargo release of information on its web site on October 22, 2001; the policies and procedures that were specifically followed on October 31, 2001; how Davis was allowed to attend the press conference; any informal or formal disciplinary action taken against Treasury staff; and Treasury's referral of this matter to the SEC. We will also depose Mr. Aufhauser about his telephone conversation on November 5, 2001 with Ward McCarthy, who apparently reported receiving a call from Mr. Davis at around 9:35 a.m. on October 31, 2001 and assumed that Treasury had given Mr. Davis its tacit approval to release the information.

**Roger Anderson**

Mr. Anderson, the former Deputy Assistant Secretary for Federal Finance at Treasury, may be the "senior adviser" whom the SEC claims entered into an agreement with Peter Davis in 1994 that allowed Davis to attend Treasury refunding conferences. It is this agreement that allegedly established Davis's alleged duty of "trust and confidence" to Treasury, and which Davis allegedly violated by disclosing information to Nothern on October 31, 2001. The SEC also claims that Nothern "knew, recklessly disregarded, or should have known" of Davis's duty to Treasury as established by this agreement. During Mr. Anderson's deposition, we will ask him about the terms of and reasons for any such agreement with Davis; the circumstances under which it was reached; the manner in which the terms of the agreement were relayed to other persons, including other officials at Treasury and outside persons like Nothern; Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information; and Treasury's policies and procedures on establishing and enforcing "embargoes," including its treatment of persons who violated Treasury rules, policies, or procedures.

**Peter Fisher**

Thomas McGivern, Esquire
May 18, 2006
Page 7

Under Secretary Fisher is the official whose announcement led to the events and allegations in this case. Specifically, his announcement about the suspension of the 30-year bond constitutes the alleged "inside information" for which the SEC seeks to hold Nothern liable for inside trading. However, there is significant evidence that the news of the suspension was public well before Davis allegedly called Nothern at 9:38 a.m. on October 31, 2001. During Mr. Fisher's deposition, we will ask him about the timing of Treasury's decision to suspend the 30-year bond; the time and manner in which that decision was reached and relayed to the public; Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information; Treasury's policies and procedures on establishing and enforcing "embargoes"; Treasury's pre-embargo release of information on its web site on October 22, 2001; the policies and procedures that were specifically followed on October 31, 2001; the selection (reportedly by Mr. Fisher himself) of a 10:00 a.m. embargo time, much later than preceding embargoes; and how Peter Davis was allowed to attend the press conference.

We do not expect any of these depositions to take more than a single day. As stated above, we are willing to accommodate the witnesses', the SEC's, and your schedules in arranging the time and location of the depositions. (We are currently discussing dates in June and July with counsel for the SEC.) Accordingly, we do not believe that our requests to depose these current and former employees are unduly burdensome.

We anticipate using the deposition testimony of these witnesses during the trial of the referenced matter and in pretrial motions and filings. It is likely that most or all of the depositions will be videotaped.

Thank you for your consideration of our request to depose these current and former employees. We trust that you will be able to respond to our request by May 25, 2006. Should you have any questions or need any additional information, please do not hesitate to call. As you were able promptly to accommodate the SEC's request for permission to depose Steve Vagle, I look forward to hearing from you soon.

Sincerely,

John A. Shope

cc:    John J. Rossetti Jr., Esquire
       Erica Y. Williams, Esquire
       Nicholas C. Theodorou, Esquire
       Kevin B. Currid, Esquire
       Robert E. Toone, Esquire

# Exhibit B



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

June 9, 2006

John A. Shope, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600

Re: Request to take the deposition testimony of certain current and former Treasury employees in *Securities and Exchange Commission v. Steven E. Nothern* (D. Mass., Case No. 05-10983)

Dear Mr. Shope:

The Department of the Treasury received your letter dated May 18, 2006 requesting permission to take the depositions of current Treasury employees Frances Anderson and Jill Cetina and former Treasury employees Peter Fisher, Brian Roseboro, David Aufhauser, Jill Ousley, Paul Malvey, Roger Anderson, Elizabeth Holahan and Lula Tyler in the above-titled case.

We have reviewed your request and, with the exceptions outlined below, have determined that it meets the requirements of 31 C.F.R. §§ 1.8-1.12, which govern requests for the testimony of current and former Treasury Department employees. The exceptions include:

- Specific questions, the answers to which would result in disclosure of information that would violate about the Privacy Act (5 U.S.C. § 552a). For example, in your letter you stated that you intended to ask David Aufhauser about any "informal or formal disciplinary action taken against staff." This authorization does not include elicitation of testimony about disciplinary action or other matters that would violate the Privacy Act, and we will direct current and former Treasury employees not to answer such questions about other employees. Of course, an individual may waive his or her own Privacy Act protections if they wish.

- Questions that attempt to elicit testimony that would violate the attorney-client privilege. Among other potential deponents, including former Treasury General Counsel David Aufhauser on your list of proposed deponents raises this issue. This authorization excludes testimony from Mr. Aufhauser or any other witness that would violate the attorney-client privilege, and we will direct current and former Treasury employees not to answer such questions.

- Treasury employee Jill Cetina recently had a baby and in addition is dealing with other medical issues. She is on leave from the Treasury Department for six months. As a result, she will not be able to participate in a deposition any time soon.

2

With these exclusions, you are authorized to depose the above mentioned persons (other than Ms. Cetina) regarding the subject matter outlined for those individuals in your May 18, 2006 letter. In addition to the SEC and the proposed deponents, please confer with me regarding the scheduling and location of depositions of current and former Treasury officials because one or more Treasury Department counsel will be present at the depositions. We understand from the SEC that there is a proposed date of June 20 for the deposition Roger Anderson, and that date works for Treasury. Similarly, proposed deposition dates of June 23 for Paul Malvey and June 27 for Brian Roseboro also are acceptable to Treasury. However, we will not be available on July 5, 2006 for a proposed deposition of Peter Fisher, so another date that will work for all parties will need to be arranged for that deposition. Of course, Treasury will assert all privileges available to the Department during any depositions. Subpoenas for current Treasury employees must be served here at the Treasury Department. Please provide me with copies of the subpoenas issued for former Treasury employees. Thank you in advance for your cooperation on these matters.

At your request, I have attempted to contact current and former Treasury employees regarding your pending request for their depositions, and I will attempt to contact all the employees mentioned in your request by phone and mail to let them know that the Department has approved your request for their deposition. However, we have not yet been successful in our attempts to make contact with Jill Ousley or Lula Tyler. We will continue our efforts to contact them.

Sincerely,

*Thomas M. McGivern*

Thomas M. McGivern
Assistant General Counsel
(Legislation and Litigation)

cc: Erica Williams, Esq.
    U.S. Securities and Exchange Commission

    John Rossetti, Esq.
    U.S. Securities and Exchange Commission

# Exhibit C

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

July 10, 2006

**BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL**

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 2019
1500 Pennsylvania Avenue, N.W.
Washington, D. C.  20220

Re:    *United States Securities and Exchange Commission v. Nothern,*
       **Civil Action No. 05-10983 (NMG) (D. Mass.)**

Dear Tom:

As you know, we need to schedule the depositions of the following current and former Treasury employees before September 15, 2006, the discovery deadline in the referenced action:  Frances Anderson, Lula Tyler, Elizabeth Holahan, Jill Cetina, and David Aufhauser.  I wrote you on July 6, 2006 about scheduling Ms. Anderson's deposition on August 3, 2006.  I am also writing you separately about the deposition of an additional Treasury employee, Tony Fratto.

We have previously spoken about the remaining Treasury witnesses.  With respect to Ms. Tyler, you stated that you were aware of her current location and phone number and would assist us in determining an appropriate date for her deposition.  If you have not been able to obtain Ms. Tyler's cooperation, I would appreciate your providing us with her current address and we will issue a subpoena for a time that fits our schedule.

With respect to Ms. Holahan, you told me that her current work in the United States Congress made it difficult to schedule a date in June and July.  As the August recess for Congress approaches, however, it is imperative that we set a deposition date in the near future, since Congressional employees frequently schedule vacations during the August recess.

With respect to Ms. Cetina, I would appreciate an update about her current medical condition and the conditions under which we may safely conduct her deposition before the discovery deadline.

Thomas McGivern, Esquire
July 10, 2006
Page 2


     With respect to Mr. Aufhauser, please advise if you have informed him of Treasury's decision to authorize his deposition and whether there are any dates on which you (or another lawyer on your staff who intends to attend in your stead) are unavailable.

     Thank you for your assistance in these matters.  I look forward to hearing from you soon.

                Sincerely,

                John A. Shope


cc:     John J. Rossetti Jr., Esquire
          Erica Y. Williams, Esquire
          Nicholas C. Theodorou, Esquire
          Kevin B. Currid, Esquire
          Robert E. Toone, Esquire

# Exhibit D

## Toone, Robert

| | |
|---|---|
| **From:** | Toone, Robert |
| **Sent:** | Friday, July 14, 2006 2:49 PM |
| **To:** | 'David.Aufhauser@ubs.com' |
| **Cc:** | Theodorou, Nicholas; Shope, John |
| **Subject:** | SEC v. Nothern:  deposition availability |

Dear Mr. Aufhauser:

I am an attorney at the law firm of Foley Hoag in Boston.  We spoke in May regarding our intent to seek your deposition in SEC v. Nothern, an ongoing SEC enforcement action in the U.S. District Court in Massachusetts.  My firm represents the defendant, Steven Nothern.  John Shope and Nicholas Theodorou, whom I am cc'ing, are the lead attorneys on the case.

On June 9, 2006, the Treasury Department's Office of General Counsel notified us of its general approval for your deposition, pursuant to the Department's housekeeping regulations, 31 C.F.R. sections 1.8-1.12.

Please let us know of your availability for a deposition in New York City throughout August and the first week of September.  (I understand from your assistant that you may be taking a vacation in August.)  Because we must coordinate dates and times with counsel for the SEC and Treasury's General Counsel, we would appreciate knowing your full availability for this period.

We will likely hold your deposition at the offices of Davis Polk & Wardwell at 450 Lexington Avenue.

Thank you for your assistance with this matter.  Please do not hesitate to call with any questions or concerns.

Robin Toone
Foley Hoag LLP
155 Seaport Blvd · Boston, MA 02210-2600
617-832-1242 (direct) · 617-832-7000 (fax)
rtoone@foleyhoag.com

# Exhibit E

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

August 16, 2006

## BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, D. C.  20220

Re:  *United States Securities and Exchange Commission v. Nothern,*
     *Civil Action No. 05-10983 (NMG) (D. Mass.)*

Dear Tom:

Thank you for your letter today approving our request of July 10, 2006 to take the deposition of Assistant Secretary for Public Affairs Tony Fratto.  Unfortunately, I will be on vacation on the day that you propose and my partner, Nick Theodorou, is also not available.  He would be available on August 29, 30, or 31.  Furthermore, I am puzzled by your statement that you will continue to instruct witnesses not to answer the question whether any employees were disciplined in connection with the events of October 31, 2001, since you have represented that there are no records of the same.  As you know the Privacy Act protects records, not a witness's observation of events.

In addition, on August 1, 2006, I sent you an e-mail asking you to confirm September 14, 2006, for the deposition of Lula Tyler.  You have not yet responded. Please confirm this date as soon as possible, and provide instructions as to the address to which a subpoena should be served.  In addition, I repeat my earlier requests for proposed dates for the deposition of David Aufhauser in New York City or Washington, D.C.

Finally, and without conceding that Mr. Nothern must do so under the Federal Rules of Civil Procedure or consistently with constitutional due process, pursuant to 31 C.F.R. §§ 1.8-1.12 we seek authority to take the deposition of three additional current and/or former Treasury employees:  Elnora Bowser, Michele Davis, and Steve Berardi.

Thomas McGivern, Esquire
August 16, 2006
Page 2

### Elnora Bowser

Documents produced in this case indicate that Elnora Bowser was involved in admitting Peter Davis into the quarterly refunding press conference that took place on October 31, 2001 as well as other refunding conferences. In addition, she appears to have participated in clearing in other attendees at the quarterly refunding conferences.

At Ms. Bowser's deposition, we will ask her about Treasury's policies and procedures on "embargoes" and maintaining the confidentiality of market-sensitive information; the policies and procedures that were specifically followed on October 31, 2001; her knowledge of any agreement of confidentiality that Mr. Davis may have had with Treasury; her knowledge of Davis's authority to attend Treasury conferences generally; how Davis was specifically able to attend the conference on October 31, 2001; and any conversations or communications with regard to any of the foregoing.

### Michele Davis

Michele Davis was Assistant Secretary for Public Affairs at the time of the October 31, 2001 press conference. It is our understanding that Tony Fratto and Elizabeth Holahan reported to her. During Fratto's interview by the OIG and SEC on November 14, 2001, he stated that he, Holahan, and Davis had advance knowledge of the decision to suspend the 30-year bond. At his deposition, former Under Secretary Peter Fisher stated that he expressed concerns to Davis about the embargo procedures that were going to be used at the press conference and proposed elimination of the embargo — he stated that he "thought the risk of a leak or some malfunction, some procedural malfunction was too high" — but that Davis "felt strongly that changing procedures at that moment was not a good idea."

At Ms. Davis's deposition, we will ask her about her knowledge of the officials and employees at Treasury who were involved in making the decision to suspend the 30-year bond; the times at which the decision was considered and reached at Treasury; other officials and employees at Treasury who were informed about the decision before 10:00 a.m. on October 31, 2001; other persons, agencies, and organizations outside Treasury who were informed about the decision before 10:00 a.m. on October 31, 2001; Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information; Treasury's policies and procedures on establishing and enforcing "embargoes," including its treatment of persons who violated Treasury rules, policies, or procedures; any actions that have been taken by Treasury regarding the compliance with its rules, policies, or procedures of Reuters news service, reporter Brian Collins, or any other parties deemed to have released information in advance of any press embargo; Treasury's pre-embargo release of information on its web site on October 22, 2001; the policies and procedures that were specifically followed on October 31, 2001; how the 10:00 a.m. embargo time was selected; the manner in which Fisher's statement was released at the press conference, on the Treasury's web site, and through other means; her knowledge of any informal or formal disciplinary action taken against Treasury staff

Thomas McGivern, Esquire
August 16, 2006
Page 3

in response to this incident; her knowledge of any agreement of confidentiality that Peter Davis may have had with Treasury; her knowledge of Mr. Davis's authority to attend Treasury conferences generally; whether Mr. Davis had ever been excluded from the conferences; how Mr. Davis was specifically able to attend the conference on October 31, 2001; and any conversations or communications with regard to any of the foregoing.

**Steve Berardi**

According to a memorandum written by Deputy Assistant General Counsel Francine J. Kerner shortly after October 31, 2001, Paul Malvey sent Steve Berardi, a financial economist on his staff, to speak with Kerner about Treasury's investigation. Berardi first told Kerner that Frances Anderson "might not have realized the press materials had been embargoed until 10:00 a.m." The memorandum continues: "In the course of our conversation, Berardi volunteered that he was 'amazed' Treasury's decision to suspend issuance of the 30-year bond had not leaked earlier. He noted that two sets of calendars had been sent to the printer weeks in advance. One set showed the Treasury continuing issuance of the 30-year bond. The other didn't. For that reason alone, he was surprised the decision had not become public earlier." In addition, at his deposition Mr. Malvey asserted that Mr. Berardi screened attendees at the quarterly refunding conferences.

During Mr. Berardi's deposition, we will ask him about the timing of Treasury's decision to suspend the 30-year bond; the time and manner in which that decision was reached and relayed to the public; the advance preparation of any calendars or other materials that may or may not have reflected Treasury's decision; Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information; any screening of attendees at quarterly refunding conferences; Treasury's policies and procedures on establishing and enforcing "embargoes"; the policies and procedures that were specifically followed on October 31, 2001; the manner in which the press release containing Fisher's announcement was distributed at the press conference, posted on the Treasury's web site, and released through other means; how Peter Davis was allowed to attend the press conference; and any conversations or communications with regard to any of the foregoing.

The information that we seek to discover from these three witnesses is material to the claims and defenses in the referenced case and not available from other sources. We intend to take each deposition at the offices of Foley Hoag LLP, 1875 K Street, N.W., Suite 800, Washington, D.C. As we have done with previous Treasury witnesses, we will accommodate their, your, and the SEC's schedules in arranging the exact times of the depositions. We do not expect that any deposition will take longer than a day. Accordingly, we do not believe that our requests to depose these current and/or former employees are unduly burdensome.

Thomas McGivern, Esquire
August 16, 2006
Page 4

We anticipate using the deposition testimony of these witnesses during the trial of the referenced matter and in pretrial motions and filings. It is likely that most or all of the depositions will be videotaped.

Thank you for your consideration of this request. Should you have any questions or need any additional information, please do not hesitate to call Nick Theodorou until I return from vacation on September 5, 2006. I look forward to hearing from you soon.

Sincerely,

John A. Shope

cc:     John J. Rossetti Jr., Esquire
        Erica Y. Williams, Esquire
        Nicholas C. Theodorou, Esquire
        Robert E. Toone, Esquire

# Exhibit F

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

September 19, 2006

**BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL**

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, D. C.  20220

Re:     *United States Securities and Exchange Commission v. Nothern,*
        *Civil Action No. 05-10983 (NMG) (D. Mass.)*

Dear Tom:

As you know, on June 14, 2006, the Court decided that it would withhold ruling on my client's motion to compel based on the parties' agreement to submit the relevant document requests to the Treasury Department and other government agencies. Accordingly, the SEC submitted a list of document requests to Treasury on June 30, 2006. On July 28, 2006, you notified counsel for the SEC that Treasury would produce documents on a "rolling basis." You produced 72 pages of documents on August 3rd; 89 pages on August 31st; 28 pages on September 6th; and 23 pages on September 8th. In your last production, you informed Ms. Williams that "[w]e anticipate producing documents next week as well," but we did not receive any documents last week.

The Court has repeatedly directed the parties to report on the progress of Treasury's production. It directed the SEC to file a status report on July 31, 2006, advising it of the responses it had received. It again directed the parties to file a joint status report on September 8th, and thereafter directed the parties to file by October 2nd "a joint report either requesting the court to resolve the motion to compel or requesting additional time for the voluntary productions."

In the parties' most recent submission to the Court before the latest order, we jointly reported that "Treasury's counsel has declined to estimate when Treasury's production will be complete, but has represented to the parties that locating and producing responsive document, especially emails, has been difficult and time consuming." It is clear, however, that the Court wants a more specific and certain report as to when and how fully Treasury intends to respond to the SEC's requests. The Court

Thomas McGivern, Esquire
September 19, 2006
Page 2

also wants an assessment as to what effect Treasury's response will have on my client's motion to compel.

While I appreciate the efforts that you and your colleagues at Treasury have made to date, the delay we have experienced in obtaining these documents has delayed the resolution of other issues in the case. It has already forced the parties to seek a three-month extension of the discovery deadline in this case. I would therefore appreciate detailed information regarding your plans for future productions, including a date certain by which you believe your production will be completed. Please provide me with this information by September 26, 2006 in order that we may file a timely report to the Court.

In addition, we are concerned that none of the documents you have produced so far are responsive to a number of critical requests made by the SEC. Specifically, Treasury has not yet produced any documents concerning:

- Treasury's admission of Peter Davis to quarterly refunding conferences from January 1, 1994 through October 31, 2001.

- Correspondence, including e-mails and letters, between Peter Davis and any Treasury employee, concerning attendance at Treasury refunding conferences and/or any rule of confidentiality or "embargo" pertaining thereto.

- Appointment logs, daily calendars, or other documents showing meetings between Peter Davis and any Treasury employee.

- Any agreement or other document signed by Peter Davis concerning confidentiality of information received from Treasury or compliance with press embargoes.

- Any agreement involving the confidentiality of information, embargoes, or access to Treasury meetings and conferences that were used, signed, or approved by Roger Anderson.

- Standard agreements, forms, or other documents concerning the confidentiality of information used by Treasury from January 1, 1994 to December 31, 2001. I note that multiple Treasury witnesses have testified that Treasury used confidentiality agreements with members of the Borrowing Advisory Committee and Ms. Tyler testified that they were maintained in a special file.

- Documents concerning the use of press embargoes at Treasury from January 1, 1994 to present.

Thomas McGivern, Esquire
September 19, 2006
Page 3

- Documents concerning changes to Treasury's policies, procedures, or practices relating to the release of information subject to embargo that were made prior to the quarterly refunding press conference on October 31, 2001.

- Documents concerning the accuracy of the clock on Treasury's computer system and web server during October 2001.

- Documents concerning violations of embargoes at Treasury from 1990 to the present, including any disciplinary, administrative, or legal actions taken in response to such violations.

- Documents concerning the assertedly premature posting of remarks by Deputy Treasury Secretary Kenneth Dam on Treasury's web site on October 22, 2001, and any subsequent investigations conducted or actions taken at Treasury in response.

- Documents concerning any reports, investigations, or responses by Treasury to the disclosure by Brian Collins of information concerning the suspension of the 30-year note to the Federal National Mortgage Association on October 31, 2001.

- Documents sufficient to disclose Treasury's document retention policies, procedures, or practices from January 1, 1994 to the present.

- Communications before 10:00 a.m. on October 31, 2001 between Treasury and other federal agencies or departments concerning the proposed decision to suspend issuance of the 30-year bond.

- Communications with other federal agencies concerning the disclosure on October 31, 2001 of the suspension of issuance of the 30-year bond.

Please inform us if, with respect to any category of documents listed in the SEC's letter, Treasury has determined that no such documents have ever existed and, if so, what steps Treasury took to search for them.

Furthermore, I was very troubled by the testimony of Frances Anderson that, while she had saved on a disc electronic data that might be critical in ascertaining exactly when the announcement of suspension of issuance of the 30-year bond was posted to the Treasury website on October 31, 2001, that disc inexplicably disappeared from a filing cabinet and she deleted the original data on her desktop computer. Please advise as to your efforts to locate the disc as to which Ms. Anderson testified.

In addition, in your most recent production, on September 8, 2006, your cover letter stated that "[w]here appropriate, redactions have been made to protect privileged

Thomas McGivern, Esquire
September 19, 2006
Page 4

information." I would appreciate an explanation of the Treasury's assertion of privilege. Many of the redactions you made are in e-mail messages to or from staff members in the Office of Public Affairs Treasury — none of whom are attorneys — and appear to involve matters that are highly relevant to this case. It is not evident how such communications are privileged. While I understand that Treasury intends to produce a privilege log "when all privileged documents have been produced," I would like to inform the Court of any issue that may arise regarding claims of privilege in our October 2, 2006 status report.

Finally, I repeat my earlier requests for proposed dates for the depositions of David Aufhauser and Jill Cetina, and for proposed dates and Treasury's clearance for the depositions of Elnora Bowser, Michele Davis, and Steve Berardi.

Thank you for your attention to these matters. I look forward to hearing from you soon.

Sincerely,

John A. Shope

cc:    Christian Furey, Esquire
       John J. Rossetti Jr., Esquire
       Erica Y. Williams, Esquire
       Nicholas C. Theodorou, Esquire
       Robert E. Toone, Esquire

# Exhibit G

# FOLEY
# HOAG LLP
#### ATTORNEYS AT LAW

Robert E. Toone
Boston Office
617.832.1233
rtoone@foleyhoag.com

September 29, 2006

**BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL**

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, DC  20220

> Re:     *United States Securities and Exchange Commission v. Nothern,*
> ____*Civil Action No. 05-10983 (NMG) (D. Mass.)*_____

Dear Mr. McGivern:

On September 19, 2006, John Shope sent a letter informing you that the U.S. District Court in this action has directed the parties to file a joint status report by October 2, 2006, on the progress of the Treasury Department's production in response to the list of document requests submitted by the SEC on June 30, 2006.  He noted that in the parties' previous status report, we stated that "Treasury's counsel has declined to estimate when Treasury's production will be complete, but has represented to the parties that locating and producing responsive document, especially emails, has been difficult and time consuming."  He then stated that the Court clearly wants a more specific and certain report as to when and how fully Treasury intends to respond to the SEC's requests and what effect Treasury's response will have on my client's motion to compel.

Mr. Shope asked you to provide "detailed information regarding your plans for future productions, including a date certain by which you believe your production will be completed."  He asked you whether Treasury has determined that no documents exist with respect to certain categories of documents listed in the SEC's letter and, if so, what steps Treasury took to search for them.  He asked about your efforts to locate the computer disc on which Treasury employee Frances Anderson saved electronic data that may reveal exactly when the announcement of suspension of issuance of the 30-year bond was posted to the Treasury website on October 31, 2001.  He asked you to explain Treasury's assertion of privilege in redacting large portions of what appear to be relevant communications to or from Treasury employees.  Finally, he asked you for proposed dates for the depositions of David Aufhauser, Jill Cetina, Elnora Bowser, Michele Davis, and Steve Berardi.

Thomas McGivern, Esquire
September 29, 2006
Page 2

Mr. Shope asked you to provide this information by September 26, 2006, so that we could file a complete and timely report to the Court by October 2, 2006. As of this morning, we have not received a response from you regarding these matters. Yesterday, you produced to the SEC 48 additional pages of e-mails between various Treasury employees, and nearly every pertinent communication was redacted. Your cover letter again states that redactions were "made to privileged information," but does not explain what privilege Treasury is claiming.

Please respond as soon as possible to the matters raised in Mr. Shope's letter of September 19, 2006, so that we may make a full and accurate report to the Court.

We look forward to hearing from you.

Sincerely,

Robert E. Toone

cc:    Christian Furey, Esquire
       John J. Rossetti Jr., Esquire
       Erica Y. Williams, Esquire
       Nicholas C. Theodorou, Esquire
       John A. Shope, Esquire

# Exhibit H



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

October 2, 2006

**BY E-MAIL AND FAX**

John A. Shope, Esq.
Mr. Robert E. Toone, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600

Re: Update Regarding Treasury Responses to Touhy Requests in *Securities and Exchange Commission v. Steven E. Nothern* (D. Mass., Case No. 05-10983)

Gentlemen:

This is in response to Mr. Shope's letter dated September 19, 2006 and Mr. Toone's letter dated September 29, 2006 regarding the above-titled case.

We continue to work to ensure that all responsive Treasury documents are located regarding the Securities and Exchange Commission's request for documents pursuant to Treasury's Touhy regulations. Among other efforts, Treasury's Office of the Chief Information Officer continues the costly and labor intensive process of restoring and forwarding for review former Treasury employees' e-mails to help ensure that Treasury's response is complete and accurate. Further, we continue to discuss with the United States Secret Service and others whether other potentially responsive documents may exist.

In its Touhy request to Treasury for documents, the SEC also requested that Treasury produce a privilege log for any information withheld as privileged. The letters accompanying Treasury's September 8, 2006 and September 28, 2006 productions explicitly state that Treasury will produce a privilege log when all privileged documents are produced.

My letter to Mr. Shope dated June 9, 2005 denied your request under Treasury's Touhy regulations to depose Treasury employee Jill Cetina, who was on medical leave at that time and remains on medical leave. We currently are reviewing your request to depose former Treasury employee Michelle Davis and current Treasury employees Elnora Bowser and David Berrardi. We plan to have a decision in those matters soon.

The Treasury Department is not a party in this litigation. Nonetheless, Treasury staff have dedicated hundreds of hours, and the Department of the Treasury has spent hundreds of thousands of dollars, on matters pertaining to this case, including, among other things:

2

- searching for hard- and soft-copy records, including restoring former employees e-mails, reviewing those records for privileged material, and producing documents;
- considering your Touhy request for the deposition of current and former Treasury employees;
- helping you to locate some of these former Treasury employees, and coordinating with all parties to arrange mutually convenient times for their deposition; and
- attending the depositions of eight current and former Treasury employees, including Treasury's Assistant Secretary for Public Affairs, and traveling to New York (twice), New Jersey, and Florida for these depositions.

As I have mentioned to Mr. Shope on a number of occasions, this case is just one of many assignments for which I am responsible at Treasury. The same can be said of all of my Treasury colleagues who have worked, and are working, on this matter. We have worked diligently on this matter, and will continue to work to complete Treasury's response to these Touhy requests in a timely and accurate manner.

Sincerely,

*Thomas M. McGivern*

Thomas M. McGivern

cc: Erica Williams, Esq.
  John Rossetti, Esq.
  U.S. Securities and Exchange Commission

# Exhibit I

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

October 3, 2006

**BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL**

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, D. C.  20220

Re:    ***United States Securities and Exchange Commission v. Nothern,***
    ***Civil Action No. 05-10983 (NMG) (D. Mass.)***

Dear Tom:

I write regarding our request made 4½ months ago to depose Jill Cetina, a current employee at the Department of Treasury.

As I wrote in my letter dated May 18, 2006, we seek to take Ms. Cetina's deposition because she has information that is material to the claims and defenses in the referenced case and not available from other sources.  As you know, Ms. Cetina informed Treasury General Counsel David Aufhauser that during the week prior to the October 31, 2001 refunding announcement, a member of Lehman Brothers who had just attended a meeting with Paul Malvey asked her whether Treasury would be suspending issuance of the 30-year bond.  During the OIG investigation, Cetina stated that Drew Matus, a market strategist for Lehman Brothers, predicted to her that Treasury would eliminate the 30-year bond, and that she thought he was "going out on a limb with that type of speculation."  On the morning of October 31, Cetina observed an increase in the price of the 30-year bond as early as 9:35 a.m. and spoke with several primary dealers who had heard advance reports about Treasury's decision.  Both matters go to critical questions in the SEC's case against my client, namely, whether the information as to which he allegedly committed insider trading was either publicly known or reflected in the price of the securities, here 30-year Treasury bonds, and whether the Treasury's carelessness in controlling distribution of the information forecloses any finding that it was confidential.

In your letter dated June 9, 2006, you stated that Ms. Cetina was dealing with medical issues and "will not be able to participate in a deposition any time soon."  In a letter dated July 10, 2006, I requested an update about her current medical condition and

Thomas McGivern, Esquire
October 3, 2006
Page 2

"the conditions under which we may safely conduct her deposition before the discovery deadline." In conversation, you assured me that you would seek to work out an arrangement by which we could conduct Ms. Cetina's deposition at an appropriate time. As you know, since then the parties have obtained an extension of the discovery period due to delays in document production and may do so again.

I was therefore surprised to read in your letter yesterday that you have "denied" our request to depose Ms. Cetina "under Treasury's Touhy regulations." Your letter of June 9, 2006, did not state that Treasury had permanently denied my request or cite any *Touhy* regulation in support of such a denial. Yesterday's letter is also inconsistent with your verbal representations.

In addition, the suggestion in your letter that the Treasury Department is merely a disinterested third party in this action is, frankly, disingenuous. The Treasury Department requested that the SEC conduct the subject investigation, and numerous witness interviews were conducted jointly by Treasury and the SEC. It is plain that Treasury has encouraged the SEC to bring this action to deflect blame for the events of October 31, 2001 from itself on to private parties. Indeed, on September 5, 2003, Mr. Aufhauser was quoted in the press as emphasizing Treasury's position that it was private parties, not Treasury employees, who were responsible. "I couldn't be happier that this concluded with punishing action against those responsible for violating our rules," he stated, "and I equally couldn't be happier with the finding that no one within the Treasury building did anything inappropriate and indeed that all people who participated in the investigation in this building have been found to have behaved above board, honorably in the service of their department and county."

I urge you to reconsider your statement regarding Treasury's denial of our request, and to propose a date on which we may obtain Ms. Cetina's testimony. Otherwise, we shall seek dismissal of the present action for a party's failure to appear at deposition or alternatively on grounds of denial of due process.

Finally, I note that, despite multiple requests you have still not supplied us with dates for the deposition of Mr. Aufhauser that was authorized several months ago.

I look forward to hearing from you.

Sincerely,

John A. Shope

cc:     John J. Rossetti Jr., Esquire
        Erica Y. Williams, Esquire
        Nicholas C. Theodorou, Esquire

# Exhibit J



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

November 2, 2006

**BY E-MAIL AND FAX**

John A. Shope, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600

> Subject:    Request for the deposition testimony of Treasury Department employee Elnora
> Bowser in *Securities and Exchange Commission v. Steven E. Nothern* (D. Mass.,
> Case No. 05-10983)

Dear Mr. Shope:

The Department of the Treasury is in receipt of your August 16, 2006 letter that requests the
deposition testimony of Treasury employee Elnora Bowser, among others. The August 16 letter
was submitted pursuant to Treasury Department regulations found at 31 C.F.R. §§ 1.8-1.12
(commonly known as Touhy regulations, *see also United States ex rel. Touhy v. Ragan,* 340 U.S.
462 (1951)).

We have carefully reviewed and considered your letter pursuant to Treasury's Touhy regulations.
Following this review and consideration, we deny your request to depose Ms. Bowser. As
explained below, we found that the letter you submitted to Treasury fails to demonstrate, among
other things, that Ms. Bowser's deposition testimony is genuinely necessary to the proceeding, is
unavailable from other sources, and is not unduly burdensome.

- *The letter fails to demonstrate that the information requested is genuinely necessary to the
  proceeding.* Your letter does not demonstrate that Ms. Bowser is likely to possess
  information necessary to prove or disprove the allegations in this case. All of the topics for
  which you seek to depose Ms. Bowser have been addressed in Treasury's document
  production and in deposition testimony by a number of other current and former Treasury
  employees. Ms. Bowser's role was extremely limited. For example, a document produced
  by Treasury indicates that Ms. Bowser only cleared Peter Davis into the Treasury building
  one time, while Lula Tyler cleared Davis into the Treasury building a number of times. The
  deposition testimony of Paul Malvey (page 132) and Lula Tyler (page 30) demonstrates that
  this was not normally Ms. Bowser's responsibility. Instead, she performed this function only
  once when Ms. Tyler was not available. Since you have already deposed Ms. Tyler, it is
  unnecessary to also depose Ms. Bowser.

- *The letter fails to demonstrate that the information you seek from Ms. Bowser is unavailable
  from other sources.* Not only is the information you seek from Ms. Bowser available from

2

other sources, such as documents we provided in response to the SEC's Touhy request that also were sent to you, you also already have received such information from current and former Treasury employees in deposition testimony. Receiving the same information yet again simply adds to the excessive burden Treasury already has bore in responding to this case. For example:

- Information on Treasury's policies and procedures on "embargoes" can be found in the deposition transcripts of Tony Fratto (pages 37-64), Elizabeth Holahan (pages 44, 46-50, 60-61, 63), Peter Fisher (pages 101-107), Roger Anderson (pages 38-42, 47-49, 54), Brian Roseboro (pages 28-29, 31-35), Frances Anderson (pages 59-61, 90-91), Lula Tyler (pages 57-59) and Paul Malvey (pages 40, 99-102).
- Information on Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information can be found in the deposition transcripts of Tony Fratto (pages 38-41, 85), Brian Roseboro (page 85), Paul Malvey (pages 255-256), Roger Anderson (pages 38-40), Jill Ousley (pages 77-80), and Elizabeth Holahan (pages 33-34, 44-46, 61).
- Information on the policies and procedures that specifically were followed on October 31, 2001 can be found in the deposition transcripts of Tony Fratto (pages 48, 94, 128-129, 156-171), Paul Malvey (pages 60-61, 79-85), Peter Fisher (pages 99-100, 114-122), Brian Roseboro (pages 80, 84-85), Elizabeth Holahan (pages 53-54, 101, 106-111, 113-116), Frances Anderson (pages 56, 58, 68-70, 79-100), and Lula Tyler (pages 98-100, 102).
- There is no information from any current or former Treasury employee to indicate that there was any written confidentiality agreement between Peter Davis and the Treasury Department. In fact, all these witnesses have denied that any such agreement existed, and searches of Treasury documents have failed to reveal evidence of any such agreement. This topic has been covered numerous times with current and former Treasury employees, all with the same conclusion that no such document existed. See the deposition transcripts of Roger Anderson (pages 100-101), Tony Fratto (pages 176-177), Jill Ousley (page 49), Elizabeth Holahan (page 141), and Paul Malvey (page 114).
- Information on Peter Davis's authority to attend Treasury conferences generally can be found in deposition transcripts of Elizabeth Holahan (pages 115-116, 137-138), Lula Tyler (pages 48-50, 54-57, 59), Roger Anderson (pages 53-64), Paul Malvey (pages 43, 90-92, 98-99), and Tony Fratto (pages 171-177, 180, 183-184).
- Information on how Davis was specifically able to attend the conference on October 31, 2001 can be found in the deposition transcripts of Elizabeth Holahan (pages 115-116, 137-138), Lula Tyler (pages 99-105), Paul Malvey (page 146), and Tony Fratto (pages 172-177).

- *The request to depose Ms. Bowser is unduly burdensome.* Treasury staff have dedicated hundreds of hours and hundreds of thousands of dollars to matters pertaining to this case in which the Treasury Department is not a party, including, among other things:
  - searching for hard- and soft-copy records, including restoring former employees e-mails, protecting privileged material, and producing documents;
  - considering your Touhy request for the deposition of current and former Treasury employees;
  - helping you to locate some of these former Treasury employees and coordinating with all parties to arrange mutually convenient times for their deposition; and

3

- attending the depositions of eight current and former Treasury employees, including Treasury's Assistant Secretary for Public Affairs, and traveling to New York (twice), New Jersey, and Florida for these depositions.

You have shown no restraint in requesting testimony on the same topics again and again from current and former Treasury employees. Deposing another current Treasury employee on these topics – many of which are not in dispute and already have been addressed numerous times in documents provided by Treasury and in the deposition testimony of current and former Treasury officials – imposes an undue burden on the Department.

To reiterate, Ms. Bowser is not authorized under applicable Treasury Department regulations to provide the requested testimony, and may not be compelled to testify. *See Bobreski v. EPA*, 284 F. Supp.2d 67, 73-74 (D.D.C. 2003) (agency employee cannot be forced to testify if an agency with valid Touhy regulations considers requests for testimony using relevant data and provides a rational basis for its decision).

The foregoing objections are not exclusive, and we reserve the right to assert further objections as appropriate.

If you have further questions, please contact me at 202-622-2317.

Sincerely yours,

*Thomas M. McGivern*

Thomas M. McGivern

ec: Erica Williams, Esq.
John Rosetti, Esq.
U.S. Securities and Exchange Commission

Nicholas Theodorou, Esq.
Robert Toone, Esq.
Foley Hoag LLP

# Exhibit K

# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

November 7, 2006

## BY TELECOPIER (202-722-9245) AND FIRST-CLASS MAIL

Ms. Erica Y. Williams, Esq.
Mr. John J. Rossetti Jr., Esq.
Securities and Exchange Commission
100 F Street, N.E., Mail Stop 4010
Washington, D.C.  20549-4010

Re:    *United States Securities and Exchange Commission v. Nothern,*
       *Civil Action No. 05-10983 (NMG) (D. Mass.)*

Dear Erica and John:

Pursuant to Local Rule 37.1, I write to request a conference regarding the government's refusal to allow the depositions of key fact witnesses and our prospective motion to dismiss this action on that ground.  I am available for the conference at any time tomorrow, Thursday, or Friday afternoon of this week.

As you know, the Treasury Department has refused to authorize the depositions of two of its employees who personally participated in the events of October 31, 2001 on which this action is based, namely Jill Cetina and Elnora Bowser.  In addition, it has not yet responded to our request, first made almost three months ago and reiterated since, to depose other like participants, former Assistant Secretary for Public Affairs Michele Davis and Treasury employee Steve Berardi.

### Relevance of Jill Cetina's Testimony

Treasury's own documents make clear that Jill Cetina has information that relates directly to the claims and defenses in this case:  in particular, whether Treasury had already disclosed its plan to suspend issuance of the 30-year bond before any trades by Mr. Nothern and whether the bond market already reflected that disclosure.  Soon after October 31, 2001, Ms. Cetina informed Treasury's Office of General Counsel that during the prior week "she had a conversation with a member of Lehman Brothers . . . in which she was asked whether Treasury would be suspending issuance of the 30-year bond." Ms. Cetina

Erica Y. Williams, Esquire
John J. Rossetti Jr., Esquire
November 7, 2006
Page 2

> volunteered that the members of Lehman Brothers had just come from a
> meeting with Paul Malvey. Reflecting upon the value of advance
> information, Cetina said that she had spoken with a colleague about how
> easy it would be to make money by using the information to position
> oneself in the financial markets. She also volunteered that the SF 450s
> (confidential financial disclosure reports) did not require a filer to list
> holdings in government securities.

Ms. Cetina was clearly encouraging the Office of General Counsel to investigate
whether any of Treasury's employees — and Paul Malvey, the Director of the Office of
Market Finance, in particular — used confidential information "to position [themselves]
in the financial markets." Because Mr. Malvey's office was apparently responsible for
admitting alleged tipper Peter Davis into the quarterly refunding press conference on
October 31, 2001, this is unquestionably a matter into which Mr. Nothern is entitled to
inquire.

In fact, the SEC, in conjunction with Treasury's Office of Inspector General,
conducted a formal interview of Ms. Cetina on November 7, 2001. During that
interview, she stated that "a week or two prior to the announcement, she spoke with
Drew Matus, a market strategist for Lehman Brothers Inc. in New York. She said that
Matus predicted that Treasury would eliminate the 30-year bond. She thought he was
'going out on a limb with that type of speculation.'"

During this SEC-Treasury interview, Ms. Cetina further observed that on the
morning of October 31, 2001, she observed an increase in the price of the 30-year bond
as early as 9:35 a.m. She herself "became aware" — it is not clear how — "of the
decision to suspend sales of the 30-year bond approximately 30 minutes prior to the
official announcement." Ms. Cetina also spoke with several primary bond dealers who
heard advance reports about Treasury's decision. According to e-mails that the Office
of Inspector General included as an exhibit in its report, one dealer told Ms. Cetina that
"they received a call from John Jacobs from IDEA yesterday about a rumor that
Treasury would eliminate the long bond. The same dealer reports that the long bond
was trading special on repo yesterday." Another dealer in London told Ms. Cetina that
"he heard rumor that the long bond would be eliminated yesterday from a European
Central Bank."

The SEC and Treasury's Office of Inspector General and Office of General
Counsel all believed that Ms. Cetina had information that warranted their attention and
investigation. Mr. Nothern is certainly entitled under the federal discovery rules to ask
Ms. Cetina about these issues now.

For its part, Treasury does not deny that Cetina's testimony would be relevant.
Instead, it claims that it has denied our request for Cetina's deposition for medical
reasons. In fact, in a letter dated June 9, 2006, Treasury counsel Thomas McGivern

Erica Y. Williams, Esquire
John J. Rossetti Jr., Esquire
November 7, 2006
Page 3

stated that Ms. Cetina was dealing with medical issues and "will not be able to participate in a deposition any time soon." McGivern did not state that Treasury had permanently denied our request or cite any *Touhy* regulation in support of such a denial. On July 10, 2006, I requested an update about her current medical condition and "the conditions under which we may safely conduct her deposition before the discovery deadline." In a subsequent conversation, Mr. McGivern assured me that he would seek to work out an arrangement by which we could conduct Ms. Cetina's deposition at an appropriate time. Then, in a letter dated October 2, 2006, contrary to his prior written and oral representations, Mr. McGivern claimed that Treasury had permanently denied our request to depose Cetina "under Treasury's *Touhy* regulations."

On October 3, 2006, I urged Mr. McGivern to reconsider his statement regarding Treasury's denial of our request, and to propose a date on which we could obtain Cetina's testimony. "Otherwise," I wrote, "we shall seek dismissal of the present action for a party's failure to appear at deposition or alternatively on grounds of denial of due process." Mr. McGivern has not responded.

### Relevance of Elnora Bowser's Testimony

The need for the deposition of Treasury employee Elnora Bowser is equally compelling. Ms. Bowser is the employee who cleared Peter Davis in to attend the quarterly refunding press conference on October 31, 2001. She alone can testify about her reasons for admitting Davis, whether she was directed to do so by anyone else at Treasury, her understanding of any agreement of confidentiality that Mr. Davis may have had with Treasury, and any conversations or communications with regard to any of the foregoing.

Treasury's refusal to allow this deposition, as set forth in Mr. McGivern's letter of November 2, 2006, is preposterous. Treasury argues that Ms. Bowser's testimony is not "genuinely necessary to the proceeding." It writes that "Ms. Bowser's role was extremely limited," in that she "only cleared Peter Davis into the Treasury building one time." That "one time," however, was the date on which Treasury announced its decision to suspend the 30-year bond and the alleged insider-trading violation occurred.

It is critical that we fully understand Ms. Bowser's authority and justification for admitting Mr. Davis on October 31, 2001. In ¶ 27 of your Complaint, you alleged that Treasury "permitted Davis" to attend the quarterly refunding press conference "only by reason" of an "explicit agreement" he reached with a "senior adviser" at Treasury. If that is true, then Treasury employee who permitted Davis on October 31, 2001 should have known about this "explicit agreement," or at least have been directed by someone else with such knowledge. We are entitled to find out what Ms. Bowser knew and was told, and whether in fact Mr. Davis was admitted to this press conference on the basis of such an agreement.

Erica Y. Williams, Esquire
John J. Rossetti Jr., Esquire
November 7, 2006
Page 4

Furthermore, we are very troubled that Treasury refuses to permit depositions on the ground that some subjects have been addressed by other witnesses. In its letter of November 2, 2006, Treasury asserts that "[a]ll the topics for which you seek to depose Ms. Bowser have been addressed in Treasury's document production and in deposition testimony by a number of other current and former Treasury employees." This assertion is false, since no document or Treasury employee has provided any information regarding Ms. Bowser's understanding of Davis's duty to Treasury or her reasons for admitting Davis on October 31, 2001. Moreover, the experience has been that the Treasury witnesses have given conflicting or otherwise unreliable testimony.[1] The government may not pick and choose those witnesses whom it thinks may be the most helpful to its case and then deny access to other evidence.

**Relevance of Michele Davis's Testimony**

Treasury has also failed to respond to our request, made on August 16, 2006, to depose two additional witnesses: former Assistant Secretary for Public Affairs Michele Davis and Treasury employee Steve Berardi. Both witnesses are likely to provide information that is relevant to the claims and defenses in this case and not available from other sources.

Michele Davis was Assistant Secretary at the time of the October 31, 2001 press conference. Tony Fratto and Elizabeth Holahan reported to her. During Fratto's interview by the Inspector General's Office and SEC on November 14, 2001, he stated that he, Holahan, and Davis had advance knowledge of the decision to suspend the 30-year bond. At his deposition, former Under Secretary Peter Fisher testified (pages 101-04) that he had a conversation with Davis prior to October 31, 2001, in which he expressed his opposition to the use of an embargo for the upcoming quarterly refunding press conference on the ground that "the risk of a leak or some malfunction, some

---

[1] To give just a few examples: Paul Malvey testified (pages 90-91) that Jill Ouseley told him to admit Davis to a quarterly refunding press conference; Ouseley testified (pages 27-28) that she did not recall knowing Davis or speaking with anyone at Treasury about him. Malvey testified (pages 191-94) that he believed that Treasury's general practice was to have an employee guard the doors to the press conference "to make sure no one leaves"; Ouseley (pages 61-62) and Tony Fratto (page 161) testified that there was no guard and that attendees were free to leave at will. Fratto testified (page 209-10) that he told Frances Anderson to post Treasury's announcement on the Internet at 10:00 a.m.; Anderson testified (page 133) that Fratto said she did what she was "supposed to do" by positing the announcement around 9:40 a.m. In addition, Anderson (page 183) and Steve Vagle (page 48) testified that Treasury's staging server was "internal" and that "no one from the public could see" documents posted there, when in fact documents posted on that server were publicly accessible on the Internet, *see* Harris Dep. at 89-90; Verizon Dep. at 153.

Erica Y. Williams, Esquire
John J. Rossetti Jr., Esquire
November 7, 2006
Page 5

procedural malfunction was too high" and argued for the "direct release" of the information by Treasury. In response, Davis told Fisher that she "felt strongly that changing procedures at that moment was not a good idea." In connection with Nothern's defense that the "embargo" is not justified under the First Amendment, we are entitled to question Davis about this decision to reject Fisher's advice and institute a fixed embargo time, as well as her understanding of Treasury's policies on maintaining the confidentiality of market-sensitive information, the use of embargoes, the admission of persons like Peter Davis to quarterly refunding press conferences, and related issues.

### Relevance of Steve Berardi's Testimony

In 2001 Steve Berardi was a financial economist on Paul Malvey's staff. At his deposition Mr. Malvey suggested (pages 191-93) that Mr. Berardi may have stood at the door to the quarterly refunding press conference "to make sure no one leaves." We intend to ask Mr. Berardi about this testimony. In addition, following the October 31, 2001 press conference, Mr. Berardi told Treasury's Office of General Counsel that "he was 'amazed' Treasury's decision to suspend issuance of the 30-year bond had not leaked earlier. He noted that two sets of calendars had been sent to the printer weeks in advance. One set showed the Treasury continuing issuance of the 30-year bond. The other didn't. For that reason alone, he was surprised the decision had not become public earlier." We are entitled to ask him about these and related issues.

### The Government's Obstruction of Mr. Nothern's Defense

In its letter of November 2, 2006, Mr. McGivern asserts that we seek to depose Treasury employees on topics that "are not in dispute" and have been previously addressed in other depositions. This assertion is false. No witness has discussed the suggested "tip" made to Lehman Brothers to Treasury employee Malvey during the week prior to the announcement on the 30-year bond. No witness has discussed "how easy it would be" for Treasury employees "to make money by using the information to position [themselves] in the financial markets." No witness has discussed Ms. Cetina's observation of the movement in the price on the 30-year bond beginning at 9:35 a.m. on October 31, 2001. No witness has discussed reports by primary bond dealers regarding their advance knowledge of Treasury's decision to suspend the 30-year bond, and in particular the belief that European central bank authorities, perhaps informed by White House or even Treasury officials, were circulating the information in advance of the announcement on October 31, 2001. No witness has addressed Assistant Secretary Davis's decision to reject the request of Under Secretary Fisher to release the information on the 30-year bond directly, not through the use of an embargo. No witness has discussed Treasury's disclosure of the possible suspension of the 30-year bond in a set of calendars sent to the printer "weeks in advance." No witness has addressed the specific reason for Treasury's admission of Peter Davis to the quarterly refunding press conference on October 31, 2001.

Erica Y. Williams, Esquire
John J. Rossetti Jr., Esquire
November 7, 2006
Page 6

     Having assiduously assisted the SEC's efforts to prosecute Mr. Nothern for insider trading — and indeed having claimed that the SEC's enforcement action was a <u>vindication</u> for its employees — Treasury now invokes its authority as a federal agency to prevent us from obtaining clearly relevant witness testimony. This is a violation of the Federal Rules of Civil Procedure of the Due Process Clause: the government may not pursue an enforcement action while denying the defendant information that is relevant to his defense. We therefore intend to move for dismissal if these witnesses are not made available for examination.

     I look forward to hearing from you.

                    Sincerely,

                    John A. Shope

cc:    Thomas M. McGivern, Esquire
       Nicholas C. Theodorou, Esquire
       Robert E. Toone, Esquire

# Exhibit L



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, N.E.
WASHINGTON, D.C. 20549-4010

DIVISION OF
ENFORCEMENT

Erica Y. Williams
Assistant Chief Litigation Counsel
Telephone: (202) 551-4450
Facsimile: (202) 772-9245
Williamse@sec.gov

November 8, 2006

*By Facsimile and First Class Mail*

John Shope, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02210

Re:    *Securities and Exchange Commission v. Steven E. Nothern,* Case No. 05-10983
(NMG)

Dear John:

I am writing in response to your letter dated November 7, 2006, requesting that counsel for the SEC participate in a conference on November 8, 9 or 10, 2006. I will be out of the country from November 9 - 13, 2006. As a result, counsel for the SEC is only available to participate in a Rule 37.1 conference today, or sometime after November 13.

In your letter, you threaten to file a motion to dismiss the SEC's enforcement action against your client, Steven Nothern unless the SEC produces Department of Treasury ("Treasury") employees for deposition, which the SEC does not control. Your attempt to intimidate the SEC in this manner, when a motion is currently pending before the Court which will decide whether the SEC controls Treasury, its documents and witnesses, or whether Treasury is a plaintiff to in this action, is improper. In its opposition to your motion to compel, the SEC denied having any control over Treasury, and denied your claim that Executive Branch agencies like Treasury and Justice are plaintiffs in this case. The SEC incorporates the arguments made in its opposition by reference in this letter. *See* Docket # 32. To the extent that the arguments in the SEC's opposition brief were directed towards its inability to control the production of Treasury documents, make no mistake that they also apply to the production of current and former Treasury employees for deposition. Accordingly, any concerns that you have regarding Treasury's denial of your request to depose

John Shope, Esq.
November 8, 2006
Page 2

additional Treasury employees, Jill Cetina, Elnora Bowser, Michele Davis and Steve Berardi, should be directed to Treasury, not the SEC.

Furthermore, as you know, on June 16, 2006, the D.C. Circuit reversed several lower court decisions relied on by Nothern in his motion to compel, and held that litigants seeking to obtain documents and testimony from third-party government agencies may do so by issuing subpoenas to the agencies under Rule 45 of the Federal Rules of Civil Procedure. *Yousuf v. Samantar*, 451 F.3d 248, 256 (D.C. Cir. 2006). The D.C. Circuit's decision in *Yousuf* makes clear that the proper mechanism for Nothern to obtain testimony from Treasury employees is not by stretching the definition of "plaintiff" in this SEC enforcement action beyond its reasonable meaning to incorporate Executive Branch agencies, raising serious policy and separation of powers issues, but through the use of Rule 45 subpoenas, which you have failed to issue.

While the SEC has no ability to produce any Treasury employees for deposition, it disagrees with the representations made in your letter regarding the relevance and necessity of the depositions that you are seeking. The SEC brought this enforcement action against Mr. Nothern because he knowingly or recklessly traded in the 30-year bond for his own benefit based on material, nonpublic information that he obtained from Peter Davis, a known Washington insider, who he knew, or was reckless in not knowing, had passed on the information in breach of his duty to Treasury to keep the information confidential during the embargo period. Mr. Davis has admitted: (1) that he had a duty to Treasury, (2) that he had entered into an agreement to maintain embargoed information, (3) that he heard a Treasury official announce the embargo at the October 31, 2001 refunding conference and (4) that he knowingly and willingly violated his duty to Treasury when he provided this information to his clients during the embargo. *See* Davis Plea Hearing Transcript at 19. Nothern was one of these clients. Nothern had admitted that he is aware of the meaning of the term embargo, and was aware that the information that he received from Davis on October 31, which he used to trade in the 30-year bond, came from a high ranking Treasury employee, and was subject to an embargo at the time he traded. *See* Nothern Investigative Testimony at 111-112. Moreover, the price, and volume data on the 30-year bond from October 31, 2001, testimony from numerous witnesses, including Nothern, and many of the document produced in this litigation, show that the information was nonpublic at the time of the trading at issue and was not impounded into the market until sometime close to 10 am.

In your November 7 letter, you claim that you wish to take the depositions of Ms. Cetina, Mr. Berardi, Ms. Bower and Ms. Davis to follow up on the following issues:

- Speculative statements regarding possible leaks to Lehman Bros.;

- Ms. Cetina's observation of the price movement of the 30-year bond, which is evident from publicly available price volume data;

- Ms. Davis' input in the decision by the Office of Public Affairs to impose an embargo at the October 31 press conference;

John Shope, Esq.
November 8, 2006
Page 3

- After the fact conjecture that appeared in newspaper articles regarding whether primary dealers or European banks had advance knowledge, when no individuals from those entities have ever supported such reports;

- Whether the decision to suspend the 30-year bond was put on calendars, sent to a printer which the law hold would have been prohibited from disclosing or trading on the information; and

- Whether it would have been easy for Treasury employees to "make money by using the information to position [themselves] in financial markets."

These issues are wholly irrelevant to any valid claims or defenses that may be raised in this insider trading case. Taking the depositions of four additional Treasury employee witnesses on these issues, which are immaterial, and/or have been addressed in the depositions of other witnesses or in documents produced in this case, and are unlikely to lead to the discovery of admissible evidence, would be a waste of time and resources.

Because the motion to dismiss that you seek to file is misplaced, in that it is directed at the SEC which has no ability to produce Treasury employees for deposition, and is entirely dependent on the Court's resolution of your pending motion to compel, I urge you to reconsider filing it.

John and I are available to discuss these issues with you further today, or sometime after November 13.

Sincerely,

Erica Y. Williams

cc:    John J. Rossetti, Jr.

# Exhibit M



# FOLEY
# HOAG LLP
ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

November 8, 2006

**BY TELECOPIER (202-722-9245) AND FIRST-CLASS MAIL**

Erica Y. Williams, Esquire
Securities and Exchange Commission
100 F Street, N.E., Mail Stop 4010
Washington, D.C.  20549-4010

Re:    ***United States Securities and Exchange Commission v. Nothern,***
***Civil Action No. 05-10983 (NMG) (D. Mass.)***

Dear Erica:

I am writing to confirm our discussion during the Rule 37.1 conference we held by telephone earlier this afternoon.

Our general positions on the merits of the prospective motion concerning Treasury's failure to permit certain depositions are set forth in the letters we exchanged yesterday and today.  During our conference, I explained that even though related legal issues may be involved, in light of the current deadline for fact discovery we do not believe that we can wait until the Court resolves our pending motion to compel the production of documents before raising the Treasury Department's failure to authorize the depositions we have requested.

As a means of resolving this matters without court intervention, I proposed that the SEC make a written request to Treasury asking it to (1) reconsider its decision denying us authorization to proceed with the depositions of Jill Cetina and Elnora Bowser, and (2) issue a prompt and favorable response to our request to depose Michele Davis and Steve Berardi.  The parties would reserve their positions on the merits of our motion pending Treasury's response.  You have rejected that proposal.  You also indicated that you do not believe there is anything more we can do to resolve this issue without the court.

During our conversation, you raised the possibility of a stipulation stating that the parties agree that our briefs on the motion to compel will cover our motion on Treasury depositions as well.  I stated that we will consider this possibility, but need to conduct some additional legal research first.  We agreed to discuss this matter by

Erica Y. Williams, Esquire
November 8, 2006
Page 2

telephone again, after you return from vacation, at 5:30 p.m. on Tuesday, November 14, 2006.

Please let me know right away if I have misstated your position.  I look forward to speaking with you again next Tuesday.

Sincerely,

John A. Shope

cc:    John J. Rossetti Jr., Esquire
       Nicholas C. Theodorou, Esquire
       Robert E. Toone, Esquire

# Exhibit N



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

November 15, 2006

**BY E-MAIL AND FAX**

John A. Shope, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600

Subject:    Subpoena for the deposition testimony of, and production of documents by, former Treasury Department employee David Aufhauser in *Securities and Exchange Commission v. Steven E. Nothern* (D. Mass., Case No. 05-10983)

Dear Mr. Shope:

The Department of the Treasury understands that you recently served a subpoena upon former Treasury employee David Aufhauser in the above-titled case that seeks his deposition testimony and the production of documents on November 20, 2006.

This litigation has produced an extensive amount and range of deposition testimony from nine current and former Treasury employees. You also have received hundreds of pages of documents from Treasury's production to the Securities and Exchange Commission (SEC) pursuant to a request under 31 C.F.R. §§ 1.8-1.12 (known as Touhy regulations, *see also United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). Moreover, the SEC has produced to you in this litigation hundreds of pages of Treasury documents supplied by Treasury to the SEC in 2001 and 2002.

We have carefully reviewed and considered the topics for which you seek testimony from Mr. Aufhauser, as well as all the information on those topics already produced by Treasury, by the SEC, and by current and former Treasury employees in depositions this case. We further note the hundreds of hours spent by Treasury staff and the hundreds of thousands of dollars that Treasury already has expended on this third-party litigation. **After carefully weighing all of this information, we have decided, pursuant to Treasury Touhy regulations, to deny your request to depose Mr. Aufhauser and to require him to produce documents.** As explained below, you have failed to demonstrate that Mr. Aufhauser's deposition testimony is genuinely necessary to the proceeding, is unavailable from other sources, and is not unduly burdensome to the Treasury Department.

- *You have failed to demonstrate that the information requested from Mr. Aufhauser is genuinely necessary to the proceeding.* Neither your May 18, 2006 letter requesting the testimony of Mr. Aufhauser and others, nor the recent subpoena, demonstrate that Mr.

2

Aufhauser is likely to possess information necessary to prove or disprove the allegations in this case. The topics for which you seek to depose Mr. Aufhauser either 1) already have been addressed in Treasury's document production, in the production of Treasury documents by the SEC, and in deposition testimony by a number of other current and former Treasury employees, or 2) attempt to elicit privileged information.

- *You have failed to demonstrate that the information you seek from Mr. Aufhauser is unavailable from other sources.* The information you seek from Mr. Aufhauser is available from other sources, such as documents we provided to the SEC and to you in response to the SEC's Touhy request, Treasury documents you received separately from the SEC, and information you received in the course of deposing other current and former Treasury employees. For example:

  - Information on the investigation conducted by the General Counsel's office into the release of information on Treasury's suspension of the 30-year bond can be found in the following documents that have been produced to you by the SEC:

    - A November 6, 2001 memorandum from Counselor to the General Counsel Thomas M. McGivern to Mr. Aufhauser titled "Events Surrounding the Announcement Suspending Issuance of the 30-Year Treasury Bond;"
    - An undated memorandum from Deputy Assistant General Counsel (Enforcement) Francine Kerner to Mr. Aufhauser titled "Announcement Suspending Issuance of the 30-year Bond;"and
    - An undated memorandum from Steven Vagle to File titled "My November 1, 2001 Investigation Which Showed that the Time of Publication, on the Treasury Web Site, of Peter Fisher's Remarks about the 30-Year Bond, was 9:43 a.m., October 31, 2001".

  - Information on Treasury's policies and procedures on maintaining the confidentiality of market-sensitive information can be found in the deposition transcripts of Tony Fratto (pages 38-41, 85), Brian Roseboro (page 85), Paul Malvey (pages 255-256), Roger Anderson (pages 38-40), Jill Ousley (pages 77-80), and Elizabeth Holahan (pages 33-34, 44-46, 61).

  - Information on Treasury's policies and procedures on "embargoes" can be found in the deposition transcripts of Tony Fratto (pages 37-64), Elizabeth Holahan (pages 44, 46-50, 60-61, 63), Peter Fisher (pages 101-107), Roger Anderson (pages 38-42, 47-49, 54), Brian Roseboro (pages 28-29, 31-35), Frances Anderson (pages 59-61, 90-91), Lula Tyler (pages 57-59) Jill Ousley (pages 49-53), and Paul Malvey (pages 40, 99-102).

  - Information on the policies and procedures that specifically were followed on October 31, 2001 can be found in the deposition transcripts of Tony Fratto (pages 48, 94, 128-129, 156-171), Paul Malvey (pages 60-61, 79-85), Peter Fisher (pages 99-100, 114-122), Brian Roseboro (pages 80, 84-85), Elizabeth Holahan (pages 53-54, 101, 106-111, 113-116), Frances Anderson (pages 56, 58, 68-70, 79-100), and Lula Tyler (pages 98-100, 102).

3

- Information on how Peter Davis was specifically able to attend the conference on October 31, 2001 can be found in the deposition transcripts of Elizabeth Holahan (pages 115-116, 137-138), Lula Tyler (pages 99-105), Paul Malvey (page 146), and Tony Fratto (pages 172-177).

- Information concerning Treasury's referral of this matter to the SEC can be found in the following documents that were produced to you by the SEC:

  - A November 6, 2001 letter and enclosures from Mr. Aufhauser to the Honorable Harvey L. Pitt, the Chairman of the Securities and Exchange Commission; and
  - A November 9, 2001 letter from Treasury Associate Deputy General Counsel Megan Hills to Mike Norr of the Treasury Office of the Inspector General titled "SEC Inquiry".

- *The request to depose Mr. Aufhauser is unduly burdensome.*  Treasury staff have dedicated hundreds of hours and hundreds of thousands of dollars to matters pertaining to this case in which the Treasury Department is not a party, including, among many other things:

  - considering a number of Touhy requests for the production of documents and the deposition of current and former Treasury employees;
  - searching for hard- and soft-copy records, including restoring former Treasury employees' e-mails, protecting privileged material, and producing documents;
  - helping you to locate some of the former Treasury employees and coordinating with all parties to arrange mutually convenient times for their deposition;
  - preparing for the depositions of nine current and former Treasury employees; and
  - dedicating in excess of 43 hours alone to represent the Department of the Treasury in these depositions, plus the time and expense for travel to New York (twice), New Jersey, and Florida.

You have shown no restraint in requesting testimony on the same topics again and again from current and former Treasury employees, even when the witnesses and documents provide the same facts again and again.  During depositions, you regularly exceeded the scope of the subjects for which you received authorization from Treasury under its Touhy regulations to question witnesses.  *See, e.g.,* deposition transcripts of Paul Malvey (pages 85-87) and Brian Roseboro (page 125).  You have engaged in a broad and indiscriminate fishing expedition that is unduly burdensome to the Treasury Department.  There simply is no justification for the expenditure of additional Treasury Department resources for the deposition of Mr. Aufhauser.

Although my June 9, 2006 letter to you initially authorized Mr. Aufhauser's deposition subject to certain limitations, we have now concluded that deposing Mr. Aufhauser on topics that have already been addressed numerous times in documents and in deposition testimony imposes an undue burden on the Department.  Receiving the same information yet again simply adds to the excessive burden Treasury already has bore in responding to this case.

4

**In light of Treasury's determination under its Touhy regulations to deny your request to depose Mr. Aufhauser and to require him to produce documents, Treasury objects pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure to the November 1, 2006 subpoena served on Mr. Aufhauser.** Treasury's objections to the subpoena include the following.

First, the subpoena's return date "fails to allow reasonable time for compliance." Fed. R. Civ. P. 45(c)(3)(A)(I). Treasury received a copy of the subpoena from David Aufhauser on or about November 7, 2006, and the deposition and production are scheduled to occur on November 20, 2006. Seven working days does not provide sufficient time for Mr. Aufhauser or for Treasury officials to arrange their schedules to make time for a deposition, particularly in light of the fact that Mr. Aufhauser has his home in Washington , DC, but works in New York City.

Second, Mr. Aufhauser is unavailable on November 20. *See* Fed. R. Civ. P. 45(c)(1) (party serving subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena"). Mr. Aufhauser informs me that you made no attempt to contact him prior to serving the subpoena on November 1 to determine if he was available for a deposition on November 20. This is contrary to our practice in this case for scheduling the depositions of other current and former Treasury officials. In those cases, we worked together – your firm, proposed Treasury deponents, Treasury officials, and SEC officials – to find mutually agreeable deposition dates, times, and places.

Third, requests for the production of testimony and documents from former Treasury employees are governed by Treasury Department Touhy regulations. We have decided to deny your request to depose Mr. Aufhauser under Treasury's Touhy regulations. Because Mr. Aufhauser has not been authorized under Treasury Touhy regulations to testify or to produce documents in this matter, he may not be compelled to testify on November 20. *See Bobreski v. EPA,* 284 F. Supp.2d 67, 73 (D.D.C. 2003) (agency employee cannot be forced to testify if an agency with valid Touhy regulations considers requests for testimony using relevant data and provides a rational basis for its decision).

Fourth, the requested testimony and documents may be protected by one or more privileges, including deliberative process privilege, attorney-client privilege, attorney work product privilege, or law enforcement privilege, among others.

Fifth, the requested documents may contain confidential business, financial and privacy information that cannot be disclosed. For example, under the Trade Secrets Act, 18 U.S.C. § 1905, such information may not be disclosed.

The foregoing objections are not exclusive, and we reserve the right to assert further objections as appropriate.

For these reasons, Treasury objects to the November 1, 2006 subpoena demanding testimony and the production of documents from former Treasury employee David Aufhauser, and does not authorize Mr. Aufhauser to appear for the deposition or to produce documents on the date, time

5

and place specified on the subpoena.  Further, we request that you withdraw your subpoena of Mr. Aufhauser.

If you have further questions, please contact me at 202-622-2317.

Sincerely yours,

*Thomas M. McGivern*

Thomas M. McGivern

ec: Erica Williams, Esq.
John Rosetti, Esq.
U.S. Securities and Exchange Commission

Nicholas Theodorou, Esq.
Robert Toone, Esq.
Foley Hoag LLP

# Exhibit O

# FOLEY
# HOAG LLP

ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

November 16, 2006

**BY TELECOPIER (202-622-2961) AND FIRST-CLASS MAIL**

Thomas McGivern, Esquire
Office of the General Counsel
Department of the Treasury
Room 20191500 Pennsylvania Avenue, N.W.
Washington, D. C.  20220

Re:  ***United States Securities and Exchange Commission v. Nothern,***
***Civil Action No. 05-10983 (NMG) (D. Mass.)***

Dear Mr. McGivern:

At 6:19 p.m. yesterday evening, you sent me a letter withdrawing the Treasury Department's written authorization of June 9, 2006 for the deposition of David Aufhauser and denying our request "to depose Mr. Aufhauser and to require him to produce documents."  As you know, Mr. Aufhauser's deposition was scheduled for next Monday, November 20, 2006.  I am shocked and deeply disappointed by Treasury's decision, which clearly reflects a deliberate decision on your part no longer to cooperate with our discovery efforts in this case.

As you may already be aware, we intend to bring Treasury's refusal to allow this deposition to proceed, along with Treasury's denial of our requests to depose Elnora Bowser and Jill Cetina and its prolonged failure to respond to our requests to depose Michele Davis and Steve Berardi, to the attention of the U.S. District Court as grounds for seeking dismissal of this case.

I will not address here the many untrue or misleading statements set forth in your letter regarding our need to depose Mr. Aufhauser or the purported "undue burden" that such a deposition would impose on Treasury.  However, I must address the outrageous misstatements you make regarding our purported failure to consult with Treasury or Mr. Aufhauser in setting a date for this deposition.  You write:

Mr. Aufhauser is unavailable on November 20.  *See* Fed. R. Civ. P. 45(c)(1) (party serving subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena").  Mr. Aufhauser informs me that you made no attempt to contact him prior

Thomas McGivern, Esquire
November 16, 2006
Page 2

to serving the subpoena on November 1 to determine if he was available
for a deposition on November 20. This is contrary to our practice in this
case for scheduling the depositions of other current and former Treasury
officials. In those cases, we worked together — your firm, proposed
Treasury deponents, Treasury officials, and SEC officials — to find
mutually agreeable deposition dates, times, and places.

In fact, during the last six (6) months we have repeatedly contacted both you and
Mr. Aufhauser in an effort to obtain an agreeable date, time, and place for his deposition.
You and Mr. Aufhauser have steadfastly refused to cooperate:

- We submitted to you our *Touhy* request for authorization to proceed with Mr.
  Aufhauser's deposition on May 18, 2006. We explained our basis for
  seeking his testimony and expressed our willingness "to accommodate the
  witnesses', the SEC's, and your schedule in arranging the time and location
  of the depositions."

- Robert Toone of my office spoke with Mr. Aufhauser at his UBS office in
  New York at approximately 10:00 a.m. on May 26, 2006. Mr. Toone
  informed him of our intent to seek his deposition and asked for convenient
  dates. Mr. Aufhauser stated that his schedule in June was congested and that
  "July would be a lot better." Mr. Aufhauser said that he would call back the
  following week, but never did.

- On behalf of Treasury you formally approved our request to depose Mr.
  Aufhauser in a letter dated June 9, 2006. You stated that you "have
  attempted to contact current and former Treasury employees regarding your
  pending request for their depositions" and would "let them know that the
  Department has approved your request for their deposition."

- During breaks at other depositions in the summer you assured me that you
  had been in contact with Mr. Aufhauser, and that he preferred to be deposed
  in Washington, D.C. (where his family resides) rather than in New York City
  (where he now works). I advised you that I would be happy to conduct the
  deposition in either location and requested proposed dates. You stated that
  you would contact Mr. Aufhauser and get back to me.

- In a letter dated July 10, 2006, I asked you to "advise if you have informed
  [Mr. Aufhauser] of Treasury's deposition to authorize his deposition and
  whether there are any dates on which you (or another lawyer on your staff
  who intends to attend in your stead) are unavailable." You did not respond.

- On July 14, 2006, Mr. Toone sent Mr. Aufhauser an e-mail stating that
  Treasury had authorized his deposition. Mr. Toone stated, "Please let us

Thomas McGivern, Esquire
November 16, 2006
Page 3

know of your availability for a deposition in New York City throughout
August and the first week of September. (I understand from your assistant
that you may be taking a vacation in August.) Because we must coordinate
dates and times with counsel for the SEC and Treasury's General Counsel,
we would appreciate knowing your full availability for this period." Mr.
Aufhauser did not respond.

- In a letter to you dated August 16, 2006, I repeated "my earlier request for
  proposed dates for the deposition of David Aufhauser in New York City or
  Washington, D.C." You did not respond.

- In a letter to you dated September 19, 2006, I repeated "my earlier request for
  proposed dates for the depositions of David Aufhauser and Jill Cetina." You
  did not respond.

- In a letter to you dated September 29, 2006, Mr. Toone asked you to respond
  to the matters raised in my letter of September 19, including my request for
  "proposed dates for the depositions of David Aufhauser" and other witnesses.
  You did not respond.

- In a letter to you dated October 3, 2006, I noted that "despite multiple
  requests you have still not supplied us with dates for the deposition of Mr.
  Aufhauser that was authorized several months ago." You did not respond.

- Faced with the impending discovery deadline of December 15, 2006 (of
  which you are aware), we served a subpoena on November 2, 2006 for
  November 20, 2006. An attorney at UBS apparently representing Mr.
  Aufhauser, Alan Brudner, called me late in the afternoon of Friday,
  November 3, 2006. I returned his call the following Monday, November 6,
  2006. Ten (10) days later, he still has not returned my call. Instead, you and
  he have waited until two (2) business days before the deposition to announce
  that Mr. Aufhauser will not appear.

Based on your and Mr. Aufhauser's persistent failures to respond to our inquiries
is nothing short of remarkable for you to now claim that in so doing, we acted "contrary
to our practice" of "working together" on scheduling in this case.

As you are well aware, one issue we intend to ask Mr. Aufhauser about is his
statement to a *Wall Street Journal* reporter in September 2003 on the enforcement action
instituted at that time by the SEC against Mr. Nothern. Mr. Aufhauser reportedly stated:

"I couldn't be happier that this concluded with punishing action
against those responsible for violating our rules and I equally couldn't be
happier with the finding that no one within the Treasury building did

Thomas McGivern, Esquire
November 16, 2006
Page 4

anything inappropriate and indeed that all of the people who participated
in the investigation in this building have been found to have behaved
above board, honorably in the service of their department and country."

Treasury has clearly encouraged and assisted the SEC in its prosecution of Mr.
Nothern as a means of deflecting critical attention from the many serious mistakes and
misjudgments it made leading up to the quarterly refunding announcement on October
31, 2001. Those errors, as well as embarrassing contradictions in the testimony of
Treasury staff, continue to be developed in this case. Early on, you acknowledged Mr.
Nothern's right to depose Mr. Aufhauser under Treasury's own regulations, but refused
to cooperate in our efforts to schedule it. Your decision now to revoke your earlier
authorization — on the eve of the scheduled expiration of the discovery period and the
basis of patently frivolous grounds — constitutes an unequivocal violation of Mr.
Nothern's fundamental rights to discovery and due process.

We do not withdraw our subpoena of Mr. Aufhauser, and we reserve our client's
rights to seek any and all appropriate sanctions in the circumstances.

Sincerely,

John A. Shope

cc:    Erica Y. Williams, Esquire
       John J. Rossetti Jr., Esquire
       Alan Brudner, Esquire
       Nicholas C. Theodorou, Esquire
       Robert E. Toone, Esquire