UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN E. NOTHERN,<br><br>Defendant. | Civil Action No. 05-10983 (NMG)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HIS
<u>RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: December 12, 2006

## **TABLE OF CONTENTS**

I.   TREASURY DOCUMENTS ...................................................................................1

   A.   Key Treasury Documents Have Not Been Produced. .............................................1

   B.   The Government's Refusal to Produce Treasury Documents Violates Its Own
        Regulations, the Rules of Discovery, and Due Process. .........................................3

   C.   Nothern Has No Other Means of Obtaining the Documents. .................................6

II.  DOJ DOCUMENTS ..............................................................................................9

   A.   Rule 6(e) Does Not Shield All DOJ Documents. ....................................................9

   B.   The SEC Cannot Claim DOJ's Interview Notes as Its Own "Work Product." ........9

   C.   The SEC's Last-Minute Assertion of the Deliberative Process Privilege Is
        Invalid. ..................................................................................................................14

Conclusion....................................................................................................................16

## TABLE OF AUTHORITIES

### CASES

*In re Bevil, Bresler & Shulman Asset Mgmt. Corp.*, 805 F.2d 120 (3d Cir. 1986) ............ 12

*Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979) ................................................................................................................ 4, 6, 14

*In re Grand Jury Subpoena*, 274 F.3d 563 (1st Cir. 2001) .............................................. 12

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir. 1997) ........................ 13

*Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749 (9th Cir. 1964) .................................. 4-6

*Santini v. Herman*, No. 06-MS-179 (RMC), 2006 WL. 2956173 (D.D.C. Oct. 17, 2006) ................................................................................................................................ 8

*SEC v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980) ............................................ 9

*Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574 (D.C. Cir. 1987) .................. 9

*In re Subpoenas in SEC v. Selden*, 445 F. Supp. 2d 11 (D.D.C. 2006) ............................... 8

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 884 (1st Cir. 1995) ................................................................................................................................ 15

*United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978) ...................................... 4-8

*United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20 (1st Cir. 1989) ............................................................................................................. 13

*United States v. Sawyer*, 878 F. Supp. 295 (D. Mass. 1995) .......................................... 12

*Williams v. City of Boston*, 213 F.R.D. 99 (D. Mass. 2003) ........................................... 15

*Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006) ......................................................... 8

### CONSTITUTIONAL PROVISIONS, STATUTES, REGULATIONS, AND RULES

U.S. Const. art. II, § 3 ......................................................................................................... 5

5 U.S.C. § 552 .................................................................................................................. 15

31 C.F.R. § 1.12 ................................................................................................................. 3

Fed. R. Civ. P. 26 ............................................................................................................. 11

Fed. R. Civ. P. 34 ......................................................................................................... 4, 11

Fed. R. Civ. P. 45 ............................................................................................................... 7-8

Fed. R. Crim. P. 6 ..................................................................................................................9

## MISCELLANEOUS AUTHORITY

8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    2024 (2d ed. 2006) .................................................................................................11

Defendant Steven Nothern respectfully submits this reply brief in support of his renewed motion to compel the production of relevant documents held by the Treasury Department ("Treasury") and Justice Department ("DOJ") (Docket # 44).

## I.    TREASURY DOCUMENTS

### A.    Key Treasury Documents Have Not Been Produced.

On August 15, 2006, the Court denied Nothern's motion to compel without prejudice "as moot at this time in light of the United States' voluntary discovery efforts." Specifically, following the Court's request and the parties' agreement at the hearing on June 14, 2006 the plaintiff U.S. Securities and Exchange Commission ("SEC") forwarded Nothern's requests to Treasury and DOJ on June 30, 2006, with cover letters asking the agencies to produce the documents.[1]

Now, five months later, the SEC asserts in its opposition (Docket # 46 ("Opp.") at 10) that "Nothern has already received, or soon will receive, most, if not all, of the non-privileged documents in the possession of those agencies that are responsive to his requests." The SEC, however, makes no effort to substantiate this assertion, and cannot do so. It does not respond to any of the specific points made in Nothern's initial memorandum about the inadequacy of Treasury's production. *See* Docket # 45 ("Mem.") at 3-14. Nor does it discuss Treasury's failure to produce critical documents, such as those relating to:

---

[1] The SEC states (Opp. at 3) that Nothern's counsel agreed to narrow his requests "for the very first time" at the hearing on June 14, 2006. Not true. As stated in his initial brief (Docket #31, at 7), filed on February 17, 2006, Nothern's counsel agreed on <u>December 13, 2005</u> "to make his document requests more specific" for the purpose of the SEC making a request to the other agencies. Counsel also asked the SEC to identify all the agencies that have been involved in the 30-year bond incident and subsequent investigations so that he could limit "the number of government agencies to which the requests would be sent," but the SEC refused. Nothern's attempt to resolve this dispute without a motion failed because the SEC refused to proceed unless Nothern waived all right to receive a privilege log or file a motion to compel in the event the other agencies refused to provide documents.

- its use of "embargoes" before the October 31, 2001 press conference;
- alleged violations of such embargoes;
- changes to Treasury's policies on the release of information prior to October 2001;
- correspondence between the alleged tipper, Peter Davis, and Treasury employees;
- documents reflecting Davis' admission to Treasury around the time of the alleged agreement that established his fiduciary duty to Treasury;
- documents showing the accuracy of Treasury's computer clocks; and
- a computer disk that may reveal exactly when Treasury's announcement on the 30-year bond was posted to the Internet, a critical issue in determining whether Nothern traded before or after the information at issue became public.

No document responsive to any of the requests listed above has been produced. The SEC likewise does not discuss Treasury's heavy redaction of clearly relevant information from the documents it has produced, as demonstrated on pages 7, 10, and 11 of Nothern's initial brief. Nor does it discuss Treasury's failure to explain its assertions of privilege for these redactions, other than to criticize Nothern (Opp. at 5) for "demanding that Treasury provide the defense with justification of its privilege claims on a piece-meal basis."

In the course of criticizing Nothern on this point, the SEC observed (Opp. at 5) that counsel for Treasury "represented that Treasury would likely finish producing documents by November 30." Treasury initially indicated (on August 3, 2006) that it would finish "in the coming weeks," but in letter dated October 19, 2006 it announced a new deadline of November 30, 2006. Treasury has now missed that date. In a letter dated November 30, 2006, it produced 74 pages of additional documents – mostly e-mails containing excerpts of newspaper articles, SEC pleadings, and press releases – and stated that it is taking "longer than anticipated" to restore certain e-mail accounts. *See* Docket #53, Ex. A. Treasury also stated that "redactions have been made to privileged information," but, again, did not identify any privilege that it is claiming ? even though the documents it produced contained more redactions. *Id.* Treasury

2

stated that its production would be finished "soon," but did not give any date. *Id.*

      **B.**      **The Government's Refusal to Produce Treasury Documents Violates Its Own Regulations, the Rules of Discovery, and Due Process.**

      Strikingly, the SEC attempts (Opp. at 7 n.3) to justify Treasury's failure to produce documents and redaction of clearly relevant information on the ground that "it is reasonable for Treasury to find that the SEC is not seeking the information in its 'official capacity' for official SEC business." Treasury's *Touhy* regulations expressly state that they "shall not be applicable to official requests of other government agencies." 31 C.F.R. § 1.12. The SEC concludes that Treasury properly applied the regulations on the premise that the SEC's document request of June 30, 2006 – sent on SEC letterhead, signed by counsel for the SEC, and submitted pursuant to the parties' agreement and at the Court's suggestion for purposes of this SEC enforcement action – was not "official."

      Neither Treasury's refusal to comply nor the SEC's defense of Treasury is reasonable. This is not a game by which agencies of the federal government may circumvent their own regulations and deflect responsibility based on such self-serving parsing of terms. After working in close coordination with Treasury and DOJ – indeed, the SEC refuses to turn over documents generated by DOJ on the ground that they constitute the SEC's own "work product," *see* Section II.B, *infra* – the SEC initiated this enforcement action against Nothern. It must now disclose all relevant documents held by the government it represents.

      If the SEC genuinely believed that Treasury is withholding documents merely because it did not consider the SEC's request of June 30, 2006 to be "official," the SEC should have immediately rectified the misunderstanding by informing Treasury that the request was made in the SEC's official capacity and that Treasury's *Touhy* regulations therefore do not apply. No such effort was made.

3

It is now clear, however, that Treasury's actions are not the result of an innocent misunderstanding. Treasury's recent conduct – its grossly incomplete document production, redaction of relevant information, refusal to justify its claims of privilege, refusal to authorize any further depositions, and last-minute cancellation of a deposition previously authorized – indicates that the government has decided no longer to cooperate with Nothern's discovery requests in this case. Treasury's unwarranted application of its *Touhy* regulations to withhold and redact relevant documents is a symptom, not the cause, of this larger refusal to cooperate.

Under these circumstances, it is not "naïve and unsupported" (Opp. at 10) to conclude that the government's refusal is a violation of Nothern's right to discovery under Federal Rule of Civil Procedure 34 as well as constitutional due process. This is not, as the SEC contends (Opp. at 7) "a basic insider trading case." Rather, the SEC alleges that the securities in question were issued by Treasury; the "inside information" was released at a Treasury press conference prior to the trading in question; and the alleged tipper's fiduciary duty (which the SEC claims Nothern knew about) was created by an agreement between the alleged tipper and a Treasury official. Key contested issues in this case may be resolved only through the testimony of Treasury witnesses and production of Treasury documents, and Treasury's refusal to cooperate, abetted by the SEC, frustrates the search for truth that the Federal Rules are designed to promote.

The legal principle on which Nothern relies is undisputed and unequivocal: "When an agency of government institutes suit, any obligation to disclose relevant information extends to the government qua government requiring disclosure of all documents in its possession, custody or control, not just those materials in the immediate possession of the particular agency-plaintiff." *Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979) (citing *Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749, 754 (9th Cir. 1964)). The case primarily relied on by the SEC, *United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978),

4

ruled that for purposes of discovery under Rule 34, the plaintiff in that case "shall consist of the United States Department of Justice and <u>all other agencies, departments, and subdivisions of the Executive Branch of the United States government</u>," with the exception of independent regulatory agencies like the FCC. *Id.* at 1349 (emphasis added). This holding compels the relief Nothern seeks here with respect to documents held by Treasury and DOJ.

Once again, the SEC argues (Opp. at 8-9) that because it itself is an independent agency, it need not produce documents from other government agencies like DOJ and Treasury. But the court in *AT&T* made clear that the key issue is the status of the agency <u>from which production is sought</u>, not the agency that initiated the litigation. In *Harvey Aluminum*, 335 F.2d at 754, the court ruled that the National Labor Relations Board – an independent agency, like the SEC – had to produce documents held by the Department of Labor and the FBI. *Id.* at 754. Citing *Harvey Aluminum*, the court in *AT&T* confirmed that an agency may be compelled to produce documents "in the possession of executive departments" (*i.e.*, non-independent agencies like DOJ and Treasury) because the President has "adequate authority over such departments to procure production, and the courts to order it." 461 F. Supp. at 1336 n.63. Unlike independent agencies, Treasury is subject to an executive officer, the President, whose duties include the faithful execution of all federal laws, including the securities laws. U.S. Const. art. II, § 3. The SEC has not cited any case supporting its argument that independent agencies may not be compelled to produce documents held by non-independent executive departments.

Just as DOJ argued in *AT&T* that it had "little influence over other agencies of the government," 461 F. Supp. at 1334 n.58, the SEC argues here (Opp. at 6) that "it does not control Executive Branch agencies, and should not be compelled to produce documents from those agencies' files." The ultimate question, however, is not whether the SEC itself can force Treasury and DOJ to comply, but whether the branch of government whose interests the SEC is

5

advancing with this lawsuit has the authority to do so. Clearly, as recognized in *AT&T*, the Executive Branch does.[2]

Moreover, as the person who has been sued, Mr. Nothern "obviously" has "even less influence over the agencies" than the SEC, and he is entitled to his "discovery rights irrespective of the effect on inter-departmental relationships." *AT&T*, 461 F. Supp. at 1334 n.58. *Accord Harvey Aluminum*, 335 F.2d at 754-55 (holding that while it "may well be true" that discovery obligation left NLRB "at the mercy" of other agencies, it was "less defensible still to resolve such agency disputes" by allowing government to proceed with action against defendant who had been denied documents to which he is entitled); *Ghana Supply Comm'n*, 83 F.R.D. at 595 ("If the government sues through one of its agencies and another agency possesses the information that must be disclosed, it is only fair that the government or other agency decide whether secrecy of the materials is worth dismissal of the lawsuit.").

### C. Nothern Has No Other Means of Obtaining the Documents.

Throughout the discovery period, Nothern has tried every means at his disposal to obtain Treasury's cooperation. Indeed, the SEC criticizes Nothern for "pressuring Treasury to respond" (Opp. at 7 n.3), as well as for "pepper[ing] Treasury counsel with letters criticizing the pace and substance of Treasury's voluntary production" (Opp. at 5). Nothern sent these letters in a good faith effort to seek Treasury's compliance, notify it of impending discovery deadlines, and respond to this Court's requests for status reports. It does not appear that the SEC did anything to follow up on its requests itself.

---

[2] In fact, this lawsuit is unusual in that a top Treasury official, General Counsel David Aufhauser, <u>endorsed</u> it as appropriate "punishing action against those responsible for violating our rules" and vindication of Treasury's employees for having "behaved above board, honorably in the service of their department and country." John Connor & Colleen DeBaise, *Youngdahl Indictment Tops US Action is Tsy Leak Case*, Wall St. J., Sept. 24, 2003. Given that Treasury worked so closely with the SEC in investigating the 30-year bond disclosure and expressed so conspicuously its interest in seeing this case prosecuted, it is disingenuous for the SEC to suggest (Opp. at 6-7 n.2) that the interests of the two agencies are not aligned.

Ironically, at the same time the SEC attacks Nothern for "his letter writing campaign on Treasury" (Opp. at 5), it charges him with wasting time for not pursing the documents "through valid procedural methods" such as the Freedom of Information Act (FOIA) and the agencies' *Touhy* regulations (Opp. at 9). But, as detailed in previous briefs (Docket # 31, at 13; Docket # 36, at 11 n.8, 12-13), Nothern has sought documents from DOJ and Treasury through FOIA requests, to little avail.[3] As for requests made pursuant to the agencies' *Touhy* regulations, it is precisely those regulations that Treasury has cited – with the SEC's approval – as grounds for denying Nothern access to relevant documents and witness testimony. Notwithstanding the SEC's suggestion, there is no "exhaustion" requirement under Rule 34, and there is no logic in requiring Nothern to invoke a regulatory procedure that will clearly produce no results.

The same point applies to the availability of third-party subpoenas under Rule 45. As explained in *AT&T*, Rule 45 subpoenas are a poor substitute for Rule 34 discovery: they involve a narrower scope of production, broader claims of governmental privileges, and greater expense, and "[w]hen dealing with the government, effective sanctions are not available for noncompliance with requests under Rule 45." 461 F. Supp. at 1331-32. That is why the court in *AT&T* rejected the government's claim that a voluntary system of production, "together with whatever discovery defendants may be able to secure under Rule 45, adequately protects

---

[3] DOJ has still not produced any documents in response to Nothern's FOIA request submitted on November 11, 2005. *See* Docket # 30, Ex. X. Nothern submitted FOIA requests to Treasury on November 11, 2005, and to the Department of Homeland Security ("DHS," the department to which the U.S. Secret Service was transferred in 2003) on December 20, 2005. *See* Docket # 37, Exs. B & C. On June 13, 2006, Treasury provided a partial release of documents, including a redacted version of the Inspector General's report already produced by the SEC in unredacted form, a copy of the Complaint in this case, Treasury press releases on the suspension of the 30-year bond, and various newspaper articles about the leak incident. *See* Exhibit A to the Declaration of Robert E. Toone filed herewith ("Toone Decl."). In August 2006, a representative of the Secret Service requested a list of more narrowly tailored documents requests, which counsel for Nothern provided on August 28, 2006 – noting that "our FOIA requests have been pending with the Secret Service for over eight months." *See* Ex. B to Toone Decl. at 2. DHS acknowledged receiving Nothern's tailored requests on September 18, 2006, *see* Ex. C to Toone Decl., but has not yet produced any documents.

7

defendants' interests." *Id.* at 1330.  Indeed, as discussed below, Rule 45 subpoenas would as a practical matter be worthless in the face of the Treasury's *Touhy* decisions.

In his initial memorandum (Docket # 45, at 15 n.5), Nothern noted the D.C. Circuit's recent ruling that the United States government is a "person" within the meaning of Rule 45 and therefore subject to subpoenas issued under that rule.  *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006).  The SEC now argues that this ruling "reverses numerous lower court decisions cited by Nothern in his original motion" (Opp. at 9) and "removed any legal hurdles that Nothern might have faced in issuing subpoenas to federal government agencies" (Opp. at 10-11).  Neither assertion is true.

In fact, as the SEC itself acknowledges indirectly, Nothern is <u>still</u> not able to obtain any additional documents from Treasury and DOJ through Rule 45.  The SEC cites (Opp. at 10 n.5) one post-*Yousuf* case in the D.C. Circuit holding that Rule 45 subpoenas served on a federal agency must be treated as "requests for document pursuant to its *Touhy* regulations."  *In re Subpoenas in SEC v. Selden*, 445 F. Supp. 2d 11, 14 (D.D.C. 2006).  In another recent case, the court stated that "[w]hether a plaintiff seeks testimony or the production of documents from an agency, she must comply with the agency's *Touhy* regulations" by filing an independent lawsuit under the Administrative Procedure Act.  *Santini v. Herman*, No. 06-MS-179 (RMC), 2006 WL 2956173, at *1 (D.D.C. Oct. 17, 2006) (quashing Rule 45 subpoena served on DOJ).  Under these rulings, Treasury and DOJ may still invoke the nearly limitless discretion set forth in their *Touhy* regulations in order to continue withholding documents in response to Rule 45 subpoenas – with Nothern's only option for relief being a new lawsuit filed under the APA and reviewed under the highly deferential "arbitrary and capricious" standard.  That lawsuit could easily take two years to resolve, yet trial in this case is scheduled to commence in six months on June 4, 2007.  Once again, the SEC's proposed alternative for enforcing Nothern's right to discovery and

due process is no alternative at all.

**II.    DOJ DOCUMENTS**

    **A.    Rule 6(e) Does Not Shield All DOJ Documents.**

Nothern has moved to compel the production of DOJ documents because DOJ's categorical refusal to produce is unsupported by Federal Rule of Criminal Procedure 6(e). The courts have "never embraced a reading of Rule 6(e) so literal as to draw 'a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury.'" *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987) (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980)). The SEC's description of DOJ documents in its own possession make clear that their disclosure would not "tend to reveal" protected grand jury secrets. *See id.* In its opposition, the SEC describes "notes of witness interviews conducted jointly by attorneys for the SEC and/or Justice during the agencies' related investigations into trading in the 30-year bond" (Opp. at 13); notes "taken by a Justice Department investigator on behalf of the attorneys for Justice and the SEC" (Opp. at 15); and notes generated by a DOJ investigator "working at the direction of attorneys for Justice" (Opp. at 15 n.8). None of these interview notes involve grand jury proceedings or implicate grand jury secrecy.

Nothern's primary request for relief, therefore, stands: the SEC should obtain and produce all non-privileged documents held by DOJ.

    **B.    The SEC Cannot Claim DOJ's Interview Notes as Its Own "Work Product."**

The SEC focuses most of its opposition to a proposal made in the alternative at the conclusion of Nothern's initial memorandum. Observing that the SEC vigorously maintains that it is a separate and distinct party from other agencies of the federal government, Nothern noted the incongruity of its claim that various documents generated in part or in whole by DOJ are the

9

work product of the SEC. Nothern concluded (Mem. at 20), the Court should "at a minimum" order the SEC to produce these documents – in the event it agreed "with the SEC that Rule 34 does not apply to the entire federal government, and that Nothern may be refused the documents held by other agencies consistently with due process."

The SEC first argues that the Court should not even consider this issue because Nothern "did not raise it in his original motion, or discuss with counsel for the SEC as required by Local Rule 7.1." Rule 7.1, however, requires a good-faith effort "to resolve or narrow the issue," not a discussion of every conceivable form of relief that a court may order in the alternative. Nothern, moreover, has repeatedly raised the inconsistency between the SEC's contention that it is independent of other federal agencies and the fact that it claims work product protection for DOJ documents.[4] The SEC does not suggest that it will reconsider its position should the parties reconvene their conference. Given this record and the longstanding nature of the underlying dispute, the SEC's procedural objection is without merit.

Its opposition on the merits is no stronger. On November 17, 2006 – the same day it filed that opposition – the SEC submitted a revised privilege log with revisions to some of the Bates numbered documents cited in Nothern's initial memorandum (at 20). Based on this revised privilege log, it argues that the following categories of documents are protected work product:

> 1. <u>SECNOTH 136765-778, 137276-285</u>: Notes of interviews generated by DOJ personnel without any involvement by SEC personnel. One set of notes involves an interview of Roger Anderson, the Treasury employee who the SEC maintains entered

---

[4] *See, e.g.*, Docket # 31, at 6 ("The privilege log recently produced by the SEC shows numerous instances of memoranda, notes, and other legal documents being exchanged between February 2002 and February 2004 between the SEC and U.S. Attorney's Office in Manhattan."); *id.* at 17 ("The SEC also worked closely with prosecutors from Justice, and indeed now claims privilege for multiple memoranda and other legal documents exchanged between the SEC and Justice over a two-year period."); Docket # 36, at 12 (stating that the "SEC concedes . . . that it and the U.S. Attorney's Office in Manhattan shared information during the course of their parallel investigations" and noting the SEC's "privilege log showing numerous memoranda and notes exchanged between the two parties").

into an agreement with the alleged tipper Peter Davis giving rise to a duty of
confidentiality upon which the SEC relies as an element of its case.

2. SECNOTH 136630-648, 136650-654, 136667-671, 136655-658, 136672-675, 136779-782, 136661-666, 136678-683, 137300-310: Notes generated by DOJ personnel during interviews that were jointly conducted by the SEC and DOJ. In its supporting declaration (Docket # 48, at ¶ 7), SEC counsel states: "During these joint witness interviews SEC counsel and AUSAs Coad and Hutz assigned USAO Investigator Robert Manchak . . . the note-taking responsibility." One set of notes involves an interview of the alleged tipper Peter Davis.

3. SECNOTH 140948-141391: Legal memoranda, witness and document logs, draft pleadings, administrative orders, and press releases generated by SEC personnel and sent to DOJ.

Regarding the first category, the SEC notes in its opposition (Opp. at 15 n.8) that it has designated as work product documents generated by DOJ personnel during interviews conducted "without the participation of the SEC," but does not attempt to defend this designation on the merits. Clearly, these documents are unprotected.

The SEC does argue that the DOJ interview notes in the second category are its own work product. These notes, it contends (Opp. at 15), were generated by DOJ investigators who were assigned to be "the central note takers" for the DOJ and SEC attorneys present at the interviews and should therefore be considered the SEC's representatives under Federal Rule of Civil Procedure 26(b)(3). That is not, however, the way the work product doctrine works. The DOJ investigators were employed by DOJ, not the SEC – notwithstanding any collective note-taking responsibility they may have informally assumed at the time. There is no evidence that the DOJ investigators represented the SEC in any capacity or otherwise served as its "attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3). "Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit." 8 Charles Alan Wright & Arthur R.

11

Miller, *Federal Practice and Procedure* § 2024 (2d ed. 2006).

The SEC argues (Opp. at 15-16) that because "Justice and the SEC shared a common litigation interest" and "faced common adversaries on similar issues," DOJ's notes are "no less deserving of work-product protection than other attorney notes creates in anticipation of litigation or trial." It is well established, however, that a party seeking to invoke the common interest doctrine must first prove that it entered into a common interest agreement. *United States v. Sawyer*, 878 F. Supp. 295, 297 (D. Mass. 1995); *see also In re Grand Jury Subpoena*, 274 F.3d 563, 569 (1st Cir. 2001) (rejecting claimed oral joint defense agreement unsupported by evidence other than lawyer's affidavit); *In re Bevil, Bresler & Shulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (rejecting joint defense privilege because the party "produced no evidence that [there was an agreement] to pursue a joint defense strategy"). Even assuming that the common interest doctrine can apply to parallel investigations and prosecutions conducted by DOJ and SEC, there is no evidence that DOJ and SEC entered into such an agreement here. In its opposition (Opp. at 14), the SEC cites a November 9, 2001 "Access Request by the United States Attorney for the Southern District of New York and the SEC's November 14, 2001 Approval of the Request." *See* Docket # 33, Ex. Q. This request, however, did not mention the "joint defense" or "common interest" doctrine or even cite any interest common to the SEC and DOJ. Far from agreeing to maintain the confidentiality of all files and information received, the DOJ specifically reserved its right to use the files and information "for the purpose of our investigation and/or proceeding, and any resulting proceeding," <u>and</u> to transfer them "to criminal law enforcement authorities and self-regulatory organizations subject to our oversight."

Moreover, the SEC has not cited any agreement even arguably applicable to the specific matter at hand: the transfer of <u>DOJ work product</u> to the SEC. In its supporting declaration (Docket # 48, at ¶¶ 13-15), SEC counsel asserts that SEC staff "anticipated that the notes created

12

during the joint witness interviews of Davis, Dudley, Tse, and Bitsberger would be used in the preparation of any such litigated enforcement actions," and requested these notes from DOJ for the purpose of drafting their "Action Memoranda" to the Commission itself.  The SEC's subjective expectations and motivations, however, are as irrelevant to whether a common interest agreement existed, *see United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20 (1st Cir. 1989) (holding that even though party "might have subjectively thought" that information would be kept confidential under joint defense privilege, "the 'key question' is what was objectively reasonable under the circumstances") (citation omitted), as they are to whether the notes constitute the SEC's own work product, *cf. In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) "[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one.").  There is no evidence that the SEC and DOJ entered into a common interest agreement – just as there is no evidence, assuming as the SEC contends that it is a stranger to other government departments, that DOJ's interview notes were prepared by the SEC or its "representative" under Rule 23(b)(3).

       The SEC's attempt to invoke the common interest doctrine to shield DOJ work product exposes the overall weakness of its opposition to Nothern's motion to compel.  For more than a year, the SEC has stridently fought Nothern's efforts to obtain DOJ and Treasury documents on the ground that it is a separate and distinct party from those agencies.  At the same time, it admits that it has conducted multiple witness interviews in tandem with those agencies, shared confidential notes and memoranda, and pursued "a common litigation interest" with "common adversaries on similar issues" – even to the extent that it maintains that documents generated by DOJ and provided by DOJ to the SEC upon request constitute the SEC's own work product.

       The SEC cannot have it both ways.  Because Rule 34 requires the SEC to disclose "all

documents" in the government's possession, "not just those materials in the immediate possession of the particular agency-plaintiff," *Ghana Supply Comm'n*, 83 F.R.D. at 595, the Court should enter an order compelling the production of all relevant documents held by DOJ and Treasury. Alternatively, if the Court agrees with the SEC that Nothern may be refused these documents consistently with Rule 34 and the Due Process Clause, then at a minimum it should order the production of those documents listed above.

### C.     The SEC's Last-Minute Assertion of the Deliberative Process Privilege Is Invalid.

Recognizing the weakness of its work product and attorney-client privilege claims, the SEC has asserted a new privilege with respect to two documents that were sent by the SEC to DOJ between November 2002 and September 2003. In a declaration submitted by the SEC (Docket # 47), Secretary Nancy Morris avers that the SEC decided on November 14, 2006 – three days before the SEC's opposition was due – to assert the deliberative process privilege. Secretary Morris states (*id.* at ¶ 9) that the SEC has invoked this privilege because the documents evidence "the advice, evaluations, deliberations, opinions and recommendations of the legal staff of the Commission who were involved in the 30-year bond investigation, which pre-date determinations of the Commission and its staff to institute enforcement proceedings." Neither she nor the SEC in its opposition explains why the SEC needed to share such sensitive materials with DOJ, or why it did not deem them part of its deliberation process until three or four years after the fact.

All but two of the cases cited by the SEC in its opposition (at 17-19) involve the objections of federal agencies to FOIA requests, not Rule 34 requests for production of documents. FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in

14

litigation with the agency." 5 U.S.C. § 552(b)(5). Because that statutory exemption does not apply here, these cases are clearly inapposite.

In the other two cases cited by the SEC – *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 884 (1st Cir. 1995), and *Williams v. City of Boston*, 213 F.R.D. 99 (D. Mass. 2003) – the courts <u>rejected</u> the asserted privilege claim. In *Williams* the court concluded that disclosure of the police disciplinary reports would not "in any way interfere with the decision-making process that the privilege is designed to protect." 213 F.R.D. at 102. In *Texaco Puerto Rico* the First Circuit concluded that disclosure was within the district court's discretion based on its consideration of "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." 60 F.3d at 885.

Here, the SEC has failed to justify its decision to disclose these documents to DOJ or explain why, in light of this prior disclosure, their production now would in any way inhibit "the Commission's decision-making processes" (Docket # 47, at ¶ 9). Moreover, the last-minute nature of the SEC's privilege claim raises serious doubts about its validity. Under these circumstances, the cases cited by the SEC itself establish that Nothern's alternative request for disclosure is well within the Court's discretion to order.

15

**Conclusion**

For the foregoing reasons, the Court should enter an order compelling the government to produce all relevant documents held by the SEC, Treasury, and DOJ.

                STEVEN E. NOTHERN

                By his attorneys,

                /s/ John A. Shope
                Nicholas C. Theodorou, BBO #495730
                John A. Shope, BBO #562056
                Robert E. Toone, BBO #6443249
                FOLEY HOAG LLP
                155 Seaport Boulevard
                Boston, MA 02210
                (617) 832-1000

Dated: December 12, 2006

B3285294.9