UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN E. NOTHERN,<br><br>Defendant. | Civil Action No. 05-10983 (NMG)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO SHOW CAUSE**

Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

Dated:  December 12, 2006

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| A. | The Government Has Now Officially Denied All Five Requested Depositions. | 1 |
| B. | The Government's Denials Violate the Federal Rules of Civil Procedure and Nothern's Right to a Fair Trial. | 3 |
| C. | *AT&T* and Other Applicable Case Law Support Nothern's Requests for Discovery from the Government. | 7 |
| D. | There Are No Other Means To Obtain The Five Witnesses' Testimony. | 8 |
| Conclusion | | 11 |

# **TABLE OF AUTHORITIES**

## **CASES**

*Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979) .................................................................................................................. 10-11

*Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749 (9th Cir. 1964) ........................................ 7

*Houston Business Journal, Inc. v. Office of the Comptroller*, 86 F.3d 1208 (D.C. Cir. 1996) ................................................................................................................... 9

*SEC v. Biopure Corp.*, No. 05-00506 (RWR/AK), 2006 WL. 2789002 (D.D.C. Jan. 20, 2006) ........................................................................................................ 7-8

*United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978) ....................................... 7-8

*Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. June 16, 2006) ............................................ 8

## **STATUTES, REGULATIONS, AND RULES**

5 U.S.C. § 301 ....................................................................................................................... 2

5 U.S.C. § 552 ....................................................................................................................... 9

31 C.F.R. §§ 1.8-1.12 ........................................................................................................ 2, 9

Fed. R. Civ. P. 26 .................................................................................................................. 5

Fed. R. Civ. P. 45 .................................................................................................................. 5

Defendant Steven Nothern respectfully submits this reply brief in support of his motion for an order directing the government to show cause why its action should not be dismissed due to its refusal to allow depositions of five Department of Treasury ("Treasury") employees with information critical to his defense (Docket # 49).

### A.   The Government Has Now Officially Denied All Five Requested Depositions.

The SEC's supporting declaration (Docket # 53) establishes that Treasury has now formally denied Nothern's requests to depose all five employees in question: Elnora Bowser, Jill Cetina, Michele Davis, Steve Berardi, and David Aufhauser.

As Nothern observed in his initial memorandum (Docket # 50, "Mem." at 3-4), Treasury denied his request to depose Elnora Bowser on November 2, 2006, in part because she "only cleared [the alleged tipper] Peter Davis into the Treasury building one time" (*i.e.*, on October 31, 2001, the date of the relevant events in this case). *See* Docket #51, Ex. J at 1. In a letter dated June 9, 2006 (*id.*, Ex. B at 1), Treasury stated that its employee Jill Cetina "recently had a baby and in addition is dealing with other medical issues." After assuring counsel that it would seek to arrange Cetina's deposition, Treasury reversed course and stated on October 2, 2006 (*id.*, Ex. H at 1) that it had already denied the deposition.

On June 9, 2006, Treasury <u>approved</u> Nothern's request to depose former General Counsel David Aufhauser (*id.*, Ex. B at 1), but then refused to respond to Nothern's repeated efforts – including five written requests sent between July 10 to October 3, 2006 – to arrange a convenient date for his deposition (*see id.*, Exs. C, E, F, G, & I). After Nothern finally served Mr. Aufhauser with a subpoena for a deposition to take place on November 20, 2006, counsel for Treasury sent a letter on the evening of November 15 <u>revoking</u> its prior authorization and stating that the deposition would impose "an undue burden on the Department." *Id.*, Ex. N. at 3. At the time of Nothern's initial brief, Treasury had simply refused to respond to Nothern's repeated

requests (*see id.*, Exs. E, F, & G) to depose Assistant Secretary for Public Affairs Michele Davis and Treasury employee Steve Berardi.

On November 30, 2006 – conveniently, one day before the SEC's response to Nothern's motion was due – Treasury sent a letter formally denying Nothern's request to depose Jill Cetina. Docket # 53, Ex. B. It stated that "in addition to her previous medical issues, Ms. Cetina is dealing with a grave family medical issue," and that Treasury was denying Nothern authorization pursuant to 31 C.F.R. § 1.11, which it asserted "permits agency counsel to consider other appropriate factors in deciding whether to authorize the testimony of personnel." *Id.* In fact, 31 C.F.R. § 1.11 says nothing about the factors Treasury counsel may or may not consider in making such a decision. Instead, it sets forth the procedure by which such testimony may be requested and approved. *See id.* § 1.11(a), (c). Furthermore, the statute on which Treasury's regulations are based explicitly provides that it "does not authorize withholding information from the public." 5 U.S.C. § 301.

In a separate letter also dated November 30, 2006, Treasury denied Nothern's requests to depose Davis and Berardi, claiming that the information requested was not "genuinely necessary to the proceeding" and "available from other sources" and that the requests imposed an "undue burden" on Treasury itself. Docket # 53, Ex. C at 1-4. Treasury claimed that it was acting pursuant to its *Touhy* regulations, 31 C.F.R. §§ 1.8-1.12, Docket # 53, Ex. C at 1, but, again, none of those factors is set forth in the regulations as a basis for denying a request for testimony.

Throughout this process, the SEC has done nothing to facilitate the five depositions requested by Nothern. Notwithstanding its close coordination with Treasury in investigating the botched release of information on the 30-year bond,[1] the SEC has refused even to ask Treasury

---

[1] The SEC claims (Opp. at 7 & n.11) that it investigated this matter independent of any office at Treasury. However, the first report of the report by Treasury's Office of Inspector General

for its assistance in this matter, as Nothern suggested in order to avoid the present motion. *See* Docket # 51, Ex. M at 1.

### B. The Government's Denials Violate the Federal Rules of Civil Procedure and Nothern's Right to a Fair Trial.

Treasury has made clear that it will allow no further depositions in this case. Indeed, even though Treasury's *Touhy* regulations do not support its position, Treasury has justified its denial of Nothern's requests by claiming that its staff have purportedly "dedicated hundreds of hours and hundreds of thousands of dollars to matters pertaining to this case," including "considering your *Touhy* requests for the deposition of current and former Treasury employees," coordinating deposition times, and attending the depositions themselves. *See, e.g.*, Docket # 53, Ex. C at 4. Further depositions, it contends, "would measurably add to the strain already imposed on the Treasury Department's resources." *Id.* Of course, it is the SEC, not Nothern, that filed this litigation, and it is manifestly unfair for Treasury to punish Nothern for whatever costs it has accrued. (Treasury provides no substantiation for its assertion of expenditures, which is dubious on its face.)

Moreover, Treasury's claim that the information Nothern seeks through the depositions is not "genuinely necessary to the proceeding" and "available from other sources," s*ee* Mem. at 11-13, is clearly incorrect. For example, Nothern seeks to ask former Assistant Secretary Davis why she decided on October 31, 2001 – the day of probably the most significant quarterly refunding announcement in U.S. history – to institute, for the first time, a fixed embargo time of 10:00

---

states, "Interviews of Treasury employees were conducted by the Securities and Exchange Commission (SEC), Treasury Office of General Counsel, and the Office of Inspector General." *See* Docket # 30, Ex. G at 1 (emphasis added). Eight of the "memoranda of activity" attached to the report begin: "On the above date and time, the above listed subject was interviewed by attorneys Andrew Sporkin . . . and Rosemary Filou . . . of the Division of Enforcement, United States Securities and Exchange Commission (SEC), in coordination with the Treasury, Office of General Counsel and the Office of Inspector General (OIG)." *See, e.g.*, *id.* Exhibit 8 (interview of Jill Cetina) (emphasis added).

3

a.m., resulting in an unprecedented 35-minute-long "embargo" period, and to reject the request of Under Secretary Fisher that the information be released without an embargo. At his deposition, Fisher testified (pages 101-02) that he expressed to Ms. Davis his strong opposition to the use of an embargo on the ground that "the risk of a leak or some malfunction, some procedural malfunction was too high." Fisher testified (page 104) that Ms. Davis responded by stating that elimination of the embargo "was not the appropriate thing to do." "I don't recall any other rationale on her part," Fisher said. Nothern seeks to ask Ms. Davis about her decision to reject Fisher's recommendation, since it bears critically on Nothern's defense that any embargo was unjustified and legally invalid, thereby making the information on which he traded legally public before the time of the trade. *See* Docket # 51, Ex. E at 2-3. Treasury rejected Nothern's request, however, on the ground that "information on how the 10:00 a.m. embargo time was selected" was already provided at Fisher's deposition. *See* Docket # 53, Ex. C at 4. In other words, Nothern does not get to ask Ms. Davis about this critical decision directly.

  Similarly, Treasury's denials prevent Nothern from asking Jill Cetina about the extent to which market participants had advance knowledge of Treasury's decision to suspend the bond, including through reported disclosures by a European central bank, and the extent to which the market was acting on such knowledge prior to Treasury's announcement. They prevent him from asking Steve Berardi about the claim made by Director of Market Finance Paul Malvey in his deposition (and disputed by other Treasury witnesses) that on October 31, 2001 he stood at the door to the quarterly refunding press conference "to make sure no one leaves." They prevent him from asking Elnora Bowser why she admitted the alleged tipper into the quarterly refunding press conference on October 31, 2001, and whether she was aware of any agreement or duty that he may have had to Treasury with regard to information to be announced.

  There is no question that by blocking Nothern from gathering evidence that is critical to

4

his defense, Treasury's denials contravene the broad scope of discovery under the Federal Rules of Civil Procedure. The matters on which Nothern seeks to question the five witnesses are not merely "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), and Treasury's denials sharply limit Nothern's ability to obtain exculpatory evidence. Furthermore, because none of the witnesses resides within the subpoena power of this Court, *see* Fed. R. Civ. P. 45(b)(2), the denials have the effect of denying Nothern the right to call these witnesses at trial. Nothern will not, for example, be able to call Mr. Berardi as a witness to counter the erroneous testimony of Paul Malvey (contradicted by others) that Mr. Berardi somehow policed attendees at the conference. These factual issues are critical to Nothern's defenses that (i) the information on which Nothern traded (allegedly at 9:42 a.m.) was "public" before the trade because there was no physical or legal restraint upon dissemination of information at the press conference (which ended around 9:25 a.m.), and (ii) any purposed "embargo" was not only legally ineffective but would be unconstitutional if it were. At trial, these denials will violate Nothern's right to constitutional due process and substantially increase the likelihood of an erroneous result.

 For its part, the SEC describes the facts set forth in Nothern's memorandum as "twisted" and "inaccurate," but then, inexplicably, "reserves its response" to the facts on the ground that they have "no bearing on the legal issue presented in this motion." Docket # 52 ("Opp.") at 7 & n.10. Elsewhere, it makes the astounding assertion (Opp. at 3) that the "role that Treasury played in the facts that give rise to this insider trading case is minor." Consider: The securities in question in this case were issued by Treasury. The "inside information" was created by Treasury, and then released at an official Treasury press conference. The alleged "embargo" was created and ostensibly to be enforced by Treasury (deponents thus far acknowledge only an "honor system"). Treasury officials allowed the alleged tipper to enter the Treasury building for

5

the express purpose of attending the press conference, and then allowed him (and other attendees) to leave the conference room and building while the "embargo" was still in effect. The alleged tipper's fiduciary duty – which the SEC maintains Nothern somehow knew about – resulted from an alleged agreement in the 1990s between the tipper and a senior Treasury official. David Aufhauser, the General Counsel for Treasury, referred this matter to the SEC for investigation in 2001 and asked to be kept advised. Later, that same top official (authorization for whose deposition Treasury first provided, then withdrew) publicly endorsed this lawsuit as appropriate "punishing action against those responsible for violating our rules" and vindication of Treasury's employees for having "behaved above board, honorably in the service of their department and country." John Connor & Colleen DeBaise, *Youngdahl Indictment Tops US Action is Tsy Leak Case*, Wall St. J., Sept. 24, 2003.

These undisputed facts show why key contested issues in this case may be resolved only through the testimony of Treasury witnesses.[2] It is inconceivable that in an insider trading case involving a private corporation, the accused tippee would be denied the right to depose, for example: the employee who admitted the tipper into the corporation on the day the tipper obtained the relevant information; an employee with knowledge of reported advance disclosures of the information by a European central bank, and who remarked at the time "how easy it would

---

[2] In a footnote (Opp. at 11 n.13), the SEC argues that the Court's ruling on the SEC's motion to strike Nothern's estoppel defense, Docket # 25 (Nov. 4, 2005), forecloses discovery into "mistakes made by the Treasury department." Treasury's mistakes, however, relate directly to the elements that the SEC must prove to establish Nothern's liability. For example, Treasury's failure to impose any restraint on the presence or departure of attendees at the October 31, 2001 press conference undermines the SEC's contention that the information was "confidential" at the time it was released at 9:00 a.m. Similarly, Treasury's posting of the quarterly refunding announcement on the Internet at 9:40 a.m. undermines the SEC's contention that trades conducted after that time were unlawful. (The SEC contends that Nothern's trade was "executed between 9:42 am and 9:42:49 am." Response to Nothern's Interrogatory # 16.) It was for these reasons that the Court observed that the SEC "has done little to point out specific instances where Nothern's estoppel defense would actually cause it to expend inordinate amounts of time and money." Docket # 25, at 12.

6

be" for her colleagues to use information to position themselves in the financial markets; or a high-level official who instituted a 35-minute, honor-system embargo period over the vigorous objections of her colleagues. Yet that is precisely what Treasury, abetted by the SEC, now seeks to do in denying the requested depositions of Elnora Bowser, Jill Cetina, and Michele Davis.

> **C.** *AT&T* **and Other Applicable Case Law Support Nothern's Requests for Discovery from the Government.**

In its opposition (Opp. at 6), the SEC once again relies on *United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978). As Nothern has noted before, this decision compels the relief he seeks with respect to Treasury insofar as it held that, for discovery purposes, the plaintiff consisted of all non-independent agencies and departments in the federal government. The key issue is the status of the agency from which discovery is sought, not the agency that initiated the litigation. As in *Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749, 754 (9th Cir. 1964), the court in *AT&T* confirmed that even an independent agency may be compelled to provide discovery "in the possession of executive departments" (like Treasury) because the President has "adequate authority over such departments to procure production, and the courts to order it." 461 F. Supp. at 1336 n.63.

The SEC also cites an unpublished district court decision: *SEC v. Biopure Corp.*, No. 05-00506 (RWR/AK), 2006 WL 2789002 (D.D.C. Jan. 20, 2006). In that case, the court quashed subpoenas served by the defendant on the Food and Drug Administration ("FDA") on the ground that the word "person" in Rule 45 did not apply to the FDA. *Id.* at *4. The defendant attempted to circumvent this ruling by arguing that the FDA should be considered a party to the litigation – even though the FDA is itself an independent agency and therefore not subject to the President's authority "to procure production" under *AT&T*, and even though the defendant was seeking its discovery pursuant to Rule 45, not Rules 30 or 34. The court rejected the defendant's argument,

7

holding that "the Government is not a party subject to the subpoena power of Rule 45." 2006 WL 2789002, at *4. Because the issue in *Biopure* was the interpretation of the term "person" in Rule 45 (an interpretation, incidentally, reversed by the D.C. Circuit's subsequent ruling in *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. June 16, 2006)), it lends no support for the SEC's position here.

Nor is *AT&T* distinguishable, as the SEC suggests (Opp. at 6 n.9), on the ground that it involved "massive wide-ranging allegations." Nothern has never sought in this case an order requiring production from all agencies of the federal government. He has, however, sought discovery from Treasury, in light of that department's extensive involvement in the alleged facts, as discussed in Section B, *supra*, as well as its close coordination and cooperation with the SEC's investigation. Ultimately, the issue is one of fundamental fairness. As the Court stated in *AT&T*, "it is apparent that defendants will need access to the records of many government agencies, and that fairness to them requires that such access be as unencumbered as the Federal Rules will allow." 461 F. Supp. at 1334. Here, it is apparent that Nothern needs access to certain documents and witnesses from Treasury in order to prepare his defense to the claims made against him. It is fundamentally unfair for the government to deny them.

D.   **There Are No Other Means To Obtain The Five Witnesses' Testimony.**

In a letter sent to counsel for Nothern on November 8, 2006, the SEC argued that the D.C. Circuit's ruling in *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006), held that litigants are free to depose agency employees "by issuing subpoenas to the agencies under Rule 45 of the Federal Rule of Civil Procedure." *See* Docket # 51, Ex. L at 2. Responding to this argument, Nothern pointed out (Mem. at 14-16) that a different line of precedent in the D.C. Circuit prohibits the enforcement of deposition subpoenas against federal employees under the principle of sovereign immunity. Under this precedent, the litigant must file a separate lawsuit under the

8

Administrative Procedure Act "and the federal court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard." *Houston Business Journal, Inc. v. Office of the Comptroller*, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996).

Now the SEC argues (Opp. at 8) that Nothern's own discussion of this precedent shows that it is "false" and "disingenuous" for him to claim that "there is no alternative procedure by which he may obtain [the five Treasury witnesses'] testimony in this litigation." It is undisputed, however, that Nothern cannot obtain their testimony under Rule 45, since the D.C. Circuit prohibits it. He cannot obtain their testimony by submitting another *Touhy* request, since Treasury has already made clear that the depositions will not be authorized. He cannot, contrary to the SEC's suggestion (Opp. at 9), "utilize the procedures set forth in FOIA," since that statute applies only to agency records. *See* 5 U.S.C. § 552(a)(3) (discussing duties of agencies "upon any request for records").[3]

Nothern's only remaining option is to commence another civil action challenging Treasury's application of its *Touhy* regulations as "arbitrary and capricious." While this highly deferential standard is normally difficult to meet, Treasury's invocation of factors not set forth in its *Touhy* regulations, 31 C.F.R. §§ 1.8-1.12 – including "genuine necessity," "availability from other sources," and the expense involved in responding – combined with its clear and demonstrated interest in obtaining "punishing action" against Mr. Nothern, give rise to a strong argument that the agency has acted in an arbitrary and capricious manner here. Barring a two-year extension of all deadlines, however, it is inconceivable that even a request for "expedited review" (Opp. at 9) of his APA lawsuit would allow Nothern to litigate it to judgment and

---

[3] To the extent that the SEC claims that Nothern "has refused to utilize the procedures set forth in FOIA" with respect to agency records, that claim is simply not true. As discussed in Nothern's reply memorandum in support of his renewed motion to compel documents (at pages 6-7 & n.3), he filed comprehensive FOIA requests with the Justice Department, Treasury, and the Department of Homeland Security in 2005 – to little avail.

9

conduct the depositions within the timeframe of this case.

The SEC, which took three and a half years to file this action after first deposing Nothern on December 4, 2001, contends (Opp. at 8-9) that this result is appropriate because Nothern has supposedly "wasted significant time" and "contributed to any delay" he has experienced in obtaining the testimony of Bowser, Cetina, Davis, Berardi, and Aufhauser. The SEC also writes (Opp. at 3) that Nothern "increased his list of Treasury witnesses" to include these five employees "[o]ver the past two months." Again, to review: Nothern requested the depositions of Cetina and Aufhauser in his initial *Touhy* request to Treasury on May 18, 2006. After learning about their roles in the case through other deposition testimony, Nothern requested the depositions of Bowser, Davis, and Berardi on August 16, 2006 – nearly four months ago. Treasury formally denied Bowser's deposition on November 2, 2006. After authorizing Aufhauser's deposition on June 9, 2006, Treasury withdrew its authorization on November 15, 2006 – two business days before his scheduled deposition date. After having assured counsel that Treasury would arrange Cetina's deposition, Treasury formally denied it on November 30, 2006. Treasury also denied Davis's and Berardi's depositions on November 30, 2006.

Thus, all five depositions were formally denied by Treasury in November 2006 – and three were denied <u>after</u> Nothern filed his motion to show cause. Nothern has done everything in his power to obtain these witnesses' testimony. The SEC, by contrast, has done nothing, and has even refused to ask Treasury to reconsider its denials.

The government may not pursue an enforcement action while denying the defendant information and documents that are relevant to his defense. *See, e.g.*, *Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979) ("If the government sues through one of its agencies and another agency possesses the information that must be disclosed, it is only fair that the government or other agency decide whether secrecy of the materials is worth

10

dismissal of the lawsuit."). The government's failure to produce relevant documents held by Treasury and the Justice Department, combined with its refusal to allow the deposition of five critical fact witnesses, fully support the issuance of an order directing it to show cause why this action should not be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should enter an order directing the government to show cause why its action should not be dismissed for refusing to provide discovery.

STEVEN E. NOTHERN

By his attorneys,

/s/ John A. Shope
Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  December 12, 2006

B3291041.4

11