UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN E. NOTHERN,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-CV-10983-NMG<br>)<br>)<br>)<br>)<br>)<br>) |

ORDER ON DEFENDANT'S RENEWED MOTION TO COMPEL
PRODUCTION OF DOCUMENTS (DOCKET #44) AND DEFENDANT'S
MOTION FOR ORDER TO SHOW CAUSE (DOCKET #49)

January 24, 2007

SOROKIN, M.J.

Procedural Background

     The Plaintiff, the United States Securities and Exchange Commission (SEC), brought this civil enforcement action against Defendant Steven Nothern on May 12, 2005, alleging that on October 31, 2001, Nothern violated Section 10(b) of the Securities and Exchange Act of 1934, and Rule 10b-5 thereunder. Docket #1-1, at ¶¶ 4, 55. The trial of the case is scheduled to commence on June 4, 2007. On February 17, 2006, Nothern moved to compel the production of various documents by the SEC, including documents in the possession of the United States Justice Department, the United States Treasury Department and the Commodity Futures Trading Commission (CFTC). Docket #28. On May 8, 2006, the motion was referred to the undersigned

1

for resolution.

Following a June 14, 2006, hearing, the Parties agreed to engage in voluntary efforts to resolve the dispute, without prejudice to their positions on the merits of the motion to compel (with the SEC agreeing to request that the other agencies voluntarily produce responsive documents within their control). The Court denied Nothern's motion, without prejudice, in light of these efforts. Although the scope of the dispute narrowed considerably as a result, the issues were not entirely resolved and Nothern renewed his motion to compel pursuant to Fed. R. Civ. P. 37(a) and L.R. 37.1 on October 30, 2006.[1] Docket #44. On November 17, 2006, Nothern also moved the Court for an Order directing the SEC to show cause why this action should not be dismissed because of "its refusal to allow depositions of Department of Treasury employees" with information relevant to his case. Docket #49. The SEC opposes both motions primarily on the grounds that the SEC and the other agencies are separate and distinct entities, that the SEC neither possesses nor controls documents held by those agencies within the meaning of Fed. R. Civ. P. 34, and that it does not exert control over the Treasury Department's review of subpoenas seeking testimony from Treasury employees.

Nature of SEC's Allegations Against Nothern

Because Nothern argues in the course of advancing his motions that the information sought from the other agencies is critical to the claims and defenses presented in the case, a brief recitation of the allegations and defenses raised is warranted.

The SEC alleges that on October 31, 2001, Nothern, who was at that time a mutual fund

---

[1] CFTC provided responsive documents to Nothern and represented that it had no further responsive documents in its possession. Nothern no longer seeks relief with respect to that agency.

2

manager at Massachusetts Financial Services Company (MFS), received a tip concerning material nonpublic information from a consultant and that, in violation of federal securities law, he personally made trades utilizing that information and passed the information to colleagues who made trades of their own. Docket #1-1, at ¶¶ 1-2. Specifically, the SEC alleges that Peter J. Davis, Jr., a consultant employed by MFS, learned through his attendance at the Treasury Department's October 31, 2001, quarterly refunding press conference that Treasury would suspend its issuance of bonds maturing at a term of thirty years. Id., at ¶ 1. Treasury requires that quarterly refunding press conference attendees respect an embargo on information provided therein until a specified time so that all market participants receive information at the same time. Id., at ¶ 22. The October 31, 2001, refunding press conference began at approximately 9:00 a.m. and lasted until approximately 9:25 a.m. Id., at ¶¶ 30-31. Participants were orally cautioned three times that the information was embargoed until 10:00 a.m. Id., at 31. Davis had been attending quarterly refunding press conferences since approximately 1994. Id., at ¶ 27. The SEC alleges that Davis' participation in the press conferences was pursuant to an explicit agreement with a Treasury official that he would preserve the confidentiality of information learned in such conferences. Id. Between 9:25 a.m. (when Davis left the press conference) and 9:43 a.m. (when Treasury posted the information to its website), Davis made at least nine telephone calls to clients. Id., at ¶ 32. At 9:38 a.m., Davis left voicemail for Nothern informing him that Treasury would cancel the 30-year bond, that that fact would be announced at 10:00 a.m. and that the information was embargoed until that time. Id., at ¶ 34. Prior to 10:00 a.m., Nothern shared the information with three other portfolio managers and also purchased $25 million dollars in par value of 30-year bonds for a fund under his management. Id., at ¶ 36-37. The three other fund

managers made additional purchases totaling $40 million in par value of 30-year bonds. Id., at ¶ 37. Each of these trades was made prior to 9:43 a.m., when the information was posted to the Treasury's website. Id. Nothern and the three other fund managers made profits totaling $3.1 million dollars from the transactions on behalf of the funds they managed. Id. Nothern made an additional purchase of $14.25 million dollars in par value of 30-year bonds at approximately 9:51 a.m., after the posting to the Treasury website but prior to the expiration of the embargo of which Davis had advised him. Id., at ¶ 38.

The SEC alleges that Nothern violated section 10(b) of the Securities and Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. Id., at ¶¶ 4, 55. Section 10(b) provides in relevant part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange
>
> . . .
>
> (b) To use or employ . . .any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78j(b).

Pursuant to this section, the SEC has promulgated 17 C.F.R. 240.10b-5, which provides in relevant part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
>
> . . .

> (c) To engage in any act, practice, or course of business which
> operates or would operate as a fraud or deceit upon any person,
> in connection with the purchase or sale of any security." 17 C.F.R.
> 240.10b-5.

The so-called "misappropriation theory" of insider trading liability holds that a person violates Section 10(b) and Rule 10b-5 when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information. See, United States v. O'Hagan, 521 U.S. 642, 651-654 (1997). Elements of the SEC's stated claim are that Northern traded on the information provided by Davis before it became public information, and that Davis owed a duty of confidentiality to Treasury. Id., at ¶¶ 27, 37. Nothern disputes *inter alia* whether the information from the press conference was actually confidential (citing prior, unrelated leaks both prior to and on the morning of the press conference), whether Davis had owed a fiduciary duty to Treasury, whether Nothern knew of such a duty if it existed, and whether trades directed by Nothern actually preceded the posting of the information on the Treasury's website. Docket #45, at 1.

Nature of Documents Sought By Nothern from Other Agencies

Nothern seeks to compel production of the following categories of documents from Treasury: (1) documents concerning the use of embargoes at Treasury from 1994 to October, 2001; (2) documents reflecting changes made prior to October, 2001, to Treasury policies and procedures concerning the release of information; (3) documents reflecting violations of Treasury embargoes from 1990 to October, 2001; (4) documents concerning alleged violations of the embargo of October 31, 2001 (specifically including the disclosure by reporter Brian Collins at

9:35 a.m.); (5) documents concerning planning for the October 31, 2001, press conference; (6) documents reflecting agreements signed by Davis, or any documents reflecting a non-written agreement by Davis with a "senior adviser" at Treasury concerning his attendance at press conferences from 1994-2001, as alleged in the Complaint; (7) correspondence between Davis and Treasury employees, or documents reflecting meetings between Davis and Treasury employees; (8) documents showing the dates on which Davis attended refunding events between 1994 and May, 1998; (9) emails concerning Treasury employees' reactions to Davis' presence at the press conference; and, (10) documents and a computer disc concerning the accuracy of Treasury's computer and server clocks on October 31, 2001, and the timing of the posting of the information on their website.

Nothern also seeks to compel production of the investigative materials compiled by the Department of Justice in the course of its investigation. To date, the Department of Justice has not produced any documents voluntarily, citing investigatory privilege.

Finally, Nothern seeks an order directing the SEC to show cause why its action should not be dismissed on the basis of the failure of the Treasury Department to produce five of its current and former employees for depositions. Although Nothern has deposed several Treasury employees, Treasury has denied his requests to depose three individuals (Elnora Bowser, Jill Cetina, and David Aufhauser) and has not acted upon requests concerning two others (Michele Davis and Steve Bernardi). Docket #50, at 1-2. Bowser is the employee who admitted Davis to the press conference. Nothern wishes to inquire *inter alia* about her reasons for doing so, and what her understanding was of any agreement or duty Davis may have had with Treasury. Docket #50, at 3. Cetina is a Treasury economist whom Nothern believes has information

concerning leaks of the decision to suspend the bond (including a possible internal leak) and market reaction to same. Docket #50 at 4-5. Davis was Treasury's Assistant Secretary for Public Affairs on October 31, 2001, whom testimony of other witnesses has indicated was an advocate of the embargo procedures used on that day. Id., at 6. Nothern wishes to inquire about that position, as well as about her understanding of Treasury policies concerning maintenance of confidentiality of market-sensitive information. Id. Bernardi was in 2001 a financial economist at Treasury. Nothern believes that there is conflicting information in the factual record thus far developed as to whether Bernardi was positioned at the door to the quarterly refunding press conference to prevent attendees from leaving. Id., at 7. Nothern also wants to inquire of Bernardi concerning the manner in which the confidentiality of the information was maintained. Id. Aufhauser was General Counsel for Treasury on October 31, 2001. He initiated an investigation into the handling of the press conference, and later referred the matter for investigation by the SEC. Nothern has been denied access to each of these deponents by the Treasury department, pursuant to its Touhy regulations.[2]

Discussion

Nothern brings his motion to compel pursuant to Fed. R. Civ. P. 37(a)(2)(a), which provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Nothern's document production requests were served pursuant to Fed. R. Civ. P. 34. Rule 34 provides in relevant part:

---

[2] The term derives from United States ex rel. v. Touhy, 340 U.S. 462 (1951)., in which a habeas petitioner subpoenaed FBI records pertaining to his conviction. The Court found that the Attorney General, as the Department of Justice decision-maker for such information requests could validly promulgate regulations withdrawing from his subordinates the power to release department papers. Id., at 467.

> (a) Scope. Any party may serve on any other party a request . . . to produce . . . any designated documents or electronically stored information . . . <u>which are in the possession, custody or control of the party upon whom the request is served</u> . . . (emphasis added)
>
> . . .
>
> (c) Persons Not Parties. A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45.

Nothern's Rule 34 request to SEC included "Instructions," which specified in part that "[i]f a document is in the possession, custody or control of any department or agency of the United States Government, it is deemed to be in the possession, custody or control of the SEC for purposes of this Request." Docket #30-20, at 3. The SEC included in its response an objection to that specific instruction, ". . .on the grounds that the Plaintiff in this action is the SEC, which is an independent agency of the federal government. Documents that are within the possession, custody or control of any agency or department of the United States government other than the SEC are deemed not to be in the possession, custody or control of the SEC. <u>See</u>, <u>United States v. American Telephone & Telegraph Co.</u>, 461 F.Supp. 1314, 1334-1336 (D.C.C. 1978)." Docket #30-21, at 3.

In the case cited in the SEC's objection, the United States brought an antitrust action against several telecommunications companies. The D.C. Circuit considered the question of who the Plaintiff was for Rule 34 purposes. The Defendants urged the view that the Plaintiff was the government of the United States, including all of its various subdivisions, and that discovery directed to any and all such subdivisions should proceed pursuant to Rule 34. <u>United States v.</u>

American Telephone & Telegraph Co., 461 F.Supp. 1314, 1330 (D.C.C. 1978). The government urged the view that the Plaintiff was the Department of Justice only, and that discovery conducted against any other subdivision of the government of the United States must proceed under Rule 45's provisions for obtaining discovery from non-parties. Id. The Court found that the government of the United States was the Plaintiff and that it was unreasonable to insulate the entire government-- other than the Justice Department-- from the discovery process of Rule 34. Id., at 1334. The holding was limited in two respects, however. First, the Court limited its holding to "these peculiar facts, which involve massive and wide-ranging allegations, and in this particular action, which involves many departments and their evidence." Id. Moreover, the Court limited its holding to those agencies of the government which are directly a part of the Executive Branch. Id., at 1334-1336. It reasoned that the Defendants were not entitled to Rule 34 discovery from the Federal Communications Commission, "an independent body created to execute impartial regulatory responsibilities." Id., at 1335. It noted that the FCC's Commissioners were appointed for fixed terms which do not lapse at the same time and do not serve at the pleasure of the President, and further noted that if it happened that the head of an Executive department refused to produce documents required to assist the Justice Department, the Attorney General could prevail upon the President to direct their release, while in the case of an independent regulatory agency, the agency is essentially immune from such executive direction. Id., at 1335-1336.

As a general matter, the SEC's argument is powerful in light of its independent legal status and the persuasive holding in AT&T (the only decision squarely addressing the question at hand brought to the attention of the Court by the parties) that independent regulatory agencies

and Executive Branch departments are separate and distinct entities which do not control one another's documents within the meaning of Rule 34. Though some circumstances distinguish this case from AT&T, those distinctions are not material. The roles in this case are reversed (with a regulatory agency here asserting independence from the Executive Branch rather than the opposite, as occurred in AT&T). It is undisputed that, as in the case of the FCC, the SEC's five Commissioners are appointed for fixed terms which do not lapse at the same time, and are not subject to removal or discipline by the President. Docket #32, at 9.

Nonetheless Nothern's arguments merit serious consideration. He relies heavily on Harvey Aluminum (Inc.) v. N.L.R.B., 335 F.2d 749 (9th Cir.1964) for the proposition that even independent governmental agency plaintiffs must produce documents held by Executive Branch agencies. In Harvey, the government called witnesses during an adjudicatory hearing before the NLRB. The witnesses conceded that they had previously given to the Labor Department and the FBI statements concerning the subject matter of their testimony. The Defendants sought access to the statements, which request the NLRB denied. Harvey, 335 F.2d at 752. Witness credibility was the central issue in the adjudicatory hearing. Some witnesses had favored the defendants while some had favored the government, and the NLRB's decision turned on its credibility determinations. The statements in the possession of the Executive Branch bore upon the credibility of the government's witnesses. Even though the NLRB could not order the Executive Branch agencies to produce the statements (for the same reason the SEC cannot in this case force the Treasury department to produce documents or witnesses), the Harvey Court ordered the statements produced. Id., at 752-756.

Although the SEC suggests that the holding in Harvey was driven by an independent legal

10

duty which required the statements' production and which is lacking in this case, thus rendering Harvey's analysis of the independent agency issues distinguishable, the case is not so readily dismissed. The plain terms of the Jencks Act (or the Jencks case, for that matter) encompassed only criminal prosecutions. Plainly the NLRB proceeding was not such a proceeding. Rather than being based upon the text of a statute, the Harvey decision's reasoning sounds in considerations of due process and fairness as explicated by the Jencks Act and decision. Id., at 753-754. Essentially, the Court found that a civil defendant before the NLRB has a right to the prior statements of witnesses testifying on behalf of the government at an adjudicatory hearing turning on the credibility of these same witnesses because the principle underlying the Jencks Act and case – i.e., "simple justice"– required that result. Id., at 754. Additionally, the Court noted that although the NLRB could not force compliance with requests for documents from the Departments of Labor or Justice, "the President . . .may do so." Id., at 754. The Court noted the existence of a statute which provided that "the several departments and agencies of the Government, when directed by the President, shall furnish the Board, upon its request, all records papers and information in their possession relating to any matter before the Board. Id., at 752, n. 2, quoting 29 U.S.C.A. § 161(6).

     This case is materially different from Harvey. In Harvey, no alternative avenue for obtaining the reports sought existed. Here, Nothern retains the full range of discovery options available to him pursuant to Rule 45 (which controls discovery directed to non-parties) and which, as Northern concedes, now include the ability to serve Rule 45 subpoenas upon the government itself.[3] To be sure, Rule 45 is not as efficient or powerful a discovery tool for

---

[3] Nothern also has made requests pursuant to the Freedom of Information Act.

11

Nothern as is Rule 34, particularly when wielded against the federal government. Nevertheless, a separate process exists (albeit a potentially cumbersome and time-consuming one) for Nothern to challenge the Justice Department's claims of privilege and the Treasury Department's application of its own Touhy regulations. Moreover, the SEC has indicated that it would not oppose reasonable requests to extend the case deadlines to accommodate Nothern's attempts to pursue such remedies.

The discovery Nothern now seeks, while relevant, is not as central in its importance as were the statements in Harvey. The statements sought in Harvey were highly material to the crux of the case as actually litigated and as decided after the adjudicatory hearing. Nothern's case is in the discovery phase. He has obtained substantial information concerning the disputed issues both pursuant to the rules governing party discovery and via the voluntary process suggested by the Court. No statute applies such as that noted in Harvey, compelling intra-agency cooperation when ordered by the President.

There is not an entitlement under the rules to obtain any and all discovery that might be had. Although Fed. R. Civ. P. 26(b)(1) provides that "[i]n General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ." Fed. R. Civ. P. 26(b)(2) also places various limitations upon that general principle. For example, Rule 26(b)(2)(a) permits the Court to limit the numbers of interrogatories and requests for admissions, as well as the number and length of depositions. The same subsection also permits the Court to limit discovery when duplicative, available from other sources, where the party seeking discovery has had ample opportunity to obtain it, and "where the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2). While the Court is not here presented with a Rule 26 motion to limit discovery, these principles nevertheless inform the Court in conducting the analysis performed by the Court in Harvey.

Finally, at the hearing Nothern contended that the SEC enjoys a practical ability to obtain the requested discovery from Treasury sufficient to constitute control for purposes of Rule 34. In essence, he argues that the SEC may procure the documents from the other agencies simply by asking for them, and that this constitutes "control" within the meaning of Rule 34. For example, Nothern points out that the SEC may request documents directly from the other agencies (in the case of Treasury, pursuant to 31 C.F.R. §1.12; in the case of Justice, pursuant to 28 C.F.R. §16.21(c)) without being subject to the agencies' Touhy regulations. Docket #31 at 14. Nothern has not shown that the regulations cited confer any legal obligation to release any documents requested by another agency, merely that the agency's Touhy regulations do not apply to the situation by their own terms. See, e.g. Cochran Consulting , Inc. v. Uwatec USA, Inc., 102 F.3d 1224 (D.C. Cir.1996)(holding that control under Rule 34 includes a *legal right* to obtain documents upon demand); Similarly, Rosie D. v. Romney, 256 F.Supp.2d 115, 119 (D.Mass.2003)(Neiman, M.J.) (Rule 34 control is the *legal right* to obtain documents upon demand, which may be established by existence of a principal-agent relationship or a legal right pursuant to a contractual provision (citing see, McKesson Corp. v. Islamic Republic of Iran, 185 F.R.D. 70, 78 (D.D.C.1999); Anderson v. Cryovac, Inc., 862 F.2d 910, 928-29 (1st Cir.1988)).

CONCLUSION

For the forgoing reasons, the Motion to Compel (Docket #44) and the Motion for an Order to Show Cause (Docket #49) are DENIED. Nothern indicated that if the Court denied his motions, he intended to seek a continuance in the trial date to allow him time to pursue the FOIA requests and subpoenas also seeking discovery which he issued sometime ago and has been pursuing in parallel with the discovery motions. Counsel for the SEC indicated that it would likely agree to a reasonable request for a continuance for a specified period. If Nothern intends to seek a continuance, the Court suggests he do so promptly after conferring with the SEC.

    / s / Leo T. Sorokin
Leo T. Sorokin
United States Magistrate Judge