UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : | Civil Action No. 05-10983 (NMG) |
| Plaintiff, | : | |
| v. | : | **ORAL ARGUMENT REQUESTED** |
| STEVEN E. NOTHERN, | : | |
| Defendant. | : | |

**DEFENDANT STEVEN NOTHERN'S OBJECTIONS TO
MAGISTRATE JUDGE'S ORDER ON DEFENDANT'S RENEWED
<u>TO COMPEL AND MOTION FOR AN ORDER TO SHOW CAUSE</u>**

Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1000

Dated:  February 7, 2007

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................................1

    A.    Factual Background ..............................................................................1

    B.    Coordinated Government Investigations ...............................................2

    C.    Procedural History................................................................................3

            1.    Access to Documents Held by DOJ and Treasury.......................3

                a.    DOJ Document Production..............................................4

                b.    Treasury Document Production........................................4

                c.    Renewed Motion to Compel.............................................5

            2.    Access to Treasury Witnesses .....................................................5

                a.    Denial of Treasury Authorization....................................5

                b.    Motion to Show Cause .....................................................6

ARGUMENT .........................................................................................................7

I.    THE EVIDENCE NOTHERN SEEKS IS CENTRAL TO THE CLAIMS AND DEFENSES IN THIS CASE. ......................................................................7

    A.    Confidentiality of Treasury's Information.............................................7

    B.    Knowledge of Davis's Duty To Treasury..............................................9

    C.    Trading on Nonpublic Information........................................................10

    D.    Treasury's Incentive Not to Cooperate .................................................12

    E.    The SEC's Failure to Assist...................................................................14

II.    THE APPLICABLE CASE LAW REQUIRES THE GOVERNMENT TO PRODUCE RELEVANT DOCUMENTS IN ITS POSSESSION AND ALLOW THE TESTIMONY OF WITNESSES WITH RELEVANT INFORMATION................15

    A.    *AT&T* and Other Applicable Case Law Support Nothern's Requests for Discovery from the Government. .........................................................15

    B.    The Existence of Potential Alternative Means of Discovery Does Not Excuse the Government's Failure to Comply. ..................................................18

CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Bank Line v. United States*, 76 F. Supp. 801 (S.D.N.Y. 1948) ........................................16

*Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994).......................6

*Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979) ................................................................................................................... 15-17

*Harvey Aluminum, Inc. v. NLRB*, 335 F.2d 749 (9th Cir. 1964) ................................ 14-18

*Houston Business Journal, Inc. v. Office of the Comptroller*, 86 F.3d 1208 (D.C. Cir. 1996)...........................................................................................................19

*SEC v. Mayhew*, 121 F.3d 44 (2d Cir. 1997) ...................................................................11

*SEC v. Sargent*, 229 F.3d 68 (1st Cir. 2000) ....................................................................9

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) .................................................4

*United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978) ............................... 3, 16-18

*United States v. Cusimano*, 123 F.3d 83 (2d Cir. 1997) ....................................................11

*United States v. Liberia*, 989 F.2d 596 (2d Cir. 1993) .................................................9, 11

*United States v. Mylett*, 97 F.3d 663 (2d Cir. 1996) ...........................................................9

*United States v. National Broadcasting Co., Inc.*, 65 F.R.D. 415 (C.D. Cal. 1974) .........16

*Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006).........................................................19

### OTHER AUTHORITIES

U.S. Const. art. II, § 3 ......................................................................................................17

Housekeeping Statute, 5 U.S.C. § 301......................................................................................6

Administrative Procedure Act, 5 U.S.C. § 551 *et seq* ......................................................19

Freedom of Information Act, 5 U.S.C. § 552 ......................................................................3

Fed. R. Civ. P. 30..............................................................................................................19

Fed. R. Civ. P. 34..............................................................................................................19

Fed. R. Civ. P. 37................................................................................................................6

Fed. R. Civ. P. 41................................................................................................................6

Fed. R. Civ. P. 72................................................................................................1

31 C.F.R. §§ 1.8-1.12 .................................................................................4, 6, 14

Pursuant to Fed. R. Civ. P. 72(a), defendant Steven Nothern respectfully objects to the Order of Magistrate Judge Leo T. Sorokin of January 24, 2007 (Docket # 63), which denied (i) Nothern's renewed motion to compel documents held by the U.S. Department of the Treasury ("Treasury") and the U.S. Department of Justice ("DOJ") (Docket # 44), and (ii) Nothern's motion for an order to show cause why the SEC's case should not be dismissed in light of Treasury's refusal to allow depositions of five current and former Treasury employees (Docket # 49). For the following reasons, the Court should set aside the Order as clearly erroneous and contrary to law and enforce Nothern's right to documents and testimony critical to his defense.

## BACKGROUND

### A.    Factual Background

In this action, the SEC alleges that on October 31, 2001 Nothern violated the federal securities laws by engaging in insider trading based on information released at the quarterly refunding press conference held by Treasury that day. The information in question was Treasury's decision to suspend issuance of the 30-year bond. Apparently leaked by Treasury in preceding days to Lehman Brothers, White House officials, and a European central bank, the decision was officially announced at a press conference beginning at 9:00 a.m. with a stated "press embargo" time of 10:00 a.m., although a written announcement distributed at the press conference stated it was "FOR IMMEDIATE RELEASE." The press conference ended at 9:25 a.m., and those in attendance were free to, and did, leave the Treasury building, supposedly subject to what Treasury officials call an "honor system" to abide by the embargo to which most had never agreed. At around 9:30 a.m., Nothern received a call from a broker reporting (now well documented) rumors of the news on the Chicago Board of Trade. Nothern noticed that the price of 30-year bonds was rising. Sometime around 9:38 a.m., after having left similar messages for several larger market participants, Peter Davis, a consultant to Nothern's employer

Massachusetts Financial Services ("MFS"), left a voice-mail message for Nothern with the news. When Nothern subsequently listed to Davis's voice-mail message, he noted a further rise in the bond price. At 9:40 a.m., Treasury placed an announcement of the news on a publicly accessible Internet site, and transferred it to Treasury's web site, allegedly at 9:43 a.m. (The three-minute gap is unexplained.) Believing the information to be public and the press embargo inapplicable, Nothern directed purchases of 30-year bonds for accounts he managed at MFS. The SEC alleges that these trades occurred sometime between 9:42 and 9:42:49 a.m., seconds shy of the alleged publication time of 9:43 a.m. *See* Complaint ¶ 32.

**B.    Coordinated Government Investigations**

Treasury's botched release of the information on the 30-year bond led to a series of coordinated government investigations. On November 6, 2001, Treasury's General Counsel David Aufhauser referred the matter to the SEC for investigation. Docket # 30, Ex. Q. In addition to conducting its own depositions of relevant witnesses, including Nothern, the SEC conducted multiple joint interviews of Treasury employees "in coordination with Treasury, Office of General Counsel and the Office of Inspector General (OIG)." *See, e.g.*, *id.*, Ex. R. At the same time, DOJ was conducting a parallel criminal investigation. The privilege log produced by the SEC shows numerous instances of memoranda, notes, and other legal documents being exchanged in 2002, 2003, and 2004 between the SEC and DOJ. *See id.*, Ex. S. DOJ's investigation ultimately yielded an indictment of John Youngdahl (an employee of Goldman Sachs whom Davis had called first and who admittedly knew that Davis had agreed to abide by the embargo) and a plea to a criminal information by Davis. Nothern voluntarily participated in DOJ's investigation and was never indicted.

The SEC filed the present case against Nothern on May 11, 2005, more than three and a half years after the events at issue. It seeks an injunction that would make Nothern

unemployable in the securities industry as well as a fine and "disgorgement" of the profits experienced by the funds Nothern managed for MFS. Contested issues in the case include (i) whether the information announced at Treasury's press conference was actually confidential, (ii) whether the information was already public at the time Nothern traded, in light of the preceding leaks, rumors, and release of reporters not under any binding legal obligation of silence, (iii) whether the Treasury could impose an "embargo" on its announcement consistent with the First Amendment, (iv) whether the consultant, Peter Davis, had a fiduciary or "fiduciary-like" duty to the Treasury not to disclose the information even if he had agreed not to, and (v) whether, even assuming such a duty, Nothern knew of it. (Both Davis and Nothern have testified that he did not.)

> **C.    Procedural History**
>
>> 1.    Access to Documents Held by DOJ and Treasury

Nothern served his First Request for Production of Documents to the SEC on September 27, 2005. Citing *United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978), the SEC objected to Nothern's instruction that "[i]f a document is in the possession, custody or control of any department or agency of the United States government, it is deemed to be in the possession, custody or control of the SEC for purposes of this Request." Because he had not received responsive documents from either the SEC or pursuant to his direct requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the SEC had refused to make requests to other agencies on his behalf, Nothern filed his initial motion to compel on February 17, 2006. On June 14, 2006, Magistrate Judge Sorokin suggested that the SEC seek to obtain the documents through document requests to Treasury and DOJ as Nothern had suggested. On August 15, 2006, the Magistrate Judge denied Nothern's motion to compel without prejudice "as moot at this time in light of the United States' voluntary discovery efforts," but stated that Nothern "may renew the

motion, or a portion of it, in the future, if appropriate."

        a.        DOJ Document Production

Even though DOJ had previously shared many of its investigative materials with the SEC and indeed prepared interview notes which the SEC now claims as its own work product (an issue which Nothern addresses in a separate motion), it categorically refused to produce any documents in response to the SEC's 2006 request, asserting that any disclosure of documents not already in the SEC's possession would be "prohibited by Rule 6(e) of the Federal Rules of Criminal Procedure." Docket # 39, Ex. C.

        b.        Treasury Document Production

Treasury produced documents to the SEC and Nothern during the last five months of 2006. Throughout its production, Treasury stated that it was responding to the SEC's letter "pursuant to Treasury's regulations found at 31 C.F.R. §§ 1.8-1.12, commonly known as *Touhy* regulations,"[1] *see, e.g.*, Docket # 48, Ex. C at 1 (letter of Oct. 19, 2006) – even though those regulations provide that they "shall not be applicable to official requests of other government agencies," 31 C.F.R. § 1.12. Many of the documents produced by Treasury contain extensive redactions of clearly relevant information. *See, e.g.*, Docket # 45 at 7, 10, 11. On December 19, 2006, Treasury produced a log stating that it had redacted or withheld completely 276 pages of documents asserted to be immune from disclosure on grounds of "deliberative process" and other asserted privileges. As shown in Nothern's response to the SEC Status Report on the Production of Documents and Privilege Log from the Treasury Department (Docket # 62), nearly every claim of privilege made in Treasury's log is either unfounded on its face or at least highly suspect.

---

[1] "*Touhy*" refers to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951), in which the Supreme Court upheld a Justice Department order requiring a centralized determination as to whether it should comply with a subpoena *duces tecum*.

c.     Renewed Motion to Compel

After it became clear that he would not be able to obtain relevant documents held by DOJ and Treasury by the current discovery deadline, on October 30, 2006 Nothern filed a renewed motion to compel (Docket # 44), which was denied by Magistrate Judge Sorokin in the order at issue (Docket # 63).

2.     Access to Treasury Witnesses

a.     Denial of Treasury Authorization

Nothern has sought to depose certain current and former Treasury employees with information on Treasury's release and apparent leak of the information on the 30-year bond. At first, both the SEC and Nothern were able to depose Treasury witnesses after submitting "*Touhy* requests." Then, in November 2006, Treasury denied all of Nothern's remaining requests – and even withdrew authorization for a deposition previously granted:

- Elnora Bowser is the Treasury employee who admitted the alleged "tipper," Peter Davis, to the quarterly refunding press conference on October 31, 2001. She alone can testify whether she admitted him pursuant to an agreement as alleged (Complaint ¶ 27), whether she was directed to do so by someone else at Treasury, and her understanding of any agreement or duty that Davis may have had to Treasury with regard to information to be announced at the conference. Nothern requested authorization to take Bowser's deposition on August 16, 2006. Docket # 51, Ex. E at 2. Treasury denied the request on November 2, 2006. *Id.*, Ex. J. at 1.

- Jill Cetina is an economist at Treasury with information about the extent to which market participants had advance knowledge of Treasury's decision to suspend the 30-year bond, including through reported disclosures by a European central bank and to an employee at Lehman Bros., and the extent to which the market was acting on such knowledge prior to Treasury's announcement. The SEC, in conjunction with Treasury's Office of Inspector General, conducted a formal interview of Ms. Cetina on November 7, 2001. Nothern requested authorization to take Cetina's deposition on May 18, 2006. *Id.*, Ex. A at 4-5. Treasury denied the request on November 2, 2006. Docket # 53, Ex. B.

- Michele Davis was the Assistant Secretary for Public Affairs whom Under Secretary Fisher warned against the use of an embargo for the October 31, 2001 press conference on the ground that "the risk of a leak or some malfunction, some procedural malfunction was too high." Assistant Secretary Davis rejected Fisher's advice and instituted a fixed embargo time of 10:00 a.m. Nothern requested authorization to take her deposition on August 16, 2006. Docket # 51, Ex. E. Treasury denied the request on November 2, 2006. Docket # 53, Ex. C.

- Steve Berardi is a Treasury employee whom another witness, Director of Market Finance Paul Malvey, claimed stood at the door to the press conference "to make sure no one leaves." Malvey's testimony was disputed by other Treasury witnesses. Nothern requested authorization to take Berardi's deposition on August 16, 2006. Docket # 51, Ex. E. Treasury denied the request on November 2, 2006. Docket # 53, Ex. C.

- David Aufhauser was General Counsel on October 31, 2001 and initiated an investigation into Treasury's botched announcement on the 30-year bond. After staff members reported their findings to him, he referred the matter for investigation by the SEC. Following the SEC's initiation of an enforcement action against Nothern, Aufhauser told the *Wall Street Journal* that "no one within the Treasury building did anything inappropriate." Nothern requested authorization to take Aufhauser's deposition on May 18, 2006. Docket # 51, Ex. A at 5-6. Treasury <u>approved</u> this request on June 9, 2006. *Id.*, Ex. B at 1-2. After Treasury ignored Nothern's repeated efforts to arrange a convenient date, *id.*, Exs. C, D, E, F, G, & I, Nothern issued a deposition subpoena. On November 15, 2006 – two business days before the scheduled date – Treasury sent a letter <u>withdrawing</u> its authorization. *Id.*, Ex. N.

In denying Nothern's deposition requests, Treasury relied mainly on 31 C.F.R. § 1.11(e)(1)(iv), which purportedly allows it (rather than a court) to consider whether the request "demonstrates that the information requested is relevant and material to the action pending, genuinely necessary to the proceeding, unavailable from other sources, and reasonable in its scope." For example, in denying Nothern's request to depose Elnora Bowser, Treasury contended that the information sought is available from other sources; the request is "unduly burdensome" because Treasury has supposedly already expended "hundreds of hours and hundreds of thousands of dollars" on the case; and Bowser's testimony is not "genuinely necessary to the proceeding" because she "only cleared Peter Davis into the Treasury building one time" – *i.e.*, on the date in question, October 31, 2001. *See* Docket # 51, Ex. J at 2-3.[2]

b.    Motion to Show Cause

On November 17, 2006, pursuant to Federal Rules of Civil Procedure 37 and 41, the Due

---

[2] The federal statute which Treasury cites as authority for 31 C.F.R. § 1.11 – the Housekeeping Statute, 5 U.S.C. § 301 – expressly provides that it "does not authorize withholding information from the public." "[N]either the statute's text, its legislative history, nor Supreme Court case law supports the government's argument that § 301 authorizes agency heads to withhold documents or testimony from federal courts." *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994).

Process Clause of the Fifth Amendment, and the Court's inherent authority, Nothern filed a

motion for an order to show cause why the case should not be dismissed in light of Treasury's

refusal to allow the depositions (Docket # 49).  Magistrate Judge Sorokin denied this motion as

well (Docket # 63).

## ARGUMENT

### I.    THE EVIDENCE NOTHERN SEEKS IS CENTRAL TO THE CLAIMS AND DEFENSES IN THIS CASE.

In his Order (Docket # 63, at 12), the Magistrate Judge described the evidence which

Nothern seeks as "relevant," but not "central in its importance" to Nothern's defense.  This is

erroneous.  The documents and testimony that Nothern have been denied are clearly central to

the elements of the SEC's insider trading claim and his potential defenses.

### A.    Confidentiality of Treasury's Information

To proceed with its claim, the SEC must prove that Treasury treated the information on

the 30-year bond as confidential.  In this case, the SEC relies on an alleged "embargo"

supposedly restricting the press from releasing the information until a time designated by the

Treasury, in this instance 10:00 a.m.  Unlike other federal agencies, Treasury did not physically

prevent disclosure before the given time.  Critical questions are whether the unilateral "embargo"

actually meaningfully preserved confidentiality and, even if so, whether it was consistent with

the First Amendment's general prohibition of prior restraints on speech.  The evidence obtained

thus far in the case establishes that the embargo procedures used by Treasury were vigorously

opposed by Under Secretary Peter Fisher, the official who announced the information, because

he "thought the risk of a leak or some . . . procedural malfunction was too high."  Fisher Dep. at

101.[3]  Because the policymaker whose decisions were being announced did not believe an

---

[3] Deposition citations refer to depositions taken in this action.  All cited deposition excerpts are attached as exhibits to the Declaration of Robert E. Toone filed herewith ("Toone Decl.").

embargo was appropriate, the government cannot meet its burden under the First Amendment.

There is also ample evidence that the Treasury did not meaningfully protect the information as confidential in this period. Even though the conference was supposedly only for "credentialed press," anyone who gained access to the Treasury building was free to enter or exit the press conference at will. Fratto Dep. at 160-62; Holahan Dep. at 126; Ouseley Dep. at 61-62. The evidence further establishes that Treasury officials did not obtain the consent of the attendees at the press conference to abide by its announced embargo. Holahan Dep. at 64. Betsy Holahan, the Office of Public Affairs employee who announced the embargo time at the press conference, testified that the embargo applied to "members of the media who are being invited to attend the press conference," but that these members were obligated only under "the honor system" to hold their news stories until the announced time. *Id.* at 68, 106. In fact, even though reporter Brian Collins of the *National Mortgage News* disclosed Fisher's announcement to an employee at the Federal National Mortgage Association at around 9:35 a.m., Treasury did not take any action against him. Collins Dep. at 60-61. Treasury has since instituted "lockdown" procedures for its quarterly refunding announcements. Fratto Dep. at 236-38; Holahan Dep. at 253.

Treasury has failed to produce documents critical to Nothern's defense that the "embargo" process did not in fact preserve the information's confidentiality after it had been announced at the press conference and that any such embargo would be unconstitutional. Through its improper reliance on inapplicable deliberative-process, attorney-client, work-product, and law-enforcement privileges, Treasury has withheld documents about its planning for the October 31, 2001 press conference and its subsequent investigation into what went wrong. *See* Docket # 62.

In addition, Treasury has prevented Nothern from asking key witnesses about these

events.  It has prevented him from asking David Aufhauser about the conclusions he reached as a

result of his investigation; Steve Berardi whether he actually guarded the doors to the press

conference, or whether, as other witnesses have testified, there was no restraint on persons

leaving the press conference; or Assistant Secretary Davis why she rejected the request of Under

Secretary Fisher to announce the information directly, not through the use of an "embargo."

**B.    Knowledge of Davis's Duty To Treasury**

Under the misappropriation theory of insider trading, the SEC must establish:  "(i) a

breach by the tipper of a duty owed to the owner of the nonpublic information; and (ii) the

tippee's knowledge that the tipper had breached the duty."  *United States v. Liberia*, 989 F.2d

596, 600 (2d Cir. 1993), *quoted in SEC v. Sargent*, 229 F.3d 68, 77 (1st Cir. 2000); *see also*

*United States v. Mylett*, 97 F.3d 663, 668 (2d Cir. 1996) ("Rule 10b-5 requires that the defendant

[misappropriation tippee] *subjectively* believe that the information was obtained in breach of a

fiduciary duty.") (emphasis added).

Here, the SEC must prove that the alleged "tipper" Peter Davis had a fiduciary or

"fiduciary-like" duty to Treasury – and that Nothern actually knew about that duty.  The SEC

alleges that Davis attended refunding press conferences from 1994 to 2001 "only by reason" of

an "explicit agreement" he reached with a "senior adviser" at Treasury.  Complaint ¶ 27.  In fact,

Davis's testimony on this issue contradicts that of the purported "senior adviser," Roger

Anderson, on every pertinent point.[4]  Furthermore, Davis admitted that he never told anyone

about the purported agreement, Davis Dep. at 263-64, 290, and there is no evidence that anyone

---

[4] Davis testified that he and Anderson signed an agreement in his office, and that Anderson
retained the original copy.  Davis Dep. at 96-97.  By contrast, Anderson testified that he "never
had any agreement with Mr. Davis, no."  R. Anderson Dep. at 100.  Davis stated that he did not
attend a press conference before meeting with Anderson.  Davis Dep. at 98.  By contrast,
Anderson stated that Davis was already attending press conferences when they met – and that
another employee in fact introduced them at a refunding event.  R. Anderson Dep. at 51-52, 95.

else at Treasury knew about it either.

Treasury has produced a document listing the dates on which Davis attended refunding events from May 1998 to October 2001, but not from 1994 until May 1998. Documents reflecting Davis's admission during this earlier period are critical because they will likely show which employees were originally responsible for admitting Davis and whether, as alleged, Davis gained access to the press conferences "only by reason" of an "explicit agreement" he reached with Anderson. In addition, while many of the e-mails produced by Treasury appear to show extreme confusion in the days following October 31, 2001 as to how Davis was able to attend the press conference, Treasury has erroneously relied on the attorney-client, work-product, and law-enforcement privileges in redacting much of this critical information. *See* Docket # 62 at 7-10.

Treasury has further hindered Nothern's defense by prohibiting him from deposing Elnora Bowser, the employee who admitted Davis to the October 31, 2001 press conference. In ¶ 27 of the Complaint, the SEC alleges that Treasury allowed Davis to attend the press conference on October 31, 2001 "only by reason" of an agreement he had previously reached with a "senior adviser" at Treasury. It is this alleged agreement, the SEC claims, that established Davis's fiduciary duty to Treasury. Clearly, Nothern is entitled to ask the person <u>who actually admitted Davis on October 31, 2001</u> whether she knew about such an agreement and, if not, why she admitted Davis. No other witness has discussed Bowser's reason for admitting Davis on the day of the relevant events.

### C.    Trading on Nonpublic Information

Another key issue in this case is timing: even assuming that Treasury effectively kept its information on the 30-year bond confidential and was entitled to do so even after announcement at the conference through an "embargo," did Nothern trade before the information became "public"? Information indisputably becomes public when it is disclosed "to achieve a broad

dissemination to the investing public generally and without favoring any special person or group," *SEC v. Mayhew*, 121 F.3d 44, 50 (2d Cir. 1997) (citation omitted), but it may also become public when it is disseminated "through such sources as . . . analysts' reports, newspapers, magazines, rumors, word of mouth or other sources," *United States v. Cusimano*, 123 F.3d 83, 89 & n.6 (2d Cir. 1997). "It is, of course, axiomatic that trading on public information does not violate Section 10(b)." *Liberia*, 989 F.2d at 601.

Documents gathered from non-government sources indicate that Nothern's first trade occurred sometime between 9:42 and 9:45 a.m., as recorded on the clocks of the institutions involved. Documents further show that Treasury employee Frances Anderson placed Fisher's statement on the Internet at 9:40 a.m. as recorded by the computer clock. Harris Dep. at 93-94; Verizon Dep. at 75-76, 149-56. Specifically, Anderson transferred Fisher's statement to a staging server which was located at a publicly accessible Internet address. Harris Dep. at 89-90; Verizon Dep. at 153. The document was last modified on the staging server at 9:40 a.m., Harris Dep. at 67-68; Verizon Dep. at 168-69, and then immediately transferred to Treasury's web site at another address on the Internet, F. Anderson Dep. at 286-87. The SEC contends that the information was not posted to Treasury's website until 9:43 a.m. and that the posting to the Internet site at 9:40 was not "public" because it was not a publicized website, but there is a critical question of why there would be a three minute "gap" between these two events.

Treasury has failed to produce documents that would likely resolve this critical timing issue. It has not produced documents showing the accuracy of its computer and server clocks on October 31, 2001. It has also failed to produce a computer disk on which Frances Anderson

saved electronic data that may reveal exactly when the statement was posted on the Internet.[5]

Treasury has further hindered Nothern's defense by refusing to allow him to depose its employee Jill Cetina. The SEC and Treasury conducted a formal interview of Cetina on November 7, 2001, in which she provided substantial information about the extent to which market participants had advance knowledge of Treasury's decision to suspend the bond, including through reported disclosures by a European central bank and an apparent disclosure by Treasury's Paul Malvey to Lehman Brothers, and her reported belief that the market was acting on that information. Yet, Treasury prevents Nothern from asking Cetina about these issues now.

### D.    Treasury's Incentive Not to Cooperate

Treasury's invocation of the inapplicable *Touhy* regulations, its clearly invalid privilege claims, and its categorical refusal to allow any further employee depositions all indicate that its real purpose is to withhold embarrassing information, no matter how critical it may be to Nothern. This is not, of course, the typical insider-trading case involving public companies and their publicly traded shares. Rather, the SEC seeks to hold Nothern liable for trading on information relayed to him as the result of a remarkable series of mistakes and misjudgments by Treasury, including: the decision to overrule Peter Fisher's judgment that the announcement should be made directly to the public; the suggested advance disclosure of the information to an investment bank representative by a senior Treasury official; failure to use "lockdown" methods

---

[5] In her deposition, Ms. Anderson testified that she stored the computer diskette (which likely has electronic data to resolve the question) in a file cabinet, but that the file cabinet somehow disappeared from her office in 2001 or 2002. F. Anderson Dep. at 266-68. In a letter dated December 19, 2006, Treasury stated that Ms. Anderson "conducted a search for this document on computer diskettes" and that its staff "searched for the document on the hard drive of Ms. Anderson's computer." Docket # 60, Ex. 3. It did not, however, indicate whether Treasury actually searched for the <u>file cabinet</u> that contained the diskette or tried to determine where the contents of that file cabinet were sent in late 2001 or 2002. Counsel for Nothern accordingly sent Treasury a letter on December 20, 2006 urging it to conduct a more thorough search, consistent with Ms. Anderson's testimony about where the diskette was located. Docket # 62, Ex. A. Treasury has not responded.

used by other federal agencies; setting an embargo period for the announcement that was more than twice as long as any previous one; failure to train Frances Anderson, the employee responsible for posting Fisher's statement on the Internet, that Treasury's "staging server" was in fact publicly accessible on the Internet; failure to direct Anderson not to post the information until 10:00 a.m.; circulation of copies of Fisher's statement at the press conference with the heading "FOR IMMEDIATE RELEASE"; allowing a private citizen like Peter Davis to attend the press conference, and then allowing him and other attendees to leave Treasury more than a half hour before the embargo period had ended.

Treasury has encouraged the SEC's prosecution of this action as a means of deflecting critical attention from its many mistakes. At the time the SEC initially charged Nothern and others with insider trading, Treasury's General Counsel David Aufhauser told a reporter that he "couldn't be happier that this concluded with punishing action against those responsible for violating our rules" and that "all people who participated in the investigation in this building have been found to have behaved above board, honorably in the service of their department and county." John Connor & Colleen DeBaise, *Youngdahl Indictment Tops US Action in Tsy Leak Case*, Wall St. J., Sept. 24, 2003. After initially authorizing Aufhauser's deposition, Treasury counsel refused to cooperate in scheduling such a deposition, then <u>withdrew</u> its authorization two days before the date for which Nothern had issued a subpoena. Treasury has also improperly directed its employees not to answer questions about disciplinary actions taken by Treasury in response to the events of October 31, 2001. *See, e.g.*, Malvey Dep. at 269-72; Roseboro Dep. at 136. Clearly, Treasury's interest is in placing all the blame for October 31, 2001 on private parties like Nothern, who was simply doing his job and whose investors would have been penalized had he postponed his preexisting plans to purchase 30-year bonds for his government bond portfolios.

### E.    The SEC's Failure to Assist

Even though it has been clear from the start of this litigation that Treasury documents and testimony by Treasury employees would be critical, the SEC has refused on several occasions to assist Nothern's efforts in obtaining such discovery.  For example, after the SEC agreed, at Magistrate Judge Sorokin's prompting, to forward Nothern's document requests to Treasury, Treasury responded by treating them as "*Touhy* requests" and therefore subject to the broad limitations set forth under Treasury's *Touhy* regulations.  Those regulations, however, provide that they "shall not be applicable to official requests of other government agencies."  31 C.F.R. § 1.12.  The SEC's requests were sent on SEC letterhead, signed by counsel for the SEC, and submitted at the Court's suggestion for purposes of this SEC enforcement action.  Yet rather than correct Treasury's error and urge it to produce all relevant materials, the SEC maintains that "it is reasonable for Treasury to find that the SEC is not seeking the information in its 'official capacity' for official SEC business."  Docket # 46 at 7 n.3.

Similarly, in an effort to resolve the dispute on Treasury depositions, counsel for Nothern proposed on November 8, 2006 that the SEC make a written request asking Treasury asking to authorize the depositions at issue.  *See* Docket # 51, Ex. M. at 1.  The SEC rejected Nothern's proposal.  *Id.*; Docket # 50, at 9-10.

Thus, the two agencies that coordinated so closely in investigating Treasury's botched announcement have acted in tandem to deny Nothern documents and testimony critical to his defense.  They have limited Nothern's ability to obtain exculpatory evidence and increased the likelihood that an erroneous determination will result in this action.  Their actions violate the fundamental principles underlying the federal discovery rules and the Due Process Clause of the Fifth Amendment.  *See Harvey Aluminum, Inc. v. NLRB*, 335 F.2d 749, 753 (9th Cir. 1964).

II.     **THE APPLICABLE CASE LAW REQUIRES THE GOVERNMENT TO PRODUCE RELEVANT DOCUMENTS IN ITS POSSESSION AND ALLOW THE TESTIMONY OF WITNESSES WITH RELEVANT INFORMATION.**

A.     ***AT&T* and Other Applicable Case Law Support Nothern's Requests for Discovery from the Government.**

The Magistrate Judge did not address in his Order the District of Massachusetts ruling that affirmed the legal principle on which Nothern relies.  In *Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979), the court considered a Rule 34 request served by the defendant on the plaintiff, an agency of the Republic of Ghana.  The court ordered the agency-plaintiff to produce all relevant documents from <u>all</u> agencies of that government, "not just those in its immediate possession."  *Id.* at 595.  It explained:

> When an agency of government institutes suit, any obligation to disclose relevant information extends to the government qua government requiring disclosure of all documents in its possession, custody or control, not just those materials in the immediate possession of the particular agency-plaintiff.

*Id.* at 595 (internal citations omitted).  Precisely the same reasoning applies here.  The SEC is an enforcement agency of the U.S. government.  It is undisputed that in this case the SEC worked in coordination with Treasury and DOJ in investigating the events of October 31, 2001.  It is disingenuous for the SEC now to refuse to produce documents held by these agencies on the ground that they are not in its immediate possession.

As support for its holding, the court in *Ghana Supply Commission* cited *Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749 (9th Cir. 1964), which held that the National Labor Relations Board could not maintain an action for unfair labor practices while refusing to produce statements made by key witnesses to the Department of Labor and the FBI.  "The Board, the Department of Justice, and the Department of Labor are all parts of the government of the United States," the court explained.  *Id.* at 754.  "In a criminal prosecution the Department of Justice would scarcely be heard to say that it was not required to produce statements . . . simply because

the documents rested in the hands of another federal agency, and we perceive no valid distinction, for this purpose, between that case and this one." *Id. See also United States v. National Broadcasting Co., Inc.*, 65 F.R.D. 415, 419 (C.D. Cal. 1974) (dismissing antitrust action brought by DOJ because it failed to comply with discovery order concerning documents held by Executive Office of the President); *Bank Line v. United States*, 76 F. Supp. 801, 803-04 (S.D.N.Y. 1948) (DOJ could not bring suit for damages payable to Treasury where Navy refused to produce relevant documents).

In his Order, the Magistrate Judge correctly recognized that the ruling in *Harvey Aluminum* "sounds in considerations of due process and fairness." Docket # 63 at 11. Importantly, Nothern has not cited *Harvey Aluminum* as authority for the SEC's duty to produce documents. That duty is established independently by Rule 34. Instead, as the court in *Ghana Supply Commission* recognized, *Harvey Aluminum* stands for the proposition that when a duty to produce documents exists in the law, even an independent agency like the NLRB or SEC cannot circumvent that duty by arguing that the documents are held by a separate agency, so long as that agency (like DOJ and Treasury here) is subject to the President's authority.

In his Order, the Magistrate Judge described the holding in *United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978), as "the only decision squarely addressing the question at hand" and stated that any distinctions between that case and this one were "not material." Docket # 63 at 9-10. But to the extent *AT&T* affects this case, it completely supports Nothern's position. There, the court ruled that for purposes of discovery under Rule 34, the plaintiff in that case "shall consist of the United States Department of Justice and all other agencies, departments, and subdivisions of the Executive Branch of the United States government," with the exception of independent regulatory agencies like the FCC. *Id.* at 1349 (emphasis added). That holding fully supports the relief Nothern seeks here with respect to documents held by DOJ

- 16 -

and Treasury, two non-independent departments.

In a footnote citing *Harvey Aluminum*, the *AT&T* court reiterated that the key issue is the status of the agency <u>from which production is sought</u>, not the agency that initiated the litigation. An agency may be compelled to produce documents "in the possession of executive departments" (*i.e.*, executive departments like DOJ and Treasury) because the President has "adequate authority over such departments to procure production, and the courts to order it." 461 F. Supp. at 1336 n.63. Unlike independent agencies, DOJ and Treasury are subject to an executive officer, the President, whose duties include the faithful execution of all federal laws, including the securities laws. U.S. Const. art. II, § 3.

Just as DOJ unsuccessfully argued in *AT&T* that it had "little influence over other agencies of the government," 461 F. Supp. at 1334 n.58, the SEC has argued here that it does not control Executive Branch agencies and should not be compelled to produce documents from those agencies' files. The ultimate question, however, is not whether the SEC itself can force Treasury and DOJ to comply, but whether the branch of government whose interests the SEC is advancing with this lawsuit has the authority to do so. Clearly, the Executive Branch does. Moreover, as the person who has been sued, Mr. Nothern "obviously" has "even less influence over the agencies" than the SEC, and he is entitled to his "discovery rights irrespective of the effect on inter-departmental relationships." *AT&T*, 461 F. Supp. at 1334 n.58. *Accord Harvey Aluminum*, 335 F.2d at 754-55 (holding that while it "may well be true" that discovery obligation left NLRB "at the mercy" of other agencies, it was "less defensible still to resolve such agency disputes" by allowing government to proceed with action against defendant who had been denied documents to which he is entitled); *Ghana Supply Comm'n*, 83 F.R.D. at 595 ("If the government sues through one of its agencies and another agency possesses the information that must be disclosed, it is only fair that the government or other agency decide whether secrecy of

the materials is worth dismissal of the lawsuit.").

**B.      The Existence of Potential Alternative Means of Discovery Does Not Excuse the Government's Failure to Comply.**

In his Order, the Magistrate Judge found this case to be "materially different" from *Harvey Aluminum* because, in that case, "no alternative avenue for obtaining the reports sought existed." Docket # 63 at 11. In fact, the Ninth Circuit in *Harvey Aluminum* did not expressly consider whether there were alternative means to obtain the documents held by the Department of Labor and DOJ. To the contrary, the court rejected the government's argument that those two agencies' "housekeeping" or *Touhy* regulations provided "an alternative ground for nonproduction." 335 F.2d at 755 (emphasis added). "Such regulations," the court observed, "do not justify nondisclosure of their own force." *Id. Harvey Aluminum* thus refutes, not supports, the conclusion that Nothern may be denied Treasury documents and witness testimony through that agency's application of its *Touhy* regulations.

Furthermore, the court in *AT&T* rejected the existence of an alternative means of discovery as a reason for excusing an agency's Rule 34 obligations. In that case, DOJ had opposed the defendants' Rule 34 request on the ground that a voluntary system of production, "together with whatever discovery defendants may be able to secure under Rule 45, adequately protects defendants' interests." 461 F. Supp. at 1330. In rejecting this argument, the court observed that Rule 45 subpoenas are a poor substitute for Rule 34 discovery, since they involve a narrower scope of production, broader claims of governmental privileges, greater expense to the party seeking discovery, and less effective sanctions for noncompliance. *Id.* at 1331-32. The

same considerations apply here with even greater force.[6]

As the Magistrate Judge recognized, Nothern has diligently used alternative means to obtain the documents he seeks from DOJ and Treasury. For example, Nothern submitted FOIA requests to DOJ and Treasury on November 11, 2005, and to the Department of Homeland Security ("DHS") on December 20, 2005. Furthermore, as set forth in the parties Joint Motion to Extend Case Deadlines (Docket # 64), Nothern is prepared to file, consistent with the Magistrate Judge's Order, (i) an action under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, challenging Treasury's refusal to allow depositions of its five employees; (ii) a FOIA action challenging DHS's failure to respond to Nothern's request; and (iii) a FOIA action challenging Treasury's decision to redact and withhold documents responsive to his request. Resort to such collateral discovery actions, however, is not only "cumbersome and time-consuming," as the Magistrate Judge acknowledged, Docket # 63 at 12, but also, as explained above, inconsistent with the government's obligations. There is, moreover, no assurance that they will permit Nothern to obtain all the discovery he could obtain from a party under Rules 30 and 34.

Rather than require Nothern to pursue the documents and testimony he has been denied through separate FOIA and APA actions, the Court should place the burden of discovery on the SEC and the government it represents. Recognizing Nothern's right as a federal litigant to obtain documents and witness testimony, the Court should declare Treasury's *Touhy* regulations

---

[6] The Magistrate Judge was not fully correct in asserting (Docket # 63 at 11) that Nothern now has "the ability to serve Rule 45 subpoenas upon the government itself." As Nothern explained in his initial memorandum in support of his motion to show cause (Docket # 50 at 14-16), even though the D.C. Circuit recent reversed several lower court decisions and held that the federal government qualifies as a "person" under Rule 45, *see Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006), a different line of precedent in the D.C. Circuit prohibits the enforcement of deposition subpoenas against federal employees under the principle of sovereign immunity. Under this precedent, the litigant must file a separate lawsuit under the Administrative Procedure Act "and the federal court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard." *Houston Business Journal, Inc. v. Office of the Comptroller*, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996).

inapplicable to this action and establish firm deadlines for the production of relevant, unredacted documents by DOJ and Treasury and the scheduling of the remaining Treasury witnesses.  In the alternative, this Court should follow settled precedent and refuse to allow the SEC to proceed with this action.  The principle of fundamental fairness underlying the federal constitution's Due Process Clause requires that the government the SEC represents either produce all relevant discovery or dismiss this action.

## CONCLUSION

For the foregoing reasons, the Court should set aside the Magistrate Judge's Order denying Nothern's motions and enter an order directing the government to produce all relevant documents and allowing Nothern to conduct his requested depositions.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Steven E. Nothern hereby requests the Court to schedule an oral argument in connection with his Objections to the Magistrate Judge's Order.

STEVEN E. NOTHERN

By his attorneys,

/s/ John A. Shope
Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  February 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ John A. Shope