UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, :<br><br>Plaintiff, :<br><br>v. :<br><br>STEVEN E. NOTHERN, :<br><br>Defendant. : | Civil Action No. 05-10983 (NMG)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO COMPEL PRODUCTION OF JUSTICE
DEPARTMENT DOCUMENTS IN THE SEC'S POSSESSION**

Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: February 7, 2007

## TABLE OF CONTENTS

BACKGROUND ...........................................................................................................1

    A.     Factual Background ...........................................................................1

    B.     Procedural History...........................................................................2

    C.     The Parties' Conference ...................................................................4

ARGUMENT................................................................................................................4

    A.     The Documents Are Clearly Relevant. ..............................................4

    B.     Documents Prepared by a Nonparty Are Not Protected Work Product. ................5

    C.     The SEC Cannot Circumvent Rule 26(b)(3) by Claiming a DOJ Employee as its "Agent."........................................................................7

    D.     There Is No Evidence of a Common-Interest Agreement. ...................10

CONCLUSION.............................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*In re Bevil, Bresler & Shulman Asset Mgmt. Corp.*, 805 F.2d 120 (3d Cir. 1986)............11

*Doubleday v. Ruh*, 149 F.R.D. 601 (E.D. Cal. 1993) .........................................................6

*FDIC v. Ogden Corp.*, 202 F.3d 454 (1st Cir. 2000).........................................................4

*Gomez v. City of Nashua*, 126 F.R.D. 432 (D.N.H. 1989) ................................................6

*In re Grand Jury Subpoena*, 220 F.R.D. 130 (D. Mass. 2004)..........................................4

*In re Grand Jury Subpoena*, 274 F.3d 563 (1st Cir. 2001)......................................... 10-11

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir. 1997).......................12

*Hawkins v. South Plains Int'l Trucks, Inc.*, 139 F.R.D. 682 (D. Colo. 1991) ...................6

*Hendrick v. Avis Rent-A-Car Sys., Inc.*, 916 F. Supp. 256 (W.D.N.Y. 1996) ...................6

*SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298 (N.D. Ala. 2003).................................9

*SEC v. Nacchio*, 438 F. Supp. 2d 1266 (D. Colo. 2006) .............................................. 9-10

*Tubar v. Clift*, No. C05-1154JCC, 2007 WL 30872 (W.D. Wash. Jan. 4, 2007) ..............6

*United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20
    (1st Cir. 1989)............................................................................................................12

*United States v. Nobles*, 422 U.S. 225 (1975) ..................................................................7

*United States v. Rand*, 308 F. Supp. 1231 (N.D. Ohio 1970) ...........................................9

*United States v. Sawyer*, 878 F. Supp. 295 (D. Mass. 1995) .................................... 11-12

*United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005) ...................................9

*United States v. Stringer*, 408 F. Supp. 2d 1083 (D. Or. 2006) .......................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 26........................................................................................................... 5-8

James Wm. Moore et al., *Moore's Federal Practice* (3rd ed. 2006) ..................................6

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed.
    2006)............................................................................................................................6

Defendant Steven Nothern respectfully submits this memorandum in support of his motion for an order compelling the plaintiff Securities and Exchange Commission ("SEC") to produce documents it obtained from an entity which the SEC itself contends is a third party: the U.S. Department of Justice ("DOJ").[1]

## BACKGROUND

### A.    Factual Background

In this action, the SEC alleges that on October 31, 2001 Nothern violated the federal securities laws by trading on information released at the quarterly refunding press conference held by the Department of the Treasury ("Treasury") that day. Treasury's release of this information led to a series of investigations conducted by several different federal agencies, including Treasury, DOJ, and the SEC.

The information in question was Treasury's decision to suspend issuance of the 30-year bond. According to Treasury emails and testimony, in the days and weeks preceding October 31, Treasury officials disclosed the decision to the White House, a foreign central bank, and, apparently, an employee of Lehman Brothers. On the evening of October 30, 30-year bonds were tight in supply. Treasury e-mailed a statement to the news network CNBC and Congressional staffers at or before 9:00 a.m. on October 31. The decision was officially announced at a press conference on October 31 beginning at 9:00 a.m. with a stated "press embargo" time of 10:00 a.m., the "embargo" being based on what Treasury officials call an informal "honor system." The press conference concluded at around 9:25 a.m., with those in attendance free to leave the Treasury building. At around 9:30 a.m., Nothern received a call from a broker reporting (now well documented) rumors of the news on the Chicago Board of

---

[1] The documents at issue are listed on the SEC's privilege log as SECNOTH 136630-648, 136650-654, 136667-671, 136655-658, 136672-675, 136779-782, 136661-666, 136678-683, and 137300-310.

Trade.  Nothern noticed that the price of 30-year bonds was rising.  Around 9:38 a.m., Peter Davis, a consultant to Nothern's employer Massachusetts Financial Services ("MFS") who attended the conference, left a voice-mail message for Nothern with the news sometime after having left similar messages with several larger Wall Street clients.  When Nothern subsequently listened to the message, he noted a further rise in the bond price.  At 9:40 a.m., Treasury placed an announcement on a publicly accessible Internet site, and allegedly transferred it to Treasury's web site at 9:43 a.m.  Believing the information to be public and the press embargo inapplicable to Davis or himself, Nothern directed purchases of 30-year bonds for accounts he managed at MFS.  The SEC alleges that these trades occurred sometime between 9:42 and 9:42:49 a.m.

Contested issues in the case include (i) whether the information announced at Treasury's press conference was actually confidential, (ii) whether the information was already public at the time Nothern traded, (iii) whether the "embargo" had any practical or legal effect whatsoever, (iv) whether, assuming that it did, Treasury could impose an "embargo" consistent with the First Amendment, (v) whether the consultant, Peter Davis, had a fiduciary or "fiduciary-like" duty to the Treasury not to disclose the information, and (vi) whether, even assuming such a duty, Nothern knew of it.  (Both Davis and Nothern have testified that he did not.)

### B.    Procedural History

In September 2003, the SEC filed suit against Peter Davis (the alleged tipper), John Youngdahl (an employee of Goldman Sachs whom Davis had called first and who admittedly knew that Davis had agreed to abide by the embargo), and Nothern in the Southern District of New York.  In November 2003, the SEC voluntarily dismissed its complaint against Nothern, who had objected to jurisdiction.

At the same time the SEC was conducting its investigation, DOJ was conducting a parallel criminal investigation, which in 2003 yielded an indictment of Youngdahl (who had lied

in the investigation) and a plea to a criminal information by Davis in the Southern District of

New York. *See United States v. Davis*, Criminal Action No. 03-1054 (S.D.N.Y.); *United States*

*v. Youngdahl*, Criminal Action No. 03-0991 (S.D.N.Y). Nothern voluntarily participated in

DOJ's investigation, testified truthfully to the SEC on December 4, 2001, and was never

indicted.

The SEC filed the present case against Nothern in this district over three years later on

May 11, 2005. On September 27, 2005, Nothern served his First Request for Production of

Documents. Among the documents he requested were all notes or other documentation of

interviews conducted by any federal agency or department in connection with the SEC's or

Justice Department's investigations. *See* Docket # 30, Ex. T, Request 4. In its response, the

SEC objected to this request to the extent it called for "the production of information and

documents that are protected from disclosure by the work product doctrine." *See* Docket # 30,

Ex. U, Objection to Request 4. In its original privilege log (Docket # 30, Ex. S), the SEC

claimed work-product protection for a variety of documents prepared by DOJ employees, as well

as for documents prepared by the SEC and forwarded to DOJ.

In the briefs submitted in support of his initial motion to compel documents held by other

government agencies, Nothern cited the inconsistency between the SEC's contention that it is

independent of other federal agencies and its contention that documents generated by DOJ

should be deemed the SEC's own work product. *See, e.g.*, Docket # 31, at 6, 17; Docket # 36, at

12. In his renewed motion to compel, Nothern argued that if the Court agreed "with the SEC that

Rule 34 does not apply to the entire federal government, and that Nothern may be refused the

documents held by other agencies consistently with due process," it should at least order the SEC

to produce those documents on its privilege log that were prepared by DOJ employees. *See*

Docket # 45, at 20. On November 17, 2006, in response to Nothern's renewed motion, the SEC

submitted to Nothern a revised privilege log and filed with the Court a declaration by SEC counsel providing background information on the DOJ documents at issue (Docket # 48).

At a hearing on January 4, 2007, Magistrate Judge Sorokin stated that while he would not rule on Nothern's request for production of these documents in the SEC's possession in the context of his motion to compel documents held by other government agencies, Nothern was free to make a new motion requesting such relief.

C.    **The Parties' Conference**

Pursuant to Local Rules 7.1 and 37.1, the parties held a telephone conference on Nothern's request on January 29, 2007. They succeeded in narrowing the issues for judicial resolution. Nothern stated that he would not seek to compel production of legal memoranda, draft pleadings, and other documents prepared by SEC personnel even if sent to DOJ. The SEC stated that it would release its claim of privilege with respect to notes of interviews prepared by DOJ personnel at interviews in which no SEC personnel participated. The parties did not reach an agreement on production of notes generated by DOJ personnel during interviews that were jointly conducted by the SEC and DOJ. The status of those documents is ripe for resolution by the Court.

## ARGUMENT

Because the SEC asserts the work-product protection, it has the burden of establishing that the doctrine applies. *In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004) (citing *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000)).

A.    **The Documents Are Clearly Relevant.**

According to the SEC's privilege log, the documents at issue are notes of interviews conducted of the following individuals:

| Interview Date | Witness | Document Numbers |
|---|---|---|
| 8/1/02 | Timothy Bitsberger | 137300-310 |
| 10/11/02 | Peter Davis | 136630-643 |
| 1/12/04 | William Dudley | 136655-658, 136672-675, 136779-782 |
| 1/12/04 | Irene Tse | 136661-666, 136678-683 |
| 2/3/04 | Peter Davis | 136644-648, 136650-654, 136667-671 |

The relevance of these interview notes is not contested.  Peter Davis is the alleged tipper.  To prove its claim against Nothern, the SEC must show, *inter alia*, that Davis had a fiduciary or "fiduciary-like" duty to Treasury, that he breached the duty by disclosing information to Nothern, and that Nothern knew at the time about Davis's duty to Treasury.  In addition, Timothy Bitsberger was a high-level Treasury official who was involved in the Treasury's decision to suspend the 30-year bond, its release of that information on October 31, 2001, and its subsequent investigation and response to the events of that day.  William Dudley and Irene Tse are partners at Goldman Sachs with knowledge about that firm's decision to trade on the information Davis provided to that firm on October 31, 2001.  It is highly likely that the notes for all five interviews contain information that is relevant to the claims and defenses in this case.

### B.    Documents Prepared by a Nonparty Are Not Protected Work Product.

It is undisputed that the notes in question were generated by a DOJ employee involved in DOJ's criminal investigation.  The SEC's log identifies Robert Manchak, a criminal investigator for the United States Attorneys' Office for the Southern District of New York, as the author of all five documents.

Federal Rule of Civil Procedure 26(b)(3), which codifies the work-product doctrine, provides that the protection applies only to documents that are prepared in anticipation of trial "by or for another party or by or for that other party's representative (including the other party's

attorney, consultant, surety, indemnitor, insurer, or agent)." The doctrine does <u>not</u> protect documents prepared by a nonparty or its representative – "even if the nonparty is a party to closely related litigation." 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 26.70[4] (3rd ed. 2006); *accord* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (2d ed. 2006) ("Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit.").

This point is well established in the case law. In *Doubleday v. Ruh*, 149 F.R.D. 601, 605-06 (E.D. Cal. 1993), the court rejected the protection for the criminal files of deputy district attorneys who were not parties to that civil rights action. In *Gomez v. City of Nashua*, 126 F.R.D. 432, 434 n.1 (D.N.H. 1989), an action against a municipal police department, the court rejected the state attorney general's assertion of work product as a ground for withholding an investigative file. *See also Tubar v. Clift*, No. C05-1154JCC, 2007 WL 30872, at *3-4 (W.D. Wash. Jan. 4, 2007) (documents generated by prosecuting attorney were not protected in suit against police department); *Hendrick v. Avis Rent-A-Car Sys., Inc.*, 916 F. Supp. 256, 259 (W.D.N.Y. 1996) (documents involving same defendant were not protected because they were prepared in connection with other litigation and not by plaintiff's counsel); *Hawkins v. South Plains Int'l Trucks, Inc.*, 139 F.R.D. 682, 684 (D. Colo. 1991) ("The language of the rule limits protection to one who is a party (or a party's representative) to the litigation in which discovery is sought. All recent case law is in accord.") (citations omitted).

Indeed, the SEC's refusal to produce the notes of the interviews it conducted jointly with DOJ is inconsistent with its production of memoranda on interviews of Treasury employees that it conducted jointly with Treasury in late 2001. Attached to the January 2002 report of Treasury's Office of Inspector General (OIG) – which the SEC produced to Nothern in full,

6

unredacted form – are eight memoranda stating that the subjects were "interviewed by attorneys Andrew Sporkin . . . and Rosemary Filou . . . of the Division of Enforcement, United States Securities and Exchange Commission (SEC), in coordination with Treasury, Office of General Counsel and the Office of Inspector General (OIG)." *See, e.g.*, Docket # 30, Ex. R. The SEC rightly declined to claim these memoranda as its work product, even though it maintains, notwithstanding the memoranda language quoted above, that it "conducted its investigation of this matter independent of any limited investigation being conducted by the Treasury's Office of Inspector General . . . or any other office in the Treasury." Docket # 32 at 5. There is no basis, by contrast, for the SEC's claim of work-product protection for the interview notes generated by DOJ.

### C.    The SEC Cannot Circumvent Rule 26(b)(3) by Claiming a DOJ Employee as its "Agent."

In its opposition to Nothern's renewed motion to compel (Docket # 46, at 15), the SEC argued that the interview notes are protected work product because DOJ's investigator Robert Manchak was "specifically assigned to be the central note taker[] for the attorney[s] present at the joint witness interviews conducted by Justice and the SEC" and, therefore, served as the SEC's "representative or agent" for purposes of Rule 26(b)(3).[2]

This position is unfounded. While it is well established that the work-product doctrine protects "materials prepared by agents for the attorney as well as those prepared by the attorney himself," *United States v. Nobles*, 422 U.S. 225, 238-39 (1975), there is no evidence here that

---

[2] *See also* Docket # 48, ¶ 7 (Declaration of SEC counsel John J. Rossetti Jr.) ("Counsel agreed that the one set of notes resulting from these interview sessions would be available for us by attorneys for the Commission and by the USAO."). In its Opposition to Nothern's renewed motion to compel, the SEC argued that DOJ's investigator functioned as the SEC's agent not only for the joint interviews, but also for "the witness interviews conducted by Justice without the assistance of the SEC." *See* Docket # 46, at 15; Docket # 48, ¶ 10. As discussed above, the SEC has since withdrawn its claim of work-product protection with respect to the interviews conducted solely by DOJ personnel.

investigator Manchak represented the SEC in any capacity or otherwise served as its "attorney, consultant, surety, indemnitor, insurer, or agent," Fed. R. Civ. P. 26(b)(3). There is no evidence that the SEC retained, employed, or compensated Manchak. There is no evidence of an agreement defining Manchak's relationship with the SEC. There is no evidence that counsel for the SEC had any authority to "assign" responsibilities to Manchak. There is no reason why the five SEC attorneys who, at different times, attended the five interviews (*see* Docket # 48, ¶ 8) could not have taken notes on their own – or at least brought along another SEC employee to do so.

Furthermore, the contention that investigator Manchak served as the SEC's "representative or agent" during joint SEC-DOJ witness interviews is completely inconsistent with the SEC's opposition to Nothern's motion to compel documents held by DOJ and Treasury. For more than a year, the SEC has vigorously fought Nothern's efforts to obtain DOJ and Treasury discovery from it on the ground that it is a wholly separate and distinct party from those agencies. *See, e.g.*, Docket # 32, at 9 (describing itself as "an independent regulatory agency" that was "intentionally created to be somewhat apart from the government, in general"); *id.* at 10 ("independent regulatory agencies of the government and departments of the Executive Branch, like Treasury and Justice, are separate and distinct entities that do not possess or control one another, or one another's documents"); Docket # 46, at 10 ("The SEC does not control any other government agency or its documents, has no access to their buildings or files, and cannot . . . simply demand and receive documents from these agencies."); *see also* Docket # 52, at 7 (other government agencies "did not have input in, or control over, the SEC's investigation of Nothern's trading, or its decision to file this action"). The SEC cannot at the same time withhold the production of DOJ documents already in its possession, on the theory that the DOJ employee who prepared them was the SEC's agent.

Indeed, were such an agency relationship to actually exist between Manchak and the SEC, it would raise serious questions about the improper "merging" of the DOJ and SEC investigations. While it is well established that the SEC and DOJ may conduct parallel civil and criminal investigations, "[t]o be parallel, the separate investigations should be like the side-by-side train tracks that never intersect." *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1139 (N.D. Ala. 2005). In recent years, courts have criticized these two agencies for crossing the line. The court in *Scrushy*, for example, held that the government departed from the proper administration of justice when "the S.E.C. civil investigation became inescapably intertwined with the criminal investigation conducted by the Department of Justice *and* [counsel] of the S.E.C." *Id.* at 1140 (emphasis in original). In *United States v. Stringer*, 408 F. Supp. 2d 1083 (D. Or. 2006), the court dismissed indictments and suppressed SEC interview statements after learning that DOJ had decided to withhold its own investigation while relying "on the work product generated by the SEC investigators." *Id.* at 1086. It explained that the two agencies had "engaged in an obnoxious form of using parallel proceedings," with DOJ "hiding behind the civil investigation to obtain evidence, avoid criminal discovery rules, and avoid constitutional protections." *Id.* at 1089 (quoting *United States v. Rand*, 308 F. Supp. 1231, 1234 (N.D. Ohio 1970). *See also SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003) ("Because this is a case where the government has undoubtedly manipulated simultaneous criminal and civil proceedings, both of which it controls, 'there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means. In that special situation the risk to individuals' constitutional rights is arguably magnified.'") (citation omitted).

In *SEC v. Nacchio*, 438 F. Supp. 2d 1266 (D. Colo. 2006), the court refused to strike a defense of unclean hands "based on the claim that the SEC improperly commingled its

investigation into this case with a criminal investigation being conducted by the Department of Justice." *Id.* at 1287-88. While the court acknowledged that further development of the facts was necessary, it noted "a lack of precision in the SEC's reply brief, which argues for the permissibility of 'civil and criminal actions [pursued] simultaneously or successively,' 'simultaneous investigations,' and 'cooperat[ion] and shar[ing] information relating to their investigations.'" *Id.* at 1287 n.14. "However," it continued, "the SEC has apparently freely admitted that, in this case, it has conducted 'joint witness interviews with DOJ personnel.' Caselaw approving of simultaneous-yet-independent investigations or the sharing of limited or general information is not especially helpful in analyzing the propriety of investigations, such as the one here, involving jointly-conducted witness interviews." *Id.*

Here, the SEC not only admits that it conducted the five witness interviews jointly with DOJ, but also contends that because a DOJ investigator served as the SEC's own agent, his work product is also the SEC's. Even if this position were supported by the record and consistent with the SEC's prior arguments in this case (it is not), it would violate the well-established prohibition against the improper "merger" of civil and criminal government investigations. For all of these reasons, the Court should reject the SEC's claim of work-product protection.

**D.    There Is No Evidence of a Common-Interest Agreement.**

Finally, the SEC has argued (Docket # 46, at 15-16) that because "Justice and the SEC shared a common litigation interest" and "faced common adversaries on similar issues," DOJ's notes are "no less deserving of work-product protection than other attorney notes creates in anticipation of litigation or trial." The SEC appears to be referring to the "common interest" doctrine, also referred to as the "joint defense" privilege. *See In re Grand Jury Subpoena*, 274 F.3d 563, 572 (1st Cir. 2001). Even assuming that this doctrine can apply to parallel investigations conducted by two federal enforcement agencies, however, it is well established

that a party seeking to invoke the doctrine must first prove that it *entered into* a joint-defense or common-interest agreement. *United States v. Sawyer*, 878 F. Supp. 295, 297 (D. Mass. 1995); *see also In re Grand Jury Subpoena*, 274 F.3d at 569 (rejecting claimed oral joint defense agreement unsupported by evidence other than lawyer's affidavit); *In re Bevil, Bresler & Shulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (rejecting joint defense privilege because the party "produced no evidence that [there was an agreement] to pursue a joint defense strategy").

There is no evidence that DOJ and SEC entered into a common-interest agreement here. The SEC has cited a November 9, 2001 "Access Request by the United States Attorney for the Southern District of New York and the SEC's November 14, 2001 Approval of the Request." *See* Docket # 46, at 14; Docket # 33, Ex. Q. This access request, however, did not mention the "joint defense" or "common interest" doctrine or even cite any interest common to the SEC and DOJ. Indeed, far from agreeing to maintain the confidentiality of all files and information received, the DOJ specifically reserved its right to use the files and information "for the purpose of our investigation and/or proceeding, and any resulting proceeding," *and* to transfer them "to criminal law enforcement authorities and self-regulatory organizations subject to our oversight." *See* Docket # 33, Ex. Q at 1 (letter of Robert Khuzami, Chief, Securities and Commodities Fraud Task Force, Office of the United States Attorney, dated Nov. 9, 2001).

Furthermore, the SEC has not cited any agreement even arguably applicable to the specific matter at hand: the transfer of *DOJ work product* to the SEC. In its supporting declaration (Docket # 48, at ¶¶ 13-15), SEC counsel asserts that SEC staff "anticipated that the notes created during the joint witness interviews of Davis, Dudley, Tse, and Bitsberger would be used in the preparation of any such litigated enforcement actions," and requested these notes from DOJ for the purpose of drafting their "Action Memoranda" to the Commission itself. The

SEC's subjective expectations and motivations, however, are irrelevant to whether a common-interest agreement existed. *See United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20 (1st Cir. 1989) (holding that even though party "might have subjectively thought" that information would be kept confidential, "the 'key question' is what was objectively reasonable under the circumstances") (citation omitted); *Sawyer*, 878 F. Supp. at 297 n.1 ("[O]ne party's mistaken belief about the existence of a joint defense does not, and cannot, give rise to a joint defense privilege."). These subjective expectations are likewise irrelevant to whether the notes constitute the SEC's own work product. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) "[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one."). Because there is no evidence that the SEC and DOJ entered into a common-interest agreement, and no evidence that DOJ's notes were prepared by the SEC's representative for purposes of Rule 23(b)(3), the Court should order the SEC to produce them.

## CONCLUSION

For the foregoing reasons, the Court should enter an order compelling the SEC to

produce its documents bearing Bates nos. SECNOTH 136630-648, 136650-654, 136667-671,

136655-658, 136672-675, 136779-782, 136661-666, 136678-683, and 137300-310.

STEVEN E. NOTHERN

By his attorneys,

/s/ John A. Shope
Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  February 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ John A. Shope