UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | Civil Action No. 05-CV-10983 (NMG) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| STEVEN E. NOTHERN, | ) ) | |
| Defendant. | ) | |

U.S. SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO
DEFENDANT STEVEN E. NOTHERN'S MOTION TO COMPEL
<u>PRODUCTION OF PLAINTIFF'S WORK-PRODUCT</u>

# TABLE OF CONTENTS

I. BACKGROUND ..................................................................................................1

II. ARGUMENT ......................................................................................................3

    A. Interview Notes Created For, And At The Direction Of, SEC Attorneys Are Protected From Disclosure Pursuant To The Attorney Work-Product Doctrine ...................................................................................3

    B. Nothern Has Failed To Cite To Any Authority That Supports His Motion To Compel The SEC To Produce Its Work-Product Protected Interview Notes ..................................................................................7

    C. Nothern Cannot Meet The Heavy Burden Necessary to Overcome The Work-Product Privilege ..........................................................................10

    D. The SEC Has Not Waived The Work Product Protection Of Its Interview Notes .................................................................................................12

III. CONCLUSION .................................................................................................14

## TABLE OF AUTHORITIES

### CASES

*In Re Atlantic Financial Management Securities Litigation,*
121 F.R.D. 141 (D. Mass. 1988) .................................................................. 4, 12

*Caremark, Inc v. Affiliated Computer Services, Inc.,* 195 F.R.D. 610
(N.D. Ill. 2000) .................................................................................................. 6

*Colonial Gas Co. v. Aetna Casualty & Surety Co.,* 139 F.R.D. 269
(D. Mass. 1991) .............................................................................................. 11

*Director, Office of Thrift Supervision v. Vinson & Elkins, LLP,* 124 F.3d 1304
(D.C. Cir. 1997) ............................................................................................. 11

*In re Grand Jury Investigation,* 599 F.2d 1224 (3rd Cir. 1979) ............................ 11

*In re Grand Jury Proceedings,* No. M-11-189, 2001 WL 1167497
(S.D.N.Y. Oct. 3, 2001) ................................................................................... 6

*In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129,* 902 F.2d 244
(4th Cir. 1990) ............................................................................................... 13

*Hickman v. Taylor,* 329 U.S. 495 (1947) ............................................................ 3, 4

*Ken's Foods, Inc. v. Ken's Steak House, Inc.,* 213 F.R.D. 89 (D. Mass. 2002) .......... 13, 14

*In re Raytheon Securities Litigation,* 218 F.R.D. 354 (D. Mass. 2003) ................ 10

*In re Sealed Case,* 856 F.2d 268 (D.C. Cir. 1988) ................................................. 4

*SEC v. Cavanagh,* No. 98 CIV. 1818 (DLC), 1998 WL 132842
(S.D.N.Y. Mar. 23, 1998) ................................................................................ 4

*SEC v. Downe,* No. 92 CIV. 4092 (PKL), 1994 WL 23141
(S.D.N.Y. Jan. 27, 1994) .............................................................................. 4, 5

*SEC v. Dresser Industries, Inc.,* 628 F.2d 1368 (D.C. Cir. 1980) ..................... 9, 12

*SEC v. Nacchio,* 438 F.Supp.2d 1266 (D. Colo. 2006) .......................................... 8

*SEC v. Navarre,* No. 92 CIV. 3719 (PNL), 1993 WL 267295
(S.D.N.Y. Jul. 13, 1993) .................................................................................. 4

*SEC v. Sandifur,* No. C05-1631C, 2006 WL 1719920
(W.D. Wash. Jun 19, 2006) ........................................................................................9

*SEC v. Talbot,* No. CV044556-MMM (PLAX), 2005 WL 1213797
(C.D. Cal. Apr. 21, 2005)..........................................................................................4

*Sprague v. Director, Office of Workers' Compensation Programs, U.S. Dept. of
Labor,* 688 F.2d 862 (1st Cir. 1982) ........................................................................6

*United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951) ...................................................2

*United States v. American Tel. And Tel. Co.,* 642 F.2d 1285 (D.C. Cir. 1980) ................12

*United States v. Bay State Ambulance & Hospital Rental Serv., Inc.,*
874 F.2d 20 (1st Cir. 1989).....................................................................................13

*United States v. Gericare Medical Supply Inc.,* No. CIV.A99-0366-CB-L,
2000 WL 33156442 (S.D. Ala. Dec. 11, 2000) ........................................................6

*United States v. Kordel,* 397 U.S. 1 (1969) .........................................................................9

*United States v. Nobles,* 422 U.S. 225 (1975) .................................................................3, 6

*United States v. Scrushy,* 366 F.Supp.2d 1134 (N.D. Ala. 2005)....................................7, 8

*United States v. Stringer,* 408 F.Supp.2d 1083 (D. Or. 2006) ........................................7, 8

*Upjohn Co. v. United States,* 449 U.S. 383 (1981) .......................................................4, 10

## FEDERAL STATUTES

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 26(b)(c)..................................................................................................................2-6

Rule 26(e)(3)....................................................................................................................10

The Securities and Exchange Commission ("SEC" or the "Commission") files this opposition to Defendant Steven E. Nothern's Motion to Compel the SEC to produce its protected work-product.[1] Nothern mistakenly asserts that he is seeking production of Justice Department documents, however the interview notes that are subject of his motion to compel were drafted for, and at the direction of, SEC attorneys and are the SEC's work-product.

For the reasons set forth below, the SEC respectfully requests that the Court deny Nothern's motion to compel in its entirety.

## I. <u>BACKGROUND</u>

It is undisputed that the SEC provided Nothern with a copy of all of the non-privileged documents contained in its investigative file as part of its initial disclosures in this case. Although he had already received all of the non-privileged documents the SEC had in its possession related to this case, on September 27, 2005, Nothern served the SEC with sixty-six overly broad and unduly burdensome document requests, in which he erroneously defined the plaintiff in this action as not only including the SEC, but the entire United States government. In his document requests, Nothern sought to have the SEC produce documents not only from its files, but from the files of Executive Branch departments and other independent regulatory agencies. In response, the SEC asserted numerous objections, including but not limited to, an objection to producing documents from other government agencies that were outside of the SEC's possession, custody and control.

Although the SEC offered to assist Nothern in obtaining voluntary discovery from other government agencies in an effort to resolve the parties' discovery dispute, Nothern refused the SEC's offer. On February 17, 2006, Nothern filed a motion to compel the SEC to produce documents from other government departments and agencies, including the United States Department of Treasury ("Treasury"), the United States Department of Justice ("Justice") and the

---

[1] All references to Nothern's Memorandum In Support Of His Motion To Compel Production Of Justice Department Documents In The SEC's Possession will be referred to herein as ("motion to compel").

1

Commodity Futures Trading Commission ("CFTC"). In June, after participating in a hearing before the Court, the parties agreed to engage in efforts to obtain voluntary discovery from Treasury, Justice and the CFTC. As a result of the SEC's willingness to engage in this voluntary discovery, Nothern received hundreds of pages of documents responsive to his requests, but he was still dissatisfied. On October 30, 2006, Nothern renewed his motion to compel and narrowed the information he sought to those documents held in the files of Treasury and Justice that were responsive to his requests. Docket # 44. Additionally, on November 17, 2006, Nothern filed a motion requesting that the Court order the SEC to show cause why its case should not be dismissed for Treasury's denial of his requests to depose five current and former Treasury employees, pursuant to its *Touhy* regulations.[2] Docket # 49. On January 24, 2007, this Court denied Nothern's renewed motion to compel and Nothern's motion for an Order to show cause based on the SEC's "powerful" argument that "independent regulatory agencies [like the SEC] and Executive Branch departments are separate and distinct entities which do not control one another's documents within the meaning of Rule 34." Docket # 63 at 9-10.

In the wake of receiving a decision in the SEC's favor on both of his discovery motions, Nothern now seeks to compel the SEC to produce copies of notes prepared for, and at the direction of, SEC attorneys at witness interviews the SEC conducted with counsel for Justice during the SEC's pre-lawsuit investigation of trading in the 30-year bond. Docket # 48, ¶ 7. Specifically, Nothern seeks to compel the SEC to produce protected notes of the August 1, 2002 interview of Timothy Bitsberger, the October 11, 2002 and February 3, 2004 interviews of Peter Davis, and the January 12, 2004 interviews of William Dudley and Irene Tse. Motion to Compel at 5. During these interviews attorneys from the SEC posed questions to the witnesses, but did not take any notes, relying instead on the notes of Investigator Robert Manchak, an employee of Justice, who agreed to take notes on the SEC attorneys' behalf. *Id.* ¶¶ 7-9. Nothern's motion to

---

[2] The term "*Touhy* regulations" refers to those regulations promulgated by agencies in accordance with the United States Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

2

compel is based on his view that although Investigator Manchak was assigned by SEC attorneys to take notes for use by the SEC, he had to be employed by the SEC for work-product protection to apply. Nothern's view is not supported by the facts or the law, contradicts the language and purpose of the work-product doctrine, and should be rejected.

## II. ARGUMENT

### A. Interview Notes Created For, And At The Direction Of, SEC Attorneys Are Protected From Disclosure Pursuant To The Attorney Work-Product Doctrine.

The Supreme Court first enumerated the attorney work-product doctrine in *Hickman v. Taylor,* 329 U.S. 495 (1947). The Court held that a party generally cannot discover the mental impressions, conclusions, opinions or legal theories of an attorney or other representatives of a party concerning litigation. *Id.* The Court noted that an attorney's mental impressions are reflected in " interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. *Id.* at 510-11. The Court further noted that the general policy against invading the privacy of an attorney's course of preparation is "so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade the privacy to establish adequate reasons to justify production." *Id.* at 512.

In 1970, the work-product doctrine was codified, in part, in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which protects from discovery, among other things, documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Since the promulgation of Rule 26(b)(3), the Supreme Court has held that "[t]he work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, n.11 (1975). " It is not designed to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an

3

attorney's work" from the discovery attempt of an opponent. *In Re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145 (D. Mass. 1988).

Witness interview notes prepared in anticipation of litigation are accorded a strong work-product protection. *See Upjohn Co. v. United States,* 449 U.S. 383, 401 (1981) (finding that attorney notes and memoranda of witnesses' oral statements are protected by the work-product doctrine and noting that "[i]t is clear that this is the sort of material that the draftsmen of the Rule had in mind as deserving special protection."); *Hickman v. Taylor*, 329 U.S. 495, 510 (finding that production of such witness statements "contravenes the public policy underlying the orderly prosecution and defense of legal claims"). Courts have routinely recognized that the work-product doctrine extends to witness interview notes taken in the course of Commission investigations. *See SEC v. Talbot*, No. CV044556-MMM (PLAX), 2005 WL 1213797, at *3 (C.D. Cal. April 21, 2005) (rejecting defendant's motion to compel the SEC to produce witness interview notes taken during the SEC's pre-lawsuit investigation); *SEC v. Cavanagh*, No. 98 CIV 1818 (DLC), 1998 WL 132842 (S.D.N.Y. Mar. 23, 1998) (granting protective order, finding notes of witness interview protected by the work-product privilege); *SEC v. Downe*, No. 92 CIV. 4092 (PKL), 1994 WL 23141 (S.D.N.Y. Jan. 27, 1994) (denying motion to compel production of notes of witness interviews); *SEC v. Navarre*, No. 92 Civ. 3719 (PNL), 1993 WL 267295, at * 1 (S.D.N.Y. Jul. 13, 1993) (granting protective order to prevent disclosure of notes of witness interviews); *see also SEC v. Zwick et al.*, Civil Action No. 03 Civ. 2742, October 14, 2004 Order of M.J. Pitman (attached as Exh. A to the Declaration of Erica Y. Williams filed herewith) (denying defendant's motion to compel postal inspector to testify concerning statements made during a proffer session of third party in which attorneys from the SEC and Justice posed questions on the grounds that such testimony would reveal the attorneys' protected work-product); *In re Sealed Case*, 856 F.2d 268, 319 (D.C. Cir. 1988) (holding district court properly denied motion to compel deposition answers from Commission staff involving their recollection of witness interviews conducted during investigation).

The witness interview notes at issue in Nothern's motion to compel are entitled to work-product protection. While Nothern is correct that Investigator Manchak, the individual who drafted the interview notes at issue, was employed by Justice at the time of the interviews, he nonetheless agreed to take the notes for, and at the direction of, SEC attorneys. In an effort to provide a clear consistent record, attorneys for the SEC and Justice designated Investigator Manchak to be the *sole* note taker during their joint witness interviews. Docket # 48, ¶ 7. SEC attorneys actively participated in the interviews by posing questions to the witnesses based on their legal analysis and thought processes, and relied on Investigator Manchak to take notes of the interviews on their behalf. *Id.*, ¶¶ 7-9. The resulting interview notes, which are not verbatim accounts of the interviews, but are summary in nature, reveal the subject areas the attorneys from the SEC and Justice believed to be significant, and are suggestive of their legal strategy. *Id.*, ¶ 9. The interview notes also reflect the impressions, conclusions and legal theories of SEC attorneys developed during the course of the SEC's investigation into trading in the 30-year bond. *Id.*, ¶ 9. The fact that Investigator Manchak was not paid by the SEC, and was also taking notes for attorneys from Justice, in no way negates the fact that he served as the note-taking agent of the SEC. But for their assigning note-taking responsibilities to Investigator Manchak, attorneys from the SEC would undoubtedly have taken their own notes to memorialize the discussion that took place during the witness interviews.

Rule 26(b)(3), by its plain language, protects information, like the interview notes at issue, that are prepared in anticipation of litigation "by or for another party."[3] The Supreme Court, recognizing that attorneys often must rely on the assistance of investigators and other

---

[3] Nothern does not dispute, nor could he, that these interview notes were created "in anticipation of litigation or trial." At the time the documents were created, the Commission had already issued a Formal Order of Investigation of trading in the 30-year bond on October 31, 2001. Docket # 48, ¶¶ 7, 11. The fact that a Commission investigation into trading in the 30-year bond by the Commission's Division of Enforcement had commenced when the documents were created is itself "strong circumstantial evidence" that they were made in anticipation of litigation. *See SEC v. Downe*, 1994 WL 23141 at *2.

agents in the compilation of materials in preparation for trial, has held that work-product "protection can extend to materials prepared by an attorney's agent, if that agent acts at the attorney's direction in creating such documents." *U.S. v. Nobles*, 422 U.S. at 238-239. The determination of whether a document is protected by the work-product doctrine depends on the motivation behind its preparation, not "on the person who prepared it." *Caremark, Inc v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000). The motivation behind the preparation of the five interview notes at issue was to prepare a confidential summary of the interviews for the SEC's attorneys' use in preparation of any litigation that may be brought by the SEC as a result of its investigation into trading in the 30-year bond. Docket # 48, ¶¶ 9, 11-16.

The First Circuit has taken a broad view in interpreting the scope of Rule 26(b)(3) and has extended work-product protection to documents prepared for a party's attorneys. In *Sprague v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 688 F.2d 862, 870 (1st Cir. 1982), the Court found that a letter prepared by a doctor at the request of a party's attorney was "unquestionably work-product protected." The Court noted that "the work-product doctrine must necessarily apply to materials prepared on an attorney's behalf . . . because the attorney must often rely on the assistance of others 'in the compilation of materials in preparation for trial.'" (citing and quoting *U.S. v. Nobles*, 422 U.S. at 238, 239, n. 13). Courts in other jurisdictions have also found that the work-product doctrine extends to documents created for a party's attorneys. *See e.g., U.S. v. Gericare Medical Supply Inc.*, No. Civ.A.99-0366-CB-L, 2000 WL 33156442, at *3 (S.D. Ala. Dec. 11, 2000) (upholding Magistrate Judge's holding that notes of Special Agents who were not representatives of the plaintiff, but were working on the plaintiff's behalf were protected work-product); *In re Grand Jury Proceedings*, No. M-11-189, 2001 WL 1167497, at *19-20 (S.D.N.Y. Oct. 3, 2001) (finding that notes of an investigator who working on behalf of Doe Corp., and notes of an employee of Doe Corp., taken at a meeting with counsel were protected work-product because both the investigator and employee were acting as agents of Doe Corp.'s counsel). These cases make clear that the interview notes at issue in Nothern's motion to compel, which were created for attorneys from the SEC in anticipation of

litigation, and reflect the SEC attorneys' mental impressions and thought processes, are protected from disclosure under the attorney work-product doctrine.

### B. Nothern Has Failed To Cite To Any Authority That Supports His Motion To Compel The SEC To Produce Its Work-Product Protected Interview Notes.

The cases that Nothern relies on in his motion do not support his claim that the notes at issue are Justice's rather than the SEC's work-product. While Nothern provides authority for the proposition that the work-product doctrine does not protect documents created for persons who are not parties to the current suit, that authority is inapplicable to this case because the interview notes at issue here were created for the SEC, which is a party to this litigation. Motion to Compel at 6. Nothern's claim that there is no evidence that SEC counsel entered into an agreement with Investigator Manchak to take notes on their behalf is false. The SEC previously filed a sworn declaration by SEC Senior Counsel John J. Rossetti Jr., who participated in three of the five interviews in question, and attests to the agreement between counsel for the SEC and Investigator Manchak. Docket # 48, ¶¶ 7-9. Nothern has not posited any evidence to contradict the representations made in Mr. Rossetti's sworn declaration.[4]

Additionally, Nothern's argument that Investigator Manchak could not have been acting as an agent of the SEC when he agreed to serve as the sole note taker during the five interviews at issue, because it would constitute an improper "merging" of the SEC and Justice is not supported by law, and should not be credited. Nothern concedes that "it is well-established that

---

[4] Nothern suggests that the SEC attorneys should have brought "another SEC employee" to the interviews of the five witnesses, rather than assigning note-taking responsibility to Investigator Manchak. Motion to Compel at 8. Fed. R. Civ. P. 26(b)(3), however, protects documents created in anticipation of litigation "by or for another party" or its agent, including its attorneys. The Rule does not require the person creating the documents to be an employee of the party as long as they are working for, or at the direction of, the party or its agent. *See* Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment ("Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf. The rule then goes on to protect against disclosure the mental impressions, conclusions, opinions or legal theories concerning the litigation of an attorney or other representative of a party.").

the SEC and DOJ [Justice] may conduct parallel civil and criminal investigations." Motion to Compel at 9. Nonetheless, Nothern relies on *United States v. Stringer* ("*Stringer*"), 408 F. Supp. 2d 1083 (D. Or. 2006), *United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005) ("*Scrushy*") and *SEC v. Nacchio*, 438 F. Supp. 2d 1266 (D. Colo. 2006) ("*Nacchio*") to support his claim that the SEC cannot assign an investigator who is employed by Justice to take notes on its behalf. *Stringer*, *Scrushy* and *Nacchio* are factually and legally distinguishable from this case.

In *Nacchio* the United States District Court for the District of Colorado did not even consider, let alone decide, the merits of the defendant's claim that the SEC and Justice improperly commingled their investigations by conducting joint witness interviews. The Court, in fact, agreed "with the SEC that coordination between civil and criminal investigations serves important public purposes." 438 F. Supp. 2d at 1287. In *Stringer*, the court also did not address, the issue of whether the SEC and Justice may participate in joint interviews during their parallel investigations. In fact, the court found that the SEC and Justice had not conducted parallel investigations, but had worked together on a single investigation in which the USAO hid behind the SEC to sidestep the defendants' constitutional rights, and used the SEC's civil investigation to obtain evidence for a criminal prosecution. 408 F. Supp. 2d at 1087-1089. Similarly, in *Scrushy*, the court concluded that attorneys for the SEC and Justice improperly commingled their investigations "to keep Mr. Scrushy in the dark regarding the criminal investigation." 366 F. Supp. 2d at 1337-1339.

In contrast to the findings in *Stringer* and *Scrushy*, in this case neither the SEC nor Justice engaged in any actions to conceal Justice's parallel criminal investigation into trading in the 30-year bond. Indeed, the fact that the two agencies participated in joint interviews of key witnesses, including Peter Davis, the consultant who provided Nothern and other clients with material non-public information regarding Treasury's decision to cancel the 30-year bond, demonstrates that the witnesses interviewed, and the potential defendants, were made aware of the parallel investigation by Justice. Additionally, there is no evidence that Justice directed or interfered with the SEC's conduct during its parallel civil investigation. *See generally, SEC v.*

8

*Sandifur*, No. C05-1631C, 2006 WL 1719920, at *2-3 (W.D. Wash. June 19, 2006) (distinguishing *Stringer* and *Scrushy*). Contrary to Nothern's assertions, *Stringer, Scrushy* and *Nacchio* do not prohibit attorneys from the SEC and Justice from conducting joint interviews of witnesses, nor do they preclude SEC attorneys from assigning an investigator, who happens to be employed by Justice, to take notes on their behalf during those joint interviews.[5]

The final argument made by Nothern in support of his motion is that the SEC's production of Treasury's Office of Inspector General ("OIG") report is somehow inconsistent with its refusal to produce its work-product protected interview notes. This argument is also unpersuasive. While the five interview notes at issue in Nothern's motion to compel were taken for, and at the direction of, SEC counsel, the memoranda of activity contained in Treasury's OIG report ("the OIG memoranda") are summaries that were prepared by Treasury employees for, and at the direction of, Treasury's OIG.[6] The SEC was not involved in Treasury's OIG investigation, and had no input in the drafting of the OIG memoranda or the OIG report. Docket # 33, ¶¶ 2-3. Attorneys from the SEC took their own notes during the interviews they conducted of Treasury employees that were arranged with the assistance of Treasury's OIG counsel – they did not designate anyone from Treasury to take notes on their behalf.[7] Because Treasury's OIG memoranda and OIG report were not created by or for the SEC or its attorneys in anticipation of the SEC's litigation, the SEC did not claim that those documents were the SEC's work product.

---

[5] *See generally United States v. Kordel*, 397 U.S. 1, 12 (1969) (finding that evidence obtained from civil actions by government agencies may be used in parallel criminal proceedings absent bad faith or other "special circumstances," such as violation of a constitutional right); *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1377 (D.C. Cir. 1980) ("Effective enforcement of the securities laws requires that the SEC and Justice be able to investigate possible violations simultaneously.")

[6] Many of the OIG memoranda were not even drafted until several weeks after the interviews of Treasury's witnesses. *See e.g.*, Docket # 30, Exh. R (noting the date of the OIG interview as November 15, 2001 and the date of the memoranda as December 30, 2001).

[7] Counsel for the SEC has claimed work-product protection for the interview notes taken by its attorneys during the interviews of Treasury witnesses. *See e.g.*, Docket # 30, Exh. S (Bates Nos. 137214-245, 137528-268, 137546-257, 137270-275, 140964-141016).

Thus, contrary to Nothern's allegations, the SEC's decision to produce the Treasury's OIG memoranda and OIG report is in no way inconsistent with its decision to withhold the five protected interview notes at issue in Nothern's motion to compel, which were created for SEC counsel in anticipation of litigation. Notably, by the time the SEC produced Treasury's OIG report to Nothern, he had already received a redacted copy of the report from Treasury, which revealed the substance of the OIG memoranda. Docket # 20, Exh. A.

### C. Nothern Cannot Meet The Heavy Burden Necessary To Overcome The Work-Product Privilege.

In the specific case of attorney interview notes, Rule 26(e)(3) places a heavy burden on the party seeking to invade the work-product privilege. *See Upjohn Co. v. United States,* 449 U.S. at 401 (finding attorney notes and memoranda of witnesses' oral statements are protected from disclosure by work-product doctrine and noting that "Rule 26 and *Hickman* make clear, such work-product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship"). Attorney interview notes, like the notes at issue in Nothern's motion to compel, which contain opinion work-product, and reveal attorney mental impressions, conclusions, opinions or legal theories, receive almost absolute protection under the Rule. *See In re Raytheon Securities Litigation,* 218 F.R.D. 354, 357 (D. Mass. 2003) (citations omitted) ("the Rule provides that the court 'shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation'").

Nothern cannot satisfy the heavy burden necessary to prove that he is entitled the production of the SEC's protected interview notes. In fact, he cannot even satisfy the lesser burden of providing a substantial need for the notes and an inability to obtain the information contained in the notes from other sources without undue hardship. Courts in this district have held that "[d]iscovery of work-product will . . . be denied where the party seeking discovery can obtain the information by taking the deposition of witnesses . . . . Neither inconvenience, nor

expense, constitute sufficient cause to find undue hardship." *Colonial Gas Co. v. Aetna Casualty & Surety Co.*, 139 F.R.D. 269, 275 (D. Mass. 1991) (citations omitted). The possibility (or even the likelihood) that prior witness statements may contain inconsistencies with later testimony does not permit invasion of the work-product privilege, particularly where that information is available through depositions of the witness. *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979), *see also Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) (finding that appellant's "need" to find corroborative evidence is not a substantial need that overcomes the work-product privilege).

Nothern has already taken the deposition of Peter Davis, the only individual who participated in the joint interviews conducted by attorneys for the SEC and Justice that is relevant to the claims and defenses in this case.[8] During this deposition, Nothern questioned Mr. Davis about his involvement in the actions that gave rise to this case, and about his previous discussions with counsel for the SEC, including those discussions that are memorialized in the SEC's protected interview notes. Nothern chose not to take the depositions of Mr. Bitsberger, Mr. Dudley and Ms. Tse, the other three individuals who participated in joint interviews with the SEC and Justice. Because Nothern has already taken the deposition of Peter Davis, and was free to depose the other three witnesses who were interviewed by the SEC and Justice, he cannot meet

---

[8] The SEC disputes Nothern's contention that the interview notes of Timothy Bitsberger, William Dudley and Irene Tse are relevant to this case. Mr. Bitsberger's involvement in the facts that give rise to this insider trading case against Nothern was minimal. Mr. Bitsberger did not announce the cancellation of the 30-year bond, was not involved in the posting of Treasury's October 31, 2001 press release (PO-749) on Treasury's website, and does not have knowledge of Mr. Nothern's trading. Notably, while Nothern has sought to depose a total of fourteen current and former Treasury employees, he has never requested to take the deposition of Mr. Bitsberger. Nothern has also not sought to take the depositions of William Dudley, Irene Tse, or any other representatives from Goldman Sachs. Contrary to Nothern's assertions Mr. Dudley's and Ms. Tse's alleged knowledge of Goldman Sachs' decision to trade on information that it received from Peter Davis on October 31, 2001 is not relevant to any claims or defenses in this action regarding Nothern's illegal insider trading.

the heightened showing of extraordinary circumstances needed to obtain discovery of the SEC's work-product protected interview notes.

> D.  **The SEC Has Not Waived The Work Product Protection Of Its Interview Notes.**

Any claims that the SEC waived the work-product protection of the five interview notes at issue by sharing them with Justice should be rejected. It is well-established in this jurisdiction that a party does not automatically waive work-product protection by disclosing information to another person. "A disclosure made in the pursuit of such trial preparation and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege." *In Re Atlantic Financial Management Securities Litigation*, 121 F.R.D. at 145 (citing and quoting *U.S. v. American Tel. & Tel.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). The existence and extent of waiver depends on the following factors: "(1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege." *Id.* When applied to this case, these factors weigh strongly in favor of the Court finding that the work-product protection of these documents has not been waived.

Neither the SEC, nor Justice, has sought to use the work-product privilege in a way that is inconsistent with its purpose in this case. On the contrary, attorneys for the SEC and Justice permissibly shared work product, including the five interview notes at issue in Nothern's motion to compel, to facilitate their parallel investigations into trading in the 30-year bond. *See SEC v. Dresser*, 628 F.2d at 1377 (finding that the SEC is permitted to "transfer fruits of its investigations to Justice in the event of potential criminal proceedings"). The SEC shared work-product with attorneys for Justice, pursuant to a November 9, 2001 access request in which Justice represented that it would "establish and maintain such safeguards as are necessary and appropriate to protect the confidentiality of files to which access is granted and information

12

derived therefrom," and "would make no public use of [the files produced by the SEC in response to the access request] without prior approval of the [SEC] staff" and would "not grant any demand or request for the files or information [except legally enforceable demands] without prior notice to and objection by [SEC] staff." *See* Docket # 33, Exh. Q.

SEC attorneys understood that the work-product shared between attorneys for Justice and the SEC was privileged, and that they were expected to keep it confidential. Docket # 48, ¶ 10. In addressing whether a communication was intended to be kept confidential, the First Circuit has found that the key question is "what was reasonable under the circumstances." *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989) (citations omitted). The five interview notes at issue in this case were taken during proffer sessions where attendance was limited to the witnesses, their attorneys and attorneys and agents of the SEC and Justice. Docket #48, ¶ 7-9. They were transmitted by Investigator Manchak to the SEC with a cover sheet stamped "Confidential." Both the SEC and Justice have refused to produce the interview notes to Nothern or any non-party witnesses. Docket #48, ¶ 16, Docket # 39, Exh. C. Based on the circumstances under which the interview notes were taken and transmitted, it is reasonable to find that the SEC and Justice intended to maintain the confidentiality of the notes.

The SEC and Justice were also permitted to share the interview notes in question without waiving the work-product protection of the notes under the common-interest doctrine, otherwise known as the common-interest privilege. The common-interest privilege "allows 'attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege.'" *See Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93-95 (D. Mass. 2002) (citations omitted). The common interest privilege applies to plaintiffs as well as defendants. *See In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990). Courts in this jurisdiction have held that "a written agreement is not a prerequisite for invoking the common-interest doctrine." *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. at 93.

13

(citations omitted). All parties must establish is that "they agreed to engage in a joint effort to keep the shared information confidential from outsiders." *Id.* (citations omitted).

In this case, it is undisputed that Justice and the SEC shared a common litigation interest and faced common adversaries on similar issues during their parallel investigations. As stated above, both the SEC and Justice agreed to keep the information they shared confidential. There is no evidence that either the SEC or Justice waived any privileges that may be associated with the five interview notes at issue in Nothern's motion by sharing them with Nothern, or any other third parties. Finding that SEC or Justice waived the protection of these interview notes, which contain SEC attorney opinion work-product, would contradict the policy underlying the work-product and common-interest privileges. Accordingly, the Court should find that the common interest privilege applied to the interview notes at issue and reject any argument that Justice or the SEC waived the work-product protection of these notes.

### III. CONCLUSION

For all of the foregoing reasons as well as those contained in its Opposition Brief, the SEC respectfully requests that the Court deny Nothern's Motion to Compel.

Dated: February 21, 2007                    Respectfully Submitted,


                                            /s/ Erica Y. Williams
                                            Erica Y. Williams
                                            John J. Rossetti Jr.
                                            U.S. Securities and Exchange Commissions
                                            100 F Street, N.E.
                                            Washington, D.C. 20549-4010
                                            Phone:  (202) 551-4450
                                            Fax:    (202) 772-9245
                                            williamse@sec.gov