UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN E. NOTHERN,<br><br>Defendant. | Civil Action No. 05-CV-10983 (NMG) |

**DECLARATION OF ERICA Y. WILLIAMS FILED IN SUPPORT OF THE U.S. SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT STEVEN E. NOTHERN'S MOTION TO COMPEL PRODUCTION OF PLAINTIFF'S WORK PRODUCT**

I, Erica Y. Williams, pursuant to 28 U.S.C. § 1746 declares under penalty of perjury as follows:

1. I am an Assistant Chief Litigation Counsel for the Securities and Exchange Commission in the above-captioned matter. I am a member of good standing of the Virginia and District of Columbia bars. Except where otherwise indicated, I make this declaration based upon my own personal knowledge and information and belief, the documents thus far produced during discovery, and other documents concerning this action.

2. A true and correct copy of the October 14, 2004 Order of Magistrate Judge Henry B. Pitman in *SEC v. Zwick et al.*, 03 Civ. 2742 (S.D.N.Y.) is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 21, 2007.

_____
Erica Y. Williams

**EXHIBIT A**

**October 14, 2004 Order of Magistrate Judge Henry B. Pitman**
*SEC v. Zwick et al.*, 03 Civ. 2742 (S.D.N.Y.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,               :

               Plaintiff,    :       03 Civ. 2742 (JGK)(HBP)

  -against-                           :       ORDER

DAVID A. ZWICK, TODD J. COHEN          :
and TERENCE J. O'DONNELL,              :

               Defendants.   :

-----------------------------------X

       PITMAN, United States Magistrate Judge:

       Defendant Cohen's application to compel Postal Inspector Thomas Feeney to testify concerning statements made during the Breckenridge proffer session is denied.

       This is an SEC enforcement action in which the SEC alleges, in substance, that the defendants, two principals and a trader at Suncoast Capital Group ("Suncoast"), either knew or recklessly failed to learn of a commercial bribery scheme perpetrated by Deborah J. Breckenridge, a former Suncoast sales representative. Breckenridge paid kickbacks to Anthony Dong-Yin Shen in order to persuade Shen to direct his company's trades to Breckenridge. Breckenridge and Shen have both pled guilty to securities fraud and other charges in connection with the scheme. At some point after she became a target of a criminal investigation, Breckenridge made a proffer to the United States Attorney's Office apparently in the hope of entering into a cooperation agreement and thereby lessening her exposure.

Cohen challenges Inspector Feeney's invocation of work-product protection concerning statements made at the proffer sessions primarily on the ground that Inspector Feeney's testimony is not a "document [or] tangible thing[]" and, therefore, is not within the scope of Fed.R.Civ.P. 26(b)(3). Although Cohen's argument is correct, it overlooks the fact that Rule 26(b)(3) is not the sole source of work-product protection.

The work-product doctrine entered federal jurisprudence through the Supreme Court's decision in Hickman v. Taylor, 329 U.S. 495 (1947). In Hickman, the Supreme Court affirmed the Court of Appeals' reversal of a contempt finding against defendants and their counsel based on counsel's failure to respond to an interrogatory concerning the substance of conversations with witnesses, finding that such conversations constituted "work product." 329 U.S. at 511. The Court noted that an attorney's work "is reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . ." 329 U.S. at 511. Thus, the Supreme Court did not limit work product protection to tangible objects.

In 1970, Hickman's holding was codified in part in what is now Federal Rule of Civil Procedure 26(b)(3), which defined the scope of work-product protection with respect to "documents or tangible things." The promulgation of Rule 26(b)(3) did not, however, limit Hickman's holding that work product encompasses both tangibles and intangibles. See United States v. One Tract

2

of Real Prop., 95 F.3d 422, 428 n.10 (6th Cir. 1996); United States Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union Number 3, 00 Civ. 4763 (RMB)(JCF), 2002 WL 31296430 at *5 (S.D.N.Y. Oct. 11, 2002); Primetime 24 Joint Venture v. Echostar Communications Corp., 98 Civ. 6738 (RMB)(MHD) 2000 WL 97680 at *2 (S.D.N.Y. Jan. 28, 2000); Alexander v. Fed. Bureau of Investigation, 192 F.R.D. 12, 17 (D.D.C. 2000); Maynard v. Whirlpool Corp., 160 F.R.D. 85, 87 & n.3 (S.D.W.Va. 1995). As stated in a leading treatise:

> Hickman v. Taylor continues to furnish protection for work product within its definition that is not embodied in tangible form, such as the attorney's recollection, in Hickman v. Taylor, of what the witnesses told him. Indeed, since intangible work product includes thoughts and recollections of counsel, it is often eligible for the special protection accorded opinion work product.

8 Charles A. Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 2024 at 337-38 (2d ed. 1994) (footnotes omitted). Thus, the fact that Cohen is seeking the information through deposition testimony instead of a Rule 34 request or subpoena duces tecum does not by itself strip the information of work-product protection.

The principal case on which Cohen relies -- SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC, 01 Civ. 9291 (JSM), 2002 WL 1334821 (S.D.N.Y. June 19, 2002) -- is not to the contrary. Indeed, Judge Martin noted in SR Int'l that he "[did] not disagree with the proposition that questioning of witnesses which is obviously designed to discover an attorney's work product should not be permitted." 2002 WL 1334821 at *5. Thus, SR Int'l

3

does not stand for the proposition that intangible work product is not protected.

Nevertheless, the issue remains whether the questions posed to Inspector Feeney will reveal information protected by the work-product doctrine. Cohen's counsel did not ask Inspector Feeney open-ended questions such as what did Breckenridge say at her proffer session, nor did Cohen's counsel ask what questions were asked by the SEC or Department of Justice ("DOJ") representatives who conducted the interviews. Such questioning might have disclosed what subject areas the SEC or the DOJ believed to be significant or resulted in answers that suggested opposing counsel's strategy. Rather, Cohen's counsel posed a series of leading questions asking whether Breckenridge made certain specific disclosures during the proffer session. For example, the questions asked included the following:

> Q. And getting back to Ms. Breckenridge, in any of her two proffer sessions with the government, did Ms. Breckenridge tell the government that she concealed from her supervisors that she was kicking back a percentage of her commissions to Anthony Shen?
>
> Q. Did she tell the government in either of the proffer sessions that she deleted her e-mail correspondence with Anthony Shen thereby preventing her supervisors from reviewing those e-mails?
>
> Q. Mr. Feeney, did Deborah Breckenridge tell the government in either of her proffer sessions when Suncoast installed the recording system on its office lines, that she alerted Anthony Shen to this fact and thereafter had conversations with him from her cell phone or home phone?

(Letter of Michael S. Sommer, Esq. and Jennifer B. Kolen, Esq. dated October 8, 2004 at 2-3). These questions do not disclose

4

opposing counsel's strategy. A negative response to these questions would not disclose whether opposing counsel even sought the information from Breckenridge. An affirmative response would be similarly ambiguous because it would not disclose whether the question was asked or whether the information was volunteered.[1] Accordingly, these questions, when answered "yes" or "no," would not reveal counsel's mental impressions or strategy.

However, the Court of Appeals has recently noted that work-product protection can also apply to purely factual information. In <u>In re Grand Jury Subpoena Dated October 22, 2001</u>, 282 F.3d 156 (2d Cir. 2002), the DOJ served a grand jury subpoena on an attorney, seeking testimony from the attorney concerning statements that her client had made to an IRS investigator during the course of an interview. The attorney objected on the ground of work product, and the Court of Appeals sustained the objection, noting:

> [T]he district court at one point intimated a view that the work product privilege may have no application to facts, as opposed to opinions and strategies. We believe this to be an overstatement. While it may well be that work product is more deeply concerned with the revelation of an attorney's opinions and strategies, and that the burden of showing substantial need to overcome the privilege may be greater as to opinions and strategies than as to facts, <u>see</u> Fed.R.Civ.P. 26(b)(3), we see no reason why work product cannot encompass facts as well. It is helpful to remember that the work product privilege applies to preparation not only by lawyers but also by other types of party

---

[1] Participants in proffer sessions conducted in this District frequently begin the session by giving a narrative description of the information in their possession. This narrative is frequently followed up by a series of specific questions from the prosecuting attorney.

5

representatives including, for example, investigators seeking factual information. See Fed.R.Civ.P. 26(b)(3). If an attorney for a suspect, or an investigator hired for the suspect, undertakes a factual investigation, examining <u>inter alia</u>, the scene of the crime and instruments used in the commission of the crime, we see no reason why a work product objection would not properly lie if the Government called the attorney or investigator before the grand jury and asked "What facts have you discovered in your investigation?" We think the district court advanced an exaggerated view in suggesting that work product has no application to facts. Broad categorical statements about the scope of the work product privilege are risky, as individual applications are highly fact specific. In our view, analysis should proceed cautiously, case by case.

<u>In re Grand Jury Subpoena Dated October 22, 2001</u>, <u>supra</u>, 282 F.3d at 161.

Apart from the form of the questions used, <u>In re Grand Jury Subpoena</u> is indistinguishable from the present case. Although they were carefully and skillfully posed to avoid intruding on matters of opinion, strategy or analysis, Cohen's questions to Inspector Feeney were clearly seeking factual information that he learned in the course of his investigation of this matter. Since the Court in <u>In re Grand Jury Subpoena</u> clearly indicated that such information is within the scope of work product protection, Cohen's application to compel Inspector Feeney to testify concerning Breckenridge's and Shen's testimony must be denied.

Finally, Cohen has not shown substantial need sufficient to pierce work-product protection. Cohen claims that the Breckenridge will be a critical witness at trial, that her testimony is expected to implicate the defendants in the kickback

6

scheme and that her credibility is, therefore, critical. Cohen then argues that the information concerning the proffer sessions is sought because it is believed to be <u>consistent</u> with Breckenridge's expected trial testimony but inconsistent with statements she gave in an interview with Suncoast's counsel: "[I]t is very likely that Ms. Breckenridge made statements to the U.S. Attorney's Office in the course of her attempted 'cooperation' which implicated the principals and employees of Suncoast, but the U.S. Attorney's Office did not find those statements to be credible" (Letter of Michael S. Sommer, Esq. and Jennifer B. Kolen, Esq. dated October 8, 2004 at 2). Breckenridge's prior consistent statements (i.e., the statements believed to be made at her proffer session) clearly cannot be used to impeach her expected trial testimony, and her prior consistent statements would only be admissible to rebut a charge of recent fabrication if they were made <u>ante litem motam</u>. <u>Tome v. United States</u>, 513 U.S. 150, 156-60 (1995). Since it appears that Breckenridge made her proffer after she was the target of a criminal investigation, it does not seem that her statements at the proffer session would be admissible for any purpose. Thus, her statements at the proffer session appear to be immaterial because they cannot be used for any purpose at trial.

Since Inspector Feeney's testimony concerning statements made by Breckenridge is work product and since Cohen has not demonstrated a substantial need for the information,

7

Cohen's application to compel further deposition testimony from Inspector Feeney is denied.

Dated: New York, New York,
October 14, 2004

SO ORDERED

HENRY PITMAN
United States District Court

Copies faxed to:

Arthur S. Lowry, Esq.
Securities & Exchange Commission
450 Fifth Street, N.W.
Mail Stop 911
Washington, D.C. 20549

Lawrence Iason, Esq.
Morvillo, Abramowitz, Grand,
  Iason & Silberberg, P.C.
565 Fifth Avenue
New York, New York 10017

Michael S. Sommer, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza
New York, New York 10020

Allan M. Lerner, Esq.
2888 East Oakland Park Boulevard
Fort Lauderdale, Florida 33306

Michael Cinque, Esq.
United States Postal
  Inspection Service
Office of Counsel
2 Gateway Center
Newark, New Jersey 07175-0001