**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

STEVEN E. NOTHERN,

Defendant.

**Civil Action No. 05-10983 (NMG)**

**ASSENTED-TO MOTION FOR LEAVE TO FILE REPLY MEMORANDUM**

Pursuant to Local Rule 7.1(B)(3), defendant Steven E. Nothern hereby moves for leave to file the attached reply memorandum in support of his motion (Docket # 67) for an order compelling the plaintiff Securities and Exchange Commission ("SEC") to produce documents that it obtained from and that were generated by the U.S. Department of Justice. As grounds for the motion, Nothern states that the reply memorandum is necessary to address statements of fact and law in the SEC's opposing brief (Docket # 69). Counsel for Nothern has conferred by telephone with counsel for the SEC regarding the subject of this motion, and the SEC consents to Nothern's motion for leave to file the attached reply memorandum.

STEVEN E. NOTHERN

By his attorneys,

/s/ John A. Shope

Nicholas C. Theodorou, BB0 #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

**CERTIFICATION PURSUANT TO LOCAL RULES 7.1(a)(2) AND 37.1**

I, John A. Shope, hereby certify that on March 5, 2007, I conferred with counsel for the SEC, and she assented to this motion.

/s/ John A. Shope

Dated: March 6, 2007

B3325996.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

STEVEN E. NOTHERN,

Defendant.

Civil Action No. 05-10983 (NMG)

**ORAL ARGUMENT REQUESTED**

# DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTION OF JUSTICE DEPARTMENT DOCUMENTS IN THE SEC'S POSSESSION

Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: March 6, 2007

**TABLE OF CONTENTS**

A. DOJ Investigator Manchak Was Not the SEC's Agent. ....................................... 1

B. None of the SEC's Cited Cases Supports Its Position. ........................................ 4

C. The Withheld Documents Are Highly Relevant to Nothern's Defense. ................... 6

Conclusion ........................................................................................................ 8

# TABLE OF AUTHORITIES

## CASES

*FDIC v. Ogden Corp.*, 202 F.3d 454 (1st Cir. 2000) ........ 6

*In re Grand Jury Proceedings*, No. M-11-189, 2001 WL. 1167497 (S.D.N.Y. Oct. 3, 2001) ........ 5-6

*In re Grand Jury Subpoena*, 220 F.R.D. 130 (D. Mass. 2004) ........ 6

*SEC v. Cavanagh*, No. 98 Civ. 1818 (DLC), 1998 WL. 132842 (S.D.N.Y. Mar. 23, 1998) ........ 4

*SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298 (N.D. Ala. 2003) ........ 3

*SEC v. Nacchio*, 438 F. Supp. 2d 1266 (D. Colo. 2006) ........ 3

*SEC v. Navarre*, No. 92 Civ. 3719 (PNL), 1993 WL. 267295 (S.D.N.Y. July 13, 1993) ........ 4-5

*SEC v. Talbot*, No. CV044556MMM(PLAX), 2005 WL. 1213797 (C.D. Cal. Apr. 21, 2005) ........ 4

*Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862 (1st Cir. 1982) ........ 5

*United States v. Gericare Medical Supply Inc.*, No. CIV.A.99-0366-CB-L, 2000 WL. 33156442 (S.D. Ala. Dec. 11, 2000) ........ 5

*United States v. Liberia*, 989 F.2d 596 (2d Cir. 1993) ........ 7

*United States v. Mylett*, 97 F.3d 663 (2d Cir. 1996) ........ 7

*United States v. Nobles*, 422 U.S. 225 (1975) ........ 5

*United States v. Sawyer*, 878 F. Supp. 295 (D. Mass. 1995) ........ 6

*United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005) ........ 3

*United States v. Stringer*, 408 F. Supp. 2d 1083 (D. Or. 2006) ........ 3

## RULE

Federal Rule of Civil Procedure 26 ........ 1-2, 5

Defendant Steven Nothern respectfully submits this reply brief in support of his motion (Docket # 67) for an order compelling the plaintiff Securities and Exchange Commission ("SEC") to produce documents that it obtained from and that were generated by the U.S. Department of Justice ("DOJ").

**A. DOJ Investigator Manchak Was Not the SEC's Agent.**

The following points are undisputed:

- The five sets of interview notes in question were generated by Robert Manchak.
- At all relevant times, Manchak was an employee of DOJ, <u>not</u> the SEC.
- Federal Rule of Civil Procedure 26(b)(3), which codifies the work-product doctrine, does not protect documents prepared by a nonparty – even if the nonparty is a party to closely related litigation.
- Rule 26(b)(3) protects only documents that were prepared by a party or its "representative," including a party's "attorney, consultant, surety, indemnitor, insurer, or agent."

Notwithstanding these undisputed facts, the SEC contends in its Opposition (Docket # 69) that the interview notes constitute its protected work product because Manchak was supposedly its own and not merely DOJ's "agent." The SEC asserts that this agency relationship was established by a supposed "agreement" between Manchak and the SEC. It even accuses Nothern of falsely stating the record on this critical point:

> Nothern's claim that there is no evidence that SEC counsel entered into an agreement with Investigator Manchak to take notes on their behalf if false. The SEC previously filed a sworn declaration by SEC Senior Counsel John J. Rossetti Jr., who participated in three of the five interviews in question, and attests to the agreement between counsel for the SEC and Investigator Manchak. Docket # 48, ¶¶ 7-9.

Docket # 69, at 7. <u>Rossetti's declaration, however, describes no such agreement between SEC counsel and Manchak.</u> To the contrary, the only reference in his declaration to an agreement is one between SEC counsel and DOJ counsel: "<u>Counsel</u> agreed that the one set of notes resulting from these interview sessions <u>would be available for use</u> by attorneys for the Commission and by

the USAO." Docket # 48, ¶ 7 (emphasis added). In other words, DOJ counsel agreed to provide the work of its own agent to the SEC.

A usage agreement between SEC counsel and DOJ counsel does not establish an agency relationship between the SEC and Manchak. The basic elements of an agency relationship are absent here. Specifically, there is no evidence that Manchak assented to a relationship by which he would act on the SEC's behalf and subject to the SEC's control. *See* Restatement (Third) of Agency § 1.01 (2006) (agent shall act "subject to the principal's control" and "manifests assent or otherwise consents so to act"). Without such evidence, the SEC cannot now claim Manchak as its agent for purposes of Rule 26(b)(3).

Other portions of Rossetti's declaration and the SEC's opposition brief assert that Manchak was "assigned" the responsibility of taking notes during these interviews. *See, e.g.*, Docket # 48, ¶ 7 ("SEC counsel and AUSAs Coad and Hotz assigned USAO Investigator Robert Manchak . . . the note-taking responsibility."); *id.* ¶ 8 ("Investigator Manchak was assigned the task of keeping the notes . . . ."); Docket # 69, at 3 ("Investigator Manchak was assigned by SEC attorneys to take notes for use by the SEC"); *id.* at 5 ("attorneys for the SEC and Justice designated Investigator Manchak to be the *sole* note taker"). Assuming – as is almost certainly the case – that DOJ attorneys assigned Manchak the note-taking responsibility, such an assignment did nothing to make Manchak the SEC's agent. To the extent the SEC asserts (without affidavit support) that <u>its</u> counsel assigned Manchak this task, its assertion only begs the following questions: What gave the SEC authority to assign tasks to an employee in a different federal agency? What evidence is there that Manchak agreed to submit to SEC authority? Would such assent be consistent with his obligations to serve DOJ alone? What if the DOJ lawyers and the SEC lawyers disagreed about what should be recorded in the notes? Because there is no evidence that Manchak was subject to the SEC's control, there is no basis for the

SEC's claim of agency now, and the reasonable interpretation of events is that DOJ simply shared its own notes with the SEC.

Indeed, the claim that DOJ Investigator Manchak served as the SEC's agent completely contradicts the SEC's longstanding position, made in the course of opposing Nothern's other discovery efforts, that it is a wholly distinct party from DOJ and the Department of the Treasury. Strikingly, the very day that the SEC filed its opposition to this motion to compel (Docket # 69), it submitted another brief asserting that the SEC "does not control" Executive Branch departments like DOJ and that "the SEC's Division of Enforcement Staff . . . conducted the SEC's investigation of this matter independent of any limited investigation being conducted by Treasury and Justice" (Docket # 71, Ex. 1 at 20, 9 n.12). Whatever Manchak's state of mind may or may not have been, deputization of a DOJ employee as an SEC agent is highly inconsistent with the SEC's position in this case.

In his initial brief, the Nothern cited the growing number of federal courts that have criticized the SEC and DOJ for improperly "commingling" or "merging" their investigations. *See, e.g.*, *United States v. Stringer*, 408 F. Supp. 2d 1083 (D. Or. 2006); *United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005); *SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298 (N.D. Ala. 2003). In response, the SEC argues that there was no concealment of the agencies' roles in this case, and that the cited cases do not "preclude SEC attorneys from assigning an investigator, who happens to be employed by Justice, to take notes on their behalf during those joint interviews." Docket # 69, at 8-9. While Nothern agrees that these cases do not address this specific issue, he also notes that case law generally authorizing parallel SEC and DOJ investigations (*see id.* at 9 n.5) "is not especially helpful in analyzing the propriety of investigations, such as the one here, involving jointly-conducted witness interviews." *SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1287 n.14 (D. Colo. 2006). What matters for the purposes of

this motion is the SEC's failure to cite any authority for its claimed agency relationship with DOJ Investigator Manchak, and the troubling policy implications of permitting the SEC to conduct discovery for DOJ at the same time it shields DOJ documents from discovery in SEC enforcement actions. Far from being irrelevant, the fact that Manchak "happen[ned] to be employed by Justice" means that the SEC may not claim his work product as its own.

**B. None of the SEC's Cited Cases Supports Its Position.**

In its opposition brief (Docket # 69, at 4), the SEC cites a string of cases for the proposition that "the work-product doctrine extends to witness interview notes taken in the course of Commission investigation." But that proposition is not in dispute. Nothern does not seek disclosure of any interview notes prepared by SEC counsel or SEC staff – the subject of every case cited by the SEC.[1] *See, e.g.*, *SEC v. Talbot*, No. CV044556MMM(PLAX), 2005 WL 1213797, at *1 (C.D. Cal. Apr. 21, 2005) ("The SEC contends that the notes <u>prepared by their counsel</u> from the interviews are protected by the work product doctrine.") (emphasis added); *SEC v. Cavanagh*, No. 98 Civ. 1818 (DLC), 1998 WL 132842, at *2 (S.D.N.Y. Mar. 23, 1998) ("the notes were <u>taken by SEC attorneys</u> during interviews") (emphasis added); *SEC v. Navarre*, No. 92 Civ. 3719 (PNL), 1993 WL 267295, at *1 (S.D.N.Y. July 13, 1993) ("notes of witness

[1] Nothern does not, for example, seek the interview notes taken by SEC attorneys during the interviews they conducted with Treasury personnel. *See* Docket # 69, at 9 n.7. While the SEC states that it "was not involved in Treasury's OIG investigation" (Docket # 69, at 9), it is clear that it coordinated its investigation with Treasury's Office of Inspector General in the critical months following the October 31, 2001 press conference. Indeed, the interview memoranda attached to the OIG's January 2002 report state that the subjects were "interviewed by attorneys Andrew Sporkin . . . and Rosemary Filou . . . of the Division of Enforcement, United States Securities and Exchange Commission (SEC), <u>in coordination with Treasury, Office of General Counsel and the Office of Inspector General (OIG)</u>." *See, e.g.*, Docket # 30, Ex. R (emphasis added). The SEC maintains (Docket # 69, at 9) that Treasury's notes are not the SEC's work product because "[a]ttorneys from the SEC took their own notes" and "did not designate anyone from Treasury to take notes on their behalf." Neither the SEC's decision to take its own notes nor its failure to "designate" a Treasury note-taker, however, is determinative of the work-product issue. Rather, what matters is the fact that Treasury employees do not work for the SEC and are not, therefore, its "agents."

interviews made by SEC Enforcement Division's attorneys") (emphasis added). The SEC fails to cite any authority for the position it makes here: that a DOJ employee should be treated as the SEC's "agent" for purposes of allowing it to withhold DOJ-generated documents as its own work product, even when there is no evidence of an agency relationship between the two.

Other cases cited by the SEC are similarly inapposite. It cites *United States v. Nobles*, 422 U.S. 225, 238-39 (1975), for the proposition that "protection can extend to materials prepared by an attorney's agent, if that agent acts at the attorney's direction in creating such documents" (Docket # 69, at 6). But the "agent" in *Nobles*, an investigator for the defense, actually was an agent for a party's attorney. *See* 422 U.S. at 227. *Nobles* does not support the SEC's claim that DOJ employee Manchak was its agent here.

Similarly, the SEC cites *Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862, 870 (1st Cir. 1982), as evidence that the First Circuit "has extended work-product protection to documents prepared for a party's attorneys." Docket # 69, at 6. But the document at issue in *Sprague* was a letter written by a party's medical director – clearly, its "agent" for purposes of Rule 26(b)(3) – at the request of the party's attorney. *See* 688 F.2d at 864, 868-69. It does not follow from this commonsense ruling that a party may claim as its work product the writings of an employee of a third party.

The SEC also cites *United States v. Gericare Medical Supply Inc.*, No. CIV.A.99-0366-CB-L, 2000 WL 33156442 (S.D. Ala. Dec. 11, 2000), and *In re Grand Jury Proceedings*, No. M-11-189, 2001 WL 1167497 (S.D.N.Y. Oct. 3, 2001). Docket # 69, at 6. Neither case supports its position. In *Gericare*, a Medicare fraud case brought by DOJ, the relevant notes were prepared by FBI agents (thus employees of DOJ) who conducted their interviews after conferring with DOJ attorneys. 2000 WL 33156442, at *1. In *In re Grand Jury Proceedings*, the court applied the work-product protection to certain documents that an investigator had prepared on

behalf of a party's counsel – but refused to shield other documents which the investigator had prepared while acting "independently rather than under any attorney's direction and control." 2001 WL 1167497, at *19. Again, the key question here is whether DOJ Investigator Manchak acted under the SEC's direction and control. Because there is no evidence that he did, the SEC's work-product claim must fail.

**C. The Withheld Documents Are Highly Relevant to Nothern's Defense.**

Because the SEC has not met its burden of establishing that the interview notes are its protected work product, *see In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004) (citing *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000)), its arguments regarding Nothern's need for disclosure (Docket # 69, at 10-12) and the SEC's waiver (*id.* at 12-14) require only a brief response.

The SEC again invokes (Docket # 69, at 13-14) the "joint defense" or "common interest" doctrine in support of its claim that it did not waive work-product protection by sharing materials with DOJ. This doctrine, however, requires clear evidence that the parties entered into a joint-defense or common-interest agreement. *See, e.g.*, *United States v. Sawyer*, 878 F. Supp. 295, 297 (D. Mass. 1995). Here, the only agreement cited by the SEC (Docket # 69, at 12-13) involved an access request by DOJ to SEC – not *vice versa* – and even that agreement gave DOJ broad latitude to disclose the documents to third parties at its discretion. *See* Docket # 33, Ex. Q at 1 (letter of Robert Khuzami, Chief, Securities and Commodities Fraud Task Force, Office of the United States Attorney, dated Nov. 9, 2001, reserving right to use files in "any resulting proceeding" or transfer them to other "criminal law enforcement authorities and self-regulatory organizations"). Thus, even assuming that an agency relationship existed between DOJ Investigator Manchak and the SEC – and it did not – this access request by DOJ was insufficient to establish a common-interest agreement between the two agencies.

Finally, the SEC minimizes the importance of the interview notes at issue by contending (Docket # 69, at 11) that only the notes relating to Peter Davis (the alleged tipper) are "relevant to the claims and defenses in this case." Given the SEC's extraordinarily narrow concept of relevance, this blanket assertion should not be taken at face value. *See, e.g.*, Docket # 71, Ex. 1 at 4 (SEC asserts that "Treasury did not play a major role in the facts that give rise to this insider trading case"). Presumably, the documents in question would never have appeared on the SEC's log but for the fact that the SEC deemed them responsive to unobjectionable document requests by Nothern. For example, the information provided by a high-level Treasury official like Timothy Bitsberger in 2002 may relate to several critical issues in this case, including whether the information announced at Treasury's press conference was confidential, whether its "embargo" had any practical effect whatsoever, or whether anyone working at Treasury in 2001 knew about the purported 1994 agreement establishing Peter Davis's duty of confidentiality.

As for Davis, the notes of the interviews conducted in October 2002 and February 2004 are unquestionably relevant to Nothern's defense. To prove its case, the SEC must prove that Nothern subjectively knew that Davis had breached a duty to Treasury when he disclosed the information on the 30-year bond. *See United States v. Mylett*, 97 F.3d 663, 668 (2d Cir. 1996); *United States v. Liberia*, 989 F.2d 596, 600 (2d Cir. 1993). At his deposition in this case in April 2006, Davis testified that he never told Nothern about his purported confidentiality agreement with Treasury. Davis Dep. at 263-64, 290 (see Docket # 66, Ex. D). Nevertheless, in its recent response to Nothern's Objections to the Magistrate Judge's Order, the SEC selectively quotes from Davis's September 2003 criminal plea hearing to suggest, falsely, that Nothern – rather than another client of Davis – somehow knew about Davis's duty to Treasury. *See* Docket # 71, Ex. 1 at 12-13. Davis in fact never mentioned Nothern in his plea.

In sum, fundamental fairness, as well as the law governing the work-product doctrine,

require that the SEC produce relevant DOJ documents in its possession.

## CONCLUSION

For the reasons stated above and in Nothern's opening brief, the Court should enter an order compelling the SEC to produce its documents bearing Bates nos. SECNOTH 136630-648, 136650-654, 136667-671, 136655-658, 136672-675, 136779-782, 136661-666, 136678-683, and 137300-310.

STEVEN E. NOTHERN

By his attorneys,

/s/ John A. Shope

Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: March 6, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ John A. Shope

B3324335.7