# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (Boston Division)

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | Civil Action No. 05-CV-10983 (NMG) |
| Plaintiff, | ) | |
| v. | ) ) | |
| STEVEN E. NOTHERN, | ) ) | |
| Defendant. | ) | |

### U.S. SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANT STEVEN E. NOTHERN'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON DEFENDANT'S RENEWED MOTION TO COMPEL AND MOTION FOR AN ORDER TO SHOW CAUSE

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

STANDARD OF REVIEW ..................................................................................2

PROCEDURAL HISTORY..................................................................................2

FACTUAL BACKGROUND ...............................................................................4

ARGUMENT .......................................................................................................9

      A.    The Law Does Not Require The SEC To Obtain And Produce
            Documents Of Other Government Departments Nor Does It Require
            The SEC To Produce Employees of Other Government Departments
            For Testimony In Response To Nothern's Discovery Requests ....................9

      B.    Nothern's Due Process Argument Must Be Rejected Because He
            Has Failed To Take Advantage Of Established Procedures To Obtain
            The Discovery He Seeks ...........................................................................14

      C.    Magistrate Judge Sorokin Correctly Found That The Evidence
            Nothern Seeks Is "Not As Central In Its Importance" To This Case............16

      D.    Nothern's Claim That The SEC Has Engaged In Action That
            Warrants Dismissal Of This Case Is Baseless And Should Be
            Rejected....................................................................................................17

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Air Crash at Dallas/Forth Worth Airport on Aug. 2, 1985,*
117 F.R.D. 392 (N.D. Texas 1987)..............................................................12

*Angulo-Alvarez v. Aponte de la Torre*, 170 F.3d 246 (1st Cir. 1999)................................18

*Anthony v. Abbott Laboratories*, 106 F.R.D. 461 (D.R.I. 1985) ..........................................2

*Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372 (S.D.N.Y. 1989)............................2, 17

*Ghana Supply Commission v. New England Power Co.*, 83 F.R.D. 586
(D. Mass. 1979).........................................................................................12, 13

*Harvey Aluminum, Inc. v. NLRB*, 335 F.2d 749 (9th Cir. 1964)................................12, 16

*Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dept.
of Treasury*, 86 F.3d 1208 (D.C. Cir. 1996) ..................................................15

*Jencks v. Unite States*, 353 U.S. 657 (1957)........................................................13

*Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8 (1st Cir. 1991) ....................................18

*National Hockey League v. Metropolitan Hockey Club Inc.*, 427 U.S. 639 (1976) ..........19

*SEC v. Biopure*, No. 05-00506, 2006 WL 2789002 (D.D.C. Jan. 20, 2006)....................12

*SEC v. Selden,* No. 05-0476 (RMU), 2006 WL 2374796
(D.D.C. Aug. 16, 2006)................................................................................12

*Serro-Lugo v. Consortium-Las Marias*, 271 F.3d 5 (1st Cir. 2001) ..................................18

*Tower Ventures Inc. v. City of Westfield*, 296 F.3d 43 (1st Cir. 2002)........................18, 19

*United States v. American Tel. & Tel. Co.*, 461 F. Supp. 1314
(D.D.C. 1978) ................................................................9, 10, 11, 13, 20

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ................................................3

*United States v. Davis*, 140 F.R.D. 261 (D.R.I. 1992)........................................................12

*United States v. Cruz Jimenez*, 894 F.2d 1 (1st Cir. 1990) ................................................2

*United States v. Garcia*, 983 F.2d 1160 (1st Cir. 1993) ......................................................2

*United States v. Gioia*, 853 F. Supp. 21 (D. Mass. 1994)....................................................2

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) ......................................2

*Young v. Gordon*, 330 F.3d 76 (1st Cir. 2003) ...................................................................18

## FEDERAL STATUTES

### FEDERAL RULES OF CIVIL PROCEDURE

Rule 26(a)...........................................................................................................................2

Rule 34 ....................................................................................................................... 2, 10-14

Rule 45 .....................................................................................................................14, 15, 17

Rule 72 ...............................................................................................................................2

### OTHER AUTHORITIES

31 C.F.R. §§ 1.8 - 1.12..........................................................................................................17

28 U.S.C. § 636(b)(1)(A) .......................................................................................................2

29 U.S.C.A. § 161 ...............................................................................................................13

**INTRODUCTION**

The Securities and Exchange Commission ("SEC" or the "Commission") respectfully submits this response to Defendant Steven E. Nothern's Objections to Magistrate Judge Sorokin's January 24, 2007 discovery Order (Docket # 63) denying his renewed motion to compel the SEC to produce documents from other government agencies[1], which the SEC does not posses or control, and his motion for an order to show cause why the SEC's complaint should not be dismissed for the Department of Treasury's decision to deny his request to take the depositions of five current and former Treasury Department employees.[2] Magistrate Judge Sorokin found that the SEC, an independent regulatory agency of the government, does not control Executive Branch departments and held that the SEC was not required under Rule 34 of the Federal Rules of Civil Procedure to produce documents the United States Department of Treasury ("Treasury") and the United States Department of Justice ("Justice") as requested by Nothern in his renewed motion to compel. Magistrate Judge Sorokin also rejected Nothern's claim that the SEC should be held responsible for Treasury's determination under its *Touhy* regulations to deny Nothern's requests for the depositions of five Treasury employees, including Treasury's former general counsel. In denying Nothern's motions, Magistrate Judge Sorokin correctly noted that Nothern has a full array of valid procedures available to obtain the discovery that he seeks directly from Treasury and Justice, of which he has not taken full advantage. Contrary to the claims raised in Nothern's Objection, Magistrate Judge Sorokin's Order was neither clearly erroneous nor contrary to law. Nothern's Objection lacks merit, and his request that this Court set aside Magistrate Judge Sorokin's Order should be denied.

---

[1] Defendant's Renewed Motion To Compel Production of Documents (Docket # 44) shall be referred to herein as "renewed motion to compel" and Defendant's Motion For Order To Show Cause (Docket # 49) shall be referred to herein as "motion to show cause."

[2] All references to Defendant's Objections To Magistrate Judge's Order On Defendant's Renewed Motion To Compel And Motion For An Order To Show Cause (Docket # 65) will be referred to herein as "Nothern's Objection" or "Objection."

## STANDARD OF REVIEW

A magistrate judge may hear and determine pretrial motions that are not dispositive of a claim or defense, including discovery motions. *See* Fed. R. Civ. P. 72, 28 U.S.C. § 636(b)(1)(A), Local Magistrate Rule 2(a). A magistrate's resolution in pretrial discovery disputes is entitled to substantial deference. *Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372, 373 (S.D.N.Y. 1989), *see also Anthony v. Abbott Lab.*, 106 F.R.D. 461, 463 (D.R.I. 1985) ("[I]f the magistrate system is to work effectively, magistrates must be given some latitude to exercise judgment and discretion. The district courts should be slow to interfere in everyday decisionmaking [sic], lest the floodgates be rent asunder and the efficacy of the system undermined."). Indeed an order issued by a magistrate judge can be set aside by the district court only if it is "clearly erroneous or contrary to law." *U.S. v. Garcia*, 983 F.2d 1160, 1166 (1st Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)). The phrase "clearly erroneous" refers to the magistrate judge's factual findings. *U.S. v. Gioia*, 853 F. Supp. 21, 26 (D. Mass. 1994). A finding is clearly erroneous when a court upon review of the entire evidence "is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 397 (1948). However, if two interpretations of evidence are permissible then a court's choice of one cannot be clearly erroneous. *U.S. v. Cruz Jimenez*, 894 F.2d 1, 7 (1st Cir. 1990).

Magistrate Judge Sorokin did not make any clearly erroneous findings of fact or judgments that are contrary to law in his Order denying Nothern's renewed motion to compel and motion for order to show cause. He properly denied both motions finding that the SEC made a "powerful" argument that "the SEC neither possesses nor controls documents held by [Executive Branch] agencies within the meaning of Fed. R. Civ. P. 34, and that it does not exert control over the Treasury Department's review of subpoenas seeking testimony from Treasury employees." Docket # 63 at 2, 9.

## PROCEDURAL HISTORY

In November 2005, as part of its initial disclosures under Fed. R. Civ. P. 26(a), the SEC provided Nothern with a copy of *all* of the non-privileged documents contained in its

2

investigative file related to this case. Despite the fact that the SEC had already produced all of the non-privileged documents in its possession, custody and control, on February 17, 2006, Nothern moved to compel the SEC to produce documents from other government agencies, including Justice, Treasury and the Commodity Futures Trading Commission ("CFTC") in response to his sixty-six requests for production of documents. In an effort to resolve Nothern's motion to compel without further Court intervention, during a hearing on June 14, 2006, the SEC agreed to ask Justice, Treasury and the CFTC to voluntarily produce documents to both parties in this case in response to narrowed document requests drafted by Nothern.[3] As a result of the SEC's actions, the parties received hundreds of pages of production from the CFTC and Treasury, and written confirmation from Justice that it did not possess any non-privileged documents responsive to Nothern's requests. In addition, on December 19, 2006, Treasury provided the parties with a log of documents it was withholding from its production on the grounds of privilege. Docket # 60, Exh. 2. Apparently dissatisfied with the results of the voluntary production from Treasury and Justice, on October 30, 2006 Nothern renewed his motion to compel the SEC to produce documents in the possession of those two Executive Branch departments.

While the parties worked to resolve their disputes regarding the production of documents, they proceeded to take the depositions of potential witnesses. Nothern sought and received permission from Treasury to depose nine current and former Treasury employees, pursuant to regulations promulgated by Treasury pursuant to authority provided by the Supreme Court in *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951) (hereinafter referred to as "*Touhy* regulations").[4] The more Treasury employees Nothern deposed, the more employees he sought

---

[3] The SEC first raised this offer of compromise with Nothern before he filed his motion to compel, but he rejected it. *See* Docket #30, Exh. V.

[4] These employees include: Salvatore Antonio Fratto, Frances Anderson, Elizabeth Holahan Schmutz, Roger Anderson, Peter Fisher, Brian Roseboro, Paul Malvey, Jill Ousley and Lula Tyler. In addition, Treasury approved the SEC's request to depose one former Treasury employee, Steven Vagle, who counsel for Nothern also examined.

to depose. Although Treasury did not play a major role in the facts that give rise to this insider trading case, Nothern increased the number of Treasury employees he wanted to depose to fourteen. Treasury denied Nothern's request to depose five of fourteen Treasury witnesses. The five Treasury witnesses Nothern still seeks to depose include Elnora Bowser, Jill Cetina, Michele Davis, Steve Berardi and former Treasury General Counsel David Aufhauser. Treasury denied Nothern's *Touhy* requests to depose these five additional witnesses on the grounds that the depositions were unnecessary and unduly burdensome, and that the information sought from the witnesses was available from other sources. *See* Docket # 51, Exhs. B, J, N; Docket # 53, Exhs. B, C. Although the SEC was not involved in Treasury's decision to deny Nothern's request for these five additional depositions, on November 17, 2006, Nothern moved for an Order requiring the SEC to show cause why its case should not be dismissed based on Treasury's decision. Additionally, on January 3, 2004, Nothern filed a response (Docket # 62) to the SEC's Notice to the Court on the status of Treasury's privilege log (Docket # 60) in which he challenged Treasury's privilege claims. Because the SEC did not participate in Treasury's privilege review – Treasury also denied the SEC access to its privileged documents – and because the SEC believed that Nothern's response should have been directed to Treasury directly, it declined to file a written response to Nothern's privilege challenge.

## FACTUAL BACKGROUND

Although his renewed motion to compel and motion to show cause present a legal not a factual issue, Nothern uses several pages of his Objection to set forth his inaccurate and twisted recitation of the facts. He then uses these supposed "facts" to argue that the Court should force the SEC to produce documents and witnesses from Executive Branch departments, which it does not control, on the grounds that the documents sought are "critical" to his defense. The following facts, upon which the SEC bases its claims, show that the discovery that Nothern seeks from Treasury and Justice is not only not "central in its importance" to this case, but is arguably irrelevant.

On October 31, 2001, Peter J. Davis Jr., a Washington, D.C.-based consultant, hired by Massachusetts Financial Services Company ("MFS"), attended a refunding press conference at Treasury. Treasury subjected the information released at this conference to an embargo until a specified time.[5] The October 31, 2001 conference was not the first refunding conference attended by Davis. Indeed, he had been attending Treasury refunding conferences for several years "pursuant to an agreement that he had with the Treasury Department that he would abide by the embargo and keep all information disseminated there confidential until the embargo expired." Docket # 33, Exh. D at 19.   Besides Davis, who had an express agreement with Treasury, attendance at the conference was limited to members of the press and select government employees, all of whom were required to be put on a list and cleared into the Treasury building through secret service. *See* February 2007 Rossetti Decl. Exh. A (Fratto dep.) at 156:3-157:12.

"[A]t the beginning of the [October 31] press conference, before the question and answer period, and at the conclusion" of the conference, a Treasury Public Affairs Specialist announced that the information provided at the conference would be embargoed until 10 a.m.[6] *See* Docket # 33, Exh. A at 2.  Despite his agreement with Treasury, and the directives he was given by a Treasury employee during the conference to abide by the embargo, as soon as the conference ended, Davis left the Treasury building, and once outside used his cell phone to call a number of

---

[5] Prior to October 31, 2001, Treasury had been using an embargo procedure  that did not involve a lockdown to protect the confidentiality of information released at its quarterly refunding conferences. *See* February 2007 Rossetti Decl. Exh. A (Fratto dep.) at 62:4-63-3.  Treasury officials testified that they were not aware of any time in the thirty years prior to October 31, 2001 where an attendee at any of Treasury's press conferences had intentionally violated an embargo. *See id.* Exh. A (Fratto dep.) at 62:14-63:2, 111:20-112:4; Exh. B (Malvey dep.) at 120:15-121:5, 122:9-16.

[6] Employees in Treasury's Office of Public Affairs decided to impose a 10 a.m. embargo for the Treasury refunding conference on October 31, 2001 after consultation with Peter Fisher, Treasury Under Secretary for Domestic Finance. *See* February 2007 Rossetti Decl. Exh. A (Fratto dep.) at 130:22-138:12.  Contrary to Nothern's claims, Mr. Fisher testified that he felt the decision to impose an embargo was "as good a decision" as the Press Office could make, and that he had no regrets about the decision. *See* February 2007 Rossetti Decl. Exh. C (Fisher dep.) at 177:8-179:1.

5

clients, including Nothern, to notify them about Treasury's decision to cancel the 30-year bond.
*See* Docket # 33, Exh. D at 21.

The evidence that the SEC has gathered in this case proves that Davis called Nothern at
approximately 9:38 a.m. on October 31 and left a voice-mail message. *See* Docket # 33, Exh. F.
Nothern immediately retrieved and listened to the message in which Davis informed Nothern that
"Peter Fisher had indicated to Pete Davis that they'd be canceling the long bond and that there
would be a press release because it was embargoed until 10 o'clock." *See* Docket # 33, Exh. G at
111-112. Nothern has admitted that he understood that Peter Fisher was a Treasury official in the
debt finance area who would have had access to market-sensitive information such as Treasury's
decision to suspend or cancel the 30-year bond. *Id.* at 116-117. Nothern has also admitted that
when he received Davis' voicemail he was aware of the meaning of the term embargo as it
applied to information from government agencies. Docket # 33, Exh. A

Immediately after retrieving the voicemail message, Nothern relayed the material
nonpublic information that he had received from Davis regarding Treasury's cancellation of the
30-year bond to three other MFS portfolio managers. Docket # 33, Exh. G at 125-130. When
conveying this information Nothern conveniently neglected to tell the other portfolio managers
that the information was embargoed, that Davis advised Nothern he had gotten the information
from Peter Fisher, or that a Treasury planned to issue a press release announcing the cancellation
of the bond at 10 a.m. *See* February 2007 Rossetti Decl. Exh. D (Kurinsky dep.) at 101:24-
102:23, 107:18:108:2, 115:22-116:25; Exh. E (Smith dep.) at 138:9-139:18, 141:14-143:1,
202:8-203:10); and Exh. F (Kennedy dep.) at 61:15-63:3, 81:18 84:7. Nothern then placed an
order to purchase $25 million in par value of the 30-year bond for the portfolios that he managed.
[7] Docket # 33, Exh. G at 125. Based on the limited information that they received from

---

[7] Although Nothern claims that he had heard a rumor about the cancellation of the bond on the
morning of October 31, prior to receiving Davis' voicemail, and that he intended to purchase 30-
year bonds for the portfolios he managed when he arrived at work that day, he took no action to
purchase the bonds until after he received the material nonpublic information about the bond's

Nothern, the three other portfolio managers also placed orders to purchase 30-year bonds for the portfolios they managed. *See* Docket # 33, Exh. H at 135-136, Exh. I at 76-77, and Exh. J at 79-82. In total, the amount of bonds purchased by Nothern and the three other portfolio managers equaled $65 million in par value. *See* Docket # 33, Exh. G at 128. Records from Merrill Lynch, the broker executing the trade, indicate that Nothern and the three other portfolio managers authorized an MFS trader to place the order for the $65 million in bonds, and that the trader verbally confirmed the telephone order for the bonds with Merrill Lynch prior to 9:42 a.m. *See* Docket # 33, Exh. K. At 9:43 a.m., Treasury inadvertently posted a press release on its website announcing that it was canceling issuance of the 30-year bond. *See* Docket # 30, Exh. L.[8] The price and volume data on the 30-year bond from October 31, 2001, testimony from numerous witnesses, and many of the documents produced in this litigation, show that the information that Nothern used to trade was nonpublic at the time he placed his trade order,[9] and did not become

---

cancellation from Davis. See February 2007 Rossetti Decl., Exh. G (Nothern Jan. 30, 2007 dep.) at 163:7-165:15, 176:15-18.

[8] Merrill Lynch, the counterparty to Nothern's purchase order of $65 million par value 30-year bonds, utilized a Trade Order Management System ("TOMS") maintained by Bloomberg. According Bloomberg's records, the Merrill Lynch bond trader first entered the trade into TOMS at 9:42:02. February 2007 Rossetti Decl. Exh. H. According to Galen Criqui, the Merrill Lynch bond trader for this transaction, after he verbally confirmed that the trade was "done", or executed, he "soon thereafter, but not immediately" "slated" or entered the trade information into TOMS. *See* February 2007 Rossetti Decl. Exh. I (Criqui dep.) at 184:2-187:23. Thus, Nothern's trade order had to have been placed sometime prior to 9:42:02. Evidence developed during discovery confirms that the time of the trade recorded in the TOMS, 9:42:02, and the time recorded on Treasury's production server, 9:43:28, indicating when the October 31 press release was posted to the Treasury website, were both synchronized via Network Time Protocol, an ubiquitous time synchronization computer program, to atomic clocks maintained by the United States Naval Observatory and the National Institute of Standards and Time. *See* February 2007 Rossetti Decl. Exh. J (Verizon Business (Anne Wilson) dep.) at 84:9-85:14; Exh. K (Bloomberg L.P. (Darin Langone) dep.) at 31:2-19. As a practical matter, Treasury's press release could not be viewed by the public on its website prior to the posting on its production server at 9:43:28. February 2007 Rossetti Decl. Exh. J (Verizon Business (Anne Wilson) dep.) at 81:12-22, 180:17-181:10, 199:20-200:11.

[9] Contrary to Nothern's assertions, there is no evidence that Treasury's decision to cancel the 30-year bond became public prior to the time that Nothern traded in the bond. Nothern maintains

public until sometime close to 10 a.m. after it was released on the news wires.[10]  *See* Docket #

30, Exh. K.

On September 3, 2003, Davis pleaded guilty to criminal charges resulting from the

actions that he took to disclose Treasury's decision to cancel the 30-year bond to clients during

the embargo period.[11]  Davis has admitted that he knew that "the information disseminated in the

press conference was embargoed by Treasury officials, such that it could not be published or

divulged before a specific time shortly after the press conference concluded." Docket # 33, Exh.

D at 19.  He has also admitted that he violated his duty to Treasury to keep the information that

he heard at the Treasury's October 31, 2001 refunding press conference confidential until the

---

that Treasury leaked the information prior to October 31 to a trader at Lehman Brothers, a
European central bank, and White House officials. Not surprisingly, Nothern has never attempted
to take the testimony of any representatives from Lehman Brothers, European central banks or
the White House to obtain admissible evidence to corroborate his groundless assertion of leaks.
The only source that Nothern references to support these baseless allegations is the summary of
an interview with Treasury employee Jill Cetina. Far from corroborating Nothern's claim of
leaks, Ms. Cetina stated that she had heard "speculation" from a bond strategist "a week or two"
prior to the announcement and that she thought the strategist was "going out on a limb with that
type of speculation." February 2007 Rossetti Decl Exh. L at 2.  Speculation in the market is not
out of the ordinary.  Numerous witnesses in this case, including Nothern, have testified that
rumors of the possible cancellation of the 30-year bond had been circulating for years. *See*
February 2007 Rossetti Decl. Exh. G (Nothern dep.) at 168:10-170:21, Exh. D (Kurinsky dep.) at
114:3-115:6, Exh. F (Kennedy dep.) at 77:18:79:15, and Exh. E (Smith dep.) at 143:18-144:1,
165:9-166:14.

[10] Nothern's claim that Brian Collins, a reporter from *National Mortgage News*, leaked
information about the cancellation during the embargo period is untrue.  Mr. Collins testified that
he did not disclose the information to anyone in the public prior to approximately 9:50 a.m. on
October 31 – long after Nothern traded, after it was placed on Treasury's website, and after
Nothern claims the information was publicly released by Reuter's news service. February 2007
Rossetti Decl. Exh. M (Collins dep.) at 67:9-68:2.

[11] Davis pleaded guilty in the U.S. District Court for the Southern District of New York to a
three-count criminal information charging him with: (1) Conspiracy to Defraud the United States,
Convert Property of the United States, Commit Fraud in Connection with the Sale of Securities,
and Wire Fraud; (2) Conversion of Property of the United States; and (3) Securities Fraud. *See*
Docket # 33, Exh. D at 22-24.  On March 18, 2005, the Court sentenced Davis to two years
probation and a $30,000 fine.  *See* Docket # 33, Exh. E at 14.

embargo expired by calling clients that he thought might have an interest in the information so that they could "make significant moves in advance of the market responding to the official public release," which is exactly what Nothern did in this case. *Id.* at 21.

Now Nothern is attempting to impair the SEC's ability to litigate its securities fraud claims against him by requiring the SEC to produce documents and witnesses from Executive Branch departments, which the SEC does not control. Magistrate Judge Sorokin properly denied Nothern's motions. His Order should be upheld.

## ARGUMENT

**A.    The Law Does Not Require The SEC To Obtain And Produce Documents Of Other Government Departments Nor Does It Require The SEC To Produce Employees of Other Government Departments For Testimony In Response To Nothern's Discovery Requests.**

This case was filed on behalf of the SEC, not the entire United States government. [12] As Magistrate Judge Sorokin noted, it is undisputed that the SEC is comprised of five Commissioners who are appointed by the President for fixed terms which do not lapse at the same time, and are not subject to removal or discipline by the President. Docket # 63 at 10. Unlike Executive Branch departments, like Treasury and Justice, the SEC is an independent regulatory agency of the government, and is essentially free from the control of the government's Executive Branch. *See U.S. v. American Tel. & Tel. Co.*, 461 F. Supp. 1314, 1335-1336 (D.D.C. 1978) ("*AT&T*").

The proposition upon which Nothern's renewed motion to compel and his motion to show cause are based – that Executive Branch departments of the federal government become

---

[12] Contrary to Nothern's allegations, the SEC's Division of Enforcement Staff ("Staff") conducted the SEC's investigation of this matter independent of any limited investigation being conducted by Treasury and Justice. *See* Docket # 33, ¶ 2. Similarly, the decision to bring this action, and all other SEC actions, that resulted from the SEC's investigation into trading in the 30-year bond rested solely on the SEC. Nothern's claim that the SEC brought this action for any reason other than to enforce the federal securities laws, especially his ridiculous claim that this action was filed to "deflect[] critical attention" away from Treasury, should not be credited. Objection at 13.

plaintiffs to an action filed by the SEC – is contrary to law, and raises serious constitutional, and separation of powers, concerns. As Magistrate Judge Sorokin observed, the only case cited by the parties that squarely addresses the issue of whether an independent government agency, such as the SEC, can be compelled to produce documents held in the possession of Executive Branch departments under Rule 34 of the Fed. R. Civ. P. is *AT&T,* which rejected the very legal arguments Nothern asserts in his motions and in his Objection.[13]

Justice filed *AT&T* on behalf of the United States. Although the United States was listed as the plaintiff in the action, the Court found that the plaintiff did not include all agencies and departments of the United States government and denied the defendants' motion to compel Justice to produce document contained in the files of the Federal Communications Commission ("FCC") and other independent regulatory agencies. Specifically, the court held that "there is no basis for holding that a quasi-legislative agency, which the law necessarily regards as an independent body created to execute independent responsibilities, becomes a 'plaintiff' when the Department of Justice chooses to file a lawsuit on behalf of the United States." *Id.* at 1335. The court noted that while Justice and other the departments of the Executive Branch could be considered to be plaintiffs because of the "peculiar facts" of the case "which involve[d] many departments and their evidence," independent regulatory agencies could not. *Id.* at 1334-1335. The court also found that "the plain fact is that a party cannot produce that which it does not have . . . [and] in a very real, practical sense, [an independent regulatory agency's] documents are not in the control of either the Department of Justice or the Executive Branch." *Id.* at 1335. Moreover, the court concluded that to hold an independent regulatory agency of the government to be a plaintiff in the case for purposes of Rule 34 "would not only contradict over forty years of legal history, but would effectively leave the conduct of this lawsuit, and perhaps of other actions brought by the government vulnerable to a virtual veto by one or more independent regulatory

---

[13] In *AT&T* the court noted that "there is a paucity of authority on this issue in the area of civil litigation, and there certainly has been no instance of discovery being sought or required on as broad a scale, involving as many departments of government as in this case." 461 F. Supp. at 1333.

agencies." *Id.* at 1336.  Although *AT&T* involved a motion to compel the production of documents from government agencies, its holding is equally applicable to the production of testimony.

In his Objection, Nothern attempts, unsuccessfully, to spin the holding in *AT&T* in his favor by claiming that it allows the Court to ignore the independent status of the SEC, the agency that filed this lawsuit, and ignore the fact that the SEC cannot control Executive Branch departments, and nonetheless find that Treasury and Justice are plaintiffs in this case because they are subject to the control of the President.  Objection at 17.  This flawed interpretation of *AT&T* must be rejected.  Nothern bases his reading of *AT&T* on his erroneous assertion that the Executive Branch is "the branch of the government whose interests the SEC is advancing with this lawsuit."  Objection at 17.  The SEC is an independent agency of the government charged with enforcing the federal securities laws.  To the extent the SEC advances any interests, it is the interests of investors.  The SEC is not controlled by the President, or any other Executive Branch department or agency.  Indeed, as an independent regulatory agency, the SEC was "intentionally created to be somewhat apart from the government, in general, and from the White House in particular."  *Id.* at 1335.

The holding in *AT&T* makes clear that independent government agencies and Executive Branch departments are separate and distinct entities which do not control each other's documents.  Docket # 63 at 9-10.  The focus of the Court in *AT&T* was not the status of the agencies the defendants were trying to compel, but the status of those agencies in relation to the named plaintiff, Justice.  The Court reasoned that because Justice had filed the action on behalf of the Executive Branch, it could therefore find that other Executive Branch departments were plaintiffs to the action for purposes of Rule 34.  The Court, however, determined that the defendants could not obtain discovery from the FCC, an independent agency, pursuant to Rule 34 because it was not a plaintiff to the action.  Magistrate Judge Sorokin properly found that "[t]hough some circumstances distinguish this case from *AT&T*, those distinctions are not

material" and correctly concluded that the SEC does not control Treasury and Justice. Docket # 63 at 10.

The other case that has addressed the issue of whether an Executive Branch agency can be found to be a plaintiff for purposes of discovery in an action filed by the SEC supports the SEC's position. In *SEC v. Biopure*, No. 05-00506, 2006 WL 2789002, at *4 (D.D.C. Jan. 20, 2006), the U.S. District Court for the District of Columbia "found no support for Biopure's proposition that because the SEC [Government] is a party, then other branches of Government, such as the FDA [an Executive Branch agency] should also be treated as a party." *Id.* at, * 4. [14] *See generally Sec v. Selden,* No. 05-0476 (RMU), 2006 WL 2374796, at *1-2 (D.D.C. Aug. 16, 2006) (involving an SEC enforcement action filed in the District of Massachusetts in which the defendant who was seeking documents and testimony from the FDA during discovery served Rule 45 subpoenas on the FDA rather than pursing the discovery through the plaintiff SEC). [15]

In his Objection, Nothern also relies on the holdings in *Harvey Aluminum Inc. v. NLRB*, 335 F.2d 749 (9th Cir. 1964) ("*Harvey*") and *Ghana Supply Commission v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979) ("*Ghana*"), but neither case supports his argument that the SEC is obligated to produce documents and witnesses from Executive Branch departments in response to his discovery requests.

Surprisingly, Nothern admits that *Harvey* does not serve as authority for the SEC's duty to produce documents from other government agencies. Objection at 16. He correctly notes that

---

[14] The Court also did not accept the defense's argument, which is similar to arguments raised by Nothern in this case, that the FDA should be considered a plaintiff because it had provided "substantial assistance" to the SEC. *Id.* at, *4.

[15] *See e.g. U.S. v. Davis*, 140 F.R.D. 261, 263 (D.R.I. 1992) (rejecting defendant's claim that a subcommittee of the U.S. House of Representatives became plaintiffs to the action for purposes of Rule 34 in an action filed by Justice on behalf of the United States); *In re Air Crash at Dallas/Forth Worth Airport on Aug. 2, 1985*, 117 F.R.D. 392, 393 (N.D. Texas 1987) (denying a motion to compel the United States to produce documents contained in the files of the National Transportation Safety Board in response to a Rule 34 document request on the grounds that the NTSB functions as "an entirely autonomous entity, not subject to any other executive agency.")

the SEC's obligation arises from Rule 34 of the Fed. R. Civ. P., which only requires parties to produce documents within their possession, custody or control. *Id.* Where Nothern misses the mark in his analysis of the *Harvey* opinion is when he claims that because the Ninth Circuit in *Harvey* required the NLRB to produce witness statements from Executive Branch agencies in an adjudicatory hearing before the Board, based on the principles underlying *Jencks v. United States*, 353 U.S. 657 (1957), the SEC in this federal court action should be required to obtain and produce not only witness statements, but *all documents* from Executive Branch departments that are responsive to his sixty-six document requests.

As Magistrate Judge Sorokin correctly concluded, "[t]his case is materially different from *Harvey.*" Docket # 63 at 11. In *Harvey* the Ninth Circuit based its opinion in part on a statute, 29 U.S.C.A. § 161 (b), that provided for the Board to obtain documents from other government agencies upon request by the Board at the direction of the President. No such statute exists to allow the SEC to obtain the documents that Nothern seeks from Treasury and Justice. [16] Furthermore, in stark contrast to the facts of *Harvey*, in this case Nothern is not seeking production of witness statements that are central to this case, which he cannot obtain through any other means. He is seeking to compel the SEC, to obtain and produce documents from Executive Branch departments in response to sixty-six Rule 34 document requests, which the SEC does not possess or control. The Court in *AT&T* distinguished the holding in *Harvey* for this very reason finding that the Ninth Circuit "was essentially concerned with Jencks Act statements in the possession of executive departments." 461 F. Supp. at 1336, n. 63.

While counsel for Nothern failed to even mention *Ghana* during oral argument on the motions at issue, he now criticizes Magistrate Judge Sorokin's Order for failing to discuss the

---

[16] Nothern contends that Treasury's and Justices' *Touhy* regulations do not apply to the SEC. Docket # 29 at 14, Objection at 14. Nothern's contention is incorrect. Although the *Touhy* regulations provide a mechanism for other government agencies or government officers acting in their "official capacity" to request information without complying with all of the *Touhy* regulations, as Magistrate Judge Sorokin found, they do not confer any legal obligation on the part of Treasury or Justice to release the documents or witnesses to the SEC. Docket # 63 at 13.

*Ghana* decision. Magistrate Judge Sorokin did not need to discuss the holding in *Ghana* in his Order denying Nothern's motions because *Ghana* has no bearing whatsoever on this case. In *Ghana* the Court did not address, let alone decide, the issue of whether an independent regulatory agency is obligated under Rule 34 to produce documents from other government agencies. The Court found that when the entire Republic of Ghana filed suit through one of its agencies, the Ghana Supply Commission, pursuant to Massachusetts state law, it waived the right to claim governmental privilege except as to documents that contained "military or diplomatic secrets." *Id.* at 593. Accordingly, the Court held that the Republic of Ghana was required to make available all information relevant to the defense that was in the possession, custody or control of the Ghanaian government and could not allow particular agencies to withhold documents "solely on the claims of intragovernmental or executive privilege." *Id.* at 595.

This case differs materially from *Ghana*. This action was filed on behalf of the SEC, an independent regulatory agency, not the entire United States government. The SEC is not objecting to producing documents from Executive Branch departments on the basis of government privilege – its objection rests on the fact that the documents Nothern seeks are outside of the SEC's possession, custody and control.

**B.      Nothern's Due Process Argument Must Be Rejected Because He Has Failed To Take Advantage Of Established Procedures To Obtain The Discovery He Seeks.**

This is not a case where Nothern has been denied, or risks being denied, due process. Magistrate Judge Sorokin correctly noted that "Nothern retains the full range of discovery options available to him pursuant to Rule 45 [of the Federal Rules of Civil Procedure] (which controls discovery directed to non-parties) and which, as Nothern concedes, now include the ability to serve Rule 45 subpoenas upon the government itself." Docket #63 at 11. To date Nothern has not served a single Rule 45 subpoena on either Treasury or Justice, nor has he served them with any requests for documents pursuant to their *Touhy* regulations. While Nothern served both Treasury and Justice with FOIA requests, he has not utilized all of the procedures available

to challenge the denial of his requests, or those agencies' privilege assertions, which includes filing a FOIA lawsuit in United States District Court. Further, although Nothern claims that he is willing to file an action under the Administrative Procedures Act, to challenge Treasury's denial of his request to depose the five additional Treasury employees at issue in his motion to show cause, he has failed to do so. *See Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dept. of Treasury*, 86 F.3d 1208, 1212 n.4 (D.C. Cir. 1996).

Nothern's attempts to justify his failure to pursue discovery through Rule 45 and other alternatives are unpersuasive. Nothern claims that this Court should set aside Magistrate Judge Sorokin's Order and make the unprecedented finding that Treasury and Justice became plaintiffs to this action when it was filed by the SEC because it may be "cumbersome and time-consuming" for him to obtain documents from these Executive Branch departments through established alternative means. Objection at 19-20. As stated above, Nothern's claims that the Executive Branch is a party to this action, or that the SEC controls the Executive Branch and its departments are not supported by law. Moreover, any logistical problems or delay Nothern faces in trying to compel Executive Branch departments to produce documents, the SEC also faces. The SEC does not control Treasury or Justice, has no access to their buildings or files, and cannot, contrary to Nothern's naïve and unsupported contention, simply demand and receive documents from these departments. *See* Docket # 63 at 13. If Treasury and Justice refuse to produce requested documents and witnesses to the SEC, it would have to seek court redress as well.

Nothern's reliance on *AT&T* and *Harvey* to support his assertion that that he should not be required to pursue the discovery through Rule 45 subpoenas, FOIA and the APA is misplaced. Just like the defendants in *AT&T* had to use alternative discovery means to obtain documents from the FCC, a non-party independent government agency, Nothern should be required to utilize established procedures to obtain the discovery he is seeking from Treasury and Justice. Additionally, *Harvey* differs from this case in several material respects, not the least of which is that in *Harvey* the defendants attempted to obtain witness statements through motions and

15

*subpoenas duces tecum* and failed, thereby leaving, as Magistrate Judge Sorokin correctly found, "no alternative avenue for obtaining the reports." Docket # 63 at 11. *See also Harvey*, 335 F.2d at 752. Here, Nothern has made little to no attempt to seek discovery through alternative means, choosing instead to spend more than a year trying to force the SEC to produce documents from Executive Branch agencies which it does not have and does not control.

Nothern has limited himself by refusing to take advantage of established procedural methods put in place that would allow him to pursue the discovery he seeks from Treasury and Justice. In doing so, he has unfairly delayed the discovery process in this case and impeded the SEC's ability to prosecute its claims against him. The Court should counsel no further delay, and uphold Magistrate Judge Sorokin's Order denying Nothern's motion to show cause and his renewed motion to compel production of documents from other government agencies.

**C.    Magistrate Judge Sorokin Correctly Found That The Evidence Nothern Seeks Is "Not As Central In Its Importance" To This Case.**

In reaching his legal conclusions in his January 24, 2007 Order, Magistrate Judge Sorokin correctly observed that the discovery that Nothern is seeking is "not as central in its importance to this case," and that Nothern had already "obtained substantial information concerning the disputed issues" as a result of the SEC's production and voluntary efforts to help him to obtain voluntary discovery from Treasury, Justice and the CFTC. Docket # 63 at 12. Indeed, Nothern has already taken the depositions of nine Treasury employees and received countless documents related to the very information that he claims is "critical" to his defense, such as: (1) Treasury decision to suspend the 30-year bond, (2) Treasury's policies and procedures related to embargos, (3) Treasury's effective use of the embargo procedure on October 31, 2001, (4) Peter Davis' admission to the October 31, 2001 Treasury refunding conference, (5) the posting of the press release on Treasury's website at 9:43 a.m. on October 31, 2001. Docket # 53, Exhs. B, C. (containing  citations to the depositions of current and former Treasury employees, Salvatore Antonio Fratto, Frances Anderson, Elizabeth Holahan Schmutz, Roger Anderson, Peter Fisher,

Brian Roseboro, Paul Malvey, Jill Ousley and Lula Tyler). Magistrate Judge Sorokin's determination as to the limited importance of the discovery that Nothern seeks from Treasury and Justice is entitled to substantial deference. *Dubin v. E.F. Hutton Group, Inc.*, 125 F.R.D. at 373.

Even if Magistrate Judge Sorokin's factual observation regarding the importance of the discovery sought by Nothern in the motions at issue was erroneous – which it was not – it was but one of several observations he relied on in reaching his decision to deny Nothern's motion to compel and motion to show cause. Nothern's contention that the Magistrate Judge's decision should be set aside because he was not persuaded by Nothern's claim that the information he seeks from Treasury and Justice is of much importance to this case should be rejected. The relative importance of the information that Nothern is seeking to compel the SEC to produce from Treasury and Justice has no bearing on the SEC's ability to control those Executive Branch agencies, their documents, or their decisions to produce their employees for testimony. If Nothern believes the information he is seeking is important, he is free to utilize the established procedures that exist for obtaining that information from Treasury and Justice directly, such as Rule 45, FOIA, the *Touhy* regulations and the APA.

**D.    Nothern's Claim That The SEC Has Engaged In Action That Warrants Dismissal Of This Case Is Baseless And Should Be Rejected.**

In an effort to convince the Court that the SEC should be held responsible for the actions of Executive Branch departments, Nothern spends several pages of his Objection attempting to defend the validity of his challenges to Treasury's and Justice's privilege assertions and his request to depose five additional current and former Treasury employees. The SEC, however, was not involved in any decisions by Treasury of Justice to withhold documents from their productions on the basis of privilege. Like Nothern, the SEC has also been denied access to those privileged materials. While the SEC may agree with Treasury's decision that many of the depositions that Nothern seeks are unnecessary and unduly burdensome, it did not participate in

the decision, and has no ability to overturn it. 31 C.F.R. §§ 1.8 – 1.12.[17] To the extent that

Nothern wishes to challenge Treasury's and Justice's privilege assertions and Treasury's

application of its own *Touhy* regulations, Magistrate Judge Sorokin properly found that he should

apply directly to those departments to do so, rather than going through the SEC. Docket # 63 at

12.

Even if Treasury's denial of Nothern's request for five additional depositions, and the

privilege assertions made by Treasury and Justice could be imputed to the SEC – which they

cannot - Nothern's claim that Treasury's and Justice's actions warrant an order to show cause,

and the possible dismissal of the SEC's lawsuit case is without merit. Dismissal of a plaintiff's

action, especially dismissal with prejudice, is typically reserved for cases in which the plaintiff

has shown continued deliberate disregard for court orders and procedures, and been forewarned

of the consequences of continued non-compliance.[18] Indeed, the First Circuit has found that

dismissal of an action with prejudice "is strong medicine, not casually to be dispensed . . ."

*Tower Ventures Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002). Even the cases that

Nothern cites in support of his motion to show cause are limited to circumstances in which

plaintiffs failed to abide by court discovery orders after receiving warnings of the likely

consequences of such action. *See Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003) (upholding

---

[17] Nothern criticizes the SEC for not asking Treasury to reconsider its denial of his request for depositions. His criticism is misplaced especially in light of the fact that prior to filing his motion to show cause Nothern never sought reconsideration of Treasury's decisions. He can hardly blame the SEC for not taking action that he refused to take himself.

[18] *See Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 10 (1st Cir. 1991)(upholding dismissal of an action after the plaintiff evidenced a deliberate pattern of delay and disregard for court orders and finding that "dismissal with prejudice is a harsh sanction which runs counter to our strong policy favoring the disposition of cases on the merits.")(citations and internal quotations omitted*); Angulo-Alvarez v. Aponte de la Torre*, 170 F.3d 246, 252 (1st Cir. 1999)( finding that a court may dismiss an action where "a noncompliant litigant has manifested disregard for orders of the court and been suitably forewarned of the consequences of non-compliance"); *Serro-Lugo v. Consortium-Las Marias*, 271 F.3d 5, 6 (1st Cir. 2001)(holding that the district court acted within its discretion in dismissing an action after the plaintiff repeatedly violated court orders and had been warned of the consequence of non-compliance).

dismissal after plaintiff was "forewarned of noncompliance, [and] failed to abide by a court order); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640-43 (1976) (upholding dismissal of action after plaintiffs exhibited "flagrant bad faith" by failing to substantially answer interrogatories after receiving numerous extensions from the court and after "several admonitions by the Court"); *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d at 45 (finding that dismissal of plaintiff's action was appropriate where plaintiff's counsel engaged in "serial violations of the court's scheduling order").

The actions take by the SEC,  Treasury and Justice do not warrant an order to show cause or dismissal of the SEC's case.  The Court has not issued any orders against the SEC, or any other government agency, in this action.  Moreover, the SEC, having asserted what it believes is a valid legal argument that it does not control Executive Branch departments, has not refused to comply with any court procedures.

Notably, Nothern does not specifically allege any wrongdoing on the part of the SEC, instead he reserves most of his critique for Treasury, which also has not violated any Court orders, or engaged in any wrongdoing in this case.[19]  During discovery in this case, Treasury expended hundreds of hours, and hundreds of thousands of dollars voluntarily producing documents responsive to Nothern's requests, helping to arrange depositions of current and former Treasury employees, attending depositions involving Treasury employees in New York, Florida and New Jersey, and considering Nothern's fourteen requests for depositions of current and former Treasury employees pursuant to Treasury's *Touhy* regulations – nine of which were granted.  Docket # 51, Exh. J.  Treasury's actions contradict Nothern's claim that it has refused to

---

[19] Nothern is clearly attempting to turn this into a case about Treasury in an effort to deflect attention from his own bad acts. This case is not about mistakes made by Treasury.  It is about Nothern's violations of the federal securities laws.  Indeed, this Court has already found that any misconduct on behalf of Treasury does not create a valid defense to the SEC's insider trading claims in this case.  *See* Memorandum and Order dated November 4, 2005 at 10-11 (Docket # 25).

cooperate with his discovery requests or has engaged in any action that warrants dismissal of this case.

## CONCLUSION

If Nothern's renewed motion to compel and motion to show cause are granted, the SEC will be put into a dangerous position of risking dismissal of this lawsuit based on the actions of Executive Branch departments that the SEC does not control. In addition, a finding that Treasury and Justice are party plaintiffs to this action will challenge the independent status of the SEC and raise serious separation-of-powers problems. *See U.S v. AT&T*, 461 F. Supp. 1314, 1335, n.62 (D.D.C. 1978) (noting that in view of the quasi-legislative status of independent agencies, a requirement that those agencies be considered a party in an action filed by the Executive Branch "might well raise serious constitutional separation-of-powers problems"). If the Court upholds Magistrate Judge Sorokin's decision to deny Nothern's motions, the SEC will be able to promptly proceed with its mission to enforce the federal securities laws in this action without raising separation-of-powers concerns and without impairing Nothern's due process rights, or his ability to obtain the documents that he seeks from Treasury and Justice directly.

For all of the foregoing reasons, the SEC respectfully requests that the Court reject Nothern's Objections to Magistrate Judge Sorokin's January 24, 2007 discovery Order.

Dated:  February 21, 2007                    Respectfully Submitted,

/s/ Erica Y. Williams
Erica Y. Williams
John J. Rossetti, Jr.
U.S. Securities and Exchange Commissions
100 F Street, N.E.
Washington, D.C. 20549-4010
Phone:  (202) 551-4450
Fax:     (202) 772-9245
williamse@sec.gov