UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, : | Civil Action No. 05-10983 (NMG) |
| Plaintiff, : | |
| v. : | **ORAL ARGUMENT REQUESTED** |
| STEVEN E. NOTHERN, : | |
| Defendant. : | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF HIS OBJECTIONS TO MAGISTRATE JUDGE'S ORDER**

Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: March 7, 2007

## TABLE OF CONTENTS

A.    The SEC Mischaracterizes and Misstates the Facts. ...............................................1

B.    Nothern Has Diligently Sought Discovery Through Alternative Means................6

    1.    APA Action on Treasury Depositions .........................................................6

    2.    FOIA Request to Treasury.........................................................................6

    3.    FOIA Request to Secret Service / DHS .......................................................8

C.    The Applicable Case Law Supports Nothern's Requests for Discovery. ...............9

Conclusion................................................................................................................13

## TABLE OF AUTHORITIES

### CASES

*In re Air Crash at Dallas/Fort Worth Airport*, 117 F.R.D. 392 (N.D. Tex. 1987)............13

*Association for Reduction of Violence v. Hall*, 734 F.2d 63 (1st Cir. 1984) ......................9

*Bank Line v. United States*, 76 F. Supp. 801 (S.D.N.Y. 1948) ..........................................11

*Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224 (1st Cir. 1994) .............9

*Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586 (D. Mass. 1979) ...........................................................................................................................11, 14

*Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749 (9th Cir. 1964)................................ 11-14

*SEC v. Biopure Corp.*, No. 05-00506 (RWR/AK), 2006 WL. 2789002 (D.D.C. Jan. 20, 2006)..........................................................................................................12

*State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002)................................9

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 884 (1st Cir. 1995) ...................................................................................................................................9

*United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978) .................................. 12-13

*United States v. Davis*, 140 F.R.D. 261 (D.R.I. 1992) .....................................................12

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ...............................................................8

*Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006)........................................................13

### DOCKETED CASES

*Steven E. Nothern v. United States Department of the Treasury*, Civil Action No. 07-10347-NMG (D. Mass.) ..........................................................................................7

### OTHER AUTHORITIES

U.S. Const. art. II, § 3 .........................................................................................................12

5 U.S.C. § 551......................................................................................................................7

5 U.S.C. § 552................................................................................................................. 9-10

29 U.S.C.A. § 161..............................................................................................................13

31 C.F.R. § 1.5.....................................................................................................................9

31 C.F.R. § 1.12...................................................................................................................6

Fed. R. Civ. P. 26................................................................................................................9

Fed. R. Civ. P. 45................................................................................................................13

Defendant Steven Nothern respectfully submits this reply brief in further support of his Objections to the Order of Magistrate Judge Leo T. Sorokin (Docket # 63), which denied (i) Nothern's renewed motion to compel documents held by the U.S. Department of the Treasury ("Treasury") and the U.S. Department of Justice ("DOJ") (Docket # 44), and (ii) Nothern's motion for an order to show cause why the SEC's case should not be dismissed in light of Treasury's refusal to allow depositions of five current and former Treasury employees (Docket # 49).

**A.      The SEC Mischaracterizes and Misstates the Facts.**

In his Order (Docket # 63, at 12), the Magistrate Judge described the discovery that Nothern seeks as "relevant," but not "central in its importance" to Nothern's defense.  In his Objections (Docket # 65, at 7-12), Nothern showed why this finding was clearly erroneous:  the documents and testimony which he has been denied are in fact central to the elements of the SEC's insider trading claim and his potential defenses.

In its response (Docket # 71, Ex. 1 at 4), the SEC contends – for the first time in these proceedings – that the discovery Nothern seeks is "arguably irrelevant."  Yet the SEC does not address how that discovery does or does not bear on the disputed issues discussed by Nothern in his Objections, such as whether the information announced at Treasury's press conference was actually confidential, or whether Nothern knew of any duty of confidentiality owed by Davis to Treasury.  Many of the factual contentions the SEC does make are either at best incomplete or simply untrue.

First, the SEC makes the incredible claim (Docket 71, Ex. 1 at 4) that "Treasury did not play a major role in the facts that give rise to this insider trading case."  Consider:  The securities in question in this case were issued by Treasury.  The "inside information" was created by Treasury, and then released at an official Treasury press conference.  The alleged "embargo" was created and purportedly enforced by Treasury.  Treasury officials allowed the alleged tipper

Peter Davis to enter the Treasury building for the express purpose of attending the press confer-
ence, and then allowed him (and other attendees) to leave the conference room and building
while the "embargo" was still in effect.  The alleged tipper's fiduciary duty – which the SEC
maintains Nothern somehow knew about – resulted from an alleged agreement in the 1990s
between the tipper and a senior Treasury official.  David Aufhauser, the General Counsel for
Treasury, referred this matter to the SEC for investigation in 2001 and asked to be kept advised.
Later, that same top official (authorization for whose deposition Treasury first provided, then
withdrew) publicly endorsed action against Nothern as appropriate "punishing action against
those responsible for violating our rules" and vindication of Treasury's employees for having
"behaved above board, honorably in the service of their department and country."  John Connor
& Colleen DeBaise, *Youngdahl Indictment Tops US Action is Tsy Leak Case*, Wall St. J., Sept.
24, 2003.

     These undisputed facts show why key contested issues in this case may be resolved only
through the production of relevant Treasury documents and the testimony of Treasury wit-
nesses.[1]  It is inconceivable that in an insider trading case involving a private corporation, the
accused tippee would be denied the right to depose, for example:  the employee who admitted

---

[1] In a footnote (Docket 71, Ex. 1 at 19 n.19), the SEC suggests that the Court's ruling on the
SEC's motion to strike Nothern's estoppel defense, Docket # 25 (Nov. 4, 2005), forecloses
discovery into "mistakes made by Treasury."  Treasury's mistakes, however, relate directly to
the elements that the SEC must prove to establish Nothern's liability.  For example, Treasury's
failure to impose any restraint on the presence or departure of attendees at the October 31, 2001
press conference undermines the SEC's contention that the information was "confidential" at the
time it was released at 9:00 a.m.  The Court thus observed in its Order that the SEC "has done
little to point out specific instances where Nothern's estoppel defense would actually cause it to
expend inordinate amounts of time and money."  Docket # 25, at 12.  In addition, at the time of
briefing on the SEC's motion to strike, and unlike the SEC, Nothern did not have access to an
unredacted version of Treasury's 2002 Office of Inspector General (OIG) report, which contains
information that appears to show actual misconduct (not just negligence) on the part of Treasury
officials.  For example, Treasury employee Jill Cetina provided the OIG with information re-
garding apparent leaks by Treasury officials to a European central bank and to an employee at
Lehman Brothers.  Nothern reserves his right to move for reconsideration of the Court's ruling
on the estoppel defense based on the full evidentiary record.

the tipper into the corporation on the day the tipper obtained the relevant information; an employee with knowledge of reported advance disclosures of the information by a European central bank, and who remarked at the time "how easy it would be" for her colleagues to use information to position themselves in the financial markets; or a high-level official who instituted a 35-minute, honor-system embargo period over the vigorous objections of her colleagues. Yet that is precisely what Treasury, abetted by the SEC, now seeks to do in denying the requested depositions of Elnora Bowser, Jill Cetina, and Michele Davis.

Some facts asserted by the SEC need amplification. The SEC writes that Treasury posted its announcement on its own web site at 9:43:28 a.m., *see* Docket 71, Ex. 1 at 7 & n.8, but ignores the fact that Treasury posted it on another publicly accessible Internet address at 9:40:23 a.m. Docket # 66, Ex. G (Harris Dep. at 89-90, 93-94), Ex. L (Verizon Dep. at 75-76, 149-56). And the SEC cites the self-serving testimony of reporter Brian Collins to claim that Nothern's statement that Collins disclosed the information on the 30-year bond to Fannie Mae at 9:35 a.m. "is untrue." Docket 71, Ex. 1 at 8 n.10. But in making this claim, the SEC neglects the more contemporaneous letter sent by counsel for Fannie Mae to the SEC itself stating that its employee received a call from Collins at 9:35 a.m. *See* Collins Dep. at 66 & Ex. 6 (Toone Decl. Ex. A).[2]

The SEC also claims that Nothern has "admitted that when he received Davis' voicemail he was aware of the meaning of the term embargo as it applied to information from government agencies." Docket 71, Ex. 1 at 6. In fact, Nothern testified at his SEC deposition in 2002 that while he knew nothing about the procedures used by Treasury or most other federal agencies, he did know that the Department of Labor had embargo procedures "whereby they actually lock

_____
[2] Cited deposition excerpts and exhibits not already contained in the record are attached as exhibits to the Declaration of Robert E. Toone filed herewith ("Toone Decl.").

press in a room." Nothern SEC Dep. at 99-100. Toone Decl. Ex. B. Treasury specifically chose to institute "lockdown" procedures for its quarterly refunding announcements only following the October 31, 2001 press conference at issue. Fratto Dep. at 236-38; Holahan Dep. at 253.

Finally, the SEC misstates the record with respect to the documents and testimony Nothern has sought. It writes that the "more Treasury employees Nothern deposed, the more employees he sought to depose," and misleadingly suggests that the depositions Treasury has denied relate to "five additional witnesses." Docket 71, Ex. 1 at 3-4. But Nothern submitted only two *Touhy* request letters to Treasury for deposition testimony – on May 18 and August 16, 2006 – and two of the depositions denied by Treasury were requested in Nothern's first letter. In fact, Treasury initially approved one of those depositions (David Aufhauser) on June 9, 2006, then <u>withdrew</u> its authorization two business days before his scheduled deposition in November. *See* Docket # 51, Exs. B & N. Moreover, the contention that Nothern has sought an excessive number of depositions is belied by the parties' early stipulation that each side could take twenty (20) fact depositions, instead of the presumptive limit of ten (10) set forth in Local Rule 26.1(c). *See* Docket # 21 (Joint Statement Pursuant to Local Rule 16.1(D)).

The SEC further claims that it first proposed sending, on a "voluntary" basis, narrowed document requests to DOJ and Treasury, but that Nothern "rejected it." Docket 71, Ex. 1 at 3 n.3. That is false. <u>Nothern</u> proposed in December 2005 that the SEC forward narrowed requests to other involved agencies as a means of avoiding the present dispute and without waiver of either its or Nothern's legal positions – but SEC refused to proceed unless Nothern waived "any right to move to compel production or for sanctions should those agencies and departments decline to provide them and waives any right to seek a privilege log for documents withheld." Docket # 30, Ex. V (letter of Dec. 16, 2005).

Indeed, even though it has been clear throughout this case that Treasury documents and

testimony would be critical, the SEC has refused on several occasions to assist Nothern's efforts in obtaining such discovery.  For example, after the SEC agreed, at Magistrate Judge Sorokin's prompting, to forward Nothern's document requests to Treasury, Treasury responded by treating them as "*Touhy* requests" and therefore subject to the broad limitations set forth under Treasury's *Touhy* regulations.  Those regulations, however, state that they "shall not be applicable to official requests of other government agencies."  31 C.F.R. § 1.12.  Notwithstanding this language, the SEC contends (Docket 71, Ex. 1 at 13 n.16) that it is "incorrect" to say that the regulations "do not apply to the SEC" because "they do not confer any legal obligation on the part of Treasury … to release the documents or witnesses to the SEC."  This is a non sequitur.  Treasury's invocation of its inapplicable *Touhy* regulations created a substantial and unnecessary barrier to Nothern's efforts to obtain discovery in this case – and the SEC has done nothing to remedy the problem despite Nothern's request that it simply clarify to Treasury that its requests were in fact "official."

Similarly, in an effort to resolve the dispute on Treasury depositions, counsel for Nothern proposed on November 8, 2006 that the SEC request Treasury to authorize the depositions at issue.  *See* Docket # 51, Ex. M. at 1.  The SEC rejected this proposal.  *Id.*; Docket # 50, at 9-10.  Now, the SEC argues that Nothern's "criticism is misplaced especially in light of the fact that prior to filing his motion to show cause Nothern never sought reconsideration of Treasury's decisions."  Docket # 71, Ex. 1 at 18 n.17.  But, in fact, Nothern <u>did</u> urge Treasury to reconsider its decisions to deny his requests to depose Jill Cetina, *see* Docket # 51, Ex. I at 2 ("I urge you to reconsider your statement regarding Treasury's denial of our request."), and David Aufhauser, *see id.*, Ex. O. at 1 ("I am shocked and deeply disappointed by Treasury's decision, which clearly reflects a deliberate decision on your part no longer to cooperate with our discovery efforts in this case.").  Treasury ignored both letters.  Treasury might not have ignored a reconsideration

request from the SEC, but the SEC refused to make one.

**B.    Nothern Has Diligently Sought Discovery Through Alternative Means.**

The SEC erroneously contends (Docket 71, Ex. 1 at 1) that Nothern has failed to take "full advantage" of alternative means to obtain the documents and testimony he seeks from the other agencies.  In fact, as the Magistrate Judge recognized (Docket # 63, at 14), Nothern has diligently pursued this discovery through a variety of means.  Given the recalcitrance of Treasury, however, there is no assurance that those other means will succeed.

**1.    APA Action on Treasury Depositions**

On February 21, 2007, Nothern filed an action in this District under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, challenging Treasury's refusal to allow depositions of its five employees.  *Steven E. Nothern v. United States Department of the Treasury*, Civil Action No. 07-10347-NMG (D. Mass.).  This suit contends that Treasury's actions in denying Nothern's requests were arbitrary, capricious, and not premised on any valid and applicable federal regulation and statute.  Treasury has been served with the complaint and has 60 days to respond.

**2.    FOIA Request to Treasury**

Nothern has also pushed Treasury and the United States Secret Service (an agency formerly located at Treasury, now at the Department of Homeland Security ("DHS")) to respond to the FOIA requests he submitted over a year ago on, respectively, November 11 and December 20, 2005.  *See* Docket # 37, Exs. B & C.  As noted in the parties' Joint Motion for an Extension of Time (Docket # 64, at 2-3), on January 23, 2007 Nothern filed an administrative appeal of his FOIA request based on the representation of Treasury's Office of General Counsel on December 19, 2006 that its production of responsive documents was "final" and "complete."  *See* Docket # 60, Ex. 1.  In this production, Treasury redacted or withheld completely 276 pages of documents it asserted to be immune from disclosure on grounds of "deliberative process" and other privi-

leges.  Nothern has contended that Treasury's withholding was contrary to applicable law and his

ability to obtain a fair adjudication of his case.  *See* Docket # 62, at 2-10.

On February 23, 2007, Treasury informed Nothern that its December 19, 2006 production

was <u>not</u>, in fact, its response to his 2005 FOIA request, and that "the appeal of Treasury's pro-

duction in your January 23, 2007 letter was not yet ripe."  Toone Decl. Ex. C at 1.  Treasury

stated that it was only now (*i.e.*, 14 months after Nothern's request) making its final production,

which included 603 pages released in full and 135 redacted pages.  *Id.*  Treasury further stated

that it was withholding 137 pages in full, and concluded, "now that Treasury's production is

complete ... , you have the right to appeal the partial denial of the FOIA request."  *Id.*

Even though a plaintiff in a FOIA case is entitled to an itemized index of all documents

that an agency has withheld, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), Treasury did

not provide such an index with its February 23, 2007 letter.  However, Treasury did disclose

some documents that it had previously withheld in its prior production to Nothern and the SEC –

describing them as "discretionary disclosures of some otherwise exempt material."  Toone Decl.

Ex. C at 1.  These documents fully confirm Nothern's belief that Treasury has improperly ap-

plied legal privileges to withhold clearly relevant information.

To take just one example, one of the documents previously withheld by Treasury and

now disclosed on a "discretionary" basis contained the following e-mail message from former

Director of Office of Public Affairs Tony Fratto:

> I meant that long before the highly professional and competent Bush
> Administration Treasury appointees arrived on the scene, this place leaked like a
> sieve; and that we wouldn't be talking if our predecessors hadn't been letting
> jokers like Pete Davis into refunding announcements for the past eight years.

A copy of this unredacted document is set forth at Toone Decl. Ex. D.  Even though this message

is highly relevant to the claims and defenses in this case, Treasury had previously justified its

decision to withhold it by invoking the attorney-client privilege, law-enforcement privilege, work-product doctrine, and deliberative-process privilege. *See* Docket # 60, Ex. 2 at 4 (document identified as TREAS-00024-00027 on Treasury's privilege log); Toone Decl. Ex. E (copy of document as initially redacted). But none of those privileges applied, since there was no pertinent or anticipated legal issue or proceeding, no law enforcement investigative techniques or sources were involved, and the message was unrelated to the formulation of official policy. *See* Fed. R. Civ. P. 26(b)(3); *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 69, 72 (1st Cir. 2002); *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 884, 884-85 (1st Cir. 1995); *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 237 (1st Cir. 1994); *Association for Reduction of Violence v. Hall*, 734 F.2d 63, 65-66 (1st Cir. 1984).

The clearly invalid privilege claims asserted with respect to this and other documents suggests that Treasury has improperly withheld many more. Accordingly, on March 1, 2007, Nothern submitted, again, an administrative appeal asking Treasury to reverse its adverse determinations "and produce the requested materials as soon as possible." *See* Toone Decl. Ex. F. Treasury must respond to Nothern's appeal within 20 working days, at which time its response will be final and subject to judicial review. Nothern is prepared to file suit immediately thereafter. *See* 5 U.S.C. § 552(a)(6)(ii); 31 C.F.R. § 1.5(i)(3).

### 3.    FOIA Request to Secret Service / DHS

Nothern is also prepared to file a FOIA complaint against the Secret Service, another agency that has engaged in inexcusable delay in responding to Nothern's document requests.

Nothern first submitted his requests to the Secret Service on December 9, 2005. Docket # 37, Ex. C. On August 18, 2006, the agency requested narrowed requests, which Nothern provided on August 28, 2006. Docket # 58, Ex. 2. On September 18, 2006, Secret Service sent a letter treating Nothern's narrowed requests as new FOIA requests, but stating that it would con-

duct its search "as expeditiously as possible."  *Id.*, Ex. 3.

Then, on February 1, 2007, the Secret Service sent a new letter claiming for the first time that three of Nothern's requests constitute "a third party request" and require "a properly notarized release from each individual."  Toone Decl. Ex. G.[3]  One of those requests seeks documents relating to a November 6, 2001 memorandum of Sgt. John Muskett, a Secret Service employee.  This memorandum, which listed the individuals who were cleared to attend the October 31, 2001 press conference at Treasury, was attached as an exhibit to Treasury's Office of Inspector General report of January 2002.  *See* Toone Decl. Ex. H.  The other two requests seeks documents concerning the admittance of Peter Davis – the alleged tipper – to Treasury press conferences from 1993 through 2001.

In a response dated March 2, 2007, Nothern explained why the privacy provisions of FOIA do not require requesters to submit notarized releases for requests relating to official government actions and memoranda, and why the substantial public interest in the underlying events at Treasury would outweigh any hypothetical privacy interests.  *See* Toone Decl. Ex. I at 2-4.  If the Secret Service does not produce the requested materials, Nothern is prepared to file a FOIA action against it at the same time it files against Treasury.  The agencies will have 30 days to respond.  5 U.S.C. § 552(a)(4)(C).[4]

**C.    The Applicable Case Law Supports Nothern's Requests for Discovery.**

The legal principle on which Nothern relies is clear and unequivocal: "When an agency

---

[3] Due to the Secret Service's failure to address its letter to any individual, Nothern's counsel did not receive its letter until the end of February 2007.

[4] The parties' pending Joint Motion to Extend Case Deadlines describes Nothern's plan to file in the District of Massachusetts his APA action against Treasury and his FOIA actions against Treasury and the Secret Service / DHS, and requests that the Court accordingly extend all existing discovery and dispositive motion deadlines in this case "until such time as the Court is able to render a decision on the related FOIA and APA actions."  Docket # 64, at 4-5.

- 9 -

of government institutes suit, any obligation to disclose relevant information extends to the government qua government requiring disclosure of all documents in its possession, custody or control, not just those materials in the immediate possession of the particular agency-plaintiff." *Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979) (citing *Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749, 754 (9th Cir. 1964)).  The reasoning in *Ghana Supply Commission* applies with equal force here.  The SEC is an enforcement agency of the U.S. government.  It is undisputed that in this case the SEC worked in coordination with Treasury and DOJ in investigating the events of October 31, 2001.  The SEC may not now withhold discovery from these agencies on the ground it is not in its immediate possession.

In its response (Docket 71, Ex. 1 at 13), the SEC criticizes Nothern for not citing *Ghana Supply Commission* during oral argument, but fails to acknowledge Nothern's extensive and repeated discussion of the case in his briefs.  *See* Docket # 31, at 10-11, 14, 16, 20; Docket # 36, at 3-9; Docket # 45, at 15; Docket # 50, at 14; Docket # 57, at 4, 6, 14; Docket # 59, at 10-11.  The SEC then argues that *Ghana Supply Commission* has "no bearing whatsoever" (Docket 71, Ex. 1 at 14) because the plaintiff agency in that case asserted an intragovernmental or executive privilege.  Yet while the court, applying Massachusetts law, held that the plaintiff had waived any available privilege, *see* 83 F.R.D. at 594, its discussion of the duty of government agencies to produce documents beyond those "in the immediate possession of the particular agency-plaintiff" was not limited to that issue, *see id.* at 595.  Furthermore, neither of the cases cited by the court as support for its holding ?   *Harvey Aluminum* and *Bank Line v. United States*, 76 F. Supp. 801, 803-04 (S.D.N.Y. 1948) ?   involved a claim of governmental privilege.[5]

In its effort to distinguish away *Harvey Aluminum*, the SEC begins by misstating No-

---

[5] In *Bank Line v. United States*, 76 F. Supp. 801, 803-04 (S.D.N.Y. 1948), the court ruled that the Justice Department could not bring suit for damages payable to Treasury where the Navy refused to produce relevant documents.

thern's brief.  In his Objections, Nothern wrote:

> Importantly, Nothern has not cited *Harvey Aluminum* as authority for the SEC's duty to produce documents.  That duty is established independently by Rule 34.  Instead, as the court in *Ghana Supply Commission* recognized, *Harvey Aluminum* stands for the proposition that when a duty to produce documents exists in the law, even an independent agency like the NLRB or SEC cannot circumvent that duty by arguing that the documents are held by a separate agency, so long as that agency (like DOJ and Treasury here) is subject to the President's authority.

Docket # 65, at 16.  In its response (Docket 71, Ex. 1 at 12), the SEC maintains that this passage constitutes an admission "that *Harvey* does not serve as authority for the SEC's duty to produce documents from other government agencies" (emphasis added).  But that is not what Nothern admitted, and that is not what *Harvey* held.  To the contrary, the ruling in *Harvey Aluminum* made clear that even independent agencies like the SEC must produce responsive documents held by Executive Branch agencies like DOJ and Treasury.  Indeed, that was precisely the point made by the court in *United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978) – the case chiefly relied on by the SEC – when it explained why *Harvey Aluminum* "is not to the contrary":

> The court there was essentially concerned with Jencks Act statements in the possession of executive departments.  The President was held to have adequate authority over such departments to procure production, and the courts to order it.  The President lacks that capacity with respect to regulatory agencies ….

461 F. Supp. at 1336 n.63 (emphasis added).  DOJ and Treasury are subject to an executive officer, the President, whose duties include the faithful execution of all federal laws, including the securities laws.  U.S. Const. art. II, § 3.  That is why both *Harvey Aluminum* and *AT&T* ruled that an agency's discovery obligations extend to documents held by such Executive Branch entities, regardless of the independent or non-independent status of the agency that initiated the litigation. [6]

---

[6] None of the other cases cited by the SEC supports its position.  In *United States v. Davis*, 140 F.R.D. 261 (D.R.I. 1992) (*see* Docket # 71, Ex. 1 at 12 n.15), the court held that separation of powers issues and the Constitution's Speech and Debate Clause prevented it from ordering DOJ

The SEC further contends (Docket 71, Ex. 1 at 13) that the Magistrate Judge distin-guished *Harvey Aluminum* on the ground that a statute, 29 U.S.C.A. § 161(b), allowed the NLRB "to obtain documents from other government agencies upon request by the Board at the direction of the President." But while the Magistrate Judge did mention § 161(b), he did not find that it made this case "materially different" from *Harvey Aluminum*. *See* Docket # 63, at 11. And, in fact, there is no difference between the two. Rather than impose an obligation on the President to order Executive departments to produce statements, § 161(b) recognized his discretion to direct it. Similarly, there is no guarantee in this case that the President will order DOJ and Treasury to provide discovery that Nothern seeks – but he certainly has the authority to do so and his constitutional obligation to execute the laws provides that he should.

Just as DOJ unsuccessfully argued in *AT&T* that it had "little influence over other agen-cies of the government," 461 F. Supp. at 1334 n.58, the SEC hinges its argument on its lack of control over other federal agencies. Clearly, the SEC could have done far more to assist No-thern's efforts in obtaining discovery from DOJ and Treasury. As discussed in Section A, *supra*, the SEC could have asked Treasury to authorize the five depositions in question, or urged Treas-ury not to treat the SEC's document requests as *Touhy* requests in violation of its own regulations. But even if these measures had not been available to the SEC, Nothern – the indi-vidual the SEC chose to sue – "obviously" has "even less influence over the agencies" than the SEC, and he is entitled to his "discovery rights irrespective of the effect on inter-departmental

---

to produce documents held by Congress. As the court observed: "This is not a question of a different executive agency; this in fact is an entirely separate branch of the federal government." *Id.* at 263. In *In re Air Crash at Dallas/Fort Worth Airport*, 117 F.R.D. 392, 393 (N.D. Tex. 1987) (Docket # 71, Ex. 1 at 12 n.15), the relevant documents were held by the National Trans-portation Safety Board – an "independent agency," unlike DOJ and Treasury in this case. Finally, in *SEC v. Biopure Corp.*, No. 05-00506 (RWR/AK), 2006 WL 2789002, *4 (D.D.C. Jan. 20, 2006) (Docket # 71, Ex. 1 at 12), the court quashed subpoenas served on the Food and Drug Administration, another independent agency, on the ground that the word "person" in Federal Rule of Civil Procedure 45 does not apply to federal agencies (an interpretation subsequently reversed in *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006)).

relationships." *Id.  Accord Harvey Aluminum*, 335 F.2d at 754-55 (holding that while it "may

well be true" that discovery obligation left NLRB "at the mercy" of other agencies, it was "less

defensible still to resolve such agency disputes" by allowing government to proceed against

defendant who had been denied discovery); *Ghana Supply Comm'n*, 83 F.R.D. at 595 ("If the

government sues through one of its agencies and another agency possesses the information that

must be disclosed, it is only fair that the government or other agency decide whether secrecy of

the materials is worth dismissal of the lawsuit.").  The applicable case law, as well as the princi-

ple of fundamental fairness that underlies the Due Process Clause, requires the government to

produce all relevant discovery or dismiss this action.

## <u>CONCLUSION</u>

For the reasons discussed above and in Nothern's Objections (Docket # 65), the Court

should set aside the Magistrate Judge's Order denying Nothern's motions and enter an order

directing the government to produce all relevant documents and allowing Nothern to conduct his

requested depositions.

STEVEN E. NOTHERN

By his attorneys,


/s/ John A. Shope
Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Robert E. Toone, BBO #6443249
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000


Dated:  March 7, 2007

- 13 -

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ John A. Shope          

B3325931.6