UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 05-10983 (NMG) |
| Plaintiff, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| STEVEN E. NOTHERN, | |
| Defendant. | |

# DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON DEFENDANT'S MOTION TO COMPEL PRODUCTION OF JUSTICE DEPARTMENT DOCUMENTS IN THE SEC'S POSSESSION

Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Andrew B. Loewenstein, BBO #648074
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: June 5, 2007

**Table of Contents**

Page

BACKGROUND ............................................................................................................................1

A.      Factual Background.................................................................................................1

B.      Procedural History...................................................................................................2

C.      Nothern's Motion to Compel ..................................................................................4

ARGUMENT .................................................................................................................................6

A.      Documents Prepared by a Nonparty Are Not Protected Work Product. ................6

B.      The Magistrate Judge Erroneously Found that the DOJ Investigator was the SEC's Representative. ........................................................................................................8

         1.      The DOJ Investigator Was Not the SEC's Representative. ....................8

         2.      The SEC Has Repeatedly Stated that it is Independent From and Does Not Control the DOJ.........................................................................................9

         3.      There Is No Evidence of a Common-Interest Agreement.....................11

CONCLUSION ............................................................................................................................14

Defendant Steven Nothern respectfully submits this Objection to Magistrate Judge's Order of May 22, 2007 denying Defendant's Motion to Compel Production of Justice Department Documents in the SEC's Possession.

## BACKGROUND

### A. Factual Background

In this action, the Securities Exchange Commission ("SEC") alleges that on October 31, 2001 Nothern violated the federal securities laws by trading on information released at the quarterly refunding press conference held by the Department of the Treasury ("Treasury") that day. Treasury's release of this information led to a series of investigations conducted by several different federal agencies, including Treasury, the Department of Justice ("DOJ"), and the SEC.

The information in question was Treasury's decision to suspend issuance of the 30-year bond. According to Treasury emails and testimony, in the days and weeks preceding October 31, Treasury officials disclosed the decision to the White House, a foreign central bank, and, apparently, an employee of Lehman Brothers. On the evening of October 30, 30-year bonds were tight in supply. Treasury e-mailed a statement to the news network CNBC and Congressional staffers at or before 9:00 a.m. on October 31. The decision was officially announced at a press conference on October 31 beginning at 9:00 a.m. with a stated "press embargo" time of 10:00 a.m., the so-called "embargo" being based on what Treasury officials call an informal "honor system." The press conference concluded at around 9:25 a.m., with those in attendance free to leave the Treasury building.

At around 9:30 a.m., Nothern received a call from a broker reporting (now well documented) rumors of the news on the Chicago Board of Trade. Nothern noticed that the price of 30-year bonds was rising. Around 9:38 a.m., Peter Davis, a consultant to Nothern's employer Massachusetts Financial Services ("MFS") who attended the conference, left a voice-mail

1

message for Nothern with the news sometime after having left similar messages with several larger Wall Street clients. When Nothern subsequently listened to the message, he noted a further rise in the bond price. At 9:40 a.m., Treasury placed an announcement on a publicly accessible Internet site, and allegedly transferred it to Treasury's web site at 9:43 a.m. Believing the information to be public and the press embargo inapplicable to Davis or himself, Nothern directed purchases of 30-year bonds for accounts he managed at MFS. The SEC alleges that these trades occurred sometime between 9:42 and 9:42:49 a.m.

Contested issues in the case include (i) whether the information announced at Treasury's press conference was actually confidential, (ii) whether the information was already public at the time Nothern traded, (iii) whether the "embargo" had any practical or legal effect whatsoever, (iv) whether, assuming that it did, Treasury could impose an "embargo" consistent with the First Amendment, (v) whether the consultant, Peter Davis, had a fiduciary or "fiduciary-like" duty to the Treasury not to disclose the information, and (vi) whether, even assuming such a duty, Nothern knew of it. (Both Davis and Nothern have testified that he did not.)

### B.    Procedural History

In September 2003, the SEC filed suit against Peter Davis (the alleged tipper), John Youngdahl (an employee of Goldman Sachs whom Davis had called first and who admittedly knew that Davis had agreed to abide by the embargo), and Nothern in the Southern District of New York. In November 2003, the SEC voluntarily dismissed its complaint against Nothern, who had objected to jurisdiction.

At the same time the SEC was conducting its investigation, DOJ was conducting a parallel criminal investigation, which in 2003 yielded an indictment of Youngdahl (who had lied in the investigation) and a plea to a criminal information by Davis in the Southern District of New York. *See United States v. Davis*, Criminal Action No. 03-1054 (S.D.N.Y.); *United States*

2

*v. Youngdahl*, Criminal Action No. 03-0991 (S.D.N.Y). Nothern voluntarily participated in DOJ's investigation, testified truthfully to the SEC on December 4, 2001, and was never indicted.

The SEC filed the present case against Nothern in this district over three years later on May 11, 2005. On September 27, 2005, Nothern served his First Request for Production of Documents. Among the documents he requested were all notes or other documentation of interviews conducted by any federal agency or department in connection with the SEC's or Justice Department's investigations. Nothern's document request thus encompassed documents in the possession, custody, or control not just of the SEC, but also of all federal agencies and departments, including the Department of Justice. *See* Docket # 30, Ex. T, Request 4.

In its response, the SEC objected to this request to the extent it called for "the production of information and documents that are protected from disclosure by the work product doctrine." *See* Docket # 30, Ex. U, Objection to Request 4. In its original privilege log (Docket # 30, Ex. S), the SEC claimed work-product protection for a variety of documents prepared by DOJ employees, as well as for documents prepared by the SEC and forwarded to DOJ. The SEC's object was based on its contention -- contradicted now in its briefing on the present motion -- that the SEC is independent from and does not control other federal agencies or departments, including the Justice Department. For instance, the SEC represented that it is "an independent regulatory agency" that was "intentionally created to be somewhat apart from the government, in general," and that "independent regulatory agencies of the government and departments of the Executive Branch, like Treasury and Justice, are separate and distinct entities that do not possess or control one another, or one another's documents." (Docket # 32, at 9-10).

In the briefs submitted in support of his initial motion to compel documents held by other

3

government agencies, Nothern cited the inconsistency between the SEC's contention that it is independent of other federal agencies and its simultaneous assertion that documents generated by DOJ should be deemed the SEC's own work product. *See, e.g.*, Docket # 31, at 6, 17; Docket # 36, at 12. In his renewed motion to compel, Nothern argued that if the Court agreed "with the SEC that Rule 34 does not apply to the entire federal government, and that Nothern may be refused the documents held by other agencies consistently with due process," it should at least order the SEC to produce those documents on its privilege log that were prepared by DOJ employees. *See* Docket # 45, at 20. On November 17, 2006, in response to Nothern's renewed motion, the SEC submitted to Nothern a revised privilege log and filed with the Court a declaration by SEC counsel providing background information on the DOJ documents at issue (Docket # 48).

At a hearing on January 4, 2007, Magistrate Judge Sorokin stated that while he would not rule on Nothern's request for production of these documents in the SEC's possession in the context of his motion to compel documents held by other government agencies, Nothern was free to make a new motion requesting such relief.

### C.     **Nothern's Motion to Compel**

Pursuant to Local Rules 7.1 and 37.1, the parties held a telephone conference on Nothern's request on January 29, 2007. They succeeded in narrowing the issues for judicial resolution. Nothern stated that he would not seek to compel production of legal memoranda, draft pleadings, and other documents prepared by SEC personnel even if sent to DOJ. The SEC stated that it would release its claim of privilege with respect to notes of interviews prepared by DOJ personnel at interviews in which no SEC personnel participated. The parties did not reach an agreement on production of notes generated by DOJ personnel during interviews that were

4

jointly conducted by the SEC and DOJ.[1]

Accordingly, Nothern filed a motion to compel on February 7, 2007, which the Court referred to Magistrate Judge Sorokin on April 6, 2007. The Magistrate Judge denied Nothern's motion on May 22, 2007. Although he correctly found that the interview notes that Nothern moved to compel are "relevant,"[2] the Magistrate Judge committed legal error in holding that the notes are protected by the work-product doctrine even though they were prepared by an investigator employed by the putatively third-party DOJ.

The Magistrate Judge's ruling should be set aside because it is clearly erroneous and contrary to law. *See* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."); *Resolution Trust Corp. v. Bright*, 157 F.R.D. 397, 401 (N.D. Tex. 1994) ("Defendants maintain that the magistrate judge acted contrary to law when he held the documents were not discoverable. Because the magistrate judge's legal conclusions are freely reviewable … the court will conduct its own *in camera* inspection of the documents and will decide if any error of law occurred"; reversing in part magistrate judge's order) (citing *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994)).

As explained below, the Magistrate Judge made errors of law in his order holding that the

---

[1] The documents at issue are listed on the SEC's privilege log as SECNOTH 136630-648, 136650-654, 136667-671, 136655-658, 136672-675, 136779-782, 136661-666, 136678-683, and 137300-310.

[2] The documents at issue are notes of interviews of Timothy Bitsberger, Peter Davis, William Dudley, and Irene Tse. The notes are plainly relevant. Davis is the alleged tipper; to prove its claim against Nothern, the SEC must show, *inter alia*, that Davis had a fiduciary or "fiduciary-like" duty to Treasury, that he breached the duty by disclosing information to Nothern, and that Nothern knew at the time about Davis's duty to Treasury. Bitsberger was a high-level Treasury official involved in its decision to suspend the 30-year bond, its release of that information on October 31, 2001, and its subsequent investigation and response to the events of that day. Dudley and Tse are partners at Goldman Sachs with knowledge of that firm's decision to trade on the information Davis provided to that firm on October 31, 2001.

5

work-produce doctrine applied here. The work-product doctrine does not attach to notes prepared by the DOJ investigator because he prepared them on behalf of the DOJ, not the SEC, and he did not otherwise serve as the SEC's representative in any capacity, as is required under Fed. R. Civ. P. 26(b)(3). In fact, the SEC in previous filings has repeatedly emphasized that the SEC is "independent" from other Executive Branch agencies, including the DOJ, over which it professes to exercise no control, and has, thus far, successfully evaded any obligation to produce documents held by other federal agencies or departments on that ground.[3] Moreover, contrary to the Magistrate Judge's order, there is no basis on which the SEC and DOJ could have properly shared the interview notes without waiving the work-product protection since the two agencies did not enter into a common-interest agreement.

## ARGUMENT

Because the SEC asserts the work-product protection, it has the burden of establishing that the doctrine applies. *In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004) (citing *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000)).

### A.   Documents Prepared by a Nonparty Are Not Protected Work Product.

It is undisputed that the notes in question were generated by a DOJ employee involved in DOJ's criminal investigation. The SEC's log identifies Robert Manchak, a criminal investigator for the United States Attorneys' Office for the Southern District of New York, as the author of all five documents. It is further uncontested that Manchak works only for DOJ and has no employment relationship with the SEC. Moreover, to state the obvious, DOJ is not a party to the present action.

---

[3] Indeed, the Magistrate Judge denied Nothern's motion to compel production of documents held by government departments and agencies other than the SEC. Nothern has lodged an objection to that ruling. If Nothern's objection to that ruling is sustained, Nothern will withdraw the present objection.

6

Federal Rule of Civil Procedure 26(b)(3), which codifies the work-product doctrine, provides that the protection applies only to documents that are prepared in anticipation of trial "by or for another *party* or by or for that other *party's* representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" (emphasis added). The doctrine does not protect documents prepared by a nonparty or its representative – "even if the nonparty is a party to closely related litigation." 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 26.70[4] (3rd ed. 2006); *accord* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (2d ed. 2006) ("Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit.").

This point is well established in the case law. In *Doubleday v. Ruh*, 149 F.R.D. 601, 605-06 (E.D. Cal. 1993), the court rejected the protection for the criminal files of deputy district attorneys who were not parties to that civil rights action. In *Gomez v. City of Nashua*, 126 F.R.D. 432, 434 n.1 (D.N.H. 1989), an action against a municipal police department, the court rejected the state attorney general's assertion of work product as a ground for withholding an investigative file. *See also Tubar v. Clift*, No. C05-1154JCC, 2007 WL 30872, at *3-4 (W.D. Wash. Jan. 4, 2007) (documents generated by prosecuting attorney were not protected in suit against police department); *Hendrick v. Avis Rent-A-Car Sys., Inc.*, 916 F. Supp. 256, 259 (W.D.N.Y. 1996) (documents involving same defendant were not protected because they were prepared in connection with other litigation and not by plaintiff's counsel); *Hawkins v. South Plains Int'l Trucks, Inc.*, 139 F.R.D. 682, 684 (D. Colo. 1991) ("The language of the rule limits protection to one who is a party (or a party's representative) to the litigation in which discovery is sought. All recent case law is in accord.") (citations omitted).

### B. The Magistrate Judge Erroneously Found that the DOJ Investigator was the SEC's Representative.

The Magistrate Judge declined to find, as had been urged by the SEC, that the DOJ investigator qualified as the SEC's "agent"; nor did the Magistrate Judge hold that the investigator fell within the scope of any of the other types of representatives enumerated in Fed. R. Civ. P. 26(b)(3), namely an attorney, consultant, surety, indemnitor, or insurer. *See* Order at 4. Nonetheless, the Magistrate Judge held that the DOJ investigator was somehow still a "representative" of the SEC for purposes of the work-product doctrine. *Id.* at 4-5. The Magistrate Judge's holding is wrong as a matter of law.

#### *1.* The DOJ Investigator Was Not the SEC's Representative.

The Magistrate Judge relied on only one case, *Sprague v. Director, Office of Workers' Compensation*, 688 F.2d 862`, 870 (1st Cir. 1982), to hold that the DOJ investigator was a representative of the SEC. But *Sprague* has no relevance to the issue at hand, namely whether work-product protection may be invoked for materials produced by the representative of a non-party. In that case, counsel for the plaintiff wrote a letter to a physician "requesting" his "opinion as to the cause" of the plaintiff's medical condition. *Id.* at 868. At the time plaintiff's counsel wrote to the physician, he was "preparing for an imminent lawsuit." *Id.* at 870. The physician responded by "setting forth" his "opinion" on the cause of the plaintiff's condition. *Id.* at 869. Based on these facts, the Court properly concluded that the physician "prepared his letter *for* [plaintiff's] counsel, thus bringing the letter within" Rule 26(b)(3). *Id.* at 870 (emphasis in original). The document in question in *Sprague*, therefore, had been prepared *on behalf of the plaintiff's counsel* and not for a third-party, as were the notes prepared by the DOJ investigator. Accordingly, *Sprague* provides no support for protecting the work-product of the representative of a non-party, such as DOJ.

8

Nor is there any evidence that the DOJ investigator represented the SEC in any capacity. There is no evidence that the SEC retained, employed, or compensated Manchak. There is no evidence of an agreement defining Manchak's relationship with the SEC. There is no evidence that counsel for the SEC had any authority to assign responsibilities to Manchak, or that the SEC actually assigned him any such responsibility. There is no evidence that Manchak assented to serve as an agent of the SEC. There is also no reason why the five SEC attorneys who, at different times, attended the five interviews (*see* Docket # 48, ¶ 8) could not have taken notes on their own – or at least brought along another SEC employee to do so. Indeed, the evidence proffered by the SEC makes clear that, to the extent there was any agreement between the DOJ and SEC regarding note-taking, it was that the DOJ would make notes available to the SEC, not that the DOJ investigator had somehow been seconded as the SEC's representative: "Counsel agreed that the one set of notes resulting from these interview sessions *would be available for use* by attorneys for the Commission and by the USAO." Docket # 48, ¶ 7 (emphasis added).

    *2.  The SEC Has Repeatedly Stated that it is Independent From and Does Not Control the DOJ.*

The contention that the DOJ investigator served as the SEC's "representative" during joint SEC-DOJ witness interviews is utterly inconsistent with the SEC's opposition to Nothern's motion to compel documents held by DOJ and Treasury. The very day that the SEC filed its opposition to the present motion to compel, the SEC simultaneously asserted in another brief that the SEC "does not control" Executive Branch departments like DOJ and that "the SEC's Division of Enforcement Staff … conducted the SEC's investigation of this matter independent of any limited investigation being conducted by Treasury and Justice." Docket #71, Ex. 1 at 20, 9 n.12. Indeed, for more than a year, the SEC has vigorously fought Nothern's efforts to obtain DOJ and Treasury discovery from it on the ground that it is a wholly separate and distinct party

9

from those agencies. *See, e.g.*, Docket # 32, at 9 (describing itself as "an independent regulatory agency" that was "intentionally created to be somewhat apart from the government, in general"); *id.* at 10 ("independent regulatory agencies of the government and departments of the Executive Branch, like Treasury and Justice, are separate and distinct entities that do not possess or control one another, or one another's documents"); Docket # 46, at 10 ("The SEC does not control any other government agency or its documents, has no access to their buildings or files, and cannot . . . simply demand and receive documents from these agencies."); *see also* Docket # 52, at 7 (other government agencies "did not have input in, or control over, the SEC's investigation of Nothern's trading, or its decision to file this action").

In light of these statements to the Court, the SEC should not be allowed to simultaneously withhold the production of DOJ documents already in its possession on the theory that the DOJ employee who prepared them was the SEC's representative. The SEC cannot have it both ways. If, as it repeatedly insisted in its successful attempt to limit Nothern's discovery from including documents from other federal agencies, the SEC is "independent" and "does not control" the DOJ, it must live with the consequences of that position. One such consequence is that the SEC cannot claim a DOJ employee as the SEC's representative.

The SEC's refusal to produce the notes of the interviews it conducted jointly with DOJ is also inconsistent with its production of memoranda on interviews of Treasury employees that it conducted jointly with Treasury in late 2001. Attached to the January 2002 report of Treasury's Office of Inspector General (OIG) – which the SEC produced to Nothern in full, unredacted form – are eight memoranda. The memoranda stated that the subjects were:

> interviewed by attorneys Andrew Sporkin . . . and Rosemary Filou
> . . . of the Division of Enforcement, United States Securities and
> Exchange Commission (SEC), in coordination with Treasury,
> Office of General Counsel and the Office of Inspector General
> (OIG).

*See, e.g.*, Docket # 30, Ex. R.

The SEC rightly declined to claim these memoranda as its work product, even though it maintains, notwithstanding the memoranda language quoted above, that it "conducted its investigation of this matter independent of any limited investigation being conducted by the Treasury's Office of Inspector General . . . or any other office in the Treasury." Docket # 32 at 5. Just as the SEC produced the Treasury memoranda, so should the SEC be compelled to produce the joint interview notes prepared by the DOJ investigator.[4]

### 3. There Is No Evidence of a Common-Interest Agreement.

Finally, the Magistrate Judge held that the work-product privilege had not been waived because "the two agencies had common interests (or at the very least were no in adversarial positions) and the SEC has not used the materials in any way inconsistent with the purposes of Rule 26(b)(3)." Order at 5. The Magistrate Judge's ruling is legally incorrect. Even assuming that this doctrine can apply to parallel investigations conducted by two federal enforcement agencies who contend that they are each independent of the other, it is well established that a

---

[4] Indeed, had the DOJ investigator served as the SEC's representative, it would have raised serious questions about the improper "merging" of the DOJ and SEC investigations. In recent years, courts have criticized the DOJ and SEC for crossing the line. *SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1287-88 (D. Colo. 2006) (refusing to strike defense of unclean hands "based on the claim that the SEC improperly commingled its investigation into this case with a criminal investigation being conducted by the Department of Justice" where SEC has "apparently freely admitted that … it has conducted 'joint witness interviews with DOJ personnel'"); *United States v. Stringer*, 408 F. Supp. 2d 1083, 1086 (D. Or. 2006) (dismissing indictments and suppressing SEC interview statements after learning that DOJ had decided to withhold its own investigation while relying "on the work product generated by the SEC investigators"); *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1140 (N.D. Ala. 2005) ("the S.E.C. civil investigation became inescapably intertwined with the criminal investigation conducted by the Department of Justice *and* [counsel] of the S.E.C") (emphasis in original); *SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003) ("Because this is a case where the government has undoubtedly manipulated simultaneous criminal and civil proceedings, both of which it controls, 'there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means. In that special situation the risk to individuals' constitutional rights is arguably magnified.'") (citation omitted).

party seeking to invoke the doctrine must first prove that it entered into a joint-defense or common-interest agreement. *United States v. Sawyer*, 878 F. Supp. 295, 297 (D. Mass. 1995); *see also In re Grand Jury Subpoena*, 274 F.3d 563, 569 (1st Cir. 2001) (rejecting claimed oral joint defense agreement unsupported by evidence other than lawyer's affidavit); *In re Bevil, Bresler & Shulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (rejecting joint defense privilege because the party "produced no evidence that [there was an agreement] to pursue a joint defense strategy").

The SEC has manifestly failed to meet this burden. There is no evidence that DOJ and SEC entered into a common-interest agreement here. The only such purported evidence found by the Magistrate Judge was an access request by the DOJ to the SEC, but this request provides no support for a common-interest agreement. *See* November 9, 2001 "Access Request by the United States Attorney for the Southern District of New York and the SEC's November 14, 2001 Approval of the Request." (Docket # 46, at 14; Docket # 33, Ex. Q.) First, the access request covered information coming from the SEC to the DOJ; the notes at issue here went from the DOJ to the SEC. Second, this access request did not mention the "joint defense" or "common interest" doctrine or even cite any interest common to the SEC and DOJ. Indeed, far from agreeing to maintain the confidentiality of all files and information received, the DOJ specifically reserved its right to use the files and information "for the purpose of our investigation and/or proceeding, and any resulting proceeding," and to transfer them "to criminal law enforcement authorities and self-regulatory organizations subject to our oversight." *See* Docket # 33, Ex. Q at 1 (letter of Robert Khuzami, Chief, Securities and Commodities Fraud Task Force, Office of the United States Attorney, dated Nov. 9, 2001).

Furthermore, there is no evidence of any agreement even arguably applicable to the

specific matter at hand: the transfer of DOJ work product to the SEC. In its supporting declaration (Docket # 48, at ¶¶ 13-15), SEC counsel asserted that SEC staff "anticipated that the notes created during the joint witness interviews of Davis, Dudley, Tse, and Bitsberger would be used in the preparation of any such litigated enforcement actions," and requested these notes from DOJ for the purpose of drafting their "Action Memoranda" to the Commission itself. The SEC's subjective expectations and motivations, however, are irrelevant to whether a common-interest agreement existed. *See United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 29 (1st Cir. 1989) (holding that even though party "might have subjectively thought" that information would be kept confidential, "the 'key question' is what was objectively reasonable under the circumstances") (citation omitted); *Sawyer*, 878 F. Supp. at 297 n.1 ("[O]ne party's mistaken belief about the existence of a joint defense does not, and cannot, give rise to a joint defense privilege."). These subjective expectations are likewise irrelevant to whether the notes constitute the SEC's own work product. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) "[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one."). Because there is no evidence that the SEC and DOJ entered into a common-interest agreement, and no evidence that DOJ's notes were prepared by the SEC's representative for purposes of Rule 23(b)(3), the Court should order the SEC to produce them.

## CONCLUSION

For the foregoing reasons, the Court should enter an order compelling the SEC to produce its documents bearing Bates nos. SECNOTH 136630-648, 136650-654, 136667-671, 136655-658, 136672-675, 136779-782, 136661-666, 136678-683, and 137300-310.

STEVEN E. NOTHERN
By his attorneys,

/s/ John A. Shope
Nicholas C. Theodorou, BBO #495730
John A. Shope, BBO #562056
Andrew B. Loewenstein, BBO #648074
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: June 5, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ John A. Shope