# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (Boston Division)

|  |  |  |
|---|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) | **Civil Action No. 05-CV-10983 (NMG)** |
| **Plaintiff,** | ) | |
| **v.** | ) ) | |
| **STEVEN E. NOTHERN,** | ) ) | |
| **Defendant.** | ) | |

## U.S. SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR LEAVE TO FILE MEMORANDUM OF LAW

Pursuant to Local Rule 7.1(b)(3), plaintiff U.S. Securities and Exchange Commission ("SEC" or "Commission") hereby moves for leave to file the attached memorandum of law in response to defendant Steven E. Nothern's Objection to Magistrate Judge Sorokin's discovery Order denying Nothern's motion to compel the SEC to produce documents that he characterized as belonging to the Department of Justice, but which the Court properly found constituted SEC work product (Docket ## 81, 83). The SEC seeks to file a response to Nothern's Objection to address his false assertion that Magistrate Judge Sorokin's Order contains clearly erroneous findings of fact and legal conclusions that are contrary to law.

On June 18, 2007, counsel for the SEC conferred by telephone with counsel for Nothern regarding the subject of this motion. Nothern consents to the SEC's motion for leave to file the attached memorandum.

Dated:  June 19, 2007                    Respectfully Submitted,


                                         ___/s/ Erica Y. Williams_____
                                         Erica Y. Williams
                                         John J. Rossetti, Jr.
                                         U.S. Securities and Exchange Commissions
                                         100 F Street, N.E.
                                         Washington, D.C. 20549-4010
                                         Phone:   (202) 551-4450
                                         Fax:       (202) 772-9245
                                         williamse@sec.gov


### CERTIFICATION PURSUANT TO LOCAL RULES 7.1(a)(2) AND 37.1

    I, Erica Y. Williams, hereby certify that on June 18, 2007, I conferred with counsel for Nothern and attempted in good faith to resolve or narrow the issues raised in the present motion.


                                         ___/s/ Erica Y. Williams_____


Dated:  June 19, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | Civil Action No. 05-CV-10983 (NMG) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| STEVEN E. NOTHERN, | ) ) | |
| Defendant. | ) | |

## U.S. SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON DEFENDANT'S MOTION TO COMPEL PRODUCTION OF JUSTICE DEPARTMENT DOCUMENTS IN THE SEC'S POSSESSION

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................................ ii

Introduction.................................................................................................................................1

I.    STANDARD OF REVIEW.....................................................................................................1

II    FACTUAL BACKGROUND ................................................................................................2

III.  PROCEDURAL HISTORY....................................................................................................5

IV.  ARGUMENT.........................................................................................................................7

    A. The Interview Notes In Question Were Created For, And At The Direction Of,
       SEC Attorneys And Are Protected From Disclosure Pursuant To The Attorney
       Work Product Doctrine ...............................................................................................7

       1. The Interview Notes In Question Were Created For And At The
          Direction Of SEC Counsel.......................................................................................9

       2. Nothern's Argument That The SEC Has Demonstrated Inconsistent
          Behavior In Withholding Its Work Product Protected Interview Notes
          Should Be Rejected ........................................................................................ .......12

    B. The SEC Has Not Waived The Work Product Protection Of Its Interview Notes.......13

V.    CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anthony v. Abbott Laboratories*, F.R.D. 461 (D.R.I. 1985) ..................................................1

*In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141
(D. Mass. 1988)..............................................................................................................7, 13

*Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610
N.D. Ill. 2000)......................................................................................................................10

*Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372 (S.D.N.Y. 1989)...................................1

*In re Grand Jury Proceedings,*No. M-11-189, 2001 WL 1167497
(S.D.N.Y. Oct. 3, 2001) ......................................................................................................10

*In re Grand Jury Subpoenas,*89-3 and 89-4, John Doe 89-129,  902 F.2d 244
(4th Cir. 1990)................................................................................................................10, 15

*Hickman v. Taylor*, 329 U.S. 495 (1947)........................................................................7, 8

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89 (D. Mass. 2002) ................15

*SEC v. Cavanagh*, No. 98 CIV 1818 (DLC), 1998 WL 132842 (S.D.N.Y. Mar.
23, 1998) ...............................................................................................................................8

*SEC v. Downe*, No. 92 CIV. 4092 (PKL), 1994 WL 23141 (S.D.N.Y. Jan. 27,
1994) ......................................................................................................................................8

*SEC v. Dresser*, 628 F.2d 1368 (D.C. Cir. 1980) ..............................................................14

*SEC v. Nacchio*, 438 F. Supp. 2d 1266 (D. Colo. 2006)....................................................12

*SEC v. Navarre*, No. 92 Civ. 3719 (PNL), 1993 WL 267295 (S.D.N.Y. Jul. 13,
1993) ......................................................................................................................................8

*SEC v. Talbot, Number CV044556-MMM (PLAX)*, 2005 WL 1213797 (C.D. Cal.
April 21, 2005)......................................................................................................................8

*SEC v. Zwick et al.*, Civil Action No. 03 Civ. 2742 (SDNY Filed Apr 21,2003)...............8

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988).........................................................8, 9

*Sprague v. Director, Office of Worker's Compensation*, 688 F.2d 862 (1st Cir. 1982) ...................................................................................................................10

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ...........................................5, 6

*United States v. Bay State Ambulance & Hospital Rental Serv., Inc.*, 874 F.2d 20 (1st Cir. 1989) .................................................................................................14

*United States v. Nobles*, 422 U.S. 225 (1975) ..........................................................7, 9, 10

*United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005) ....................................12

*United States v. Stringer*, 408 F. Supp. 2d 1083 (D. Or. 2006) .........................................12

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .............................................................8

*U.S. v. American Telegraph & Telegraph*, 642 F.2d 1285 (D.C. Cir. 1980)....................13

*U.S. v. Cruz Jimenez*, 894 F.2d 1 (1st Cir. 1990)................................................................2

*U.S. v. Garcia*, 983 F.2d 1160 (1st Cir. 1993) .....................................................................1

*U.S. v. Gericare Medical Supply Inc.*, Number Civ.A.99-0366-CB-L, 2000 WL 33156442 (S.D. Ala. Dec. 11, 2000).............................................................10

*U.S. v. Gioia*, 853 F. Supp. 21 (D. Mass. 1994) .................................................................2

*U.S. v. U.S. Gypsum Co.*, 333 U.S. 364 (1948) ..................................................................2

## FEDERAL STATUTES AND RULES

### Securities Exchange Act of 1934
Section 10(b).....[15 U.S.C. §§ 78j (b)]..............................................................................2

 Rule 10b-5....... [17 C.F.R. § 240.10b-5] .......................................................................2,3

### Federal Rules
[28 U.S.C. § 636(b)(1)(A)] ...................................................................................................1

Fed. R. Civ. P. 26..................................................................................................................11

Fed. R. Civ. P. 26(b)(3)........................................................................................7, 9, 10, 11, 14

Fed. R. Civ. P. 72 ................................................................................................................1

## MISCELLANEOUS

Local Magistrate Rule 2(a) ................................................................................................1

Advisory Commission Notes: Subdivision (b)(3)................................................................11

The Securities and Exchange Commission ("SEC" or the "Commission") respectfully submits this response to Defendant Steven E. Nothern's objection to Magistrate Judge Sorokin's May 22, 2007 discovery Order (Docket ## 81 and 83) denying Nothern's motion to compel the SEC to produce its protected work product.[1]  Nothern mistakenly asserts that he is seeking production of Justice Department documents, however as Magistrate Judge Sorokin correctly found, the interview notes that are subject of his motion to compel were drafted for, and at the direction of, SEC attorneys and are the SEC's work product.[2]  Contrary to Nothern's assertions, Magistrate Judge Sorokin's Order was not clearly erroneous or contrary to law.

For the reasons set forth below, the SEC respectfully requests that the Court deny Nothern's Objection in its entirety.

## I.    **STANDARD OF REVIEW**

A magistrate judge may hear and determine pretrial motions that are not dispositive of a claim or defense, including discovery motions. *See* Fed. R. Civ. P. 72, 28 U.S.C. § 636(b)(1)(A), Local Magistrate Rule 2(a).  A magistrate's resolution in pretrial discovery disputes is entitled to substantial deference. *Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372, 373 (S.D.N.Y. 1989), *see also Anthony v. Abbott Lab.*, 106 F.R.D. 461, 463 (D.R.I. 1985) ("[I]f the magistrate system is to work effectively, magistrates must be given some latitude to exercise judgment and discretion.  The district courts should be slow to interfere in everyday decisionmaking [sic], lest the floodgates be rent asunder and the efficacy of the system undermined.").  Indeed, an order issued by a magistrate judge can be set aside by the district court only if it is "clearly erroneous or contrary to law." *U.S. v. Garcia*, 983 F.2d 1160, 1166 (1st Cir. 1993) (citing 28 U.S.C. §

---

[1] All references to Defendant's Objection To Magistrate Judge's Order On Defendant's Motion To Compel Production of Justice Department Documents In The SEC's Possession (Docket # 84) will be referred to herein as "Nothern's Objection" or "Objection."

[2] All references to Nothern's Memorandum In Support Of His Motion To Compel Production Of Justice Department Documents In The SEC's Possession (Docket #67) will be referred to herein as ("motion to compel").

1

636(b)(1)(A)).  The phrase "clearly erroneous" refers to the magistrate judge's factual findings. *U.S. v. Gioia*, 853 F. Supp. 21, 26 (D. Mass. 1994).  A finding is clearly erroneous when a court upon review of the entire evidence "is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 397 (1948).  However, if two interpretations of evidence are permissible then a court's choice of one cannot be clearly erroneous. *U.S. v. Cruz Jimenez*, 894 F.2d 1, 7 (1st Cir. 1990).

Magistrate Judge Sorokin did not make any clearly erroneous findings of fact or judgments that are contrary to law in his Order denying Nothern's motion to compel.  He properly found that the interview notes were subject to work product protection because they were "created partly for the benefit of SEC counsel . . . . include the mental impressions, conclusions, opinions or legal theories of SEC counsel and constitute material prepared in anticipation of litigation."  Docket # 81 at 4.

## II.    **FACTUAL BACKGROUND**

The SEC brought this enforcement action on May 12, 2005, alleging that on October 31, 2001, Nothern, a former mutual fund portfolio manager at Massachusetts Financial Services Company ("MFS"), violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j (b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] by engaging in illegal securities trading based on material nonpublic information he received that the United States Department of Treasury ("Treasury") was going to suspend issuance of the 30-year bond.  The SEC's complaint is based on the following facts.

On October 31, 2001, Peter J. Davis Jr., a Washington, D.C.-based consultant, hired by Massachusetts Financial Services Company ("MFS"), attended a refunding press conference at Treasury.  Treasury subjected the information released at this conference to an embargo until a specified time.  Davis had been attending Treasury refunding conferences for several years prior to October 31, 2001, "pursuant to an agreement that he had with the Treasury Department that he would abide by the embargo and keep all information disseminated there confidential until the embargo expired." Docket # 33, Exh. D at 19.

2

"[A]t the beginning of the [October 31] press conference, before the question and answer period, and at the conclusion" of the conference, a Treasury Public Affairs Specialist announced that the information provided at the conference would be embargoed until 10 a.m. *See* Docket # 33, Exh. A at 2. Despite his agreement with Treasury, and the directives he was given by a Treasury employee during the conference to abide by the embargo, as soon as the conference ended Davis left the Treasury building and once outside, used his cellular telephone to call a number of clients, including Nothern, to notify them about Treasury's decision to cancel the 30-year bond. *See* Docket # 33, Exh. D at 21.

The evidence that the SEC has gathered in this case shows that Davis placed his telephone call to Nothern at approximately 9:38 a.m. on October 31 and left a voice-mail message. *See* Docket # 33, Exh. F. Nothern immediately retrieved and listened to the message in which he learned that "Peter Fisher had indicated to Pete Davis that they'd be canceling the long bond and that there would be a press release because it was embargoed until 10 o'clock." *See* Docket # 33, Exh. G at 111-112. Nothern has admitted that he understood that Peter Fisher was a Treasury official in the debt finance area who would have had access to market-sensitive information such as Treasury's decision to suspend or cancel the 30-year bond. *Id.* at 116-117. Nothern has also admitted that when he received Davis' voicemail he was aware of the meaning of the term embargo as it applied to information from government agencies. Docket # 33, Exh. A.

Immediately after retrieving the voicemail message, Nothern relayed the material nonpublic information that he had received from Davis regarding Treasury's cancellation of the 30-year bond to three other MFS portfolio managers. Docket # 33, Exh. G at 125-130. When conveying this information Nothern conveniently neglected to tell the other managers that the information was embargoed, that Davis advised Nothern he had gotten the information from Peter Fisher, or that a Treasury planned to issue a press release announcing the cancellation of the

3

bond at 10 a.m.[3] Nothern then placed an order to purchase $25 million in par value of the 30-year bond for the portfolios that he managed. Docket # 33, Exh. G at 125. Based on the limited information that they received from Nothern, the three other portfolio managers also placed orders to purchase 30-year bonds for the portfolios they managed. *See* Docket # 33, Exh. H at 135-136, Exh. I at 76-77, and Exh. J at 79-82.

Records from Merrill Lynch, the broker executing the trade, indicate that Nothern and the three other portfolio managers authorized an MFS trader to place an order for the $65 million in bonds, and that the trader verbally confirmed the telephone order for the bonds with Merrill Lynch prior to 9:42 a.m. *See* Docket # 33, Exh. K. At 9:43 a.m., Treasury inadvertently posted a press release on its website announcing that it was canceling issuance of the 30-year bond. *See* Docket # 30, Exh. L.[4] The price and volume data on the 30-year bond from October 31, 2001, testimony from numerous witnesses, and many of the documents produced in this litigation, show that the information that Nothern used to trade was nonpublic at the time he placed his trade order, [5] and did not become public until sometime close to 10 a.m. after it was released on the news wires. *See* Docket # 30, Exh. K.

---

[3] *See* Docket # 76, Exh. D (Kurinsky dep.) at 101:24-102:23, 107:18:108:2, 115:22-116:25; Exh. E (Smith dep.) at 138:9-139:18, 141:14-143:1, 202:8-203:10); and Exh. F (Kennedy dep.) at 61:15-63:3, 81:18 84:7.

[4] As a practical matter, Treasury's press release could not be viewed by the public on its website prior to the posting on its production server at 9:43:28. Docket # 76, Exh. J (Verizon Business (Anne Wilson) dep.) at 81:12-22, 180:17-181:10, 199:20-200:11.

[5] Contrary to Nothern's assertions, there is no evidence that Treasury's decision to cancel the 30-year bond became public prior to the time that Nothern traded in the bond. Nothern maintains that Treasury leaked the information prior to October 31 to a trader at Lehman Brothers, a European central bank, and White House officials. Not surprisingly, Nothern has never attempted to take the testimony of any representatives from Lehman Brothers, European central banks or anyone from the White House to obtain admissible evidence to corroborate his groundless assertion of leaks. Numerous witnesses in this case, including Nothern, have testified that rumors of the possible cancellation of the 30-year bond had been circulating for years. *See* Docket # 76, Exh. G (Nothern dep.) at 168:10-170:21, Exh. D (Kurinsky dep.) at 114:3-115:6, Exh. F (Kennedy dep.) at 77:18:79:15, and Exh. E (Smith dep.) at 143:18-144:1, 165:9-166:14.

4

### III.    **PROCEDURAL HISTORY**

It is undisputed that the SEC provided Nothern with a copy of all of the non-privileged documents contained in its investigative file as part of its initial disclosures in this case. Although he had already received all of the non-privileged documents the SEC had in its possession related to this action, on September 27, 2005, Nothern served the SEC with sixty-six overly broad and unduly burdensome document requests. In his document requests, Nothern sought to have the SEC produce documents not only from its files, but from the files of Executive Branch departments and other independent regulatory agencies. In response, the SEC asserted numerous objections, including but not limited to, an objection to producing documents from other government agencies that were outside of the SEC's possession, custody and control and objections to producing documents protected by the work product and other privileges.

On February 17, 2006, Nothern filed a motion to compel the SEC to produce documents from other government departments and agencies, including the United States Department of Treasury ("Treasury"), the United States Department of Justice ("Justice") and the Commodity Futures Trading Commission ("CFTC"). On October 30, 2006, after the SEC engaged in additional efforts to resolve the parties' discovery dispute, Nothern renewed his motion to compel and narrowed the information he sought to those documents held in the files of Treasury and Justice that were responsive to his requests. Docket # 44. Additionally, on November 17, 2006, Nothern filed a motion requesting that the Court order the SEC to show cause why its case should not be dismissed for Treasury's denial of his requests to depose five current and former Treasury employees, pursuant to its *Touhy* regulations.[6] Docket # 49. On January 24, 2007, Magistrate Judge Sorokin denied Nothern's renewed motion to compel and Nothern's motion for an Order to show cause based on the SEC's "powerful" argument that "independent regulatory agencies [like the SEC] and Executive Branch departments are separate and distinct entities

---

[6] The term "*Touhy* regulations" refers to those regulations promulgated by agencies in accordance with the United States Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

5

which do not control one another's documents within the meaning of Rule 34" of the Federal Rules of Civil Procedure. Docket # 63 at 9-10.

After receiving decisions in the SEC's favor on both of his discovery motions, Nothern then sought to compel the SEC to produce copies of notes prepared for, and at the direction of SEC attorneys at witness interviews the SEC conducted with counsel for Justice during the SEC's pre-lawsuit investigation of trading in the 30-year bond. Docket # 48, ¶ 7. Specifically, Nothern asked the Court to compel the SEC to produce work product protected notes of its August 1, 2002 interview of Timothy Bitsberger, October 11, 2002 and February 3, 2004 interviews of Peter Davis, and January 12, 2004 interviews of William Dudley and Irene Tse. Docket # 67 at 5. During these interviews, attorneys from the SEC posed questions to the witnesses, but did not take any notes, relying instead on the notes of Investigator Robert Manchak, an employee of Justice, who agreed to take notes on the SEC attorneys' behalf. *Id.* ¶¶ 7-9. In his motion to compel, Nothern argued that because Investigator Manchak was employed by Justice he could not serve as a "representative" of the SEC within the meaning of Rule 26(b)(3) of the Federal Rules of Civil Procedure. On May 22, 2007, Magistrate Judge Sorokin issued an Order rejecting Nothern's narrow and inaccurate reading of Rule 26(b)(3) and denying his motion to compel the SEC to produce its work product protected interview notes.

By seeking to compel production of the SEC's interview notes, Nothern is trying to unfairly gain access to SEC counsel's mental processes and analysis and free-load off of their pre-lawsuit preparation in an effort to gain leverage in this litigation. Morever, Nothern already deposed Davis and chose not to depose Bitsberger, Dudley, and Tse. Magistrate Judge Sorokin's conclusion that these notes are subject to work product protection was proper, and his Order denying Nothern's motion to compel should be upheld.

## IV.  ARGUMENT

**A.    The Interview Notes In Question Were Created For, And At The Direction Of , SEC Attorneys And Are Protected From Disclosure Pursuant To The Attorney Work Product Doctrine.**

Magistrate Judge Sorokin correctly concluded that the witness interview notes that Nothern seeks to compel are protected from production by the work product doctrine.

The Supreme Court first enumerated the attorney work product doctrine in *Hickman v. Taylor,* 329 U.S. 495 (1947).  The Court held that a party generally cannot discover the mental impressions, conclusions, opinions or legal theories of an attorney or other representatives of a party concerning litigation. *Id.*  An attorney's mental impressions are reflected in " interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. *Id.* at 510-11. The Court found that the general policy against invading the privacy of an attorney's course of preparation is "so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade the privacy to establish adequate reasons to justify production." *Id.* at 512.

In 1970, the work product doctrine was codified, in part, in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which protects from discovery, among other things, documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Since the promulgation of Rule 26(b)(3), the Supreme Court has held that "[t]he work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, n.11 (1975). " It is not designed to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's work" from the discovery attempt of an opponent. *In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. 141, 145 (D. Mass. 1988).

Witness interview notes prepared in anticipation of litigation are accorded strong work product protection. *See Upjohn Co. v. United States,* 449 U.S. 383, 401 (1981) (finding that attorney notes and memoranda of witnesses' oral statements are protected by the work product doctrine and noting that "[i]t is clear that this is the sort of material that the draftsmen of the Rule had in mind as deserving special protection."); *Hickman v. Taylor*, 329 U.S. 495, 510 (finding that production of such witness statements "contravenes the public policy underlying the orderly prosecution and defense of legal claims"). Courts have routinely recognized that the work product doctrine extends to witness interview notes taken in the course of Commission investigations. *See SEC v. Talbot*, No. CV044556-MMM (PLAX), 2005 WL 1213797, at *3 (C.D. Cal. April 21, 2005) (rejecting defendant's motion to compel the SEC to produce witness interview notes taken during the SEC's pre-lawsuit investigation); *SEC v. Cavanagh*, No. 98 CIV 1818 (DLC), 1998 WL 132842 (S.D.N.Y. Mar. 23, 1998) (granting protective order, finding notes of witness interview protected by the work product privilege); *SEC v. Downe*, No. 92 CIV. 4092 (PKL), 1994 WL 23141 (S.D.N.Y. Jan. 27, 1994) (denying motion to compel production of notes of witness interviews); *SEC v. Navarre*, No. 92 Civ. 3719 (PNL), 1993 WL 267295, at * 1 (S.D.N.Y. Jul. 13, 1993) (granting protective order to prevent disclosure of notes of witness interviews); *see also SEC v. Zwick et al.*, Civil Action No. 03 Civ. 2742, (S.D.N.Y. Filed Apr. 21, 2003) October 14, 2004 Order of M.J. Pitman.  Docket # 70, Exh. A (denying defendant's motion to compel postal inspector to testify concerning statements made during a proffer session of third party in which attorneys from the SEC and Justice posed questions on the grounds that such testimony would reveal the attorneys' protected work product); *In re Sealed Case*, 856 F.2d 268, 319 (D.C. Cir. 1988) (holding district court properly denied motion to compel deposition answers from Commission staff involving their recollection of witness interviews conducted during investigation).

In his Objection, Nothern does not dispute Magistrate Judge Sorokin's finding that the five witness interview notes in question "include the mental impressions, conclusions, opinions or legal theories of SEC counsel," nor does he contest the finding that the notes were "prepared

8

in anticipation of litigation." Docket # 81 at 4. Rather, Nothern contends that Magistrate Judge Sorokin erred in finding that Investigator Manchak prepared the notes in question for SEC counsel. Nothern's contention is not supported by the facts or the law and should be rejected.

### 1.    The Interview Notes In Question Were Created For And At The Direction Of SEC Counsel.

The declaration of SEC Senior Counsel, John J. Rossetti Jr. filed in this action on November 17, 2006 (Docket # 48), is the only evidence in the record that details the circumstances of the joint interviews and the events that lead to the creation of the interview notes in question. In his Order denying Nothern's motion to compel, Magistrate Judge Sorokin justifiably relied on the undisputed facts contained in Mr. Rossetti's sworn declaration. Docket # 81 at 1-2, 5.

In his declaration Mr. Rossetti confirms that the five interview notes that Nothern is seeking to obtain were created for and at the direction of SEC counsel. *See* Docket # 48 at ¶¶ 2, 7-9. Mr. Rossetti states that attorneys for the SEC and Justice designated Investigator Manchak to be the *sole* note taker during their joint witness interviews. Docket # 48, ¶¶ 2, 7. SEC attorneys actively participated in the interviews by posing questions to the witnesses based on their legal analysis and thought processes, and relied on Investigator Manchak to take notes of the interviews on their behalf. Docket # 48, ¶¶ 7-9. Mr. Rossetti declares that the resulting interview notes, are not verbatim accounts of the interviews, but are summary in nature, reveal the subject areas the attorneys from the SEC and Justice believed to be significant, and are suggestive of their legal strategy. *Id.*, ¶ 9.

Rule 26(b)(3), by its plain language, protects information, like the five interview notes in question, which are prepared in anticipation of litigation "by or for another party." The Supreme Court, recognizing that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial, has held that work product "protection can extend to materials prepared by an attorney's agent, if that agent acts at the

attorney's direction in creating such documents." *U.S. v. Nobles,* 422 U.S. at 238-239.    In his

Order, Magistrate Judge Sorokin found that "Rule 26(b)(3) places the focus upon the motivation

underlying the creation of a document (i.e., was it created "by or for a party" and "in anticipation

of litigation or for trial,") not upon the identity or employment status of the individual creating

the document." This finding is supported by case law. *See Caremark, Inc v. Affiliated Computer

Services, Inc.,* 195 F.R.D. 610, 615 (N.D. Ill. 2000) (noting that whether a document is protected

by the work product doctrine depends on the motivation behind its preparation, not "on the

person who prepared it"). Mr. Rossetti's declaration makes clear that the motivation behind the

preparation of the five interview notes was to prepare a confidential summary of the interviews

for the SEC's attorneys' use in preparation of any litigation that may be brought by the SEC as a

result of its investigation into trading in the 30-year bond. Docket # 48, ¶¶ 9, 11-16.

Nothern claims that Investigator Manchak's notes are not protected under Rule 26(b)(3)

because he was not employed or compensated by the SEC and there is no written agreement

defining his relationship with the SEC. Nothern's argument is not supported by law and was

properly rejected by Magistrate Judge Sorokin. *See Docket # 81 at 4-5.*

In *Sprague v. Director, Office of Worker's Compensation,* 688 F.2d 862, 870 (1st Cir.

1982) ("*Sprague*"), a case relied on by Magistrate Judge Sorokin in his Order, the First Circuit

found that a letter prepared by a third party doctor for a party's attorney in response to questions

posted by the attorney was protected from discovery under Rule 26(b)(3). The First Circuit noted

that "the work product doctrine must necessarily apply to materials prepared on an attorney's

behalf . . . because the attorney must often rely on the assistance of others 'in the compilation of

materials in preparation for trial.'" *Id.* at 870 (citing and quoting *U.S. v. Nobles,* 422 U.S. at 238,

239, n. 13).[7]

---

[7] Courts in other jurisdictions have also found that the work product doctrine extends to
documents created for a party's attorneys. *See e.g., U.S. v. Gericare Medical Supply Inc.,* No.
Civ.A.99-0366-CB-L, 2000 WL 33156442, at *3 (S.D. Ala. Dec. 11, 2000) (upholding
Magistrate Judge's holding that notes of Special Agents who were not representatives of the
plaintiff, but were working on the plaintiff's behalf were protected work product); *In re Grand*

10

Nothern tries, unsuccessfully, to distinguish *Sprague* by claiming it is inapplicable to this case because Investigator Manchak's notes were prepared for Justice not for the SEC's counsel. This argument is belied by the facts. In his uncontroverted declaration, Mr. Rossetti states that "counsel for the SEC and Justice counsel assigned USAO [the United States Attorney's Office] Investigator Robert Manchak the note taking responsibility." Mr. Rossetti further states that "Investigator Manchak was assigned the task of keeping the notes of these interviews for the future use of the attorneys involved in the investigation for the SEC and the USAO. Only Investigator Manchack took notes for SEC counsel and USAO counsel during the interviews." Docket # 48 at ¶ 7, 8. Magistrate Judge Sorokin, relying on Mr. Rossetti's, properly found that the interview notes "while indeed prepared in part for Justice Department counsel, were also created party for the benefit of SEC counsel." Docket # 81 at 4.

Nothern has not posited any evidence to contradict the representations made in Mr. Rossetti's declaration.[8] Moreover, he has failed to cite to a single authority that supports his attempt to read extra employment and compensation requirements into Rule 26(b)(3). While Nothern's objection contains citations to cases that support the proposition that the work product doctrine does not protect documents created for persons who are not parties to the current suit,

---

*Jury Proceedings*, No. M-11-189, 2001 WL 1167497, at *19-20 (S.D.N.Y. Oct. 3, 2001) (finding that notes of an investigator who working on behalf of Doe Corp., and notes of an employee of Doe Corp., taken at a meeting with counsel were protected work product because both the investigator and employee were acting as agents of Doe Corp.'s counsel.

[8] Nothern suggests that the SEC attorneys should have brought "another SEC employee" to the interviews of the five witnesses, rather than assigning note-taking responsibility to Investigator Manchak. Motion to Compel at 8. Fed. R. Civ. P. 26(b)(3), however, protects documents created in anticipation of litigation "by or for another party" or its agent, including its attorneys. *See* Fed. R. Civ. P. 26, Advisory Comm. Notes, 1970 Amendment ("Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf. The rule then goes on to protect against disclosure the mental impressions, conclusions, opinions or legal theories concerning the litigation of an attorney or other representative of a party.").

that authority is inapplicable to this case because the interview notes in question were created for the SEC, which is a party to this litigation. Objection at 7.

> ### 2. Nothern's Argument That The SEC Has Demonstrated Inconsistent Behavior In Withholding Its Work Product Protected Interview Notes Should Be Rejected.

Without citing to any authority whatsoever, Nothern argues that Investigator Manchak could not have been acting as a representative of the SEC when he agreed to serve as the sole note taker during the five interviews at issue, because it is "inconsistent" with the SEC's argument that Justice is not a party to this case. Although this Court has rejected the claim that Justice and other Executive Branch departments became parties to this litigation when it was filed by the SEC when it was raised by Nothern in two previous motions, Nothern continues to assert the same meritless arguments in brief after brief. Magistrate Judge Sorokin did not err in rejecting Nothern's third attempt to have Justice declared a plaintiff in this case, nor did he err in finding that the fact "the USAO and the SEC entered into [a] relationship regarding the joint interviews did not render them one party within the meaning of Rule 34."[9]

Nothern's contention that the SEC's production of Treasury's Office of Inspector General ("OIG") report is somehow inconsistent with its refusal to produce its work product protected interview notes is also baseless. While the five interview notes at issue in Nothern's motion to compel were taken for, and at the direction of, SEC counsel, the memoranda of activity contained in Treasury's OIG report ("the OIG memoranda") are summaries that were prepared by Treasury

---

[9] In footnote 4 of his Objection, Nothern relies on *United States v. Stringer* ("*Stringer*"), 408 F. Supp. 2d 1083 (D. Or. 2006), *United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005) ("*Scrushy*") and *SEC v. Nacchio*, 438 F. Supp. 2d 1266 (D. Colo. 2006) ("*Nacchio*") to suggest that the SEC could not have assigned an investigator who is employed by Justice to take notes on its behalf without improperly merging the SEC and Justice investigations. Nothern, however, has already conceded that *Stringer, Scrushy* and *Nacchio* do not address, let alone prohibit attorneys from the SEC from assigning an investigator, who happens to be employed by Justice, to take notes on their behalf during joint interviews that the SEC conducts with Justice. Docket # 72 at 3. Nothern's reliance on these cases, which involve allegations that the SEC and Justice worked together to conceal Justice's investigative role, to support his claim of improper "merging" in this case is misplaced.

employees for, and at the direction of, Treasury's OIG. The SEC was not involved in Treasury's OIG investigation, and had no input in the drafting of the OIG memoranda or the OIG report. Docket # 33, ¶¶ 2-3. Attorneys from the SEC took their own notes during the interviews they conducted of Treasury employees that were arranged with the assistance of Treasury's OIG counsel – they did not designate anyone from Treasury to take notes on their behalf.[10] Because Treasury's OIG memoranda and OIG report were not created by or for the SEC or its attorneys in anticipation of the SEC's litigation, the SEC did not claim that those documents were the SEC's work product. Thus, contrary to Nothern's allegations, the SEC's decision to produce the Treasury's OIG memoranda and OIG report is in no way inconsistent with its decision to withhold the five protected interview notes at issue in Nothern's motion to compel, which were created for SEC counsel in anticipation of litigation. Notably, by the time the SEC produced Treasury's OIG report to Nothern, he had already received a redacted copy of the report from Treasury, which revealed the substance of the OIG memoranda. Docket # 20, Exh. A.

### B.    The SEC Has Not Waived The Work product Protection Of Its Interview Notes.

Nothern contends that Magistrate Judge Sorokin made a mistake of law in rejecting his argument that the SEC waived the work product protection of the five interview notes in question by sharing them with Justice. Nothern is the one who is mistaken.

It is well-established in this jurisdiction that a party does not automatically waive work product protection by disclosing information to another person. "A disclosure made in the pursuit of such trial preparation and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege." *In re Atlantic Financial Management Securities Litigation*, 121 F.R.D. at 145 (citing and quoting *U.S. v. American Tel. & Tel.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)). The existence and extent of waiver depends on the following

---

[10] Counsel for the SEC has claimed work product protection for the interview notes taken by its attorneys during the interviews of Treasury witnesses. *See e.g.*, Docket # 30, Exh. S (Bates Nos. 137214-245, 137528-268, 137546-257, 137270-275, 140964-141016).

factors: "(1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege." *Id.* Magistrate Judge Sorokin was correct in finding that "[n]othing about the fact that the SEC exposed its work product to the USAO . . . alters its character as work product." Docket # 81 at 5.

Magistrate Judge Sorokin's determination that the SEC did not use the interview notes in a way that was "inconsistent with the purposes of Rule 26(b)(3)" is legally sound. Attorneys for the SEC and Justice permissibly shared work product, including the five interview notes at issue in Nothern's motion to compel, to facilitate their parallel investigations into trading in the 30-year bond. *See SEC v. Dresser*, 628 F.2d 1368, 1377 (D.C. Cir. 1980) (finding that the SEC is permitted to "transfer fruits of its investigations to Justice in the event of potential criminal proceedings"). The SEC shared work product with attorneys for Justice, pursuant to a November 9, 2001 access request in which Justice represented that it would "establish and maintain such safeguards as are necessary and appropriate to protect the confidentiality of files to which access is granted and information derived therefrom," and "would make no public use of [the files produced by the SEC in response to the access request] without prior approval of the [SEC] staff" and would "not grant any demand or request for the files or information [except legally enforceable demands] without prior notice to and objection by [SEC] staff." *See* Docket # 33, Exh. Q. Likewise, the record shows that Justice shared information with the SEC that was not gathered via grand jury proceedings and the SEC maintained the confidentiality of these materials. Docket # 48 ¶¶ 3, 16.

SEC attorneys understood that the work product shared between attorneys for Justice and the SEC was privileged, and that they were expected to keep it confidential. Docket # 48, ¶ 16. In addressing whether a communication was intended to be kept confidential, the First Circuit has found that the key question is "what was reasonable under the circumstances." *United States*

14

*v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989) (citations omitted). The five interview notes at issue in this case were taken during proffer sessions where attendance was limited to the witnesses, their attorneys and attorneys and agents of the SEC and Justice. Docket #48, ¶ 7-9. They were transmitted by Investigator Manchak to the SEC with a cover sheet stamped "Confidential." Both the SEC and Justice have refused to produce the interview notes to Nothern or any non-party witnesses. Docket #48, ¶ 16, Docket # 39, Exh. C. Based on the circumstances under which the interview notes were taken and transmitted, it was reasonable for Magistrate Judge Sorokin to find that the SEC and Justice intended to maintain the confidentiality of the notes.

Notwithstanding the law to the contrary, Nothern claims that the SEC had to establish proof of a common interest agreement with Justice in order to avoid having waived the work product protection of the five interview notes. Even if Nothern were correct, the record shows that the agencies satisfied the requirements necessary to invoke the protections of the common-interest privilege. The common-interest privilege, "allows attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." *See Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93-95 (D. Mass. 2002) (citations and internal quotations omitted). The common interest privilege applies to plaintiffs as well as defendants. *See In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990). Courts in this jurisdiction have held that "a written agreement is not a prerequisite for invoking the common-interest doctrine." *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. at 93. (citations omitted). All parties must establish is that "they agreed to engage in a joint effort to keep the shared information confidential from outsiders." *Id.* (citations omitted).

Nothern's allegation that there is no evidence of a common interest agreement were properly rejected by Magistrate Judge Sorokin and should also be rejected by this Court. The record shows that the SEC and Justice faced common adversaries on similar issues during their parallel pre-lawsuit investigations. *See* Docket # 48, ¶ 3, 7-9. As stated above, both the SEC and

15

Justice agreed to keep the information they shared confidential. *See* Docket # 33, Exh. Q, Docket # 48 ¶ 10, 16. There is no evidence that either the SEC or Justice waived any privileges that may be associated with the five interview notes by sharing them with Nothern, or any other third parties. *See id.* ¶ 16. Finding that SEC or Justice waived the protection of these interview notes, which contain SEC attorney opinion work product, would contradict the policy underlying the work product and common-interest privileges.

## V. **CONCLUSION**

For all of the foregoing reasons, the SEC respectfully requests that the Court deny Nothern's Objection to Magistrate Judge Sorokin's discovery Order denying Nothern's motion to compel.

Dated: June 19, 2007                    Respectfully Submitted,


                                        /s/ Erica Y. Williams
                                        Erica Y. Williams
                                        Sarah Levine
                                        John J. Rossetti Jr.
                                        U.S. Securities and Exchange Commissions
                                        100 F Street, N.E.
                                        Washington, D.C. 20549-4010
                                        Phone:  (202) 551-4450
                                        Fax:    (202) 772-9245
                                        williamse@sec.gov