UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Boston Division)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 05-10983 (NMG) |
| Plaintiff, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| STEVEN E. NOTHERN, | **Leave to file granted July 17, 2007** |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HIS
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON
JUSTICE DEPARTMENT DOCUMENTS IN THE SEC'S POSSESSION**

Defendant Steven Nothern respectfully submits this reply memorandum in further support of his Objections to the May 22, 2007 Order of Magistrate Judge Leo T. Sorokin (Docket ## 81, 83), which denied Nothern's motion to compel the production of United States Justice Department ("DOJ") documents in the possession of the plaintiff Securities and Exchange Commission ("SEC"). Nothern submits this memorandum to correct a number of incorrect statements of law and fact in the SEC's opposition brief ("Opp.").

  A.  **The Magistrate Judge's Interpretation of Rule 26(b)(3) is Incorrect.**

The essence of the SEC's argument (Opp. at 9-12) is that even though DOJ investigator Robert Manchak – the author of the interview notes in question – was not a representative, agent, or employee of the SEC, he prepared the notes "for" the SEC. Therefore, the SEC argues, the notes qualify as "documents . . . prepared in anticipation of litigation or for trial <u>by or for another party</u> or by or for that other party's representative" under Fed. R. Civ. P. 26(b)(3).

Clearly, Manchak's interview notes were not prepared "by" the SEC or its representative.

The SEC concedes (Opp. at 10) that Manchak was "not employed or compensated by the SEC" and there is "no written agreement defining his relationship with the SEC." Similarly, while the Magistrate Judge commented (Docket # 83, at 5) that Rule 26(b)(3)'s "listing of various types of 'representatives' who might prepare a protected document for a party does not purport to be exhaustive," his analysis of the term "representative" ends there. The Magistrate Judge did not expressly find, nor could he have found, that Manchak served as the SEC's representative in any capacity.[1]

Instead, the SEC contends, and the Magistrate Judge held, that what matters is not "the identity or employment status of the individual creating the document," but rather "the motivation underlying the creation of the document." *See* Opp. at 10 (quoting Docket # 83, at 5). "It is sufficient," Magistrate Judge Sorokin held, "that Manchak prepared the notes intending that they be utilized at least in part by SEC counsel . . . ." Docket # 83, at 5 (emphasis added). This interpretation of Rule 26(b)(3) is incorrect as a matter of law.

There is no support in the law for the claim that work-product protection can be established based merely on the "motivation underlying the creation of a document." In his Order, the Magistrate Judge cited only the First Circuit's ruling in *Sprague v. Director, Office of Workers' Compensation Programs*, 688 F.2d 862 (1st Cir. 1982), as support for his view that Manchak's supposed intentions provide a sufficient basis for concluding that his interview notes are the SEC's work product. But in *Sprague* the court held only that a letter prepared by a doctor

---

[1] Because there is no evidence that DOJ employee Manchak assented to a relationship by which he would act on the SEC's behalf and subject to the SEC's control, the basic elements of an agency relationship are absent here. *See* Restatement (Third) of Agency § 1.01 (2006) (agent shall act "subject to the principal's control" and "manifests assent or otherwise consents so to act"). Moreover, any claim that Manchak served as the SEC's representative contradicts the SEC's longstanding position – asserted once again in its brief – that it and Executive Branch departments like DOJ "are separate and distinct entities which do not control one another's documents" for purposes of federal civil discovery. *See* Opp. at 5-6 (quoting Docket # 63, at 9-10).

2

on behalf of plaintiff's counsel – *i.e.*, for a party's representative, not for a third-party – was protected. *See id.* at 868, 870. *Sprague* does not even remotely suggest that the "motivations" of a non-party's agent can somehow transform his writings into a party's work product.

For its part, the SEC cites (Opp. at 10) the statement in *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000), that "whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." Read in context, this statement lends no support to the SEC's position. The court in *Caremark* made its statement in the course of discussing *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515 (N.D. Ill. 1990), which held that work-product doctrine does not automatically extend to all documents in an internal investigation that have been routed through or copied to an attorney. *See Caremark, Inc.*, 195 F.R.D. at 615-16 (discussing *Air Crash Disaster*, 133 F.R.D. at 519-20). In other words, the court found that a party must show <u>not only</u> that a document was prepared by its attorney or the attorney's representative, but also that the document was prepared "in anticipation of litigation." *Id.* at 616.[2] *Caremark* does not support the SEC's claim that Manchak's supposed motivations alone, absent any "agent" or "representative" relationship between him and the SEC, can suffice to establish his notes as the SEC's work product.

The legal position advanced by the SEC thus contradicts the well-established principle that "courts typically do not extend protection to documents prepared by non-parties or their

---

[2] In fact, this Court has made clear that the "in anticipation of litigation" requirement includes both a subjective and an objective component: "the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 147 (D. Mass. 2004) (citations omitted). There is certainly no basis for the claim that the subjective belief of a non-party's agent like Manchak as to whom he was preparing a document "for" may establish it as a party's protected work product.

agents." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 144 (D. Mass. 2004) (citing cases); *see also* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (2d ed. 2006) ("Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit."); 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 26.70[4] (3rd ed. 2006) (work-product doctrine does not protect documents prepared by non-parties or their representatives – "even if the nonparty is a party to closely related litigation").

Because the Magistrate Judge's interpretation of Rule 26(b)(3) is contrary to law, this Court should set aside his Order and enter an Order compelling the SEC to produce Manchak's interview notes.

### B. The Usage Agreement Between the SEC and DOJ Does Not Establish DOJ's Interview Notes as the SEC's Work Product.

As the proponent of the work-product protection, the SEC has the burden of proving that it applies. *See In re Grand Jury Subpoena*, 220 F.R.D. at 140. After asserting that the "motivations" behind DOJ investigator Robert Manchak's preparation of the interview notes are critical, the SEC then cites the declaration of John J. Rossetti, Jr. as conclusive evidence on this issue. It describes (Opp. at 9) Mr. Rossetti's declaration as "the only evidence in the record that details the circumstances of the joint interview and the events that led to the creation of the notes in question" (Opp. at 9). It then writes:

> Mr. Rossetti's declaration makes clear that the motivation behind the preparation of the five interview notes was to prepare a confidential summary of the interviews for the SEC's attorneys' use in preparation of any litigation that may be brought by the SEC as a result of its investigation into trading in the 30-year bond. Docket # 48, ¶¶ 9, 11-16.

Opp. at 10 (emphasis added).

4

The cited paragraphs from Mr. Rossetti's declaration, however, say nothing about Manchak's intentions or motivations. Instead, they describe the SEC's <u>own</u> intentions. *See, e.g.*, Docket # 48, ¶ 12 ("The staff of the Commission intended to . . ."); ¶ 13 ("Commission staff anticipated that . . ."); ¶ 15 ("The notes were also requested [from DOJ by SEC staff] with the specific intention that . . ."). Thus, while the SEC purports to provide factual support for the Magistrate Judge's (erroneous) view that Manchak's intentions or motivations are determinative of Rule 26(b)(3)'s applicability, it in fact provides, through the careful use of the passive tense, evidence only as to <u>its</u> <u>own</u> intentions or motivations.

The only evidence as to anyone's thinking at DOJ involves the usage agreement between SEC counsel and DOJ counsel (*i.e.*, Manchak's superiors). "<u>Counsel</u> agreed that the one set of notes resulting from these interview sessions <u>would be available for use</u> by attorneys for the Commission and by the USAO." Docket # 48, ¶ 7 (emphasis added). In other words, Mr. Rossetti's declaration establishes that DOJ prosecutors (1) assigned their subordinate to take notes during the interviews,[3] and (2) agreed to make their subordinate's work "available for use" by the SEC.

It is clear that DOJ and the SEC have coordinated efforts and extended favors to each other throughout their investigations – notwithstanding the SEC's insistence that it is a wholly distinct party from the rest of the federal government. Indeed, the very fact that the agencies

---

[3] At one point in his declaration, Mr. Rossetti suggests that "SEC counsel" along with the DOJ prosecutors "assigned USAO Investigator Robert Manchak . . . the note-taking responsibility." Docket # 48, ¶ 7; *cf. id.* ¶ 8 ("Investigator Manchak <u>was assigned</u> the task of keeping the notes…."). To the extent the SEC suggests (without any further explanation or support) that <u>its</u> counsel assigned Manchak this task, its suggestion only begs the following questions: What gave the SEC authority to assign tasks to an employee in a different federal agency? What evidence is there that Manchak agreed to submit to SEC authority? Would such assent be consistent with his obligations to serve DOJ alone? What if the DOJ lawyers and the SEC lawyers disagreed about what should be recorded in the notes? Because there is no evidence that Manchak was subject to the SEC's control in any manner, the only reasonable interpretation of events is that DOJ simply shared its own notes with the SEC.

conducted joint witness interviews – and relied on one agency's employee to take notes for both – demonstrates conduct that goes far beyond the ordinary course of affairs for parallel investigations, which, as one court has observed, "should be like the side-by-side train tracks that never intersect." *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1139 (N.D. Ala. 2005); *see also SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1287 n.14 (D. Colo. 2006) ("Caselaw approving of simultaneous-yet-independent investigations or the sharing of limited or general information is not especially helpful in analyzing the propriety of investigations, such as the one here, involving jointly-conducted witness interviews.").

Yet even though the agencies worked closely together, and, as noted by Magistrate Judge Sorokin, "had common interests," Docket # 83, at 6, there is no evidence that DOJ and the SEC actually entered into a common-interest agreement sufficient to establish the work product of one agency as the work product of the other. As this Court has ruled, a party seeking to apply the "joint defense" or "common interest" doctrine must first prove that it entered into a common-interest agreement. *United States v. Sawyer*, 878 F. Supp. 295, 297 (D. Mass. 1995) (citing *In re Bevil, Bresler & Shulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986)); *see also id.* ("The Court concludes that the parties' similar interests and Scipione's desire to pursue a 'team effort' are insufficient to show that Sawyer's communications were made during the course of a joint defense effort."). The SEC cannot do so here.[4]

Furthermore, even if Manchak's notes contain information that reflect the mental impressions of the SEC's counsel, there is no evidence that anyone at SEC ever exercised any

---

[4] Again, the November 9, 2001 access request by DOJ, cited by Magistrate Judge Sorokin (Docket # 83, at 6), applied only to information prepared by the SEC and sent to DOJ. The interview notes at issue here were prepared by DOJ and requested by the SEC. Moreover, DOJ's access request did not mention the "joint defense" or "common interest" doctrine, and DOJ expressly reserved the right to disclose the SEC's materials to third parties. *See* Docket # 33, Ex. Q at 1.

kind of control over the creation, revision, or custody of the notes. The mere fact that a document reflects an attorney's thought does not by itself exclude it from discovery. There is no evidence that the SEC was able to direct Manchak to include or exclude particular information from the notes. The SEC did not obtain a copy of Manchak's notes immediately after they were written, but instead had to "request copies" from DOJ at some later time. Docket # 48, ¶ 15. Moreover, while Mr. Rossetti's declaration states that the SEC did not disclose Manchak's notes "to other persons, including the defendant or any non-party witness," *id.* ¶ 16, there is no evidence that the SEC had any ability to prevent DOJ from disclosing the notes to others.

At its heart, the SEC's position is that Manchak's notes are the SEC's protected work product because the SEC has always wished it so. But because the SEC did not create, control, or maintain permanent custody over the notes, and because the SEC's subjective intentions are clearly irrelevant as to the status of the DOJ's work product, its claim for protection in this case fails.

**C.    The SEC's Account of Facts Is Misleading.**

Finally, a number of misleading statements in the SEC's brief require correction.

First, even though the Magistrate Judge correctly found that the interview notes Nothern seeks are "relevant," Docket # 83, at 4, the SEC contends (Opp. at 6) that production is unnecessary because "Nothern already deposed Davis." It then cites from Davis's prepared statement at his criminal plea hearing in the Southern District of New York in September 2003, in which he stated that he attended quarterly refunding press conferences pursuant to a confidentiality agreement that he reached with a senior adviser at Treasury. *See* Opp. at 2 (citing Docket # 33, Ex. D at 19). This statement, which is not admissible at trial, has been contradicted by every Treasury official or employee who has testified in this case. Not a single person working at Treasury on October 31, 2001 was aware of any agreement entered into by Davis and

7

Treasury. The purported "senior adviser" at Treasury, Roger Anderson, testified that he "never had any agreement with Mr. Davis, no," and that Davis was already attending press conferences as a "Treasury regular" when he and Anderson first met. Docket # 66, Ex. B at 51-52, 95, 100.[5]

Under the misappropriation theory of insider trading, the SEC must prove both that Davis owed a fiduciary-like duty of confidentiality to Treasury, and that Nothern was subjectively aware of Davis's duty at the time. *See United States v. Mylett*, 97 F.3d 663, 668 (2d Cir. 1996); *United States v. Liberia*, 989 F.2d 596, 600 (2d Cir. 1993). DOJ's notes regarding the two interviews conducted of Davis – on October 11, 2002 and February 3, 2004 – are critical to Nothern's defenses that no duty existed on Davis's part and, *a fortiori*, Nothern did not and could not have known about any such duty.

Second, the SEC asserts (Opp. at 3) that "Nothern has also admitted that when he received Davis' voicemail he was aware of the meaning of the term embargo as it applied to information from government agencies. Docket # 33, Ex. A." The SEC apparently meant to refer to Exhibit G of that filing, which contains excerpts from Nothern's SEC deposition in December 2001. In fact, Nothern testified that while he knew nothing about the procedures used by Treasury or most other federal agencies, he did know that the Department of Labor had embargo procedures "whereby they actually lock press in a room." Docket # 33, Ex. G at 99-100. Treasury chose to institute "lockdown" procedures for its quarterly refunding announcements only <u>after</u> the October 31, 2001 press conference at issue. Docket # 66, Ex. F (Fratto Dep. at 236-38), Ex. H (Holahan Dep. at 253).

Third, the SEC writes (Opp. at 4 n.4) that Treasury's October 31, 2001 press release reporting its decision to suspend the 30-year bond "could not be viewed by the public on its

---

[5] Roger Anderson testified that while he did not personally object to Davis's continued attendance at the press conferences so long as he respected the embargoes, he did not have the authority to admit Davis. Docket # 66, Ex. B at 95-97.

website prior to the posting on its production server at 9:43:28." It ignores the fact, however, that Treasury posted the press release on <u>another</u> publicly accessible Internet address at 9:40:23 a.m., before Nothern allegedly traded on the information. Docket # 66, Ex. G (Harris Dep. at 89-90, 93-94), Ex. L (Verizon Dep. at 75-76, 149-56).

Finally, the SEC writes (Opp. at 4 n.5) that there is "no evidence" that Treasury's decision to suspend the 30-year bond "became public prior to the time that Nothern traded" and that Nothern has never sought to obtain testimony "to corroborate his groundless assertion of leaks." But, as the SEC is fully aware, Nothern has sought, both in this action and in a related action against Treasury under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, a ruling allowing him to take the deposition of Treasury employee Jill Cetina. The SEC and Treasury conducted a formal interview of Cetina on November 7, 2001, in which she provided information about the extent to which various unnamed bond dealers had advance knowledge of Treasury's decision to suspend the 30-year bond, including through reported disclosures by a European central bank, and her reported belief that the market was acting on that information. *See* Docket # 76, Ex. L; *Steven E. Nothern v. United States Department of the Treasury*, Civil Action No. 07-10347-NMG (D. Mass.), Docket # 9, Ex. U. Nothern made a request to Treasury to depose Cetina on May 18, 2006. Docket # 51, Ex. A at 4-5. Treasury denied the request on November 30, 2006. Docket # 53, Ex. B. It defies reality for the SEC to suggest that Nothern has been negligent in his discovery efforts by seeking to depose Cetina, the direct source of these reports – and not, for example, "representatives from . . . European central banks" (Opp. at 4 n.5), given the fact that no such bank or representative has been identified by name in any materials available to Nothern. Treasury's failure to allow Nothern to depose Cetina and other critical fact witnesses, as well as the SEC's failure to produce DOJ's interview notes at issue here, has directly hindered Nothern's ability to prepare his defense to the claims made against him.

## CONCLUSION

For the reasons stated above and in Nothern's earlier briefs, the Court should enter an order compelling the SEC to produce its documents bearing Bates nos. SECNOTH 136630-648, 136650-654, 136667-671, 136655-658, 136672-675, 136779-782, 136661-666, 136678-683, and 137300-310.

                                            STEVEN E. NOTHERN

                                            By his attorneys,

                                            /s/ John A. Shope
                                            Nicholas C. Theodorou, BBO #495730
                                            John A. Shope, BBO #562056
                                            Robert E. Toone, BBO #6443249
                                            FOLEY HOAG LLP
                                            155 Seaport Boulevard
                                            Boston, MA 02210
                                            (617) 832-1000

Dated: July 3, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                            /s/ John A. Shope

B3375105.11